**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

      Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME IS UNKNOWN), JOHN/JANE DOES 2–10 (WHOSE TRUE NAMES ARE UNKNOWN),

      Defendants.

---

### FARMLAND PARTNERS INC.'S MOTION TO REMAND

---

Plaintiff Farmland Partners Inc. ("Farmland Partners") respectfully requests that the Court remand this case to Colorado State Court. Where a party seeks to remove a case to federal court claiming diversity jurisdiction, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Here, pursuant to two Orders issued by the Colorado State Court, Farmland Partners served Defendants Rota Fortunae ("RF") and John/Jane Does 2–10 (the "Does") with process before RF sought to remove this action. Two weeks after the Does were served, RF filed a Notice of Removal alleging that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. But none of the other served defendants joined in or consented to RF's Notice of Removal. Accordingly, this Motion to Remand should be granted.

1

## I.    BACKGROUND

As set forth in Farmland Partners' Complaint, this case arises from a "short and distort"

attack on Farmland Partners.  *See* Complaint, Exhibit C to the Declaration from Kyle S. Pietari in

Support of Farmland Partners' Motion to Remand (the "Pietari Declaration"), filed herewith.

This scheme was an attempt to profit from the trades made in the wake of the publicly released

defamatory and untrue statements.  *Id.* at pp. 1–7.  The Defendants' actions caused reputational

and monetary harm to Farmland Partners, its investors, and the hardworking farmers with whom

Farmland Partners works.  *Id.*

Farmland Partners named RF as a defendant because RF is the named publisher of an

article on Seeking Alpha that made false, misleading, and defamatory statements about Farmland

Partners as part of an illegal scheme to profit by improperly driving down the stock price of

Farmland Partners.  *See* Ex. C to the Pietari Declaration at ¶ 2.  Farmland Partners' naming of

John/Jane Does 2–10 as defendants and as RF's co-conspirators in this scheme is supported by

numerous assertions by RF, RF's former counsel Matthew Mitzner, Mr. Mitzner's counsel

Michael Stockham, and RF's current counsel, John Chanin, regarding the existence of other

individuals working with or for RF as part of the short and distort attack.  *See* Farmland Partners'

Response to RF's Motion to Reconsider Order Granting Substituted Service on the Does, Exhibit

K to the Pietari Declaration, at ¶¶ 3–8.  The existence of such collaborators is further confirmed

by an analysis of trading data following the publication of the defamatory information at issue

here.  *See* Declaration of Joshua Mitts, filed herewith (the "Mitts Declaration").  Accordingly,

Farmland Partners filed its Complaint against RF and the Does on July 23, 2018 for

defamation/defamation by libel per se, disparagement, intentional interference with prospective

business relations, unjust enrichment, deceptive trade practices in violation of the Colorado

Consumer Protection Act, and civil conspiracy.  *See* Ex. C to the Pietari Declaration.

After filing its Complaint, Farmland Partners requested that Mr. Mitzner accept service

on behalf of his client RF, but Mr. Mitzner refused to do so.  Accordingly, Farmland Partners

moved for substituted service on RF through Mr. Mitzner with the Colorado State Court, and the

Court granted that Motion on August 13, 2018.  *See* Motion to Allow Substituted Service on RF,

Exhibit D to the Pietari Declaration.  Farmland Partners served RF through Mr. Mitzner on

August 16, 2018.  *See* Proof of Service for RF, Exhibit E to the Pietari Declaration.

On August 23, 2018, counsel for Farmland Partners asked John Chanin, current counsel

for RF, to accept service for the other defendants who were part of the short and distort attack.

When he did not respond, Farmland Partners filed a motion to allow substituted service on those

defendants.  *See* Motion to Allow Substituted Service on the Does, Exhibit G to the Pietari

Declaration.  Neither RF nor any other defendant opposed that motion, thus waiving any

objection to it, and on August 29, 2018, the Colorado State Court granted Farmland Partners'

second motion to allow substituted service.  *See* Order Granting Substituted Service on the Does,

Exhibit H to the Pietari Declaration.  Farmland Partners completed service on the remaining

defendants pursuant to that Order on August 30, 2018.  *See* Proof of Service for the Does,

Exhibit I to the Pietari Declaration.

After service on the remaining defendants was completed, RF filed a motion to

reconsider the Court's Order granting substituted service on RF's co-defendants (the "Motion to

Reconsider").  *See* Motion to Reconsider, Exhibit J to the Pietari Declaration.  The Motion to

Reconsider neither explained why RF had failed even to object to the underlying request for

substituted service, nor offered any proper basis upon which the Colorado State Court should

reconsider its prior ruling.  Farmland Partners timely filed its opposition and RF submitted its

reply.  Because RF removed the case to this Court before the Colorado State Court ruled on that

motion, the August 29 Order under which the remaining defendants were served remains

undisturbed.  *See* Ex. H to the Pietari Declaration.

On September 14, 2018, RF removed this action without obtaining consent from any of

the served Doe defendants, none of whom joined in RF's Notice of Removal.  In an apparent

attempt to explain its failure to obtain consent from the served Doe defendants, RF's Notice of

Removal contends that the Does are "unknown," and attaches a declaration from RF's prior

counsel, Mr. Mitzner, that states that "'Rota Fortunae' is an individual and the sole author of the

at-issue article and tweets that are the subject of this complaint . . . there are no other persons or

entities who worked on, with, or for 'Rota Fortunae' with regard to the at-issue statements and

tweets."  *See* Notice of Removal ¶ 14; Ex. C to Notice of Removal ¶¶ 3–4 (the "Mitzner

Declaration").  Mr. Mitzner does not claim to have any personal knowledge to support these

statements and fails to explain why an individual with such knowledge could not offer his or her

own declaration.  *See* Ex. C to Notice of Removal.

Further, the Mitzner Declaration does not address the many statements made by RF and

its various counsel, including Mr. Mitzner, regarding the existence of other individuals working

with or for RF.  *See* Ex. K to the Pietari Declaration ¶¶ 3–8 (including Mr. Mitzner writing

Farmland Partners on behalf of "a group of investors" who "have prepared and anticipate

publishing an article[,]" and RF referring in that "article" time and again to what "we found,"

"[w]e believe," "[w]e know," and "[w]e think," and presented "[o]ur research," and "our

4

opinion"). Moreover, the Mitzner Declaration does not expressly deny the existence of the

illegal scheme or the role of others in it beyond those aspects on which Mr. Mitzner asserts RF

worked alone.

As demonstrated by the Mitts Declaration, an unusually large number of short-dated put

options were amassed prior to RF's publication of the July 11, 2018 article on Seeking Alpha.

Mitts Declaration ¶¶ 4–5, 7–27.  Put options allow holders to receive enormous payoffs if the

stock price falls below the threshold strike price.  *Id.* ¶ 7.  Short-term put options are extremely

risky because there is typically a low chance of a drop in stock price in such a short time.  *Id.* ¶ 8.

For this reason, they are typically utilized in advance of a planned and announced event that

investors believe might drive down stock prices.  *Id.* ¶ 9.  However, no such event was planned

or announced at Farmland Partners, and therefore there was no apparent legitimate reason for

such high levels of short-term put options.  *Id.* ¶ 10.  This trading history instead strongly implies

that these put option holders somehow knew about the false and damaging statements RF was set

to release in the Seeking Alpha article on July 11, and is further evidence that RF's claim via its

counsel that there are no Doe defendants is suspect.  RF could have submitted an affidavit stating

that it is the only individual who timed such option trading to profit from the defamatory Seeking

Alpha posting, but tellingly failed to do so.

## II.     STANDARD

"The party invoking federal jurisdiction has the burden to establish that it is proper, and

'there is a presumption against its existence.'"  *Salzer v. SSM Health Care of Okla. Inc.*, 762

F.3d 1130, 1134 (10th Cir. 2014) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909

(10th Cir. 1974)).  "A defendant seeking removal bears the burden of establishing its right to

removal, including its compliance with the procedural requirements underlying removal."

*Wallin v. Shanaman*, No. 08-cv-01987-MSK-KLM, 2009 U.S. Dist. LEXIS 40962, at *5–6 (D.

Colo. May 1, 2009). "Removal statutes are to be strictly construed to limit the federal court's

authority to that expressly provided by Congress and to protect the states' judicial powers."

*Scheall v. Ingram*, 930 F. Supp. 1448, 1449 (D. Colo. 1996) (citation and internal quotations

omitted). "A defendant's right to remove and a Plaintiff's right to choose its forum are not on

equal footing; . . . where plaintiff and defendant clash about jurisdiction, uncertainties are

resolved in favor of remand." *Savino v. Home Depot U.S.A., Inc.*, No. 15-cv-2476-JLK, 2016

U.S. Dist. LEXIS 4723, at *1-3 (D. Colo. Jan. 13, 2016) (citation and internal quotations

omitted).

## III.   ARGUMENT

### A.   THIS CASE SHOULD BE REMANDED BACK TO STATE COURT.

#### 1.   RF Failed to Obtain Consent from the Served Co-Defendants, Rendering the Notice of Removal Deficient.

RF failed to obtain the consent of the other served defendants prior to filing the Notice of

Removal—a fatal error necessitating remand. "When a civil action is removed solely under

section 1441(a) [28 USCS § 1441(a)], all defendants who have been properly joined and served

must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A); *see also*

*Scheall v. Ingram*, 930 F. Supp. at 1449 ("It is well established that removal generally requires

unanimity among the defendants.") (citation omitted); *Wallin v. Shanaman*, Civil Action No. 08-

cv-01987-MSK-KLM, 2009 U.S. Dist. LEXIS 40962, at *6 (D. Colo. May 1, 2009) ("Remand is

appropriate if all defendants do not join in the removal."). A "petition filed by less than all the

named defendants is considered defective if it fails to contain an explanation for the absence of

6

co-defendants." *Scheall v. Ingram*, 930 F. Supp. at 1449; *see also Int'l Three Crown Petroleum LLC v. Petromed Corp.*, No. 10-cv-00317-WYD, 2010 U.S. Dist. LEXIS 22220, at *3 (D. Colo. Feb. 18, 2010) (remanding a case when the removal petition did not "state whether the [co-defendants] consented to the removal, whether they had been served, or whether their consent is not required").

Here, the Colorado State Court ordered on August 29, 2018 that the Does be served via substituted service, and Farmland Partners served the Does in accordance with that Order on August 30, 2018.  *See* Ex. I to the Pietari Declaration; *see also Alpert v. Resolution Tr. Corp.*, 142 F.R.D. 486, 487 (D. Colo. 1992) ("the proceedings in state court shall have force and effect after removal and these proceedings are deemed to have taken place in federal court").

RF could have sought to remove this matter after RF was served—but before the Does were served—when it faced no requirement to obtain consent from any other served defendant. Indeed, RF was aware of Farmland Partners' Complaint by July 24, 2018, *see* Ex. D to the Pietari Declaration ¶ 10, and, despite refusing to accept service voluntarily, was properly served on August 16, 2018—two full weeks before Farmland Partners served the Does through Mr. Chanin.  But RF opted to wait until after the Does were served before seeking to remove this case.  By that time, removal unambiguously required the joinder or consent of the Does.

RF's reliance on *Scheall v. Ingram* undermines, rather than supports, RF's Notice of Removal. *See* Notice of Removal ¶ 15.  In *Scheall*, four defendants removed a case from state court without obtaining the consent of two co-defendants.  930 F. Supp. at 1449.  Unlike here, in *Scheall*, it was "not clear" when those silent defendants were served.  Nonetheless, this court remanded for failure to obtain those defendants' consent, noting the need to strictly construe

removal statutes to protect states' judicial powers. *Id.* The Court in *Glendening ex rel. Carpenter v. Genuine Parts Co.* reached the same result where a removing defendant failed to timely obtain consent from a defendant it did not even know had been served, emphasizing—as the *Scheall* Court did—that removal statutes must be "strictly construed." 960 F. Supp. 243, 244 (D. Colo. 1997).

There are few exceptions to the rule that all defendants must join in or consent to removal. Nominal, fraudulently joined, unserved, and sometimes unknown defendants do not have to consent to removal for removal to be proper. *See Makris v. Tindall*, No. 13-cv-00750-PAB, 2013 U.S. Dist. LEXIS 41397, at *2 (D. Colo. Mar. 25, 2013) ("neither a nominal party nor a defendant not yet served need join the petition for removal") (citation omitted); *see also K.R. Field Servs., L.L.C. v. BAC Field Servs. Corp.*, 2011 U.S. Dist. LEXIS 105445, at *3–4 (D. Colo. Sept. 16, 2011) ("There are several exceptions to this rule, however: unknown parties, nominal parties, and fraudulently-joined parties need not consent to a removal."). RF apparently seeks to utilize the "unknown" exception to avoid the requirement that it gain the consent of its co-defendants. Notice of Removal ¶ 14. This exception "rests on the bedrock principle that [a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Settle v. Diversified Consultants, Inc.*, No. 2:13-cv-02606-EFM-GLR, 2014 U.S. Dist. LEXIS 55512, at *5 (D. Kan. Apr. 22, 2014) (citation and internal quotations omitted). But RF knows who the Does are—as demonstrated herein, they are the parties besides RF that are part of the "group of investors" referred to in Mr. Mitzner's July 9, 2018 letter that preceded the publication on Seeking Alpha —and, in any event, there is no dispute that defendants other than RF have been served.

Therefore, the exception applicable to unknown defendants that have not been served by process does not apply here.

RF surely knew of Farmland Partners' efforts to serve the Does in July and August 2018 while its counsel (first Mr. Mitzner, then Mr. Chanin) refused to accept service voluntarily, but nonetheless chose to wait until after the Does were served to belatedly challenge service of those Does, just as it chose to wait to remove this action.  That RF disagrees with the Colorado State Court's Order is no basis to ignore the clear requirement to obtain consent from those defendants served pursuant to that Order, and RF's failure to do so warrants remand, as RF has not overcome the presumption against removal.[1]

### 2.   The Mitzner Declaration Raises Questions About the Propriety of Removal; It Does Not Answer Them.

Bereft of competent proof that it can sustain its burden to remove, RF offers instead the Mitzner Declaration, which merely asserts that RF wrote and published the posting on Seeking Alpha alone, but does not expressly deny the existence of the short and distort scheme or the role of others in that scheme beyond those aspects on which Mr. Mitzner asserts RF worked alone. *See* Ex. C to Notice of Removal at ¶¶ 3–4.  Whether RF is truly the only author of the misleading and defamatory statements is something that will be tested in discovery, but it has no bearing on

---

[1] Further, there are other procedural deficiencies in RF's Notice of Removal that raise additional concerns about RF's ability to satisfy its burden here.  In RF's Notice of Filing Notice of Removal, page two states:  "Neither this filing, nor the Notice of Removal should be construed as a general appearance, as consent to the Court's personal jurisdiction over Defendants, National General Insurance Company and Imperial Fire & Casualty Insurance Company or a waiver of any defense."  This statement raises the issue of whether National General Insurance Company and Imperial Fire & Casualty Insurance Company are Doe Defendants in this case, as this is the first time their names have been raised by RF.  Additionally, the civil cover sheet filed by RF with the Notice of Removal claims that the basis of removal is federal question jurisdiction, which is not a basis for removal here, and also fails to indicate the citizenship of the principal parties, as required.

whether the other served defendants consented to removal—they did not—or whether there is

true diversity here.  And the Mitzner Declaration does not even purport to be based on personal

knowledge.[2]  As a result, it is not probative, let alone dispositive.  *See U.S. Leasing v.*

*Montelongo*, 25 P.3d 1277, 1279 (Colo. App. 2001) (rejecting the tendency of an affidavit to

prove a fact when "the affiant is plaintiff's attorney rather than a witness on plaintiff's behalf,

and the affidavit does not affirmatively show that the attorney has any personal knowledge of the

relevant facts"); *see also Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1075 (D. Colo.

2012) (refusing to consider an affidavit submitted by plaintiff to prove personal jurisdiction over

the defendant when the affidavit was not based on the affiant's personal knowledge of the issue).

In addition, the Mitzner Declaration is contradicted by Mr. Mitzner's and RF's own prior

statements.  On July 9, 2018, in a letter to Farmland Partners, Mr. Mitzner wrote:  "We represent

*a group of investors* who have been analyzing publicly available information about your

company . . . *they* have prepared and anticipate publishing an article about the Farmland Partners

Inc. ('FPI') loan program."  *See* July 9 Mitzner Letter, Exhibit A to the Pietari Declaration

(emphasis added).  There are only three ways to reconcile those statements with the Mitzner

Declaration:  (1) others worked with RF as part of the short and distort attack, just not on the

publication of the Seeking Alpha article and related tweets, in which case there is no dispute

concerning the existence of served Does; (2) RF misled Mr. Mitzner about the role of others in

the scheme before one or both of those two statements; or (3) Mr. Mitzner made false

representations to this Court and/or violated his ethical obligations as an attorney.  *See, e.g.* Tex.

---

[2] According to Mr. Mitzner's prior counsel, Mr. Stockham, Mr. Mitzner is a particularly
inappropriate declarant here, because he disclaimed almost any role in RF's actions.  *See* Ex. B
to the Pietari Declaration.  If Mr. Mitzner misled his attorney, Mr. Stockham, and instead does
have personal knowledge of the illegal short and distort scheme, he would be a defendant.

R. Prof. Conduct 8.04(a)(3) ("A lawyer shall not: . . . (3) engage in conduct involving dishonest, fraud, deceit, or misrepresentation"); Tex. R. Prof. Conduct 4.01 ("In the course of representing a client a lawyer shall not knowingly:  (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client.").  Regardless of what the answer is, this case should be remanded to state court, because the Mitzner Declaration cannot satisfy RF's burden and RF offers no other support for removal.

But to the extent the Court seeks greater assurance that remand is warranted, Farmland Partners believes discovery from Mr. Mitzner and/or RF regarding the factual issues underlying the Mitzner Declaration and the citizenship of the other served defendants would be the appropriate course.  *C.f. Assad v. Berry Petroleum Co.*, No. 13-cv-00544-PAB, 2013 U.S. Dist. LEXIS 38560, at *6 (D. Colo. Mar. 20, 2013) ("a district court has the authority to permit discovery in order for a party to prove diversity jurisdiction . . .").  While the parties have met and conferred regarding the scope and timing of such discovery, they have not yet been able to reach agreement on whether or how to proceed.

Because the Mitzner Declaration appears to disclose information communicated by RF to its counsel Mr. Mitzner, RF has waived any claim of attorney-client privilege related to this issue.  *See Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 543 (Colo. 1989) ("by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication").  Mr. Mitzner and RF thus would have no basis to resist discovery relevant to this Court's jurisdiction, which

turns at least in part on whether RF acted alone, as asserted in Mr. Mitzner's affidavit.[3]  And, as

implicitly conceded by RF's Notice of Removal, RF's co-defendants here are entitled to no First

Amendment protections, because RF asserts (via Mr. Mitzner) that they did not co-author the

July 11 article.  Ex. C to Notice of Removal ¶ 3.

Permitting discovery on these issues now will avoid wasting the time and resources of the

Court and the parties in litigating issues specific to federal court if, as Farmland Partners believes

should be the case, this action is ultimately remanded.  *See Maheu v. Patrons Oxford Ins. Co.*,

No. 14-cv-01155-PAB, 2014 U.S. Dist. LEXIS 58565, at *4–5 (D. Colo. Apr. 28, 2014) ("delay

in addressing [subject matter jurisdiction] only compounds the problem if it turns out that,

despite much time and expense having been dedicated to a case, a lack of jurisdiction causes it to

be dismissed or remanded regardless of the stage it has reached").  For example, if any of the

other served defendants are citizens of Colorado or Maryland, there is no diversity, and the case

cannot be heard in federal court.  *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008)

("[I]f a non-diverse party is added to the complaint at any time prior to final judgment, the case

must be remanded to state court.").  Allowing Farmland Partners to conduct discovery as

necessary to support remand will serve all of the relevant parties' interests.

---

[3]  RF's claim of First Amendment protection is misplaced, because such protections do not
extend to the kind of defamatory speech at issue in this case.  Perhaps cognizant of the
limitations of its First Amendment arguments, RF appears to claim special rights as an "SEC
whistleblower"—a status for which RF offers no factual support—but such a whistleblower
would not be entitled to proceed as RF wishes here.  Indeed, as a recent SEC action against
similar perpetrators of short and distort attacks underscores, such individuals should be held
accountable for their actions.  *See* Complaint, *SEC v. Lemelson*, No. 1:18-cv-11926-PBS (D.
Mass. Sept. 12, 2018) (ECF No. 1).

## IV.    CONCLUSION

Farmland Partners respectfully requests that this Court remand this case back to the

Colorado State Court, or, alternatively, permit Farmland Partners to take limited and expedited

discovery on these issues prior to resolving this Motion for Remand.


Dated:  October 5, 2018

Respectfully submitted,


*/s/ Scott F. Llewellyn*

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
sllewellyn@mofo.com
kpietari@mofo.com
*Attorneys for Plaintiff, Farmland Partners Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to D.C.COLO.LCivR 7.1(a), I certify that counsel for Plaintiff Farmland Partners Inc. met and conferred with counsel for Defendant Rota Fortunae regarding this Motion for Remand. While Rota Fortunae opposes remand, the parties are continuing to meet and confer regarding the possible scope and timing of related discovery, though they have not yet been able to reach agreement.

Dated:  October 5, 2018

*/s/ Scott F. Llewellyn*

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
sllewellyn@mofo.com
kpietari@mofo.com
*Attorneys for Plaintiff, Farmland Partners Inc.*

## **CERTIFICATION OF ATTORNEY FOR ENTRY OF APPEARANCE**

Pursuant to D.C.COLO.LAttyR 5(a)(3)(C), I, Scott F. Llewellyn, certify that I am a member in good standing of the bar of this court.


Dated:  October 5, 2018                                  Respectfully submitted,


                                                         */s/ Scott F. Llewellyn*
                                                         Scott F. Llewellyn
                                                         Morrison & Foerster LLP
                                                         4200 Republic Plaza
                                                         370 Seventeenth Street
                                                         Denver, Colorado  80202-5638
                                                         Telephone:  303.592.1500
                                                         Facsimile:  303.592.1510
                                                         sllewellyn@mofo.com
                                                         *Attorney for Plaintiff, Farmland Partners Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October, 2018, the foregoing motion for remand, the related declarations, and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jchanin@fostergraham.com,
kroush@fostergraham.com,
mbrooks@fostergraham.com

*Counsel for Defendant, Rota Fortunae*


*/s/ Scott F. Llewellyn*
Scott F. Llewellyn