**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CASE NO. 1:18-cv-02351-KLM

FARMLAND PARTNERS, INC.,

        Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME IS UNKNOWN), JOHN/JANE
DOES 2-10 (WHOSE TRUE NAMES ARE UNKNOWN),

        Defendants.

---

**DEFENDANT ROTA FORTUNAE'S MOTION TO DISMISS COMPLAINT**

---

Defendant "Rota Fortunae" (a pseudonym[1]) moves to dismiss Plaintiff Farmland

Partners, Inc's ("FPI") Complaint under Fed. R. Civ P. 12(b)(2), (3) and (6), as follows.

## INTRODUCTION

This defamation action is a SLAPP suit filed solely as retaliation for Rota Fortunae's (an

anonymous individual SEC-whistleblower) exercise of his First Amendment rights.  Rota

Fortunae wrote the at-issue article critical of FPI's business operations and value for the investor

website *www.seekingalpha.*com, on July 11, 2018 (the "Article"). In the Article, Rota Fortunae

(1) meticulously disclosed all the facts upon which he based his analysis and conclusions, (2)

disclosed that he had a short position on FPI's (publicly traded) stock, and (3) reiterated

---

[1] Under the First Amendment of the US Constitution, Defendant has the right to anonymity until
the Court determines that Plaintiff has demonstrated that its claims and need to know the identity
of Defendant outweigh Defendant's right to anonymity, which has not occurred in this case.  *See,
e.g.*, *Dendrite Intern., Inc. v. Doe No. 3*, 342 N.J. Super. 134, 157-58 (N.J. Super. App. Div.
2001).

repeatedly that the article's conclusions were "the opinions of the author" and that readers should do their own research and draw their own conclusions. Conversely, FPI's Complaint is long on bluster and hyperbole and alleges a conspiracy theory that Rota Fortunae intentionally manipulated securities markets—an absurd allegation given that Rota Fortunae provided its analysis to the SEC whistleblower hotline before Seeking Alpha published the Article. The truth is FPI's Complaint fails to identify one false, defamatory fact in the Article. FPI simply cannot dispute that Rota Fortunae's Article is a well-supported opinion that cannot form the basis of a defamation claim.

FPI's Complaint should be dismissed in its entirety for numerous reasons. First, this Court lacks personal jurisdiction over Rota Fortunae, who is an individual residing in Texas with no minimum contacts with the State of Colorado. Second, this Court is not the proper venue for this lawsuit. Third, FPI has failed to state a claim because the at-issue statements forming the basis of FPI's claims constitute protected opinion as a matter of law, and otherwise fail to state a claim for which relief can be granted.

## BACKGROUND

FPI is a publicly-traded farmland REIT (Real Estate Investment Trust) that acquires and leases farmland throughout the United States and also originates mortgage loans to farmers, including its own tenants. (*See* Compl. ¶ 6). FPI's stock is traded on the New York Stock Exchange. (*Id.* at ¶ 7). Rota Fortunae is the pseudonymous name of an individual who resides in Texas. (*See* **Exhibit A** (redacted declaration of Rota Fortunae) at ¶¶ 1-6).[2] After two months of

---

[2] Courts may rely on affidavits when resolving a motion to dismiss for lack of personal jurisdiction. *Ball Metal Beverage Container Corp v. CML & J, LLC*, No. 1:13-CV-00695-REB,

researching and evaluating public documents and information about FPI, Rota Fortunae wrote the Article published on *seekingalpha.com* on July 11, 2018 (*Id.* at ¶ 6 and Exhibit 1 (Article).[3] Seeking Alpha is a financial and investor media outlet headquartered in New York. (*Id.*). Based on his research, Rota Fortunae took a short position on FPI's stock. (*Id.* ¶ 9). In the Article, Rota Fortunae disclosed (and provided live links to) the dozens of public documents and records that he relied on in reaching his conclusion that FPI's stock was overpriced and its accounting practices were questionable. (*See generally* Article). Throughout, Rota Fortunae reiterated that the conclusions in the Article were "the opinions of the author," and disclosed that the author had a short position on FPI's publicly traded stock. (*See id.*).

Thirteen days after Seeking Alpha published the Article, FPI filed the instant lawsuit in Colorado state court (Rota Fortunae removed the suit to this Court), bringing claims of defamation, disparagement, intentional interference with prospective business relations (IIPBR), unjust enrichment, violation of the Colorado Consumer Protection Act (CCPA), and civil conspiracy against Rota Fortunae and unknown "John/Jane Does 2-10." (Compl. ¶¶ 49-100). This lawsuit is meritless (for the reasons argued below) and FPI filed it simply as retaliation for Rota Fortunae's Article. FPI's CEO Paul Pittman has repeatedly expressed animosity to those who express critical opinions about FPI and has specifically targeted short sellers saying they are

---

2013 WL 3270614, at *2 (D. Colo. June 27, 2013) ("I have discretion to resolve the motion on affidavits and other written material).

[3] "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

going to get "killed" and "I will be cheering the day it happens." When the opposite happened—

and those with short positions did well—Pittman reacted by filing the instant SLAPP lawsuit.

## ARGUMENT

### I.     This Court lacks personal jurisdiction over Rota Fortunae

FPI cannot establish this Court has personal jurisdiction over Rota Fortunae. At this

stage, FPI bears the burden of establishing, via *prima facie* showing, that the Court has personal

jurisdiction over Rota Fortunae. "To obtain personal jurisdiction over a nonresident defendant in

a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum

state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

Amendment." *Rocky Mountain Chipseal, LLC v. Sherman Cty., Kan.*, 841 F. Supp. 2d 1224,

1227 (D. Colo. 2012). Colorado's long arm statute grants personal jurisdiction to the fullest

extent permitted under federal law, and the analysis "collapses into a single inquiry: whether

exercising personal jurisdiction over [Rota Fortunae] comports with due process." *See id.*

"To exercise jurisdiction in harmony with due process, defendants must have 'minimum

contacts' with the forum state, such that having to defend a lawsuit there would not 'offend

traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235,

1239 (10th Cir. 2011). "Such contacts may give rise to personal jurisdiction over a non-resident

defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of

particular forum-related activities." *Id.* General jurisdiction is based on an out-of-state

defendant's continuous and systematic" contacts with the forum state and does not require that

the claim be related to those contacts. Specific jurisdiction, on the other hand, is present if the

defendant has "purposefully directed" his activities at Colorado or its residents when he has (1)

taken intentional action, (2) the action was "expressly aimed" at Colorado, and (3) the action was

taken with the knowledge that "the brunt of th[e] injury" would be felt in Colorado. *Advanced Career Techs., Inc. v. Does*, No. 13-CV-0304-WJM-KLM, 2015 WL 328639, at *2 (D. Colo. Jan. 23, 2015) (hereinafter "*ACT*").

In the internet context, the Tenth Circuit focuses on whether the website or internet user "*intentionally direct[ed]* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Shrader*, 633 F.3d at 1240 (emphasis in original). This Court recently explained that in order to find personal jurisdiction in an internet defamation case such as this,

> It is not enough that the plaintiff is a resident of the forum and suffered harm there. Simply posting defamatory statements on a website will not, standing alone, form a basis for personal jurisdiction against the poster in any state where the post may be read. Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." In short, "*the forum state itself must be the focal point of the tort*."

*ACT* at * 2 (*citing Shrader*, 633 F.3d at 1241, 1244) (emphasis in original). Here, the Court lacks personal jurisdiction over Rota Fortunae because he neither "deliberately directed" his Seeking Alpha Article towards an audience in Colorado, nor did he intend the alleged harm to FPI occur "primarily or particularly" in Colorado. *See id.*

### A.  FPI cannot establish this Court has specific jurisdiction over Rota Fortunae

To demonstrate that specific jurisdiction is proper, FPI must prove that Rota Fortunae took an intentional action that was expressly aimed at Colorado with knowledge that the brunt of the injury would be felt in Colorado. *See id.* In the internet context, "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *See Shrader*, 633 F.3d at 1244. "This principle has particular salience for defamation cases: Posting on the internet from outside the forum state an allegedly

defamatory statement about a forum resident does not create the type of substantial connection between the poster and the forum state necessary to confer specific personal jurisdiction." *Id.*

FPI cannot meet this standard because Colorado was not "the focal point" of Rota Fortunae's Article, "either in terms of its audience or its content." *See id.* Seeking Alpha, where the Article was published, is a New York-headquartered media outlet that "targets a trading community," "with no particular ties" to Colorado. *See id.* at 1245; *see also ACT*, 2014 WL 328639 at * 4 (finding no personal jurisdiction over internet poster because the allegedly defamatory blog "highlights the geographically-neutral content and geographically-neutral nature of the forum," and the defendant "targeted the blog and his messages at a nation-wide or world-wide audience with no inherent interest in or tie to Colorado"). Likewise, Rota Fortunae's Article is about FPI's business and stock price, the former of which occurs nationwide and the latter of which is traded in New York. Thus, the alleged defamatory action—publishing the Article—and the alleged harm—the drop in stock value—both occurred in New York, to the extent such events occur in a physical location.

FPI, by its own account, has its headquarters in Colorado yet does business "throughout North America." (*See* Compl. ¶ 6). FPI's Colorado domicile is not enough to confer personal jurisdiction over Rota Fortunae. *See ACT*, 2014 WL 328639 at *4 (no personal jurisdiction where plaintiff's business "does not appear to have any particular connection to Colorado other than being its principal place of business" and plaintiff described itself as a "nationwide" company). Further, a "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state." *Shrader,* 633 F.3d at 1241.

*Shrader* is directly on point here. There, the Tenth Circuit found there was no specific jurisdiction in Oklahoma over defendant who posted an allegedly defamatory email about Oklahoma resident on a trade-focused internet blog. *Id.* It explained,

> [W]e have already seen that the forum where [defendant] posted the email targeted a trading community with no particular tie to Oklahoma. As for content, the email was about [plaintiff's] work. That work was marketed and sold worldwide through the internet . . . and there is nothing about the nature of the work inherently linking it to Oklahoma—as there might be had [plaintiff] been located in a trading center like New York or Chicago and relied on that tie in producing or marketing his materials. He produced his materials in Oklahoma because he happened to live there; his professional reputation in the trading community was not tied to Oklahoma[.] To be sure, he suffered harm in Oklahoma in the sense that he incurred harm and resided in Oklahoma when he did so. But, as noted above, plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state.

*Shrader,* 633 F.3d at 1241. *See also ACT*, 2014 WL 328639 at * 4 (finding no personal jurisdiction over internet poster because to find minimum contacts, the defendant must have targeted "*Colorado itself,*" not a "known forum resident"). Like the defendants in *Shrader* and *ACT*, Rota Fortunae did not deliberately target "Colorado itself" by posting its Article about FPI's national business and stock price on Seeking Alpha. Without such targeting, there can be no specific jurisdiction over Rota Fortunae in Colorado.

### B.  FPI cannot establish this Court has general jurisdiction of Rota Fortunae

This Court also lacks general jurisdiction over Rota Fortunae because Rota Fortunae lacks the type of systemic and continuing contacts with Colorado that support the exercise of general jurisdiction in this forum. *KEBD Enterprises, LLC v. Hider*, No. 08-CV-02665-REB-CBS, 2009 WL 1504748, at *3 (D. Colo. May 26, 2009). As Rota Fortunae's affidavit establishes, he does not reside in Colorado, does not vote in Colorado, does not have a driver's license issued by Colorado, does not own property in Colorado, and conducts no business within

Colorado or even with Colorado residents. (*See* Ex. 1 ¶¶ 10-15); *Cf. Schneider v. Cate,* 405 F. Supp. 2d 1254, 1259–60 (D. Colo. 2005) (no general jurisdiction as to defendant who, *inter alia,* owned a second home in Colorado as well as part of several Colorado corporations). Likewise, Rota Fortunae's web activity is devoted to investing, publishing articles, and Twitter and is thus devoid of any evidence of "substantial sales "and the "type of commercial contacts that approximate a physical presence in the state" necessary to confer general jurisdiction in the internet context.  *Shrader,* 633 F.3d at 1243. There is not general jurisdiction over Rota Fortunae in this forum.

## II.      The Complaint should be dismissed for improper venue

Under 28 U.S.C.§ 1406(a), "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The federal venue statute provides that:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "For purposes of this section, the court need not determine the "best" venue but only whether significant events or omissions material to the plaintiff's claim occurred in the district in question, even if other material events occurred elsewhere." *Ball Metal Beverage Container Corp v. CML & J, LLC*, No. 1:13-CV-00695-REB, 2013 WL 3270614, at *2 (D. Colo. June 27, 2013) (internal citation omitted). The decision to either dismiss or transfer the case under section 1406(a) is committed to the sound discretion of the court. *Id.*

Here, venue in this forum is not proper under any of the three possibilities in section 1391. First, Rota Fortunae does not reside in Colorado and the other "Doe" Defendants are fictional. Second, as argued in greater detail above, none of the "events or omissions" giving rise to FPI's claims occurred in Colorado. The basis of FPI's claim is Rota Fortunae's Article. Rota Fortunae wrote the Article in Texas, where he lives, and published it on Seeking Alpha, which is headquartered in New York and is accessible anywhere on the internet. Third, again as argued in greater detail above, this court lacks personal jurisdiction of Rota Fortunae. Thus, venue is improper, and the Court should dismiss the case.

### III.     FPI has failed to state a claim upon which relief can be granted

To survive a motion to dismiss, a plaintiff must plead sufficient allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Broker's Choice of America, Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104-5 (10th Cir. 2017) (applying motion to dismiss standard to a defamation claim). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion to dismiss, "all well-pleaded *facts*, as distinguished from conclusory allegations, must be taken as true." *Broker's Choice,* 861 F.3d at 1105. "As applied here, a defamation complaint cannot couch allegations of falsity in vague, conclusory terms." *Id. See also, Pan Am Sys., Inc. v. Hardenbergh,* 871 F. Supp. 2d 6, 16 (D. Me. 2012) (holding mere allegations that statements are false is insufficient under *Iqbal* and *Twombly*).

### A.     FPI's defamation claim must be dismissed

FPI's claim for defamation must be dismissed for failure to state a claim pursuant Fed. R. Civ. P. 12(b)(6) for three distinct reasons. First, as a matter of law, the statements at issue in the

Complaint all constitute protected opinion under the First Amendment of the U.S. Constitution and under article II, section 10 of the Colorado Constitution. Second, the Complaint fails to make plausible factual allegations of "actual malice." Third, the Complaint fails to make plausible factual allegations of material falsity.

### a.   Constitutional protections applicable to defamation claims

Beginning with the landmark decision in *New York Times v. Sullivan*, the Supreme Court has held that the First Amendment guarantee of freedom of expression limits the scope of state defamation laws. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990); *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r Servs.,* 175 F.3d 848, 853 (10th Cir. 1999). Thus, for cases involving public figures or statements of public concern, the plaintiff must prove by clear and convincing evidence that the defendant acted with "actual malice," defined in this context as knowledge of or reckless disregard for the truth or falsity of the challenged statement. *See id; Broker's Choice,* 861 F.3d at 1106. Likewise, in cases involving statements of public concern, a plaintiff must prove by clear and convincing evidence that the challenged statement is materially false. *Id.*

An important constitutional protection concerns statements of opinion. In *Milkovich*, the Supreme Court concluded that "a statement on matters of public concern must be provable as false before there can be liability under state defamation law." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20. Thus, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 20. The Court further observed that "rhetorical hyperbole" is protected by the doctrine requiring that allegedly defamatory statements "reasonably be interpreted as stating actual facts."

*Id.; see also TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1184-85 (10th Cir. 2007);

*Jefferson Cty Sch. Dist.,* 175 F.3d at 852.

      *Milkovich* distinguishes between what prior case law and scholars have termed

"evaluative opinions" and "deductive opinions." *Jefferson Cty Sch. Dist.,* 175 F.3d at 853.  A

deductive opinion – one that indicates explicitly or implicitly that it is based on the existence of

an undisclosed factual predicate – can support a cause of action in defamation.  On the other

hand, an evaluative opinion – one formed on the basis of an individual's intrinsic perceptions

which are not provably true or false – is not defamatory.  *Id.*; *see also Preeson v. Parkview Med.*

*Ctr, Inc.,* 2017 WL 1197298 (D. Colo. March 30, 2017); *Wedbush Morgan Sec., Inc. v.*

*Kirkpatrick Pettis Capital Mgmt, Inc.,* 2007 WL 1097872 (D. Colo. April 9, 2007).

      Colorado has adopted similar protections. *TMJ Implants,* 498 F.3d at 1184-87. "A

defamatory communication may consist of a statement in the form of an opinion, but a statement

of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the

basis for the opinion." *Keohane v. Stewart,* 882 P.2d 1293, 1298 (Colo. 1994). In its analysis, a

reviewing court uses a two-part test. The first inquiry is whether the statement is sufficiently

factual to be susceptible of being proved true or false.  *Id.* at 1299. The second inquiry is whether

reasonable people would conclude that the assertion is one of fact, taking into account three

factors: (1) how the assertion is phrased; (2) the context of the entire statement, and (3) the

circumstances surrounding the statement, including the medium through which the information is

disseminated and the audience to whom it is directed.  *Id.* Thus, a statement that is "replete with

speculative" language, stated in a context in which it was obvious that the speaker was stating

her opinion, is not that which a reasonable reader would presume to be a factual declaration.

*Jefferson County Sch. Dist.*, 175 F.3d at 853.

In general, if the factual premise underlying an opinion is fully disclosed, the statement will be protected.  *Id. See also Bucher v. Roberts,* 595 P.2d 239, 241 (Colo. 1979) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is"); *NBC Subsidiary v. Living Will Ctr,* 879 P.2d 6, 12 (Colo. 1994) ("Thus, his opinion was based on facts disclosed to the viewer. There is no hint that it was based on undisclosed information. Viewers were in a position to evaluate Marsh's views, and were free to form a judgment about LWC's product that differed from his") (*citing to Phantom Touring Inc. v. Affiliated Publ'ns,* 953 F.2d 724, 731 (1st Cir)). "Even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts."  *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (internal quotation omitted). Thus, a statement that discloses the facts on which it is based and makes clear that the conclusions drawn from those facts are simply an interpretation of them is immune from defamation liability. *Piccone v. Bartels,* 785 F.3d 766, 771 (1st Cir. 2015).  *See also Cummins v. Suntrust Capital Markets, Inc.,* 649 F. Supp. 2d 224, 234-35 (S.D.N.Y. 2009) (protected expression of opinion where defendant issued report accusing executives of stock option abuses and stating that "[a]t the end of the day, shareholders will have to decide whether this management team and its board of directors have fulfilled their fiduciary duty. We are currently hard pressed to reach such a conclusion").

In some cases, courts have concluded that a statement that is too indefinite or vague to be proven true or false is not actionable.  *Jefferson Cty Sch. Dist.*, 175 F.3d at 853-4. In other instances, courts have concluded that, due to subject matter involved, there is simply no

objective evidence that could prove that an allegedly defamatory statement was false. *Id.* Lastly, in a case involving a public figure, if several statements are true, or substantially true, and there are no undisclosed material facts, no action can be brought based on an allegedly defamatory implication drawn from that information. *Pietrafeso v. D.P.I., Inc.*, 757 P.2d 1113, 1116 (Colo. App. 1988); *see also TMJ Implants,* 498 F.3d at 1196-97.

Whether a statement is defamatory or a protected opinion is a question of law to be determined by the Court. *Milkovich,* 497 U.S. at 17. Where, as here, several distinct statements are challenged, the Court analyzes each independently. *Keohane*, 882 P2d at 1300.

### b.  FPI is a public figure and the Article involves statements of public concern

As an initial matter, because FPI is a public company regulated by the U.S. Securities and Exchange Commission and traded on the New York Stock Exchange, there can be no dispute that FPI is a public figure, at least as to statements pertaining to its business, value, and stock price. *MiMedx*, No. 17CV07568, 2018 WL 847014 *6 (S.D.N.Y. January 12, 2018) ("When the plaintiff is a public figure, such as a public company, the plaintiff must demonstrate that the defendant acted with actual malice…."); *Reliance Ins. Co. v. Barron's,* 442 F. Supp. 1341, 1346 (S.D.N.Y. 1977) (public company found to be a public figure).  Likewise, articles concerning publicly-traded companies affect the financial markets and "are plainly of public concern." *Treppel v. Biovail Corp.,* 233 F.R.D. 363, 375 (S.D.N.Y. 2006).  *See also MiMedx*, 2018 WL 847014, at *7 (collecting cases); *Aurelius v. BofI Fed. Bank,* 2016 WL 8925145 (C.D. Cal. 2016) (Anonymous short-seller's posts on Seeking Alpha involved matters of public concern).  *Cf. Fotochrome v. New York Herald Tribune, Inc.,* 305 N.Y.S.2d 168, 170 (N.Y. Sup. Ct. 1969) (defamation law cannot be used to deter would-be critics from voicing their criticism as there is a need for information concerning the stock market in general and the successes, failures, or

manipulations of specific corporations in which thousands of people have invested their personal fortunes).

In fact, Courts acknowledge "that the public interest is well served by encouraging the free press to investigate and comment on business and corporate affairs in the same manner as it would report on other public issues. *Barron's*, 442 F. Supp. at 1349. The court for the Southern District of New York continued with explanation:

> Investigative reporting is not limited to the impeachment of presidents or the exposure of licentious congressmen. The public interest is served equally when reporters find a 'Deep Throat' in the executive suite, and when an accounting professor spotlights for the financial press, in common language, business dealings he regards as improper, improvident or unfair to investors. Whether his conclusions are right is to be resolved generally in the free market place of ideas.

*Barron's*, 442 F. Supp. at 1348. Thus, as a public figure, FPI must meet heightened pleading standards and has failed to do so, as argued below.

### c.   The at-issue statements here constitute protected opinion

Here, when stripped of its diatribes and conspiracy theories, FPI's Complaint alleges that the Article contained six false and defamatory statements, set forth in Paragraphs 21 to 26, as the basis for all of its state-law tort claims.[4]  Each of those challenged statements will be addressed in turn below, but it is also important to understand what the complaint did not allege. The complaint did not allege that any of the numerous public documents and records included in the Article are somehow false, or that any specific underlying fact is materially false.  Plaintiff

---

[4] The Complaint also alleges in conclusory fashion that Defendant posted false and misleading statements on Twitter on July 11, 12, and 16. (Compl. ¶¶ 38, 39, and 40).  The Complaint, however, does not specify what specific statement(s) were allegedly false and does not attach the Twitter posts.

complains mightily about the *conclusions* drawn from the disclosed facts and records, but that cannot form the basis of a defamation claim.

Initially, it is important to read the challenged statements in the context of the entire Article.  When read as whole, the Article is clearly the very definition of "evaluative opinion." It is the classic research report in which the author collects, reviews, and evaluates public records, documents, and information, and then presents his or her opinions and conclusions based on his perceptions of the evidence presented in the report. Each reader is left to decide for themselves if they agree with those conclusions, which in this case Rota Fortunae explicitly invited the readers to do.

Throughout the Article, the author follows a consistent pattern where he sets forth items of public information or a public record, and then draws his conclusions based on that evidence. For example, in the Article's opening bullets, Rota Fortunae expresses an opinion ("We believe" and "could be made up"), and then lists three, true facts that undergird that opinion.  Then before the introduction of the article even begins, Rota Fortunae disclaims, in bold italic, that "This report represents the opinions of the author.  Investors should do their own due diligence and come to their own conclusions" and specifically directs readers to an even lengthier disclosure at the end of Article before reading the Article. The author also properly disclosed its short position on Farmland Partner's publicly traded stock.

This pattern is repeated throughout the Article. For example, after discussing two of the loans, the author summarizes two important takeaways: "The partial pay-off of Loan #2 was funded by FPI's acquisition of the property collateralizing the loan. We believe this means the loan lacked economic substance," and, "because Neibur was already in default when FPI lent him the additional $61,800 on the same day he owed $61,750 in rent, we think this transaction

artificially increased revenues…." (Art. at 17). Indeed, the author even goes to the extent of excerpting the actual public documents and records, including them in the Article for the reader to review, and providing live links so the readers can find and review the documents and records for themselves.

Further, the Article is replete with conditional phrasing and speculative language, making it crystal clear to the intended audience of investors and market analysts that it represents the author's "intrinsic perceptions" of the public documents and information presented in the report. A small selection of examples include:

• "Our research leads us to believe…."  (*Id.* at 2)

• "We believe these loans lack economic substance because whenever they come due, FPI happens to acquire the property collateralizing the loan…." (*Id.* at 3)

• "Our opinion that FPI appears to be playing accounting games is further bolstered by a Colorado UCC filing…." (*Id.* at 3)

• "If investors lose faith, FPI may quickly find its endless stream of capital has run dry. With only $19 million in cash, we think FPI will not only be forced to cut its dividend but also faces a significant risk of insolvency."  (*Id.* at 4)

• "If our thesis is correct…." (*Id.* at 6)

• "We believe these loans lack economic substance and have been used to artificially increase revenues."  (*Id.* at 10)

• "While we cannot be sure that the acquisition paid off the loan, an inconsistency in FPI's SEC disclosure bolsters our opinion that …." (*Id.* at 18)

• "If the acquisition paid off the loan, we think this would qualify as a loan that lacks economic substance."  (*Id.* at 19)

• "We think there is a significant probability that part of the $5.25 million was used to pay PHS Holding's annual rent payment."  (*Id.* at 21)

• "But the most important detail of Loan #8 is the fact that it was settled through the acquisition of a property, which again introduces the risk that the loan lacked economic substance."  (*Id.* at 26)

• "Whether or not Jesse Hough used the money (directly or indirectly) to pay rent is for each investor to decide, but we think, taken together, all the evidence suggests a high probability that he did." (*Id.* at 28)

• "Our opinion that FPI appears to be playing accounting games is further bolstered by what we consider to be another major red flag." (*Id.* at 29)

• "Our opinion that Pittman pledged his shares is further bolstered by the fact that…." (*Id.* at 31).

Additionally, the medium used and the intended audience further support the legal conclusion that the Article constitutes protected opinion. Seeking Alpha is an internet media outlet that publishes research reports and analyses of interest to sophisticated investors and financial analysts. This discerning audience of interested readers knows full well what an evaluative opinion looks like and is more than equipped to evaluate the evidence presented in a report and decide for themselves if they agree with the author's perceptions and conclusions. In fact, Seeking Alpha's tagline is "Read. Decide. Invest."  This clearly gives its readers the impression that the website is designed to give people a place to express their opinion.

    Statement regarding "substantial risk of insolvency." Turning to the specific statements, FPI first claims that the Article falsely asserted that FPI "faces a substantial risk of insolvency." (Compl. ¶ 21). The Complaint does *not* contest any of the evidence presented in the report that undergirds this opinion, but rather complains that the Article did not refer to the "well-accepted concepts" of insolvency.

First, the Complaint takes this statement of opinion out of context by truncating the qualifying statement that proceeds it. The complete statement is clearly expressed as a conditional opinion – "If investors lose faith, FPI may quickly find its endless stream of capital has run dry.  With only $19 million in cash, we think FPI will not only be forced to cut its dividend but also faces a significant risk of insolvency." (Art. at 4). Even the title of the article

states that the facts presented "introduce" a risk of insolvency versus exclaiming it is some sort of imminent guarantee. Indeed, predictions and speculations about the potential future consequences of events and conduct are intrinsically unsuited as a foundation for defamation.

Second, Rota Fortunae plainly laid out all of the public information and records on which he bases his opinion regarding the potential future risk; there is no hint of some undisclosed, defamatory fact on which his opinion is based. Third, the phrase "significant risk" is inherently subjective and not susceptible to being proved true or false. Both words are subject to a myriad of definitions and subjective perceptions. What may be a significant risk to one person based on his subjective assessment of certain factors, may not be significant, or a risk at all, to another person based on her subjective assessment of different factors. Nor is there any requirement that the author use "well-accepted concepts" of insolvency in expressing his opinions. In fact, that there are numerous definitions and concepts concerning insolvency suggests that this statement is also inherently subjective and not provable as true or false.

Statement regarding artificially increasing revenues. Next, the Complaint alleges that the Article falsely asserted that FPI "is artificially increasing revenues by loans to related-party tenants." (Compl. ¶ 23). It is unclear whether FPI claims the word "artificially" or the phrase "related-party" is false. In either case, the statement is protected opinion. Again, FPI takes this statement out of context. As substantially detailed above, this statement was always accompanied by conditional language and words replete with opinion and speculation, such as "we believe," "our research has lead us to believe," "we think," and "If the acquisition paid off the loan, we think that would qualify as a loan that lacks economic substance." The author also fully disclosed the public information and records on which he was basing his conclusion and invited the reader

to draw her own conclusions based on that evidence. Again, there is no hint that the author possesses some undisclosed, defamatory facts on which he based his opinions.

Moreover, the word "artificially" in this context is inherently subjective and not capable of being proved true or false. Rota Fortunae disclosed the basis for his conclusion that lending money to tenants—particularly to those that have already defaulted on an FPI mortgage—concurrent with signing a new lease is a conduct that, in his opinion, "artificially" increased revenues. Whether that conduct was artificial or not is a matter of subjective judgment based on a myriad of factors.

Regarding the phrase "related-party," the Article specifically disclosed that it was not using the SEC definition of related-party, but rather a belief that the relevant parties met a stricter definition set out by audit rules and that, more importantly, investors would find the disclosure of the relationships material. (Art. at 4-5). The Article then laid out the facts on which the author concluded that 70% of the loan volume went to two related-parties. (*Id.*). This is not susceptible of being proven true or false – the author defined what he meant by related party and then concluded that two of the borrowers met this definition.

Statement regarding proper disclosure of Loan Program. The Complaint next claims that the Article falsely asserted that FPI "failed to properly disclose the financial impact of its Loan Program." (Compl. ¶ 24). It is difficult to respond to this allegation because the Article did not make such a statement. The Article did, however, assert that FPI failed to disclose numerous matters that would be of interest to investors, including the names of the borrowers, the uses of the loan funds, that 70% of the loan volume went to two related-party tenants, that FPI was acquiring properties that secured mortgages it had made to tenants and that the Defendant believes FPI misstated its financials when it reported certain transactions as loans instead of

acquisitions—a belief that we now know was well supported by the fact that FPI had to provide "additional information" in its public rebuttal to explain why it did so. (*See* Art.).

Again, the Article disclosed all of the facts undergirding this conclusion. The Article plainly explains: "So, if the loans are to be settled by property acquisitions, they need to be disclosed as such.  Furthermore, we think a reasonable investor would want to know if FPI was acquiring properties it also lent against, as it may signal an underperforming property or tenant." (*Id.* at 28). Again, it is inherently subjective what constitutes "proper" disclosure in this circumstance and what constitutes a "financial impact" on the Loan Program.  Given the numerous factors and interpretations that underlay these words, they cannot be considered a verifiable statement of fact.  In the end, "proper disclosure" comes down to the subject of materiality, which in and of itself is subject to opinion.

Statement regarding departure of directors and auditor. Next, the Complaint alleges that the Article falsely claimed that four directors had the left the company, and the auditor had been dismissed "due to disputes with the company, based on issues raised in the posting." (Compl. ¶ 25). Again, the Article said no such thing; at most, it implied that the departures and the loan program were related based on the timing of events, stating "We do not appear to be the only concerned party." (Art. at 32).

As with the above statements, all of the facts underlying this implication are fully disclosed. The author includes a chart listing each departure, even including the publicly-disclosed reason for each departure and provides links to the SEC documents that state the departures were not due to disputes with FPI. The author then created a chronological chart plotting the departures and the related-party transactions. (*Id.*). There is no hint of additional undisclosed defamatory factual information on which the author's speculation that the departures

were somehow related to the loan program is based. This is classic evaluative opinion – Plaintiff may complain about the conclusions and implications drawn by the author from the disclosed facts, but the facts themselves are true.  Therefore, the implication that the departures show "concern" relating to the loan program is protected opinion.

Statement that CEO pledged some shares. The Complaint next alleges that the Article falsely asserted that Paul Pittman "pledged some of his shares." (Compl. ¶ 26). Again, the Article does not make that statement but rather provides the author's opinion that he thinks Pittman did pledge shares. This section of the Article is titled "'Pittman Hough' Get A Loan Against FPI Shares." (Art. at 29). That statement is based on 2017 Colorado UCC filing pledging FPI shares as collateral which lists "Pittman Hough" as an "Optional Filer Reference."  The UCC itself is included in the Article. (*Id.* at 30). The author then states his opinion: "Being that Pittman-Hough Farms disclosed in its 2016 Form 4 that it distributed its shares to its members, we think the UCC filing is referring to Pittman and Hough personally." (*Id.* at 29). The author continues: "Our opinion that Pittman pledged his shares is further bolstered by the fact that on July 19th, 2017 he converted 531,827 operating partnership shares (OP units) to common shares." (*Id.* at 31). As with the above statements, the Article fully disclosed the basis of the author's conclusions and opinions. There is no hint that the author's opinion is based on an undisclosed, defamatory fact. As with the entire Article, this section is replete with speculative and conditional language.

Statement regarding funds from operations. The last statement challenged in the Complaint claims that the Article falsely asserted that FPI "ignores very real expenses when it promotes adjusted funds from operations (AFFO). Excluded expenses include the dividend of FPI's preferred "B" shares." (Compl. ¶ 22). To be technically accurate, however, the Article should have referenced "funds from operations" (FFO) rather than "adjusted" funds from

operations. FPI uses this minor mistake as its only provable fact in the Complaint but fails to

acknowledge that the chart immediately below this language correctly represents Adjusted Funds

From Operations and therefore proves that the reference does not indicate a reckless disregard

for the truth. Furthermore, this minor mistake in no way affected the substance of the opinion

being expressed by Rota Fortunae in this section of the Article – which is that FPI is overly-

reliant on raising additional capital and that "AFFO has drifted miles away from free cash

flow[.]" (Art. at 5). Indeed, FPI does not even claim that the aforementioned chart presented in

this section is incorrect.  Because this is not a material falsity and it does not impact the

substance and gist of the Article, it also cannot form the basis for a defamation claim. Finally, the

author had already addressed the error in the comment section of the article on July 14, well

before FPI pointed it out in its public rebuttal and Complaint. (Ex. A at Ex. 2).

In a defamation action, the plaintiff must show the statement is not only false, but

"materially false." *Broker's Choice,* 861 F.3d at 1107. "The law of defamation overlooks

inaccuracies and focuses on substantial truth." *Id.* "Minor inaccuracies do not amount to falsity

so long as the substance, the gist, the sting, of the libelous charge is justified." *Id.* "A statement is

not considered false unless it would have produced a different effect on the mind of the reader

from that which the pleaded truth would have produced." *Id.* To be material, an alleged

falsehood must be "likely to cause reasonable people to think significantly less favorably about

the plaintiff than they would if they knew the truth." *Id.*

The alleged falsehood here is the use of the word "adjusted" rather than simply referring

to "funds from operations." This minor inaccuracy in no way impacts the substance of the

opinions and conclusions being expressed in the Article, and it is impossible to imagine that the

exclusion of the word "adjusted" from this one sentence in the Article would change the overall

effect on the mind of the reader.  Given the length of the Article and the substantial evidence presented, it seems highly unlikely that the use of the word adjusted in one sentence in an introductory section of the Article would "cause reasonable people to think significantly less favorably about the plaintiff."

Therefore, as a matter of law, all six of the challenged statements are protected opinion and fail to support a claim for defamation.

### d.  FPI fails to plausibly allege actual malice

Under the pleading standards of *Iqbal* and *Twombly*, to survive a motion to dismiss, "a public figure plaintiff such as FPI must plead plausible grounds to infer actual malice by alleging "enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro v. Conde Nast,* 807 F.3d 541, 546 (2d Cir. 2015); *see also Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 58 (1st Cir. 2012) (To allege a plausible claim of actual malice, the complaint must "lay out enough facts from which malice might reasonably be inferred"); *Adelson v. Harris,* 973 F. Supp. 2d 467, 503 (S.D.N.Y. 2013) ("The pleading standards under *Iqbal* and *Twombly* require courts to dismiss defamation actions where the allegations in the complaint do not plausibly suggest actual malice"); *MiMedx*, 2018 WL 847014 at *6. Conclusory allegations reciting the actual malice standard – knowledge of or reckless disregard for the truth or falsity of the statement -- are not sufficient.

It is important to remember that the actual malice standard in this context is different from the concept of malice under common law.  In the defamation context, the actual malice standard does not implicate the defendant's motive or attitude towards the plaintiff.  "Even when a speaker is motivated by hatred or ill-will his expression is protected by the First Amendment." *Jefferson County Sch. Dist.,* 175 F.3d at 857-58.  "Because actual malice is a measure of the

defendant's attitude towards the truth, not his attitude towards the plaintiff, allegations of a defendant's bias or hostility fail plausibly to establish actual malice." *MiMedx,* 2018 WL 847014 at *8.  To show reckless conduct, let alone knowing falsehood, "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968).

Here, the Complaint is completely devoid of any factual allegations that would permit the inference that the author acted with actual malice. There is not a single allegation in the Complaint that would permit the conclusion that the Defendant entertained serious doubts to the truth of any factual statement in the Article. Indeed, the Complaint pleads actual malice "on information and belief." (Compl. ¶ 51). Rather, the Complaint attempts to conflate the actual malice standard with common-law malice and goes to great lengths to plead Rota Fortunae's hostility and bad motive towards FPI. Of course, those allegations of personal hostility towards FPI miss the mark and are simply irrelevant to this motion to dismiss. Therefore, Plaintiff's defamation claim should be dismissed for failure to plausibly allege actual malice.

### e.   The Complaint fails to plausibly alleged material falsity

Lastly, under *Iqbal* and *Twombly,* a defamation complaint "cannot couch allegations of falsity in vague, conclusory terms.  *Broker's Choice*, 861 F.3d at 1104-5. Rather, the plaintiff must plead sufficient factual content that allows the court to draw the reasonable inference that the challenged statement is false. Here, the Complaint pleads falsity in bare, conclusory terms. It does not allege a single fact that would permit the Court to infer that the challenged statements are, in fact, false. Of course, because the challenged statements are opinion and not susceptible of being proved true or false, this failure is perhaps understandable. Nevertheless, the defamation claim must be dismissed for failure to plausibly allege material falsity.

### B.  FPI's remaining claims are derivative of its defamation claim and otherwise fail to state a claim upon which relief can be granted

FPI's remaining claims—Disparagement, Intentional Interference with Prospective Business Relations (IIPBR), Unjust Enrichment, a Colorado Consumer Protection Act (CCPA) violation, and Civil Conspiracy—are all derivative of FPI's defamation claim and must be dismissed because FPI failed to state a claim for defamation. FPI has also failed to state essential elements of all its remaining claims, which also warrants their dismissal under F.R.C.P. 12(b)(6).

### a.   FPI's remaining claims are derivative of its defamation claim

In general, a plaintiff such as FPI cannot evade First Amendment protections for speech by dressing up a defamation claim as other torts. *See Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) ("A plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim."); *See Jefferson Cty Sch. Dist.*, 175 F.3d at 857 (dismissing IIPBR claim and trade libel claim as derivative of defamation claim); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 368-69 (D. Mass 2017) ("IIEPA claim, which simply recasts the defamation claim, cannot proceed"); *MiMedx Grp.,* 2018 WL 847014, at *10 (Permitting tortious interference claims where alleged improper interference was "urging a stockholder of a publicly traded company to sell his shares to new owners" was impermissible and "would turn Wall Street norms on their head"); *Wedbush Morgan Sec., Inc. v. Kirkpatrick Pettis Capital Mgmt*, 2007 WL 1097872 at *8 (D. Colo. April 9, 2007) (disparagement, IIPBR, and CCPA claims are all derivative of defamation claim); *Ruffin-Steinbeck v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001) (dismissing unjust enrichment claim under First Amendment grounds because the claim was based on protected statements).

Here, all FPI's remaining claims are based on Rota Fortunae's allegedly defamatory speech, which, as demonstrated above, is protected by the First Amendment. (*See* Compl. ¶¶ 59-67 (FPI's disparagement claim based on alleged "false and disparaging statements" about FPI); ¶¶ 68-76 (FPI's IIPBR claim based on Defendant's alleged "false, misleading, defamatory and/or disparaging statements about Farmland Partners"); ¶ 79 (Unjust enrichment claim based on Defendant's publication of "its false, misleading, defamatory, and/or disparaging information"); ¶¶ 87-91 (CCPA claim abased on "false and misleading representations"); ¶ 99 (conspiracy claims based on the "unlawful overt act of publishing false, misleading, defamatory, and/or disparaging internet posting about [FPI]"). Thus, because all of FPI's remaining claims rest on protected speech, they must also be dismissed.

### b.   FPI's remaining claims must be dismissed on individual grounds

In addition to being derivative of its defamation claim, FPI's remaining claims should be dismissed for failure to state a claim.

<u>Disparagement.</u> Disparagement, like defamation, "requires as a prerequisite a defamatory or derogatory false statement of fact." *Wedbush Morgan Sec., Inc.*, 2007 WL 1097872 at *8. As argued above, such a statement is not present here and FPI's disparagement claim must be dismissed.

<u>IIPBR.</u> FPI's IIPBR claim fails for two additional reasons beyond the fact it is merely a recast of FPI's defamation claim. First, as argued above, the alleged conduct that FPI claims is improper—Rota Fortunae's alleged "false, misleading, defamatory and/or disparaging statements about Farmland Partners"—cannot sustain an IIPBR claim because it is protected opinion speech. *See Jefferson Cty. Sch. Dist.*, 175 F.3d at 858 (and "expression of an opinion protected by the First Amendment is similarly insufficient" to sustain intentional interference claim).

Second, to sustain an IIPBR claim, FPI must allege "a reasonable likelihood or probability that a contract would have resulted" but for Defendant's interference. *See Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017). FPI failed to make such an allegation, alleging conclusorily that "on information and belief," Rota Fortunae "prevented the formation of contracts" between FPI and others. (Compl. ¶ 75). This is insufficient to state a claim for IIPBR. *See Crocs*, 248 F. Supp. at 1060 (dismissing IIPBR claim when no evidence that individuals were in the process of contracting with plaintiff).

Unjust Enrichment. To state a claim for unjust enrichment, FPI must allege that Rota Fortunae received a benefit at FPI's expense, under circumstances that would make it unjust for Rota Fortunae to retain the benefit. *See Scott v. Scott*, 2018 COA 25, ¶ 47. Here, FPI makes no factual allegation that it conferred any benefit on Rota Fortunae, and its unjust enrichment claim fails.

CCPA. In order to state a claim a claim for a CCPA violation, FPI must plead that Rota Fortunae made a "false or misleading statement of fact." C.R.S. § 6-1-105(h). A "false or misleading statement that induces the recipient to act or refrain from acting" is actionable when it is made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). As argued above, FPI has failed to plead Rota Fortunae made such a statement about FPI, and FPI has failed to state a claim of violation of the CCPA.

Civil Conspiracy. Conspiracy requires more than one defendant. As articulated in Rota Fortunae's affidavit, Rota Fortunae is an individual and no other person or entity aided him in drafting the Article. Without more defendants, there is no conspiracy.

## CONCLUSION

Based on the foregoing arguments, FPI's claim must be dismissed. There no personal jurisdiction over Rota Fortunae in this forum, and this forum is not proper. Moreover, FPI has failed to state any claim for which relief can be granted. Rota Fortunae respectfully requests this Court dismiss FPI's Complaint in its entirety.

Respectfully submitted this 5th Day of October, 2018

*/s/ John A. Chanin*
John A. Chanin
Katherine Roush
Melanie MacWilliams-Brooks
FOSTER GRAHAM MILSTEIN & CALISHER, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado  80209
*jchanin@fostergraham.com*
*kroush@fostergraham.com*
*mbrooks@fostergraham.com*
Phone:  303-333-9810
Facsimile: 303-333-9786
*Attorneys for Defendant, Rota Fortunae*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th Day of October, I electronically filed the foregoing **DEFENDANT ROTA FORTUNAE'S MOTION TO DISMISS COMPLAINT** with the Clerk of the Court using the ECF system, and served via ECF to the following:

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
sllewellyn@mofo.com
kpietari@mofo.com


*/s/      Lucas Wiggins*
Lucas Wiggins