## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

      Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE
NAME IS UNKNOWN), JOHN/JANE
DOES 2–10 (WHOSE TRUE NAMES ARE
UNKNOWN),

      Defendants.

---

## FARMLAND PARTNERS INC.'S OPPOSITION TO ROTA FORTUNAE'S MOTIONS TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

RELEVANT FACTS..................................................................................................3

ARGUMENT .............................................................................................................6

I.      SETTLED TENTH CIRCUIT LAW REFUTES RF'S MOTION TO
DISMISS UNDER THE TEXAS CITIZENS PARTICIPATION ACT. ...............6

II.     RF CANNOT FLOUT THE COLORADO LEGISLATURE BY
DISREGARDING WELL SETTLED CHOICE-OF-LAW PRINCIPLES
IN THIS STATE...........................................................................................10

A.     Colorado's Substantive Law Applies in This Case, Not the TCPA. ........10

B.     The Doctrine of Dépeçage Does Not Substitute Texas Law for
Colorado's. .............................................................................................12

III.    SHOULD THE COURT PROCEED TO EVALUATE THE TCPA
CLAIM, DISCOVERY, AS SET FORTH IN THAT STATUTE, IS
REQUIRED. ........................................................................................13

IV.    BECAUSE RF DIRECTLY AIMED ITS ACTIONS AT COLORADO,
KNOWING IT WOULD CAUSE INJURY IN COLORADO, IT IS
SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN
COLORADO. ............................................................................................16

A.     RF Purposefully Directed Its Activities at Colorado................................17

B.     FPI's Injuries—Reputational and Monetary—Arose Out of RF's
Colorado-Related Activities. ...................................................................22

V.      COLORADO IS A PROPER VENUE FOR THIS ACTION. .............................23

VI.    FPI HAS ADEQUATELY PLED EACH OF THE CLAIMS SET FORTH
IN THE COMPLAINT...................................................................................24

A.     Standard of Review. ...............................................................................25

B.     The Complaint States a Viable Claim for Defamation.............................27

C.     The First Amendment Does Not Shield RF at This, or Any, Stage
of the Case. .............................................................................................32

D.     RF's Arguments That the Defamatory Statements Are Mere
Opinion Fail............................................................................................33

E.     The Remainder of FPI's Claims Were Adequately Pled..........................35

CONCLUSION ........................................................................................................40

# TABLE OF AUTHORITIES

Page

*Advanced Career Techs., Inc. v. Does 1-10*,
   No. 13-cv-0304-WJM-KLM,
   2015 WL 328639 (D. Colo. Jan. 23, 2015) .............................................................22

*Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*,
   771 F.3d 697 (10th Cir. 2014) ...............................................................................10

*In re Baker*,
   338 B.R. 470 (Bankr. D. Colo. 2005) .....................................................................11

*Berard v. Town of Millville*,
   113 F. Supp. 2d 197 (D. Mass. 2000) .....................................................................26

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   861 F.3d 1081 (10th Cir. 2017) ...............................................................26, 27, 29

*Burns v. McGraw-Hill Broad. Co.*,
   659 P.2d 1351 (Colo. 1983)..............................................................................*passim*

*Bustos v. A & E Television Networks*,
   646 F.3d 762 (10th Cir. 2011) .........................................................................28, 29

*Calder v. Jones*,
   465 U.S. 783 (1984) ...............................................................16, 17, 18, 23

*Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd.*,
   707 F. Supp. 2d 1130 (D. Colo. 2010) ....................................................................20

*Clifford v. Trump*,
   No. CV-18-06893 SJO, 2018 WL 4997419 (C.D. Cal. Oct. 15, 2018),
   *appeal filed*, No. 18-56351 (9th Cir. Oct. 16, 2018) ............................................13

*Crocs, Inc. v. Effervescent, Inc.*,
   248 F. Supp. 3d 1040 (D. Colo. 2017) ....................................................................36

*Cuba v. Pylant*,
   814 F.3d 701 (5th Cir. 2016) ..................................................................................14

*Dias v. City & Cty. of Denver*,
   567 F.3d 1169 (10th Cir. 2009) ..............................................................................25

*Diamond Ranch Academy, Inc. v. Filer*,
   117 F. Supp. 3d 1313 (D. Utah 2015) .....................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page

*Doe v. FBI,*
   218 F.R.D. 256 (D. Colo. 2003) ................................................... 5

*Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.,*
   97 P.3d 140 (Colo. App. 2003)................................................... 39

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
   514 F.3d 1063 (10th Cir. 2008)........................................ 16, 17, 20, 21

*Erie R.R. Co. v. Tompkins,*
   304 U.S. 64 (1938) ............................................................. 6

*Gaines v. CUNA Mut. Ins. Soc'y,*
   681 F.2d 982 (5th Cir. 1982)................................................... 8

*Gallagher's N.Y. City Steakhouse Franchising v. 1020 15th St.,*
   No. 08-cv-01639-PAB-BNB, 2009 U.S. Dist. LEXIS 58576 (D. Colo. June
   23, 2009)..................................................................... 23

*Garcia v. Wal-Mart Stores, Inc.,*
   209 F.3d 1170 (10th Cir. 2000) ................................................ 9

*Graziani v. Epic Data Corp.,*
   305 F. Supp. 2d 1192 (D. Colo. 2004) ......................................... 8

*Greenway Nutrients v. Blackburn,*
   33 F. Supp. 3d 1224 (D. Colo. 2014) .......................................... 37

*Howard v. Ferrellgas Partners, L.P.,*
   748 F.3d 975 (10th Cir. 2014) ................................................ 11

*James River Ins. Co. v. Rapid Funding LLC,*
   658 F.3d 1207 (10th Cir. 2011) ............................................... 8

*Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.,*
   175 F.3d 848 (10th Cir. 1999) ................................................ 32

*Johnson v. Continental Airlines Corp.,*
   964 F.2d 1059 (10th Cir. 1992) ............................................... 12

*Keohane v. Stewart,*
   882 P.2d 1293 (Colo. 1994)............................................. 26, 32, 33, 35

*Kuhn v. Tribune-Republican Publ'g Co.,*
   637 P.2d 315 (Colo. 1981)................................................... 31

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Lawson v. Stow*,
    327 P.3d 340 (Colo. App. 2014) ............................................................................. 34

*Lewis v. Lewis*,
    189 P.3d 1134 (Colo. 2008) .................................................................................... 36

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015) ............................................................................... 7, 15

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018), *pet. for cert. filed*,
    *AmeriCulture, Inc. v. Los Lobos Renewable Power LLC*,
    No. 81-89 (U.S. July 18. 2018) .......................................................................*passim*

*Lundahl v. Pub. Storage Mgmt., Inc.*,
    62 F. App'x 217 (10th Cir. 2003) ...................................................................... 2, 23

*McDonald v. Wise*,
    769 F.3d 1202 (10th Cir. 2014) ................................................................. 25, 26, 33

*MDM Grp. Assocs., Inc. v. CX Reinsurance Co. Ltd.*,
    165 P.3d 882 (Colo. App. 2007) ...................................................................... 35, 36

*Meehan v. Amax Oil & Gas, Inc.*,
    796 F. Supp. 461 (D. Colo. 1992) ............................................................................ 8

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ............................................................................................. 26, 33

*N.P.U., Inc. v. Wilson Audio Specialties, Inc.*,
    No. 1:18-CV-167-RP,
    2018 U.S. Dist. LEXIS 184584 (W.D. Tex. Oct. 29, 2018) .................................... 9

*Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*,
    734 F. App'x 586 (10th Cir. 2018) ................................................................... 10, 11

*Natural Wealth Real Estate, Inc. v. Cohen*,
    No. 05-cv-01233-LTB-MJW,
    2006 U.S. Dist. LEXIS 87439 (D. Colo. Dec. 4, 2006) ....................................... 12

*Nguyen v. Vu*,
    No. 18-CV-01132-CMA-NRN,
    2018 U.S. Dist. LEXIS 186592 (D. Colo. Oct. 30, 2018) ..................................... 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Pace v. Swerdlow*,
    519 F.3d 1067 (10th Cir. 2008) ............................................... 26

*Perkins v. Chris Hunt Water Hauling Contractor, Inc.*,
    46 F. App'x 903 (10th Cir. 2002) ............................................ 12

*Polizzi v. Cowles Magazines, Inc.*,
    345 U.S. 663 (1953) .............................................................. 23

*Quigley v. Rosenthal*,
    43 F. Supp. 2d 1163 (D. Colo. 1999) ..................................... 30

*Rambo v. Am. S. Ins. Co.*,
    839 F.2d 1415 (10th Cir. 1988) ............................................. 20

*Ranbaxy Labs., Inc. v. First Databank, Inc.*,
    No. 3:13-CV-859-J-32MCR,
    2014 U.S. Dist. LEXIS 31916 (M.D. Fla. Mar. 12, 2014) .................... 13

*Ratner v. Kohler*,
    No. CV 17-00542 HG-KSC,
    2018 U.S. Dist. LEXIS 30761 (D. Haw. Feb. 26, 2018) ..................... 13

*Roe v. Catholic Health Initiatives Colo.*,
    No. 11-cv-02179-WYO-KMT,
    2012 U.S. Dist. LEXIS 713 (D. Colo. Jan. 4, 2012) ......................... 5

*Rudkin v. Roger Beasley Imps., Inc.*,
    No. A-17-CV-849-LY,
    2017 U.S. Dist. LEXIS 212419 (W.D. Tex. Dec. 28, 2017) ................... 9

*Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*,
    861 F. Supp. 2d 1256 (D. Colo. 2012) .................................. 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .......................................................... 8, 9, 11

*Shrader v. Biddinger*,
    633 F.3d 1235 (10th Cir. 2011) ............................................. 22

*Silver v. Brown*,
    382 F. App'x 723 (10th Cir. 2010) ................................. 17, 18, 21, 23

*Spacecon Specialty Contractors, LLC v. Bensinger*,
    713 F.3d 1028 (10th Cir. 2013) ............................................. 30

**TABLE OF AUTHORITIES**
(continued)

Page

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) .......................................................................................29, 31

*Thoroughbred Ventures, LLC v. Disman*,
    No. 4:18-CV-00318,
    2018 U.S. Dist. LEXIS 120272 (E.D. Tex. July 19, 2018) .....................................9

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976) ...............................................................................................32

*TMJ Implants, Inc. v. Aetna, Inc.*,
    405 F. Supp. 2d 1242 (D. Colo. 2005) ..................................................................37

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*,
    898 F. Supp. 2d 1213 (D. Colo. 2012) ..................................................................38

*United States Aviation Underwriters, Inc., v. Pilatus Business Aircraft, Ltd.*,
    582 F.3d 1131 (10th Cir. 2009) .............................................................................11

*Zimmerman v. Bd. of Publ'ns of Christian Reformed Church, Inc.*,
    598 F. Supp. 1002 (D. Colo. 1984) .......................................................................12

**Statutes**

28 U.S.C. § 1391 ...........................................................................................................23

28 U.S.C. § 1441 ......................................................................................................2, 23

Colo. Rev. Stat. § 6-1-105(1)(h)....................................................................................38

Colo. Rev. Stat. § 13-1-124 ...........................................................................................16

Tex. Civ. Prac. & Rem. Code Ann. § 27.006 ................................................................15

Tex. Civ. Prac. & Rem. Code Ann. § 27.010 ................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Other Authorities**

Fed. R. Civ. P.
    Rule 8 ..........................................................................................................9, 10
    Rule 11 ..............................................................................................................9
    Rule 12 ....................................................................................................1, 9, 10
    Rule 16 ..............................................................................................................9
    Rule 56 ..........................................................................................................9, 10

Restatement (Second) of Conflict of Laws, § 150 (2nd ed. 1988) ..............................................11

Restatement (Second) of Torts, § 596, comment b (2nd ed. 1979) ...............................................8

**INTRODUCTION**

The motions to dismiss submitted by Defendant Rota Fortunae ("RF") reflect the third phase in the short-and-distort attack RF and its co-conspirators perpetrated on Farmland Partners Inc. ("FPI"), by which they profited from short positions in FPI's stock as investors digested the false and misleading statements published on July 11, 2018.  The first phase of defendants' attack occurred during the run up to July 11, when RF planned the intentional and malicious market manipulation scheme with its co-conspirators, the Does.  This effort involved direct contacts with Colorado, including sending a letter to FPI in Colorado that is at the core of this dispute.  It also involved building short positions of FPI stock to illegally profit from the decline that followed the attack.  Defendants then moved to the next phase—publishing and broadly disseminating a defamatory hit piece claiming, among other falsehoods, that FPI faced insolvency.  Now, having been taken to task for its misconduct, RF has sought to retreat with its profits and avoid accountability for its manipulative scheme, first by improper and unsuccessful efforts to evade service in this action, and now through frivolous dismissal arguments refuted by controlling authority that RF's two motions to dismiss attempt to hide from this Court.

For example, and as more fully set forth below, RF seeks a second shot at dismissal under the Texas Citizens Participation Act (the "TCPA").  Leaving aside that RF's attempt violates Federal Rule of Civil Procedure 12(g)'s prohibition on multiple motions to dismiss and that no court has ever applied the Texas statute in Colorado, the Tenth Circuit has summarily rejected RF's argument that another state's "anti-SLAPP" law should apply in federal court.  *See Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668-69 (10th Cir. 2018).  RF's motion omits both its violation of Rule 12(g) and any mention of this controlling authority,

rendering its arguments specious.

Next, RF's argument that this Court lacks personal jurisdiction ignores both controlling Supreme Court and Tenth Circuit precedent and key jurisdictional facts alleged in the Complaint. As set forth in FPI's Complaint, this case arises from a "short-and-distort" attack on a Colorado company, and its Colorado resident CEO, through which RF and the Does profited from trades made in the wake of the publicly-released defamatory statements. *See* Compl. ¶¶ 27-33, ECF No. 3. In perpetrating this scheme, RF initiated contact with FPI by sending a letter to the company's Colorado headquarters on July 9, 2018. *See id.* ¶¶ 8-10 and Ex. A ("July 9 Letter"). That letter is discussed no fewer than eight times in the Complaint, but not at all in RF's motion to dismiss. *See* Compl. ¶¶ 1-17. RF's motion likewise omits reference to other jurisdictionally significant allegations, including the attacks levied at Colorado resident Paul Pittman. *See id.* ¶¶ 26-27; *see also* RF's Decl., Ex. 1, July 11, 2018 Seeking Alpha Posting by Rota Fortunae ("Posting") at 10, 23, 25-26, ECF No. 18-2. The Complaint has more than adequately alleged a *prima facie* basis to hold RF responsible for its misconduct in this Court.

In addition, RF argues venue is improper based on a venue provision RF rendered inapplicable when it removed this case. Having removed this case from Colorado State Court— albeit improperly, *see* Mot. to Remand at 6, ECF No. 15—RF cannot now avoid the consequences of 28 U.S.C. § 1441(a), under which venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending." *See Lundahl v. Pub. Storage Mgmt., Inc.*, 62 F. App'x 217, 218 (10th Cir. 2003) (once an action is removed, venue is proper in the federal court of the same state as the initial action).

Finally, RF's "failure to state a claim" arguments ignore the allegations in the Complaint

demonstrating that RF's defamatory statements and illegal manipulation scheme are entitled to no First Amendment protections. Knowing this, RF pivots to a back-up argument that its misrepresentations are better understood as "opinions" or as true when considered without the benefit of important context. Those arguments fare no better and are not a reason to dismiss this case on the pleadings.

In the end, RF's motions to dismiss are cobbled together by consistently disregarding binding precedent and ignoring the plain allegations of FPI's Complaint. The motions to dismiss should be denied, discovery should proceed, the illegal scheme should be brought to light, and the offenders should be held responsible for their wrongdoing.

**RELEVANT FACTS**

FPI is a Colorado-based publicly traded real estate investment trust (REIT) that works with farmers in managing and acquiring farmland, playing an important and productive part of the agriculture ecosystem that feeds this country and the world. Compl. ¶ 6. RF is an anonymous short seller who targeted FPI and the farmers it served for illegal gains, launching a short-and-distort attack with the help of conspirators by spreading false and defamatory statements designed to induce a cascade of selling centered on the false premise that FPI was insolvent. *Id.* ¶ 2. FPI is by no means the only victim of these pernicious plots from the shadows, and this scourge needs to be wiped out. The Securities and Exchange Commission clearly agrees, having recently brought a fraud case against a short-and-distort attacker in *Securities and Exchange Commission v. Lemelson, et al.*, for profiting off a short position by driving down a targeted company's stock price after publishing false and misleading statements.

RF first contacted FPI on July 9, 2018, when it sent a letter addressed to the company's

Denver, Colorado headquarters from RF's counsel, Matthew Mitzner.  Compl. Ex. A.  The July 9

Letter stated that Mr. Mitzner represented a "group of investors" who "have prepared and

anticipate publishing an article about the FPI Inc. ('FPI') Loan Program."  *Id*. at 1.

The July 9 Letter contained 31 questions for FPI that covered "the main issues" to be

discussed in the article.  *Id.*  The letter invited a written response within 24 hours during which

RF's counsel refused to discuss any of the questions or why the matter was supposedly time

sensitive.  *Id.*  FPI did not respond within 24 hours, in part out of concern that responding to the

July 9 Letter might implicate regulations covering selective disclosure of material non-public

information.  Compl. ¶¶ 16-17.

Then the bomb hit.  On July 11, 2018, RF published the hit piece about FPI on the

website Seeking Alpha, a website that purports to have 13 million visitors, including many from

Colorado.  *See* Compl. ¶ 18; *see also* website, https://seekingalpha.com.  The Posting contained

numerous false and misleading statements about FPI, including assertions that FPI "faces a

significant risk of insolvency" due to a loan program and accounting practices RF attacked as

fraudulent, and claims that the company is "uninvestible."  *See* Compl. ¶¶ 21-29.

The Posting also took personal aim at Colorado resident Paul Pittman—FPI's Chairman

and CEO—by repeatedly attacking his public statements regarding FPI and insulting his integrity

and competence.  *Id.* ¶ 27.  Critically, Colorado and the decisions that FPI makes and executes in

Colorado were the central focus of the Posting.  Further, the Posting relied heavily on Colorado

state and county documents, described alleged wrongdoing on behalf of Colorado residents, and

invoked Colorado land transactions as part of the allegedly dishonest loan scheme.  Posting at 2-

3, 5-7, 11-12, 14, 23-26, 29-31, 35, 37, 39, 44.

That same day and into the next week, RF also posted false and misleading statements on Twitter using the handle @RFortunae about FPI, Paul Pittman, and the Posting. Compl. ¶ 38. In the Tweets, RF repeatedly characterized the false information in the Posting as "facts." *Id.*; Declaration of Kyle S. Pietari, filed herewith ("Pietari Decl.") Ex. A ("Tweets") at Tweet 19 ("If $FPI thinks it can issue a BS press release that addressees NONE of the facts and then fly under the radar, they have another thing coming. We are not done here. We haven't even touched on Pittman. Stay tuned ..."); *see also* Tweets 13, 15, 18, 20.

RF and the Does' efforts to drive the price of FPI's stock down so they could profit quickly—and before the falsity of its statements could be revealed—proved successful. Compl. ¶ 29. The day the Posting was published, FPI's stock price dropped by approximately 39%. *Id.* ¶ 34. As a result, RF and the Does were unjustly enriched by their scheme. *Id.* ¶ 35.

FPI filed its Complaint against RF and the Does less than two weeks after the Posting for defamation/defamation by libel per se, disparagement, intentional interference with prospective business relations, unjust enrichment, deceptive trade practices in violation of the Colorado Consumer Protection Act, and civil conspiracy. *Id.* ¶¶ 44-100. The Does were named as RF's co-conspirators based in part on numerous assertions by RF and RF's various counsel that others were involved in the scheme. *Id.* ¶¶ 9, 30, 95-96.

RF and the Does have refused to disclose their identities,[1] but all parties were served in

---

[1] Under Colorado law, anonymity in legal proceedings is presumptively disallowed, and any party seeking to proceed anonymously must apply to the Court to do so. *See Doe v. FBI*, 218 F.R.D. 256, 258 (D. Colo. 2003). The Tenth Circuit has stated that there are "three contexts in which a pseudonym is appropriate: 1) matters of a highly sensitive and personal nature; 2) cases involving a real danger of physical harm; and 3) instances where the injury litigated against would be incurred as a result of the disclosure of the [party's] identity." *Roe v. Catholic Health Initiatives Colo.*, No. 11-cv-02179-WYO-KMT, 2012 U.S. Dist. LEXIS 713, at *2 (D. Colo. Jan.

accordance with the Colorado State Court's orders granting substituted service on them.[2]  On

September 14, 2018, RF removed this action without obtaining consent from any of the served

Doe Defendants, none of whom joined in RF's Notice of Removal.  The Doe Defendants are

currently in default.

On October 5, 2018, RF filed a motion to dismiss FPI's Complaint, claiming that this

defamation action was filed in retaliation for RF's "exercise of his First Amendment rights."

Mot. to Dismiss ("First Mot."), ECF No. 18.  RF further claimed that the Court lacks personal

jurisdiction over it, that the Court is not the proper venue for this lawsuit, and that FPI failed to

state a claim.  *Id*.  Ten days later, RF filed a second motion to dismiss under the TCPA.  Second

Mot. to Dismiss ("TCPA Mot."), ECF No. 22.[3]

**ARGUMENT**

**I.    SETTLED TENTH CIRCUIT LAW REFUTES RF'S MOTION TO DISMISS UNDER THE TEXAS CITIZENS PARTICIPATION ACT.**

The Tenth Circuit unambiguously held that "anti-SLAPP" statutes like the TCPA have no

application in federal court.  *Los Lobos*, 885 F.3d at 668-69, *pet. for cert. filed*, *AmeriCulture,*

*Inc. v. Los Lobos Renewable Power LLC*, No. 81-89 (U.S. July 18, 2018).  Put simply, such

statutes are procedural state laws inapplicable in federal court under *Erie Railroad Company v.*

*Tompkins*, 304 U.S. 64 (1938).

In *Los Lobos*, the Tenth Circuit explained that New Mexico's anti-SLAPP statute "is

---

4, 2012) (citations omitted).  None of those circumstances is present here, and RF has not applied
for leave to keep its identity hidden; therefore, RF cannot proceed anonymously.

[2] *See* Mot. to Remand, Pietari Decl. Exs. E & I.

[3] For efficiency's sake, FPI has combined its response to RF's two motions into one brief.  If the
Court so desires, FPI can refile its responses separately.

nothing more than a procedural mechanism" and affirmed the District Court's refusal to consider the defendant's anti-SLAPP motion to dismiss.  In so doing, the Tenth Circuit flatly rejected the argument RF makes here.  RF bases its argument for the application of the TCPA on the premise that "[c]ourts have already found that anti-SLAPP statutes are substantive because they are designed to protect the defendant from having to litigate meritless claims aimed at chilling First Amendment expression."  TCPA Mot. at 11 (internal quotation & citation omitted).  That is ***precisely*** the argument defendant made in *Los Lobos*.  885 F.3d at 662 ("Defendants asserted 'New Mexico's Anti-SLAPP statute is a substantive state law designed to protect the Defendants from having to litigate meritless claims aimed at chilling First Amendment expression.'").  The Tenth Circuit made clear that argument cannot stand, holding that it "need not rely on any complex *Erie* analysis here because, assuming one is able to read, drawing the line between procedure and substance in this case is hardly a 'challenging endeavor,' … as [t]he plain language of the New Mexico anti-SLAPP statute reveals the law is nothing more than a *procedural* mechanism."  *Id.* at 668-69.

Like the statute at issue in *Los Lobos*, the TCPA is a procedural mechanism used to expedite resolution of potentially frivolous attempts to chill free speech.  *Compare In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) ("The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits."), *with Los Lobos*, 885 F.3d at 673 ("The [New Mexico anti-SLAPP] statute's purpose is the prompt termination of certain lawsuits the New Mexico legislature deemed to be . . . a threat to First Amendment rights.").

And like the New Mexico statute, the TCPA provides no substantive right to immunity.

*Los Lobos*, 885 F.3d at 670 ("[O]ne cannot reasonably read the language of the New Mexico anti-SLAPP statute as providing a defendant with a substantive defense to SLAPP liability.").[4] As that Court explained: "State laws that solely address procedure and do not 'function as a part of the State's definition of substantive rights and remedies' are inapplicable in federal diversity actions." *Id.* at 668 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416-17 (2010) (Stevens, J., concurring in the judgment); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) ("the Tenth Circuit has understood [Justice Stevens'] concurrence to be the controlling opinion in *Shady Grove*")) (citations omitted).

RF does not even attempt to distinguish this controlling Tenth Circuit decision, which renders its arguments frivolous. Instead, it spends pages describing how the TCPA is (sometimes) applied in the Texas courts and how California's anti-SLAPP statute has fared, both of which are irrelevant to this Court's inquiry.[5]

---

[4]  RF's attempted invocation of a "qualified privilege," TCPA Mot. at 21, implicitly concedes that the TCPA confers no substantive basis to dismiss this case. And RF is entitled to no such privilege. First, the case on which RF relies, *Gaines v. CUNA Mut. Ins. Soc'y*, 681 F.2d 982 (5th Cir. 1982), is based on a Texas law not applicable here. *Id.* at 985. Furthermore, "knowledge or reckless disregard as to falsity" defeats the privilege RF seeks to hide behind. Restatement (Second) of Torts, § 596, comment b (2nd ed. 1979); *Graziani v. Epic Data Corp.*, 305 F. Supp. 2d 1192, 1199 (D. Colo. 2004) ("The immunity conferred, if a qualified privilege is found, is not absolute but is conditioned upon publication in a reasonable manner and for proper purpose"). Finally, RF's motivation to profit from its short position in FPI's stock makes this privilege unavailable to him. *See Meehan v. Amax Oil & Gas, Inc.*, 796 F. Supp. 461, 467 (D. Colo. 1992) ("if a person making a defamatory statement is actuated primarily for purposes other than the protection of the interest for which the privilege was given . . . , the qualified privilege is negated") (citation omitted).

[5]  While decisions from Texas are irrelevant, RF notably concedes that the Fifth Circuit has not yet ruled that the TCPA applies in Texas federal courts. And RF's statement that "each of Texas' district courts have applied the TCPA," is, like its anonymous attacks, misleading at best. For example, in *Van Dyke v. Retzlaff*, No. 4:18-CV-247, Memorandum & Order (E.D. Tex. July 24, 2018), ECF No. 71, where, like here, defendant removed and sought to invoke the TCPA in Texas federal court, the court held that "the TCPA, regardless if classified as procedural or

In addition, as the Tenth Circuit made clear, any suggestion that this Court is ill-equipped to dispose of baseless lawsuits designed only to chill free speech without the TCPA is wrong and offensive. *Los Lobos*, 885 F.3d at 673 n.8 ("Those litigants and lawyers who seek to circumvent application of the New Mexico anti-SLAPP statute by filing a baseless SLAPP lawsuit in federal district court are in for a rude awakening."). The Federal Rules of Civil Procedure, including Rules 8, 12, and 56, directly address the areas of inquiry that the TCPA seeks to control: the parties' respective burdens of proof at the pleading and pretrial motion stage, the availability of discovery, and the procedures and timing for the Court to utilize in ruling on a pretrial motion to adjudicate a case. *Id.* Because those federal rules are directly on point here, they apply and the TCPA does not. *See Shady Grove Orthopedic Assocs.*, 559 U.S. at 399 (holding that if a federal rule answers the same question as a state law, such as how to dispose of a lawsuit, the federal rule applies as long as it is not outside the scope of Congress's authority); *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1176 (10th Cir. 2000) (quoting *Trieweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996)) ("Where a federal rule of procedure is directly on point, that rule applies"). As the Court explained in *Los Lobos*, Federal Rules 11, 12(b), 12(c), 16(a), and 56 "leav[e] little room for [provisions of New Mexico's anti-SLAPP statute] to operate in federal court." 885 F.3d at 673 n.8. The same is true for the TCPA. Thus, this Court should deny RF's TCPA Motion for the additional reason that it conflicts with Federal

substantive, does not apply in federal court."). *See also Rudkin v. Roger Beasley Imps., Inc.*, No. A-17-CV-849-LY, 2017 U.S. Dist. LEXIS 212419, at *6 (W.D. Tex. Dec. 28, 2017) ("[T]he TCPA contains procedural provisions setting forth deadlines to seek dismissal, deadlines to respond, and even deadlines for the court to rule, as well as appellate rights, and the recovery of attorney's fees. It is a procedural statute and thus not applicable in federal court."); *Thoroughbred Ventures, LLC v. Disman*, No. 4:18-CV-00318, 2018 U.S. Dist. LEXIS 120272, at *7 (E.D. Tex. July 19, 2018) (same); *N.P.U., Inc. v. Wilson Audio Specialties, Inc.*, No. 1:18-CV-167-RP, 2018 U.S. Dist. LEXIS 184584, at *7 (W.D. Tex. Oct. 29, 2018) (same).

Rules of Civil Procedure 8, 12, and 56.

For the sake of completeness, however, we note that RF's TCPA Motion violates the clear dictates of the Federal Rules of Civil Procedure.  RF filed the First Motion under Rules 12(b)(2), (3), and (6) on October 5, 2018.  In that motion, it attacked FPI's lawsuit as a SLAPP action but did not include the TCPA as a ground for dismissal.  On October 15, 2018, after its time to file a 12(b)(6) motion under the Federal Rules had lapsed, RF improperly filed a second motion to dismiss—the TCPA Motion.  Yet, Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Rule 12(g)(2) is designed to avoid unnecessary delay at the pleading stage by encouraging "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion."  *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 702 (10th Cir. 2014) (citing Charles Alan Wright & Arthur R. Miller, 5C *Federal Practice & Procedure* § 1384 (3d ed. 2014)).[6]

## II.   RF CANNOT FLOUT THE COLORADO LEGISLATURE BY DISREGARDING WELL SETTLED CHOICE-OF-LAW PRINCIPLES IN THIS STATE.

### A.   Colorado's Substantive Law Applies in This Case, Not the TCPA.

It is well settled that federal courts sitting in diversity apply state substantive law rather than federal common law.  *See Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*, 734 F. App'x 586, 589 (10th Cir. 2018).  RF does not dispute—because it cannot—that Colorado law "presumptively

---

[6] RF cites no authority for any right to file a second motion to dismiss and did not cite a single case in which a defendant attempted to do so.  Upon receiving RF's TCPA Motion, FPI asked RF to withdraw it or explain why RF did not include the TCPA claim within the First Motion. RF refused and has provided no justification for filing a second motion to dismiss.

applies to FPI's defamation claims since Colorado is the forum state."  TCPA Mot. at 3; *see also*

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 983 (10th Cir. 2014) (explaining that, before

a court is "free to abandon the default presumption" that the law of the forum state applies, a

defendant must make "a clear showing that another state's law should apply") (citation omitted).

Colorado's legislature did not enact an anti-SLAPP law, and RF offers no good reason why this

Court should ignore the legislature's prerogative and look to another state for such a statute.  *C.f.*

*In re Baker*, 338 B.R. 470, 480 (Bankr. D. Colo. 2005) (declining the invitation to adopt a rule

that the Colorado legislature had not enacted, explaining:  "It is not the province of this Court to

rewrite the legislature's work product in a manner that one or another constituency may think

represents wiser policy choices").

 Where there is any doubt as to what state's law should apply, this Court must turn to

Colorado's choice-of-law principles to resolve that question.  *See Shady Grove Orthopedic*

*Assocs.*, 559 U.S. at 417 (a federal court applies the choice of law rules of the state in which the

district court sits.).  Colorado's choice-of-law rules require that "the law to be applied is the 'law

of the state which, with respect to that issue, has the most significant relationship to the

occurrence and the parties.'"  *United States Aviation Underwriters, Inc., v. Pilatus Business*

*Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009) (quoting Restatement (Second) of Conflict

of Laws § 145(1) (1971)).  "When a corporation . . . claims that it has been defamed by an

aggregate communication, the state of most significant relationship will usually be the state

where the corporation . . . had its principal place of business at the time . . ."  Restatement

(Second) of Conflict of Laws, § 150 (2nd ed. 1988).

 Here, FPI's principal place of business is in Colorado and, accordingly, Colorado law,

and not the TCPA, applies.  *See Natural Wealth Real Estate, Inc. v. Cohen*, No. 05-cv-01233-LTB-MJW, 2006 U.S. Dist. LEXIS 87439, at *10 (D. Colo. Dec. 4, 2006) (Colorado law applied to defamation, commercial disparagement, and interference with prospective business advantage claims because plaintiff's principal place of business was in Colorado); *Zimmerman v. Bd. of Publ'ns of Christian Reformed Church, Inc.*, 598 F. Supp. 1002, 1011 (D. Colo. 1984) (Colorado law applied to defamation claim when the article at issue was distributed in Colorado, concerned Colorado residents, and injured Colorado residents, despite that it was printed in Michigan).[7]

## B.   The Doctrine of Dépeçage Does Not Substitute Texas Law for Colorado's.

First, it is unclear if the dépeçage doctrine, which contemplates the application of the laws of different states to different issues in a case, is viable in Colorado.  *See Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1270 (D. Colo. 2012) (dépeçage "is hardly a 'well-settled' doctrine in Colorado") (citation omitted).  Even the case on which RF relies, *Johnson v. Continental Airlines Corp.*, held the doctrine's "application inappropriate" in that matter and refused to "legitimatize a smorgasbord approach which inures only to the benefit of the party picking and choosing" among different states' laws.  964 F.2d 1059, 1064 (10th Cir. 1992).  The Tenth Circuit likewise refused to apply dépeçage in *Perkins v. Chris Hunt Water Hauling Contractor, Inc.*, 46 F. App'x 903, 906 (10th Cir. 2002), because

---

[7] RF also argues that the TCPA should apply because Texas has an interest in protecting the speech of its own citizens.  TCPA Mot. at 4.  Colorado, of course, has its own interest in this matter—in particular, protecting the rights of its residents against defamation—and has its own defamation law and policies and procedure for preventing a chilling effect on free speech.  *See, e.g.*, *Nguyen v. Vu*, No. 18-CV-01132-CMA-NRN, 2018 U.S. Dist. LEXIS 186592, at *10 (D. Colo. Oct. 30, 2018) ("because the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate") (citations omitted).  Colorado law provides more than sufficient protection for litigants who, unlike RF, deserve it.

Oklahoma law—like Colorado law—required application of "the tort law of the state with the most significant relationship to the occurrence and the parties."

RF cites, and research has yielded, no decision that has invoked dépeçage to apply the TCPA in a Colorado court.  Instead, RF asks this Court to consider *Diamond Ranch Academy, Inc. v. Filer*, TCPA Mot. at 4, a case about whether to apply California or Utah law to the action. 117 F. Supp. 3d 1313 (D. Utah 2015).  But *Diamond* was decided before the Tenth Circuit's controlling holding in *Los Lobos*.  And *Diamond* is at odds with considerable authority interpreting the Restatement Second to favor the law of the defamed plaintiff's forum, which is the law in Colorado.[8]  In short, RF provides no basis to apply the TCPA in Colorado, whether through dépeçage or otherwise.  This Court should not be the first to invoke dépeçage to apply a Texas law that the Colorado legislature refused to enact.

**III.    SHOULD THE COURT PROCEED TO EVALUATE THE TCPA CLAIM, DISCOVERY, AS SET FORTH IN THAT STATUTE, IS REQUIRED.**

RF's TCPA Motion fails for several reasons on the merits as well.  A TCPA "movant has the initial burden to show, by a preponderance of evidence, that the activity that forms the base of the claim against him is protected by the statute. . . . If he meets that burden, the trial court must dismiss unless the party opposing dismissal can point to 'clear and specific evidence' that establishes a *prima facie* case for each essential element of his claim."  *Cuba v. Pylant*, 814 F.3d

---

[8] *See Ratner v. Kohler*, No. CV 17-00542 HG-KSC, 2018 U.S. Dist. LEXIS 30761, at *9-14 (D. Haw. Feb. 26, 2018) (applying California substantive law where defendant in Hawaii posted statement on Facebook about California resident); *Ranbaxy Labs., Inc. v. First Databank, Inc.*, No. 3:13-CV-859-J-32MCR, 2014 U.S. Dist. LEXIS 31916, at *19 (M.D. Fla. Mar. 12, 2014) (finding "applicable substantive law for purposes of the anti-SLAPP statute is the state of [plaintiff's] principal place of business, where the loss of sales and market share was most felt"); *Clifford v. Trump*, No. CV-18-06893 SJO (FFMx), 2018 WL 4997419, at *3 n.2 (C.D. Cal. Oct. 15, 2018) (applying the TCPA where plaintiff resided in Texas, rather than the law of the alleged defamer's forum state), *appeal filed*, No. 18-56351 (9th Cir. Oct. 16, 2018).

701, 711 (5th Cir. 2016) (emphasis in original).  To assist the Court in making such determinations, the TCPA permits discovery so a court may consider the merits of legitimate claims such as FPI's.

Discovery is needed for two reasons.  First, to determine whether the RF's conduct fits within the TCPA.  For example, the TCPA expressly does not apply where movant is engaged in commercial activity.  Tex. Civ. Prac. & Rem. Code Ann. § 27.010 (b) (Supp. 2012).  The evidence before this Court reveals a short-and-distort scheme of which RF's Posting and related actions were part of a broader effort to manipulate the market for FPI's stock to profit from the stock price's decline on July 11, 2018.

When the Posting was published, there were investors with substantial short positions in FPI's stock, including "members, partners, affiliates, employees, and/or consultants" and "clients" of RF.  Compl. ¶ 30.  RF and the Does conspired to "spring-load" the short attack by purchasing short-term put options—*i.e.*, puts that were soon going to expire—that led put writers to hedge their positions on July 11 so that the Posting and trading activity combined to drive down FPI's stock price.  *See* Pietari Decl. Ex. B, Decl. of Joshua Mitts ("Mitts Decl.") ¶¶ 11, 27, 31. [9]  FPI asked RF to disclaim that it was paid to draft the Posting, but RF refused to do so, further undermining RF's claim to protection under the TCPA.  *See* Pietari Decl. Ex. C, Interrog. 4; Pietari Decl. ¶ 6 (RF's refusal to respond to interrogatories). [10]  RF could have submitted a sworn declaration disclaiming any knowledge of any individuals or entities who collaborated

---

[9] Tellingly, RF did not deny the facts set forth in the Mitts Declaration in its response to FPI's Motion to Remand.

[10] RF tries to claim protection as a whistleblower as well, but refused to respond to FPI's inquiries regarding its contact with the Securities and Exchange Commission.  To the extent RF is the subject of an investigation by the SEC, RF should disclose that fact to the Court.

with it in perpetrating this manipulation scheme through their stock trades, communications regarding the Posting, or otherwise.  That RF chose not to offer any such evidence speaks volumes.[11]

Second, because the TCPA contemplates a hearing, FPI is entitled to discovery to discharge its burden to support its claims.  The TCPA expressly provides that "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion."  Tex. Civ. Prac. & Rem. Code Ann. § 27.006(b) (Supp. 2012).  "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss."  *In re Lipsky*, 460 S.W.3d at 590-91.[12]

RF should not be permitted to escape consequences for the scheme and the damage the defendants inflicted on FPI without, at the very least, sitting for a deposition as permitted by the very statute and case law on which it relies.  TCPA Mot. at 18 (citing *Warner Bros. Entertainment, Inc. v. Jones*, 538 S.W.3d 781, 789 (Tex. App. 2017), where the trial court allowed "document production and the deposition of [a defendant] before conducting a hearing" on the TCPA motion).

---

[11] Confronted with the Mitts Declaration detailing how defendants traded in FPI's stock to further their scheme, RF asked this Court for "an evidentiary hearing" to test the Mitts Declaration.  *See* RF's Resp. to FPI's Mot. to Remand at 3 n.3, ECF No. 29.  RF thus concedes that discovery is appropriate in the unlikely event the TCPA motion is not dismissed under controlling Tenth Circuit precedent.

[12] RF refused to respond to limited discovery permissible under the TCPA.  *See* Pietari Decl. Ex. C, Interrog. Nos. 1-6.

IV.    **BECAUSE RF DIRECTLY AIMED ITS ACTIONS AT COLORADO, KNOWING IT WOULD CAUSE INJURY IN COLORADO, IT IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN COLORADO.**

The key jurisdictional facts alleged, none of which RF's motion disputes, include that RF:  (1) initiated contact with FPI about this dispute by sending the July 9 Letter to FPI's Colorado headquarters; (2) wrote, edited, and caused to be published for an audience including readers in Colorado the defamatory Posting and Tweets about Colorado residents, specifically citing to Colorado state and county documents and transactions; (3) amassed a short position in FPI stock to profit from the attack on that Colorado company; (4) specifically targeted Colorado resident Paul Pittman, FPI's CEO; and (5) knew it would cause financial and reputational harm to a Colorado company, Colorado residents, and Colorado investors.  This Court therefore has specific personal jurisdiction over RF under the seminal Supreme Court decision *Calder v. Jones*, 465 U.S. 783, 788-91 (1984), which RF's motion neither mentions, nor can distinguish.

It is well settled that, at this stage of the case, FPI need only make a *prima facie* showing of jurisdiction, and the Court must resolve all factual disputes concerning jurisdiction in FPI's favor.  *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citations omitted).  Because Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the Constitution's full extent, the personal jurisdiction analysis here collapses into a due process inquiry.  *Id.*

The scope of that inquiry is not in dispute.  To determine whether RF has the requisite minimum contacts with Colorado, the Court looks to whether (1) the defendant "purposefully directed its activities at residents of the forum state," and (2) the plaintiff's "injuries . . . arise out of [the] defendant's forum–related activities."  *Dudnikov*, 514 F.3d at 1071.  In tort cases like

this one, purposeful direction exists where the defendant engaged in (1) intentional action; (2) aimed at Colorado; (3) with knowledge that the brunt of the injury would be felt in this State. *Calder*, 465 U.S. at 789-90; *Dudnikov*, 514 F.3d at 1072.  As set forth below, FPI has sufficiently pled all three elements.

Once a plaintiff makes this *prima facie* showing, a defendant can only avoid the forum by presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  *Calder*, 465 U.S. at 904, *Dudnikov*, 514 F.3d at 1071.  RF does not even attempt to satisfy its burden to demonstrate unreasonableness—nor could it, as there are no considerations that would render unreasonable adjudicating this attack on a Colorado company in Colorado.  *See Dudnikov*, 514 F.3d at 1080 ("It is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable") (citation omitted).  RF removed the case to this Court, has Denver counsel, and is actively participating in its defense without any claim of undue burden or prejudice as can sometimes apply when a foreign defendant is involved.  *Dudnikov*, 514 F.3d at 1080-81.  This Court has specific personal jurisdiction over RF.

A.      **RF Purposefully Directed Its Activities at Colorado.**

The starting point for a personal jurisdiction analysis in this defamation case is the Supreme Court's seminal decision in *Calder v. Jones,* 465 U.S. 783, and the Tenth Circuit's application of *Calder* in *Silver v. Brown*, 382 F. App'x 723 (10th Cir. 2010).  RF does not even mention such controlling precedent, let alone make any effort to distinguish it.

In *Calder*, two individuals who wrote and edited an article for the *National Enquirer* argued, much like RF does here, that California could not exercise personal jurisdiction over

them because they worked on their libelous article while in Florida.  A unanimous Supreme

Court rejected that argument, finding that jurisdiction existed because the defendants' alleged

conduct did not involve "mere untargeted negligence" but was "intentional, and allegedly

tortious, actions expressly aimed at [a] California" resident.  *Calder*, 465 U.S. at 789.

The Tenth Circuit's controlling decision in *Silver* similarly compels the denial of RF's

jurisdictional challenge.  382 F. App'x at 723.  In *Silver*, the Court applied the three-pronged

*Calder* test set forth above (as articulated by the Tenth Circuit in *Dudnikov*, *another* case RF

ignores) and held personal jurisdiction existed over the author of an allegedly defamatory web

log, or "blog."  The Tenth Circuit held that defendants' conduct in posting on that blog "was

clearly an intentional act" for jurisdictional purposes because that blog was maintained—much

like RF's Posting was published—to attack a resident company and its president; the content was

"aimed" at the forum where the company resided, because the defendant specifically attacked

that state's residents on a website available in New Mexico; and defendant knew the injury

would be borne by the New Mexico residents he attacked.  *Silver*, 382 F. App'x. at 729-30.

For the reasons that follow, FPI satisfies each of the three elements of purposeful

direction and like the defendants in *Calder* and *Silver*, RF is subject to personal jurisdiction.

### 1.    RF acted intentionally.

RF does not deny that it acted intentionally.  Nor could it.  As part of its short-and-distort

scheme, RF:  (1) wrote, edited, and published the defamatory Posting and Tweets; (2) sent,

through its agent, the July 9 Letter to Colorado threatening the Seeking Alpha Posting;

(3) amassed a short position in FPI's stock; and (4) specifically targeted Paul Pittman, FPI's

CEO and a Colorado resident.  *See* Compl. ¶¶ 18, 38-39, 8, 30-31, 26-27; *Calder*, 465 U.S. at

788-91 (finding intentional act where defendants wrote, edited, and published article about plaintiff); *Dudnikov*, 514 F.3d at 1072 (finding intentional act where defendant emailed Colorado plaintiffs and a third-party non-resident vendor website).

### 2.     RF's actions were aimed at Colorado.

Like the defendants in *Calder*, RF wrote the Posting and Tweets about FPI and its employees' activities in Colorado.  RF's Posting disparaged Paul Pittman and FPI's actions in connection with FPI's use of its loan program, which mainly occurred at FPI's principal place of business in Colorado.  Compl. ¶¶ 1, 24.  Further, RF's Posting includes accusations concerning: (i) Colorado properties—Andersons Farm and Burlington Farms—that FPI managed; (ii) FPI's transactions with Messrs. Hough and Niebur in Colorado involving Colorado property; and (iii) information published by FPI regarding Paul Pittman's use of a jet airplane.  Posting at 2, 5-6, 12, 24, 44.  In fact, *every single page* of the Posting implicates FPI's activities in Colorado, where FPI has its principal place of business and makes the bulk of its decisions.

Moreover, just as in *Calder*, RF relied on forum sources to draft the Posting.  The Posting includes references to Colorado UCC filing(s); Washington County, Colorado deed and appraisal records; documents pulled from a Colorado Springs bankruptcy case; Kit Carson County, Colorado deed records; and a 2017 Colorado Farm Land Values & Rents Survey.  *Id.* at 3, 11-14, 16, 23-24, 29-30.  The Posting specifically references Colorado documents, residents, and land transactions on 25 out of its 45 pages, yet another jurisdictionally dispositive fact RF's motion does not dispute.  *Id.* at 1-3, 5-7, 10-17, 22-25, 29-34, 39, 42-44.  Therefore, under the dictates of *Calder*, this Court has specific personal jurisdiction over RF.

In addition, RF sent the July 9 Letter full of allegations at the center of this dispute

directly to FPI at its principal place of Colorado and then used the Letter to lend legitimacy to the Posting by misleadingly claiming that RF asked for responses but the Company did not respond. Compl. ¶¶ 8, 14, 47.  It has long been held that intentionally sending correspondence into the forum that gives rise to the claim is a sufficient basis on which to exercise personal jurisdiction at this stage of the case.  *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards); *see also Dudnikov*, 514 F.3d at 1075 (finding personal jurisdiction at the motion to dismiss stage over defendant who sent emails to plaintiffs directly in Colorado). Further, in *Cascade Fund, LLLP v. Absolute Capital Management Holdings Ltd.*, 707 F. Supp. 2d 1130, 1140 (D. Colo. 2010), the Tenth Circuit found personal jurisdiction proper where, as here, the defendant sent emails discussing the subject matter of the case and soliciting future contacts between the parties.  By ignoring the July 9 Letter, RF's motion impliedly concedes its jurisdictional significance, and the case for exercising personal jurisdiction over RF here is even easier than the finding in *Silver*, where personal jurisdiction existed despite no direct communication into this State.

RF further aimed its conduct at Colorado when it published Tweets about Colorado residents FPI and Paul Pittman, and amassed a short position in FPI's stock while intending to cause FPI's stock price to plummet (thereby affecting FPI in its principal place of business in Colorado).  Compl. ¶¶ 2–12; Tweets 17, 19.  The fact that Seeking Alpha and Twitter are not headquartered in Colorado is of no import; all that matters is that RF's conduct was intended to affect FPI in Colorado.  *See Dudnikov*, 514 F.3d at 1075 (aiming found where defendant's extra-forum conduct mimicked a basketball "bank shot" in that its intended effect was to "reach and

affect plaintiffs' business operations in Colorado").

RF's targeted attacks at Colorado resident Mr. Pittman offer both an independent basis on which to find personal jurisdiction and compelling insight into part of the motivation for the short-and-distort scheme.  Specifically, RF's Posting prominently features a quote from Mr. Pittman, discussing how short positions in FPI's stock were "going to get killed," in large, italic font.  Posting at 2.  The attacks on Mr. Pittman's credibility and competence continue throughout the entire Posting.  *Id.* at 2, 6-7, 24-26, 30-31, 35, 37, 39, 44.  The Posting and Tweets were not just an attack on FPI, they were a revenge hit on Mr. Pittman for defending his company and challenging short sellers like RF.  Compl. ¶ 27.  Tellingly, RF's Declaration in support of its motion does not deny that he targeted FPI and Mr. Pittman in their resident state.

FPI has more than sufficiently alleged that RF aimed its actions at Colorado.

### 3.    RF knew that the brunt of FPI's injury would be felt in Colorado.

The third element is also easily satisfied.  For many of the aforementioned reasons, RF could have no doubt that the brunt of FPI's injury would be felt in Colorado, as RF intended.  Just as was the case in *Silver*, RF "knew [FPI] was located in [Colorado] and that Mr. [Pittman] lived in [Colorado] and conducted his business from there," which necessitates a conclusion that this prong has been satisfied.  382 F. App'x at 730.  *See also Dudnikov*, 514 F.3d at 1077 (finding plaintiffs satisfied their burden by establishing "that defendants knew plaintiffs' business and auction were based in Colorado, and therefore knew the effects of [their actions] would be felt there").  In addition, RF's short-and-distort attack was a purposeful act that hurt the company, its stock price, and interfered with FPI's business.  Compl. ¶¶ 34, 57, 67, 76, 79, 81, 88-92, 100; *Dudnikov*, 514 F.3d at 1077 (finding this prong is satisfied when defendants foresaw

the harm inflicted on the forum residents for which the lawsuit sought recovery).

### 4. RF's cases are inapposite.

As described above, RF ignores the controlling decisions that compel the rejection of its jurisdictional challenge. But ignoring dispositive case law does not make it disappear. And relying instead on cases that bear no resemblance to the undisputed facts is also a failing strategy. RF points to the holding in *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) to argue in "the internet context, 'merely posting information on the internet does not, *in itself*, subject the poster to personal jurisdiction… .'" *Id.* at 1244 (emphasis added). No dispute there. But that is not this case. As set forth above, jurisdiction is not based solely on RF's publishing an attack on the internet. Rather, it is based on the numerous additional significant and undisputed contacts with Colorado that did not exist in *Shrader*.

Similarly, RF's reliance on *Advanced Career Technologies* to argue that RF did not "aim" its activities at Colorado is misplaced, because the defendant there posted online content that only incidentally implicated the forum. First Mot. at 4-7. The decision in *Advanced Career Technologies* hinged on the finding that there, unlike in *Calder and Silver*, "Defendant's posts, and the Blog generally, highlights the 'geographically-neutral content . . . [and] geographically-neutral nature of the forum.'" *Advanced Career Techs., Inc. v. Does 1-10*, No. 13-cv-0304-WJM-KLM, 2015 WL 328639, at *4 (D. Colo. Jan. 23, 2015). By contrast, as the undisputed jurisdictional facts set forth above show, RF, like the defendants in *Calder* and *Silver*, expressly aimed its conduct at the forum.

### B. FPI's Injuries—Reputational and Monetary—Arose Out of RF's Colorado-Related Activities.

The final part of the minimum contacts analysis for specific jurisdiction is whether FPI's

injuries "arise out of" RF's forum-related activities.  *Silver*, 382 F. App'x at 730-31.  That *prima facie* showing is also easily made here, where RF's motion makes no argument to the contrary. But for the sake of completeness, we note that RF's scheme worked as intended.  FPI suffered great financial and reputational injury due to RF's Posting and Tweets, and these injuries arose out of RF's Colorado-based activities.  *See supra* at 3-5.  In *Silver*, the Tenth Circuit found that the plaintiff's injuries arose out of the defendant's blog post that was published in New Mexico because the "blog was expressly aimed at Mr. Silver and his New Mexico-based business for the purpose of causing him injury there.  *Id.* at 731.  This mirrors the *Calder* Court's rationale in finding that the defendants' contacts with California through the article they published were the cause of the plaintiff's injury.  465 U.S. at 791 (defendant's conduct in Florida was "calculated to cause injury to respondent in California" and did indeed cause injury there).  Here, FPI's claims arose from RF's contacts with Colorado.  Accordingly, RF's motion to dismiss on the basis of personal jurisdiction should be denied.

## V.   COLORADO IS A PROPER VENUE FOR THIS ACTION.

RF forfeited any argument under 28 U.S.C. § 1391(b)(2) when it removed this case to federal court.  When a case is removed, venue is controlled by 28 U.S.C. § 1441(a), ***not*** 28 U.S.C. § 1391(b)(2).  *See Lundahl*, 62 F. App'x at 218; *see also Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953).  Under 28 U.S.C. § 1441(a), venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending."  Accordingly, RF's arguments based on 28 U.S.C. § 1391(b), First Mot. at 9, are frivolous.  Venue is proper here.  *See Gallagher's N.Y. City Steakhouse Franchising v. 1020 15th St.*, No. 08-cv-01639-PAB-BNB, 2009 U.S. Dist. LEXIS 58576, at *5 (D. Colo. June 23, 2009).

**VI.    FPI HAS ADEQUATELY PLED EACH OF THE CLAIMS SET FORTH IN THE COMPLAINT.**

As set forth in the Complaint, attacking FPI was the lynchpin of defendants' short-and-distort scheme.  To that end, RF manufactured a "report" designed to scare investors into believing FPI faced insolvency and, in response, sell their FPI stock so defendants could profit from their short positions.  Compl. ¶¶ 27-29.  To further the scheme, RF published its Posting under the attention-grabbing headline "Farmland Partners: Loans To Related-Party Tenants Introduce Significant Risk Of Insolvency - Shares Uninvestible," Posting at 1, and continued its attack on FPI and its CEO for nearly forty pages of false and misleading accusations.  All aspects of the Posting's headline were and are false and misleading:  the loans were not to related-parties, the loan program at issue comprised approximately 1% of FPI's business and could have no impact on its solvency even if the allegations were true (they are not), and the shares were and are held by many investors.  RF does not and cannot refute the falsity of those statements.

The false and misleading statements did not end at the title.  A non-exhaustive list of defamatory "facts" in the Posting and Tweets demonstrate the extent of RF's attacks on the Company and Mr. Pittman.  RF announced:

- FPI faced a "significant risk of insolvency."  Compl. ¶ 21; Posting at 1; Tweets 1, 9.

- Paul Pittman pledged his shares.  Compl. ¶ 26; Posting at 29-31; Tweets 7-8.

- FPI was "artificially increasing revenues by making loans to related-party tenants." Compl. ¶ 23; Posting at 1; Tweet 2.

- FPI failed to properly disclose the financial impact of its loan program.  Compl. ¶ 24; Posting at 10; Tweets 1, 3, 6.

- The departures of FPI's auditor and directors were related to concerns about the loan

program.  Compl. ¶ 25; Posting at 32-34; Tweet 8.

RF then amplified its defamatory speech through its Twitter account.  *See, e.g.*, Tweet 17 ("$FPI

lots more on the loan program and Pittman to come. Stay tuned …").  And RF's Tweets

repeatedly referenced the Posting and asserted that the statements therein were factual.  *See, e.g.*,

Tweet 18 (". . . $FPI has had 2.5 days to address the facts. This is all shareholders get??"); *see*

*also* Tweets 13, 19-20.

Now that RF has been caught, it argues that, while some of these facts are false, they are

not material, and other facts are immune from attack as opinions protected by the First

Amendment.  Such arguments find no place in opposition to a motion to dismiss; they cannot

withstand well-settled rules concerning liberal pleading standards or the facts plainly alleged by

FPI.  What RF desperately wants is to avoid discovery into the merits of its malfeasance, which

RF knows will reveal actionable misconduct rendering it liable to FPI and will undoubtedly

invite additional scrutiny from the regulators charged with protecting the integrity of the public

markets.  RF's motion to dismiss for failure to state a claim should be denied.

A.    **Standard of Review.**

At this early stage, the Court must "assume the truth of all well-pleaded facts in the

complaint, and draw all reasonable inferences therefrom in the light most favorable to the

plaintiffs."  *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  "[G]ranting [a]

motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the

spirit of the liberal rules of pleading but also to protect the interests of justice."  *Id.* (citations

omitted).  FPI's Complaint must only contain "enough allegations of fact, taken as true, 'to state

a claim to relief that is plausible on its face.'"  *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th

Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct."  *McDonald*, 769 F.3d at 1210 (citation omitted). Accordingly, for fact-intensive claims like those at issue here, motions to dismiss are rarely granted.  *See, e.g.*, *Berard v. Town of Millville*, 113 F. Supp. 2d 197, 202 (D. Mass. 2000) (denying motion to dismiss defamation claim because "inquiry into whether a statement is fact or opinion is fact-intensive").

In analyzing FPI's claims, the Court should look to its Complaint, along with documents referenced therein, including the Posting and RF's Tweets.  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (the court may "consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (internal quotation & citation omitted); *accord Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

Whether a statement is actionable as defamation involves two inquiries.  "The first inquiry is whether the statement is 'sufficiently factual to be susceptible of being proved true or false.'"  *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).  "The second inquiry is whether reasonable people would conclude that the assertion is one of fact."  *Keohane*, 882 P.2d at 1299.  As the Tenth Circuit has ruled, a statement is false where, as here, it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Brokers' Choice of Am.*, 861 F.3d at 1107 (internal citation omitted).  The focus is on how a reasonable person would understand RF's statements in context, not whether some portion of some sentences might be

"literally" true if considered in isolation.  *Id.* at 1108 (determining falsity requires considering the totality of publications "in context").  Further, the Tenth Circuit will compare the "gist" of the publication to the truth of the matter.  Where the "gist" of the entire publication is against the "truth of the matter," that also supports a finding of falsity.  *See id.* at 1111-12, 1129-30.

 Under this standard, RF's motion to dismiss for failure to state a claim should be denied.

**B.     The Complaint States a Viable Claim for Defamation.**

FPI adequately pled defamation under Colorado law because its Complaint sets forth allegations that RF's statements were:  (1) defamatory, (2) materially false, (3) concerning FPI, (4) published to a third party, (5) published with actual malice, and (6) caused actual or special damages. *Brokers' Choice of Am.*, 861 F.3d at 1109.  It is undisputed that RF published statements about FPI on Seeking Alpha and Twitter.  *See generally* Posting; Tweets.  And the Complaint satisfies the remaining elements by amply describing how the published statements were defamatory, materially false, made with actual malice, and damaged FPI.  *See* Compl. ¶¶ 2-4, 34, 38-41, 55, 67, 94, 98-100.

**1.     FPI alleged falsity**

As set forth above, the Posting contains numerous false and misleading statements, including that:  (1) a loan program constituting 1% of a business could somehow cause a risk of insolvency, (2) there were undisclosed related-party transactions, and (3) auditors and directors resigned over what the Posting supposedly "uncovered."  Posting at 1-2, 4, 31-34.  RF does not deny that all of those assertions were false and designed to drive FPI's stock price down to profit on defendants' short positions.  Moreover, RF expressly concedes that the Posting contains a false statement.  First Mot. at 21-22 (admitting that the statement concerning AFFO set forth in

27

paragraph 43 of the Complaint and page five of the Posting was false).

Further, because the goal was to induce panic selling, RF made clear it wanted readers to understand statements in the Posting were facts.  *See, e.g.*, Tweet 18 (". . . $FPI has had 2.5 days to address the facts…."); Tweet 13 ("Tell him to specifically deny the facts in an SEC disclosure where it matters.").  RF also stipulates to intentional deception.  To cause investors to dump FPI's stock, RF represented that the Posting was a credible source of facts written by a group of people who all reached the same "conclusion."  Posting at 34.  Now that the goal is to hold onto its ill-gotten gains, RF argues that representation was false, claiming the Posting represents the "opinions" of just one "sole author."  *See* RF Decl. at 1, ECF No. 18-1; July 9 Letter at 1.  Discovery will reveal the truth.  For now, falsity has been alleged.

### 2.    FPI alleged materiality.

Materiality of a statement is assessed "by comparing the damage it has done to the plaintiff's public reputation to the damage the truth would have caused."  *Bustos v. A & E Television Networks*, 646 F.3d 762, 764-65 (10th Cir. 2011).  Here, a reasonable investor easily could find the true statements in the Complaint to be materially different from the defamatory statements RF published in the Posting and Tweets.  And the impact on reasonable readers of RF's statements is evident from the immediate (and intended) impact the defendants' scheme had on FPI stock, which fell 39% based on the falsehoods material to the company's reputation.  *See* Compl. ¶ 34.  Statements regarding "insolvency," FPI's shares being "uninvestible," directors and auditors leaving because of concerns regarding the company's loan program, and the company artificially increasing revenues (among other attacks) are material on their face.  *See, e.g.*, *id.* ¶¶ 20-29, 38-40, 43.  FPI's stock price drop on July 11, 2018 reflected that reality.

RF turns the law on its head in arguing that materiality "in and of itself is subject to opinion" and, therefore, a statement cannot be proven false if its materiality is in dispute.  First Mot. at 20.  RF's argument confuses the materiality prong with the falsity prong.  Disputes about materiality should be resolved by a jury by comparing the effect of "the truth" to the defamatory statement.  *Bustos*, 646 F.3d at 764; *see also Brokers' Choice of Am.*, 861 F.3d at 1107 (quoting *Bustos*, 646 F.3d at 765) (statements are material where they are "likely to cause reasonable people to think significantly less favorably about [a company] than they would if they knew the truth.").  Even if RF tries to dispute what "the truth" is, that dispute is not presently before the Court.  On a motion to dismiss, the truth is accepted as FPI pled it.

### 3.   FPI alleged malice.

Allegations that RF acted "with knowledge that the statement was false or with reckless disregard of whether it was false or not" satisfy the malice element.  *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1358, 1361 (Colo. 1983) (citation omitted).  This is especially so where, as here, "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."  *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *see also Burns*, 659 P.2d at 1361 ("A key issue to be resolved in determining reckless disregard is the credibility of the reporter or publisher in the context of the surrounding facts and circumstances.").  Accordingly, this is not an issue ordinarily resolved at the motion to dismiss stage.  *Burns*, 659 P.2d at 1361 ("The trier of fact must resolve issues of credibility.").  That said, there are at least four reasons why malice has been sufficiently alleged.

*First*, RF had a strong motive to publish defamatory statements, even if RF doubted those statements were true, because RF stood to profit from a public sell-off of FPI's stock.  Compl.

¶ 29.  FPI pled that "at the time [RF] published its Posting, there were investors with substantial short positions and/or put options in FPI's stock that were soon going to expire" and that the Posting was written "specifically to drive the price of FPI's stock down so that [RF] could profit quickly."  *Id.* ¶¶ 29, 31.  RF's motive underscores that RF did not publish the Posting and Tweets in good faith.  *See Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1042-43 (10th Cir. 2013) ("The motivation behind a publication is a factor to consider in determining whether the evidence shows a publisher acted with actual malice") (citations omitted).

  *Second*, FPI pled that RF deliberately failed to corroborate its statements with FPI before publishing them.  Compl. ¶¶ 8-18.  "Failure to investigate obvious sources of refutation or corroboration of statements, especially when there is no time-pressure on their publication, may indicate not only negligence, but the higher standard of actual malice."  *Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1180 (D. Colo. 1999); *see also Burns*, 659 P.2d at 1361-62.  The July 9 Letter sent to FPI that went to the core of the Posting illustrates a failure to investigate sufficient to demonstrate malice, especially at this stage of the case.  Through that letter, RF asked FPI to respond in writing to more than thirty inquiries, no questions asked, within 24 hours.  Compl. ¶ 13.  And RF did not send a draft copy of the Posting with the July 9 Letter—which it claimed was already drafted—giving FPI even less of an opportunity to provide information relevant to the issues raised in the Posting.  *Id.* ¶ 15.  Nevertheless, the Posting baldly stated:  "We reached out to FPI's management with a list of questions (located at the end of this report). The company did not respond."  Posting at 4; *see* Compl. Ex. A at 1, July 9 Letter; *see also* Tweet 18 ("Starting from when we sent management our detailed questions asking for response, $FPI has had 2.5 days to address the facts.").  FPI did respond and refute those allegations right after the attack.

Compl. ¶ 47.  Had RF genuinely been interested in verifying its claims and only publishing truthful statements, it could easily have done so.  Of course, that was not RF's plan.  Instead, it wanted to profit off an illegal short-and-distort scheme.  Nothing more is needed to sufficiently allege malice.  *See Burns*, 659 P.2d at 1361.

*Third*, RF used language demonstrating high confidence about the extreme statements that FPI maintains are false.  For example, the Posting's title includes the words, "Significant Risk Of Insolvency - **Shares Uninvestible**."  Posting at 1 (emphasis added).  This unequivocal language surely helped cause panic selling of FPI stock—the goal of the short-and-distort attack.  *See* Compl. ¶ 29.  Such conduct is not consistent with good faith.  *See Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 319 (Colo. 1981) en banc ("When one . . . fabricates specific facts appearing in a story, and writes the story in a manner calculated to invite a factual inference that the [speaker] has uncovered . . .corruption . . . one knowingly risks the likelihood that the statements and inferences are false and thereby forfeits First Amendment protections.").

*Fourth*, "there are obvious reasons to doubt the veracity of the informant or the accuracy of [RF's] reports."  *St. Amant*, 390 U.S. at 732.  To the extent the Court considers RF's Declaration in ruling on the First Motion, it is notable that the Declaration contradicts RF's Tweets, the Posting, and the July 9 Letter by declaring that he was the "sole author" of the Posting and Tweets.  RF Decl. at 1-2.  RF now asserts that its use of misleading pronouns was an intentional effort to deceive readers.  *See* RF's Response to FPI's Motion to Remand, Dkt. 29, at 3-4.  RF's admission that it was intentionally deceptive in the Posting, Tweets, and the July 9 Letter does not support its motion to dismiss; rather, it is devastating to it by exposing additional reasons to question RF's veracity.  And as the Colorado Supreme Court has recognized, RF's

effort to remain anonymous—for now—while attacking FPI itself suggests a desire to do damage to the company. *Keohane*, 882 P.2d at 1300 n.11 (noting an alleged defamer's decision not to use her real name "may be some evidence that she wished to damage [the plaintiff] while attempting to avoid culpability").[13]

For all of the aforementioned reasons, RF's motion to dismiss FPI's defamation claim should be denied. RF's statements in the Posting and the Tweets were defamatory in nature, not constitutionally protected, materially false, and made with malice. Nothing further is required to deny RF's motion to dismiss for failure to state a claim. *Burns*, 659 P.2d at 1362. Because RF introduces its summary judgment arguments now, however, FPI is forced to briefly respond.

**C.     The First Amendment Does Not Shield RF at This, or Any, Stage of the Case.**

The Supreme Court has made clear that "inaccurate and defamatory reports of facts [are] matters deserving no First Amendment protection." *Time, Inc. v. Firestone*, 424 U.S. 448, 457 (1976) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). Moreover, "[a] speaker is not accorded free speech protection for attacks on an individual's reputation interests by framing the attack as 'opinion.'" *Burns*, 659 P.2d at 1358, 1360-61 (holding that a statement was not protected under the United States or Colorado Constitution when it "could have been interpreted by a substantial number of members of the community and by the jury as a statement

---

[13] RF's response to these allegations supporting malice is to yet again misdirect the Court regarding controlling law. RF argues that "the actual malice standard does not implicate the defendant's motive or attitude towards the plaintiff." First Mot. at 23-24 (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 857-58 (10th Cir. 1999)). But in *Jefferson*, the defamation claim had already failed on First Amendment grounds and what the court actually held was that claims for intentional interference torts cannot be premised on the exercise of free speech, regardless of the speaker's motive. *Jefferson*, 175 F.3d at 857-58. Here, RF's defamatory statements were not a legitimate exercise of free speech and therefore *Jefferson* does not apply.

of fact susceptible to proof or disproof").  FPI has unambiguously pled that RF's Posting and

Tweets were materially false and made with malice as part of an illegal short-and-distort scheme

designed to unjustly enrich the perpetrators.  Those pleadings are to be accepted as true at this

stage.  *McDonald*, 769 F.3d at 1210.  As such, the First Amendment does not save RF.

> **D.      RF's Arguments That the Defamatory Statements Are Mere Opinion Fail.**

RF's primary line of defense is not that what it said was true, but that the statements

identified in the Complaint were only opinions, contending there can be no liability for what RF

frames as "*conclusions* drawn from the disclosed facts and records."  First Mot. at 14-15.

(emphasis in original).  Discovery will defeat that defense.  But, for now, we note RF ignores

that the Supreme Court has held otherwise, explaining "if the speaker states the facts upon which

he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them

is erroneous, the statement may still imply a false assertion of fact. Simply couching such

statements in terms of opinion does not dispel these implications."  *Milkovich v. Lorain Journal

Co.*, 497 U.S. 1, 18-19 (1990); *see also Burns*, 659 P.2d at 1358 ("opinions may lose their

constitutional protection when 'the average reader or listener or viewer perceives the comment as

essentially an assertion of fact, in light of the relative specificity of the language used and the

relative insufficiency of the connection of such language to supporting fact'") (citations omitted).

The Court in *Keohane* specified three factors relevant to determining when statements are

actionable:  "(1) how the assertion is phrased; (2) the context of the entire statement; and (3) the

circumstances surrounding the assertion, including the medium through which the information is

disseminated and the audience to whom the statement is directed."  882 P.2d at 1293 (citation

omitted).  All three factors necessitate a conclusion that RF's statements designed to cause FPI's

stock to drop on July 11, 2018 are unprotected and defamatory.

RF's assertions were phrased in terms that could—and did—lead reasonable people to believe they were factual.  The Tweets—which sought to give legitimacy to the Posting by referring to it as a "report" full of "facts"—reinforce that conclusion.  *See Lawson v. Stow*, 327 P.3d 340, 348-49 (Colo. App. 2014) (although statement was phrased in terms of what the speaker felt, in context, it was part of an effort to convince a third party of the underlying fact and could therefore be actionable).

Furthermore, RF's individual defamatory statements imply the existence of undisclosed defamatory factual predicates when read in the context of RF's references to its "research."  The Posting implied that RF had completed extensive background "research," which could certainly lead a reasonable person to believe that the underlying facts proved RF's conclusions.  But various references to RF's purported "research" and factual knowledge did not specifically disclose the underlying facts, provide citations, or clarify what the research entailed.  *See, e.g.*, Posting at 1 ("We found *evidence that strongly supports*"); Posting at 2 ("When *we started looking into FPI*, we found . . ."); *id.* ("But it was not until we reviewed *hundreds of deed records in dozens of counties across the country* that we came to believe . . ."); *id.* ("Our *research* leads us to believe . . .") (emphases added to all).

Similarly, the Posting also stated:  "And it appears that we are not the only concerned party. Since making its first loan to Jesse Hough in July 2017, four board members and FPI's president have resigned.  And in March, FPI dismissed PWC. . . ."  Posting at 4.  This statement falsely implies that RF knew that the Company's board members departed because they believed something was wrong at FPI—RF even admits as much.  *See* First Mot. at 20 ("at most, [these

34

statements] implied that the departures and the loan program were related").  This is not a basis

to dismiss FPI's Complaint, it is an admission of guilt, and actionable here as defamation.  *See*

*Keohane*, 882 P.2d at 1302-03 (finding that the statement "what do you think, was he paid in

drugs or money" implied that the subject of said statement accepted a bribe, which was a

potentially defamatory statement sufficiently factual to be actionable).

Furthermore, Tweets 17 and 19 destroy any notion that RF's statements were opinions or

that RF fully disclosed its factual bases.  They expressly tell readers that RF possessed more

defamatory information that it had not yet disclosed.  Tweet 17 ("lots more on the loan program

and Pittman to come. Stay tuned …"); Tweet 19 ("they have another thing coming. We are not

done here. We haven't even touched on Pittman. Stay tuned …").  These are textbook examples

of actionable statements that "imply the existence of an undisclosed defamatory factual

predicate" upon which RF based its publications.  *Burns*, 659 P.2d at 1360.

RF next points to a generic disclaimer in the Posting to distance itself from the many

falsehoods published therein, but that offers no support for RF's motion.  *See* Posting at 44-45;

*see also Burns*, 659 P.2d at 1358-61 (a defendant cannot rely on assertions that a statement was

merely an opinion to defeat a defamation claim).  Indeed, RF's reliance on its so-called

disclaimer is belied by its own actions, as RF's Tweets about FPI included no such disclaimer.

> **E.   The Remainder of FPI's Claims Were Adequately Pled.**
>
> **1.   FPI adequately pled that RF intentionally interfered with its prospective business relations.**

A claim for intentional interference with prospective business relations requires "a

showing of improper and intentional interference by the defendant that prevents the formation of

a contract between the plaintiff and a third party" where there is a "reasonable likelihood or

reasonable probability that a contract would have resulted." *MDM Grp. Assocs., Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 886 (Colo. App. 2007). The Complaint satisfies each of these elements. *See, e.g.*, Compl. ¶¶ 69-76 (describing RF's intentional interference with FPI's business and resulting lost contracts and business opportunities)

The Complaint alleged that RF knew FPI is a publicly traded company in the business of managing and acquiring land and that RF's Posting attacked the integrity and viability of FPI's business. Compl. ¶¶ 20-30. Claiming that FPI was falsifying its books and is insolvent is, of course, an effective way to deter third parties from engaging in business with FPI. As such, FPI has met its pleading burden.

FPI further pled that it lost prospective business relations with current and potential investors and shareholders of its stock due to RF's intentional short-and-distort scheme, and that it lost prospective business relations with other third parties, including lenders, property owners, potential investors, and farmers, due to RF's statements. Compl. ¶¶ 6, 68-75. FPI's prospective business relations were further complicated by the fact that RF's statements caused the Company's stock to dive by approximately 39%. *Id.* ¶ 34. Therefore, FPI has pled that there "was a reasonable likelihood or probability that a contract would have resulted" that was "beyond a mere hope." *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017) (internal citation omitted).

## 2. FPI has adequately pled an unjust enrichment claim.

"[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d

1134, 1141 (Colo. 2008) (citations omitted).  In satisfying these elements, FPI pled facts showing that RF's short-and-distort scheme conferred a monetary benefit on RF (among other defendants) at FPI's expense.  *See* Compl. ¶ 80 ("[RF] had a short position in Farmland Partners, and thus realized gains when the price of Farmland Partners' stock declined following [RF's] publication of its false, misleading, defamatory, and/or disparaging information about Farmland Partners."); *see also id.* ¶ 34 ("[S]oon after [RF] published its internet posting, Farmland Partners' stock price dropped by approximately 39%).

RF argues that "FPI makes no factual allegation that it conferred any benefit on [RF]," First Mot. at 27, but that is not the standard.  The standard instead asks whether RF received a benefit at FPI's expense that it would be unjust for RF to keep.  *See Greenway Nutrients v. Blackburn*, 33 F. Supp. 3d 1224, 1261 (D. Colo. 2014) ("under Colorado law, a plaintiff must allege that at the plaintiff's expense, defendants received a benefit under circumstances that would make it unjust for defendants not to make restitution").  Therefore, FPI sufficiently pled RF unjustly received a benefit at FPI's expense, and its unjust enrichment claim should survive.

### 3.      FPI's disparagement claim is properly pled.

"A claim for disparagement requires demonstration of 1) a false statement; 2) published to a third party; 3) derogatory to the plaintiff's title to his property or its quality, to his business in general or to some element of his personal affairs; 4) through which defendant intended to cause harm to the plaintiff's pecuniary interest or either recognized or should have recognized that it was likely to do so; 5) malice; and 6) special damages."  *TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242, 1249 (D. Colo. 2005).

FPI pled that RF made a litany of false statements about it published on Seeking Alpha

and Twitter.  *See* Compl. ¶¶ 2-4, 34, 38-41, 55, 67, 94, 98-100.  And FPI has pled that those statements were derogatory to the Company and to Mr. Pittman's business and personal reputations respectively.  Further, as detailed *supra* at 29-32, FPI has pled that RF intended to cause harm to the Company and acted with malice.  *Id.* ¶¶ 8-18, 25, 31 65-66.  Finally, the Complaint pled that RF's disparagement caused FPI damages.  *Id.* ¶¶ 34, 63, 67.

RF's only argument for dismissing this claim is that the claim "requires as a prerequisite a defamatory false statement of fact."  First Mot. at 26.  As shown above, FPI has pled an abundance of such statements.  RF's argument is without merit.

### 4.    FPI properly pled its Colorado Consumer Protection Act claim.

"A valid claim under the [Colorado Consumer Protection Act] consists of the following elements: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1218 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Linings, Inc.*, 62 P.3d 142, 146-147 (Colo. 2003)). "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:  Disparages the goods, services, property, or business of another by false or misleading representation of fact."  Colo. Rev. Stat. § 6-1-105(1)(h).

FPI has pled that RF engaged in a deceptive trade practice when it disparaged FPI and Mr. Pittman through the Posting and Tweets.  *See* Compl. ¶¶ 2-4, 34, 38-41, 55, 67, 94, 98-100.

There can be no credible dispute that RF's actions "significantly impact[ed] the public as actual or potential consumers" of FPI's stock:  RF's disparagement caused its stock to drop by 39%. *Id.* ¶ 34.  FPI is currently facing lawsuits from investors who allege harm.  FPI has therefore stated a claim under the Colorado Consumer Protection Act.

Once again, RF's sole argument for dismissing this claim is that "FPI has failed to plead Rota Fortunae made such a [false or misleading] statement about FPI."  First Mot. at 27.  And once again, this is incorrect and does not provide a basis for dismissal.

### 5.    FPI's civil conspiracy claim is appropriate because RF did not carry out the scheme alone.

The elements of a civil conspiracy claim are:  "(1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result."  *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) (citations omitted).

FPI sufficiently pled these elements.  *See* Compl. ¶¶ 93-100 (describing the conspiracy between RF and the Does).  RF's argument that FPI did not state a claim for civil conspiracy relies solely on its premise that RF was the only "author" of the Posting and Tweets, First Motion at 27, a statement contrary to the facts alleged in the Complaint and insufficient to address collaborators whose role in the short-and-distort scheme was something other than as co-authors of the defamatory posting.

RF disputes that its (and its various counsel's) many references to "we" in the Posting

and during litigation refer to more than one person.  *See* July 9 Letter (Mr. Mitzner writing FPI on behalf of "a group of investors" who "have prepared and anticipate publishing an article"); Compl. ¶¶ 30, 96; Posting at 1-3; Tweets 9, 14, 16, 18, 20 (RF referring in the Posting time and again to what "we found," "[w]e believe," "[w]e know," and "[w]e think" and presented "[o]ur research" and "our opinion."); Tweet 19 ("We are not done here. We haven't even touched on Pittman").  At best, this presents a factual dispute not appropriately resolved at the motion to dismiss stage.

Further, RF did not deny FPI's allegations that others were involved in the overall conspiracy, instead choosing, yet again, to focus narrowly on who ***the author*** of the Posting is. *Compare* First Mot. at 27 *with* Compl. ¶¶ 95-96.  RF's Declaration only says that RF is the "sole *author*" of the Posting and Tweets.  RF Decl. at 1-2. (emphasis added).  But FPI's civil conspiracy claim does not only extend to co-conspirators who worked with RF by aiding it in "drafting" the Posting.  This claim extends to anyone who worked with RF in researching, drafting, posting, and Tweeting about the Posting, as well as anyone who worked with RF amassing and selling short positions in FPI's stock and profiting unjustly.  *See generally* Complaint.[14]  The claim has been pled.

**CONCLUSION**

For foregoing reasons, FPI respectfully requests that this Court deny RF's motions to dismiss.  FPI further asks for costs and whatever other relief the court deems proper in light of the specious arguments made by defendant.  In the unlikely event any portion of RF's attack on the Complaint should be sustained, FPI requests leave to replead such portion.

---

[14] Not surprisingly, RF has refused discovery into the scheme and the role of the conspirators. *See* Pietari Decl. Ex. C at 1-2; Ex. D.

Dated: November 16, 2018

Respectfully submitted,


*/s/ Michael D. Birnbaum*

Scott F. Llewellyn
Michael D. Birnbaum
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
sllewellyn@mofo.com
kpietari@mofo.com
*Attorneys for Plaintiff, Farmland Partners Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 16th day of November, 2018, the foregoing opposition to

RF's motions to dismiss, the related declarations, and all attachments were electronically filed

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following email addresses:

jchanin@fostergraham.com,
kroush@fostergraham.com,
mbrooks@fostergraham.com

*Counsel for Defendant, Rota Fortunae*

*/s/ Michael D. Birnbaum*

Scott F. Llewellyn
Michael D. Birnbaum
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
sllewellyn@mofo.com
kpietari@mofo.com
*Attorneys for Plaintiff, Farmland Partners Inc.*