**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CASE NO. 1:18-cv-02351-KLM

FARMLAND PARTNERS, INC.,

    Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME IS UNKNOWN), JOHN/JANE DOES 2-10 (WHOSE TRUE NAMES ARE UNKNOWN),

    Defendants.

**REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL**

Plaintiff Farmland Partners, Inc.'s ("FPI") response to Defendant Rota Fortunae's ("RF") motion for a stay pending appeal is par for the course—FPI repeatedly expresses its outrage but fails to provide any substance in support. FPI's response boils down to two arguments: (1) the Court's denial of the TCPA motion without prejudice is not an appealable order and (2) by appealing this denial, RF and his counsel are merely engaging in frivolous "procedural shenanigans." Not only do RF and his counsel take great exception to this characterization, FPI is also wrong on the merits. RF must appeal to protect his rights under Texas' anti-SLAPP statute (TCPA")—rights which the Tenth Circuit has already deemed akin to immunity in the very caselaw FPI featured in its response to the TCPA motion (*Los Lobos Renewable Power v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018)). In fact, the Tenth Circuit has already directed the parties to address appellate jurisdiction in the parties' merits briefing, rather than in a separate, threshold motions practice on jurisdiction.

{00661710.DOCX / 1}    1

In its Motion to Stay, RF cited substantial authority holding that a denial of a TCPA motion is appealable under the collateral order doctrine. The Court's characterization of its denial of the TCPA motion as "without prejudice" does not change this result. The TCPA contains a strict statutory deadline to file a TCPA motion to dismiss—60 days after the filing of the complaint. The early deadline has substantive meaning and value—early dismissal to end legal costs as soon as possible in qualifying lawsuits. That statutory time limit has passed. Even if the statute contemplated a "re-filing," RF is unable, as a matter of law, to later timely "refile" the motion. RF's situation is analogous to a plaintiff whose case was dismissed without prejudice but who was prevented from re-filing because, in the interim, the statute of limitations for filing ran. In those cases, like here, a dismissal without prejudice is final because it is effectively a dismissal with prejudice. RF therefore faced a dilemma: either waive his ability to avail himself of the immunity-like protections against SLAPP suits that the TCPA provides, or appeal the denial. He chose to appeal.

In light of the foregoing, FPI's faux-outrage at RF's valid exercise of his rights is hard to swallow. FPI's characterization of RF's counsel as making "dubious strategic choices," and describing timely filings as somehow untimely and improper is tiresome. And FPI's additional claims that RF and his counsel are "defy[ing] Orders of this Court," and that RF is "thumb[ing] his nose at the Court" because FPI doesn't like RF's answers to FPI's interrogatories (*See* Doc. No. 57, FPI's Motion for a Hearing) are even worse.

FPI paints itself as a righteous company that has been unjustly harmed by RF's allegedly defamatory article and opinions. Yet, despite numerous opportunities, FPI has repeatedly failed to rebut RF's opinions in the Article or the facts on which they were based. Even its "rebuttal" to the Article (Doc. No. 1-1) lacked any substantive push-back and even continued to advance a misleading

narrative that cuts through the heart of FPI's case (FPI claimed that FPI's CEO Paul Pittman and Jesse Hough are no longer business partners). When RF later sent FPI's board of directors another letter identifying additional public records that demonstrate Pittman and Hough's ongoing business relationship and additional issues with FPI's disclosures (attached here as Exhibit A), FPI again declined to substantively respond (Exhibit B).

Indeed, although FPI claims that RF's Article caused FPI's stock to plummet, the truth is that FPI's stock has been steadily declining since its IPO in April 2014:



The fact that FPI's stock has been declining both before and after RF's Article undercuts FPI's claims that RF manipulated the market and bolsters RF's hypothesis that FPI's stock was overvalued. If RF engaged in market manipulation, any stock price drop would have been short-term. Instead, as an article in The Economist noted, "[p]rice declines that make short trades profitable tend to endure, undermining claims of manipulation. By seeking out overvalued assets, short-sellers help rein in animal spirits and prevent bubbles from forming." *See Baiting Bears*, The Economist, Oct. 11, 2018 (attached as Exhibit C). FPI also conveniently ignores that many of RF's predications in the Article have now come to pass. Like RF predicted, FPI recently cut its dividends by 60%, and even though

FPI says it faces no risk of insolvency the company has stopped expanding and is now selling farms to raise cash. Also, after RF put forth the opinion in the Article that FPI was artificially inflating its revenues, FPI lowered its revenue guidance.

Thus, since FPI can't really show that RF caused its stock price to drop or that RF's claims were not truthful, FPI's real reason for filing this action can only be to punish RF for expressing a critical opinion and taking out a short position on FPI's stock—a completely legal market activity that Paul Pittman, FPI's CEO, threatened when he said that he would be cheering when the short-sellers "get killed." If FPI were truly concerned that RF's statements were false and that there was a genuine "short and distort" scheme afoot, FPI would have (1) substantively rebutted the allegedly false statements during the numerous chances it had to do so, (2) brought a Section 10b-5 securities violation claim instead of asserting only state tort claims to try and avoid federal jurisdiction, (3) sued other known players such as Seeking Alpha in New York, and (4) tried to take discovery before improperly serving alleged Doe defendants that FPI itself concedes may not even exist. It is FPI who is manipulating the legal process for its benefit and to RF's detriment.

FPI's aggrieved reaction to RF's discovery responses is equally disingenuous. First, RF filed his responses with the Court. They speak for themselves, and FPI's repeated mischaracterization of their content and sufficiency should be rejected out-of-hand. Second, RF responded in good faith to the questions posed—regardless of the questions' quality—and was neither required to respond to questions FPI did not ask nor to divine what FPI really sought when its questions were unclear. For example, FPI makes much of RF's alleged "failure to deny" FPI's speculation that others are paying for his attorneys fees. (Doc. No. 57 at 2-3). As per the interrogatory, RF identified those who gave him or received from him a "benefit." RF did not—and was not required to—affirmatively deny the

existence of non-existent people. And because RF did not incur attorneys' fees in relation to his "role researching, drafting, and disseminating" the Article, there was no one who received or paid attorney's fees in relation to the Article.[1]

FPI's allegation that RF "withheld information" because he objected to the vagueness of the term "direct or indirect benefit" also rings false. As RF pointed out, that term is vague. It could, for example, possibly encompass every government entity to which RF paid fees for the public records RF used as the bases for his opinions, or even dependent family members. Nonetheless, contrary to FPI's suggestion that RF was "silent," RF identified in good faith all the individuals who had knowledge of RF's research into FPI and who may have traded on FPI stock with that knowledge, although, crucially, RF did not trade on anyone's behalf and RF did not inform those individuals that RF would publish his research on FPI. RF's interrogatory responses made it clear that there were no "co-conspirators"—no one knew if he was going to publish his research on FPI, no one paid him to write the Article, and most importantly, no one helped him draft or publish the allegedly defamatory statements. FPI cannot rebut these facts.

Instead, FPI seems to repeatedly forget that it has brought a defamation action. It characterizes RF as having a "myopic focus on the authorship of the statements described in the Complaint" (Resp. at 11 n.2), when, relative to the "Does," defamation is the independent tort FPI pleads (Doc. No. 1-1 at 2), of which the remaining claims are derivative. *See Greenway Nutrients, Inc. v. Blackburn*, 33 F.Supp.3d 1224, 1251 n.21 (D. Colo. 2014) ("Civil conspiracy is a derivative cause of action that is not

---

[1] Apparently now FPI interprets its question to ask who is paying for RF's attorney's fees in this litigation, but that is not what the question asked and despite its irrelevance to jurisdiction, FPI could easily have asked that question directly.

independently actionable."). There must be some legally improper conduct for any alleged conspiracy to matter at all. *See id.*

Now, FPI ignores applicable law to argue that RF has appealed an unappealable order for sinister purposes. FPI's request for a hearing is merely another attempt to use its superior resources and aggressive litigation strategy to punish RF for his protected speech. FPI is forcing this Court to expend its time and resources when it is divested of jurisdiction. It is time for FPI to cease its disregard of the judicial process.

## ARGUMENT

As an initial matter, whether the denial of the TCPA motion is an appealable order under federal law (RF has never argued that the TCPA provides an independent means for appeal in federal court) is a matter for the Tenth Circuit, not this Court, to determine. That is because RF's filing of the Notice of Appeal "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990).

FPI refused to address this binding authority in its briefing. While FPI can try to argue that RF has appealed a non-appealable order, it is the Tenth Circuit who will make that decision. In fact, in a recent order, the Tenth Circuit indicated the appeal would proceed to merits briefing and directed the parties to address jurisdiction in those briefs. (Order attached as Exhibit D). Regardless, as again addressed herein, RF has properly appealed from an appealable order.

In arguing otherwise, FPI ignores the express legal bases underpinning RF's Motion (Doc. No. 52 at 6–7) and instead focuses on the fact that the Court denied the TCPA Motion without prejudice.

While RF agrees that a denial of a motion to dismiss without prejudice is generally not appealable, two crucial differences make the Court's denial of RF's TCPA motion appealable.

First, when "the dismissal without prejudice was, for all practical purposes, a dismissal *with prejudice*" because a statutory deadline to file has passed, such denials are treated as final orders subject to appeal. *See Rodriquez v. Colorado,* 2013 WL 1169429, 521 Fed. Appx. 670, * 1 (10th Cir. 2013) ("We treat a dismissal without prejudice as a dismissal with prejudice when the statute of limitations has run on the claims."); *Keeler v. Cereal Food Processors*, 250 F. App'x 857, 859 (10th Cir. 2007) ("The district court held that its dismissal of that case without prejudice did not toll the statutory filing deadline under Title VII."). Here, the TCPA has strict statutory deadlines for filing a motion to dismiss under the TCPA—a TCPA motion must be filed within 60 days after the complaint is filed. *See* Tex. Civ. Prac. & Rem. § 27.003. Now, RF is past that 60-day deadline and is statutorily barred from re-filing the TCPA motion (which FPI assuredly would have later argued).

RF's situation is directly analogous to cases where the court dismisses a claim without prejudice but in the interim the filing deadline—either a statute of limitations or other statutory deadline such as the 90-day window to file a Title VII claim—has passed. *See, e.g., Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 926 F.2d 959, 961 (10th Cir.1991) (abrogated on other grounds) ("Courts have specifically held that the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII."). In those cases, appeals courts treat such denials without prejudice as denials with prejudice. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001) ("[W]here the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court, the dismissal is final and appealable."). Because RF

cannot refile its TCPA motion, the Court's denial without prejudice of the TCPA motion is effectively a denial with prejudice.

Second, the denial of a motion invoking immunity protections is an appealable order under the collateral order doctrine. *Stewart*, 915 F.2d at 575 (interlocutory appeal from denial of defendant's qualified immunity motion for summary judgment proper). As the *Stewart* court explained, "the central issue in the appeal (of the denial of a motion invoking immunity protections) is the defendant's asserted right not to have to proceed to trial." *Id.*; *see also Los Lobos*, 885 F.3d at 663–68. Likewise, the TCPA creates "not simply the right to avoid ultimate liability in a SLAPP case, but rather . . . the right to avoid trial in the first instance." *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 751-52 (5th Cir. 2014). For this reason, denials of TCPA motions are treated as denials of statutory immunity rights. *Id.* ("the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression").

Importantly, in finding it had jurisdiction, the Fifth Circuit in *NCDR* relied not on the TCPA (as FPI suggests), but on the collateral order doctrine. *NCDR*, 745 F.3d at 748–49 (analyzing each of the three requirements of the collateral order doctrine; "Because we hold that the TCPA satisfies all three requirements, the collateral order doctrine supplies jurisdiction."). In so holding, *NCDR* distinguished the TCPA from other states' respective anti-SLAPP statutes that do not provide so robust protections as the TCPA, in particular, those not providing a statutory right to an immediate appeal. In contrast, by providing an immediate appeal right, "the Texas legislature has indicated the nature of the underlying right the TCPA seeks to protect . . . that right is not simply the right to

avoid ultimate liability in a SLAPP case, but rather is the right to avoid trial in the first instance." *Id.*[2]

Thus, RF is not appealing a run-of-the-mill denial without prejudice of a motion to dismiss. RF is appealing the denial of a motion invoking immunity protections that RF cannot refile because the statutory time to file has passed. Such an appeal is the only way to protect RF's immunity rights and is far from frivolous. Indeed, if RF did not appeal, he most likely would have lost his ability to invoke the substantial rights and protections available to him under the TCPA, including, most importantly, the right to avoid having to proceed with this litigation. Further, due to the nature of the appeal, that is, "the defendant's asserted right not to have to proceed to trial," RF's notice of appeal effectively stays the entire underlying case. Again, as the *Stewart* Court explained:

> In contrast to some interlocutory appeals under 28 U.S.C. § 1292(b) that challenge discrete orders that can be carved out and isolated from the remainder of the case, a motion to dismiss the *entire* proceeding based on a defense of double jeopardy or qualified immunity cannot be so isolated. If the defense is valid, then no part of the action should proceed against the defendant. In that regard, an interlocutory appeal from an order refusing to dismiss on double jeopardy or qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant.

915 F.2d at 576. For this very reason, the authority FPI presents concerning the standard for a generic stay (Resp. at 14) is inapposite. Because of the kind of order it was, RF need make no showing to obtain a stay while the order is considered on appeal.

FPI also mistakes the TCPA determination for a "factual analysis" regarding whether RF "was engaged in protected speech…" and thus going to the merits. (Resp. at 11.) That is incorrect.

---

[2] FPI incorrectly represents to this Court that *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010) is "yet another case RF does not even mention…" (Resp. at 12.) RF repeatedly and fulsomely addressed *Shady Grove* and its impact on the *Erie* analysis in its TCPA Motion. (*See* Doc. No. 22 at 7, 9, 10, 11).

*NCDR*, 745 F.3d at 749 ("[T]he denial of a motion to dismiss brought pursuant to the TCPA resolves an important issue separate from the merits of the case, satisfying the collateral order doctrine's separability requirement."). This again is why the caselaw to which FPI refers—e.g., *Kirkland v. St. Vrain Valley Sch. Dist.*, 464 F.3d 1182 (10th Cir. 2006) denying the appeal of decisions "inextricably intertwined" with the merits—is not applicable. But of course, FPI already knows this. FPI simply wants to avoid discussing the threshold holding in the very case upon which it hung its response to the TCPA motion (*Los Lobos*),[3] as it explicitly sets forth why such anti-SLAPP motion denials are in fact immediately appealable.

Therefore, RF asks the Court to recognize that this case is stayed because the notice of appeal of the TCPA denial divested this Court of jurisdiction to proceed with any part of the action.

Respectfully submitted this 28th day of January, 2019.

                                          */s/ John A. Chanin*
                                          John A. Chanin
                                          Katherine Roush
                                          Melanie MacWilliams-Brooks
                                          FOSTER GRAHAM MILSTEIN & CALISHER, LLP
                                          360 South Garfield Street, 6th Floor
                                          Denver, Colorado  80209
                                          *jchanin@fostergraham.com*
                                          *kroush@fostergraham.com*
                                          *mbrooks@fostergraham.com*
                                          Phone:  303-333-9810
                                          *Attorneys for Defendant Rota Fortunae*

---

[3] FPI does cite to *Los Lobos* (Resp. at 12 n.3, 13 n.5), but inaccurately states that, there, the Tenth Circuit rejected that "anti-SLAPP statutes confer immunity rights" and that held they do not apply in federal courts because all "anti-SLAPP statutes are procedural." But those portions of the Tenth Circuit's decision were plainly limited to New Mexico's anti-SLAPP statute.

## CERTIFICATE OF SERVICE

      I hereby certify that on this 28th day of January, 2019, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL** with the Clerk of the Court using the ECF system, and served via ECF to the following:

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
sllewellyn@mofo.com
kpietari@mofo.com

and

Michael D. Birnbaum
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
mbirnbaum@mofo.com

                                              */s/*      Lucas Wiggins
                                              Lucas Wiggins