Mr. John Good
Jernigan Capital
6410 Poplar Ave., #650
Memphis, TN 38119

Dear Mr. Good:

As you are likely aware, the company for which you serve as independent director, Farmland Partners (NYSE: FPI), was the subject of my July 11, 2018 article published on Seeking Alpha. Since then I have continued my investigation into public records related to FPI's business activities. Additionally, I received new representations from Jesse Hough. I write to you because as a new independent member of FPI's board, I believe you are best suited to review this letter in an unbiased and impartial light.

In addition to reasserting the research opinions of my July 11th article, this letter is intended to inform you and the board of my updated findings, including:

1. Potential misrepresentations regarding the business partnership between Paul Pittman and Jesse Hough.
2. Potential misrepresentations regarding Pittman's involvement in FPI's "former related parties."
3. Pittman and Hough's apparently ongoing partnership in Pine Ridge Holdings, Inc.
4. Pine Ridge Holdings' potential connection to two of the three loans FPI made to Hough.
5. Hough's recent representation about using FPI's loans to acquire Siffring Farms.
6. Pine Ridge Holdings' potential connection to Siffring Farms.

**FPI's Recent Representation Regarding Pittman and Hough's Relationship.** The common denominator in the matters discussed herein is the business partnership between Paul Pittman and Jesse Hough, which FPI recently represented no longer exists. On July 17, 2018, FPI responded to my July 11th Seeking Alpha article by issuing a public rebuttal. In the rebuttal, FPI characterized the professional relationship between Paul Pittman and Jesse Hough as follows:

[Hough] **was a business partner** of FPI's Chairman and CEO, Paul Pittman, prior to the Company's initial public offering and during the first couple of years subsequent to the initial public offering.

This statement definitively represents that Pittman and Hough are no longer business partners. Public records, however, appear to tell a very different and consistently-conflicting story.

**FPI's Disclosures Regarding Astoria Farms, Hough Farms and Pittman Hough Farms.** The July 17th rebuttal was not the first time FPI has represented a split in Pittman and Hough's business activities. FPI's 2015 10K disclosed the following:

On March 11, 2016, Mr. Pittman and Jesse J. Hough (on behalf of himself and certain other entities he controls) entered into an agreement pursuant to which, **effective December 31, 2015, Mr. Pittman ceased to hold any direct or indirect**

**EXHIBIT A**

November 16, 2018

interests in, or have control of, **Astoria Farms, Hough Farms** and American Agriculture Corporation.

The 2017 10K further disclosed:

As of December 31, 2017 and 2016, 4% and 6%, respectively, of the acres in the Company's farm portfolio were rented to and operated by **Astoria Farms and Hough Farms, both of which <u>were</u> related parties until December 31, 2015. Astoria Farms is a partnership in which Pittman Hough Farms LLC, which <u>was</u> previously 75% owned by Mr. Pittman, <u>had</u> a 33.34% interest.** The balance of Astoria Farms was held by limited partnerships in which Mr. Pittman was previously the general partner.

This statement clearly represents that Astoria Farms and Hough Farms are no longer related parties and appears to describe how the removal of Pittman's interest occurred. Note, however, that this disclosure does not say that Pittman no longer holds an interest in Pittman Hough Farms nor does it say that Pittman Hough Farms no longer holds an interest in Astoria Farms—as the statement may otherwise be interpreted.

Further information regarding the represented restructuring of Pittman Hough Farms can be found in an April 1, 2016 Form 4 (which does not come up in a default search on EDGAR):

[Pittman] received [FPI stock] as consideration from Hough Holdings, LLC in connection with the restructuring of Pittman Hough Farms, LLC (Pittman Hough)... in connection with restructuring transactions of various assets owned by Pittman Hough, **Mr. Pittman's pecuniary interest in OP Units held by Pittman Hough was increased from 75% to 78%...**"

Taken together, these disclosures suggest that Pittman still held an interest in Pittman Hough Farms (just not 75%), an opinion which is supported by current public records with the Illinois Secretary of State and an August 2016 FPI investor presentation. (*See* <u>first</u> & <u>second</u> enclosure).

Pittman's apparent continued interest in Pittman Hough Farms introduces questions related to FPI's disclosures about the former related parties.

**<u>May 11, 2016 Illinois Disclosures related to Astoria Farms</u>.** Two months to the day after the above-referenced agreement was signed to remove Paul Pittman from holding any "direct or indirect" interest in Astoria Farms, an Assumed Name Certificate for Astoria Farms was filed in Fulton County, Illinois. (*See* <u>third</u> enclosure). *The document, which is personally signed by both Pittman and Hough, reveals Pittman's continued involvement in Astoria Farms through Pittman Hough Farms.* This document was then notarized by FPI employee Lawrence Hyde, certifying that Pittman and Hough, personally known to Hyde, did in person read and sign the forgoing instrument.

Unlike the disclosure of Pittman's interest in Pittman Hough Farms, his interest in Astoria Farms cannot be found online. This record is obtainable only by traveling to the Fulton County Clerk's Office in Lewistown, Illinois (population 2,384).

2

November 16, 2018

If Pittman continues to hold an interest in Astoria Farms, I find it difficult to come to any other conclusion except that the SEC filings incorrectly disclosed that Astoria Farms is no longer a related party.

**Department of Transportation Disclosures related to Astoria Farms.** Further evidence suggesting that Pittman is still involved in Astoria Farms can be found online. A November 2017 auction (www.sullivanauctioneers.com/auction/astoriafarms) evidences Astoria Farm equipment being sold on location at 6001 E Jones Rd. in Astoria, IL. The Fulton County appraiser shows that the property located at 5991 E Jones, Astoria, IL (the approximate location of 6001 E Jones on Google Maps) is owned personally by Paul Pittman. (*See* fourth enclosure).

Included in the auction was a truck, which shows Astoria Farms Department of transportation number (#1813714 ). Searching the Department of Transportation's SAFER website shows that the Astoria Farms Partnership is a d/b/a for the "Legal Name: Paul Pittman." (*See* fifth enclosure).

**Pine Ridge Holdings, Inc.'s 2018 Nebraska Corporate Filing.** More recent evidence of Pittman and Hough's apparently ongoing business partnership is found in a 2018 corporate filing with the Nebraska Secretary of State, which shows that Paul Pittman and Jesse Hough are the officers and directors of Pine Ridge Holdings, Inc., a Wyoming entity.

Wyoming public records show that Pittman and Hough were Pine Ridge Holdings' officers and directors from its formation in 2013 thru 2016. Then in 2017, Pittman's name was removed from Pine Ridge Holdings' 2017 annual report (filed on December 20, 2017). But, less than one month later, on January 17, 2018, Pittman's name reappeared when Pine Ridge Holdings filed to do business in Nebraska. That filing, (*see* sixth enclosure) again shows that Pittman and Hough are the entity's officers and directors, and that they share the same address in a Denver high-rise apartment complex.

Pittman's involvement with Hough in Pine Ridge Holdings—and FPI's denial of their ongoing business partnership—is notable because Pine Ridge Holdings appears to have connections to two of the three loans FPI made to Jesse Hough.

**Pine Ridge Holdings, Inc. Potential Connection to FPI's August 2017 Loan to Hough.** On August 25, 2017, FPI loaned Jesse Hough $669,000 though Hough Holdings. (*See* seventh enclosure). The loan was secured by a property in Butler County, Nebraska. Butler County deed records show that three months earlier, on May 25th, Hough Farms and Pine Ridge Holdings were the "borrowers" on a deed of trust secured by the same Butler County property. (*See* eighth enclosure). Then, one month after FPI made the August 25th loan, the bank reconveyed the deed of trust, evidencing that the May 25th loan to Hough Farms had been repaid. (*See* ninth enclosure).

These transactions introduce legitimate questions. Namely, if Paul Pittman no longer has a direct or indirect interest in Hough Farms, why is an entity in which he is an officer and director— Pine Ridge Holdings—signing a loan jointly and severally with Hough Farms? (*See* eighth enclosure).

3

November 16, 2018

Furthermore, the transactions introduce the potential, reasonable inference that Pittman personally benefited from the August 2017 FPI loan to Hough Farms.[1] At very least, this information appears sufficiently material to warrant disclosing that an entity in which FPI's CEO is an officer and director was a co-borrower on a loan against a property, against which FPI also secured a loan to the other co-borrower—Hough Farms.

**Pine Ridge Holdings, Inc. Potential Connection to FPI's 2018 Loan to Hough.** On January 18, 2018, one day after Pine Ridge Holdings filed to do business in Nebraska, FPI loaned Jesse Hough $5.25 Million through Siffring Farms. Six days later, on January 24th, Pine Ridge Holdings was listed on a Nebraska UCC with Hough Farms and H-KO Land & Cattle (another entity affiliated with Hough). The UCC gives notice of a bank loan in which all of the entities—including Pine Ridge Holdings—used an address that matches that of the Butler County Appraisal District's address of record for Siffring Farms. (*See* tenth enclosure).

In light of the fact that Paul Pittman was listed as an officer and director of Pine Ridge Holdings one day before FPI leant $5.25 Million to Siffring Farms, Pine Ridge Holdings' use of Siffring Farms address on a loan document one week later, in my opinion, is alone sufficient to infer that Pittman is somehow involved in Siffring Farms.

**Jesse Hough's Most Recent Representation.** On July 27, 2018, Jesse Hough wrote my counsel a letter demanding that that I retract and correct statements that Hough claims were made in the July 11th article and that he alleges were false. (*See* eleventh enclosure). In the letter, Hough alleges the following:

> All proceeds for the $5.25 million loan were used to facilitate a stock purchase of Siffring Farms, Inc. as were all proceeds for the $100,000 loan and the vast majority of the $669,000 loan. After the transaction was complete, I became the authorized president of Siffring Farms.

This admission, if true, is astounding. First, I had to receive a demand letter from a former FPI consultant—whom FPI presented in an investor presentation as being part of the management team—before receiving any answers to the questions in my July 11th article. Second, and most importantly, I believe a reasonable person would find it material to know that FPI is lending money to Paul Pittman's apparent business partner—a relationship that FPI denies—to acquire a business that the Pittman and Hough are using the address of to obtain third-party loans.

**Pittman and Hough's Post-Publication Transactions.** Fulton County Illinois public records show that Pittman and Hough were transacting business together in the weeks immediately following the publication of my article. The Illinois Secretary of State shows that PH Land, LLC (PH Land), which FPI previously disclosed was part owned by Pittman Hough Farms, was involuntarily dissolved on July 13, 2018, just two days after the July 11th Seeking Alpha article. (*See* twelfth enclosure).

---

[1]      Note, the public records leave unclear whether Pittman was definitively an officer or director of Pine Ridge Holdings during 2017; however, assuming that he was not an officer or director during that year would suggest that, after operating in such capacity since 2012, he was removed at a specified time in 2017 but fully returned no later than January 17, 2018. While it is perhaps technically possible, without any explanation why, a temporary absence of one of the two listed officers and directors for an entity seems highly unlikely.

November 16, 2018

Then on August 2, 2018, PH Land deeded two properties to Pittman (signed by Hough). Then on August 30, 2018, Pittman deeded the same properties to a third party. (*See* thirteenth and fourteenth enclosure).

If Paul Pittman is not involved in PH Land, why wouldn't Hough sell the properties directly to the third party? And was any money transferred to Hough through these transactions?

**FPI's New Loan against Farm Equipment & Crops.** The second quarter 2018 10-Q show that FPI made a loan to a tenant on April 2, 2018 secured by farm equipment and a line of credit secured by growing crops (I am assuming the loans were with the same tenant). The decision to lend against farm equipment and crops—rather than real estate—is a departure from FPI's original lending program. Notably, this new lending category was not disclosed in FPI's July 17th public rebuttal, which specifically discussed the two categories that FPI loans "generally fall under."

Based on FPI's disclosure that the loan "will ensure the orderly completion of farming operations on a property owned by the Company," it appears to me as if FPI effectively kept a tenant in business by loaning money to someone who FPI also discloses was unable to obtain "other credit." And in the third quarter 10Q, FPI now discloses that it reserved $200 Thousand against the current $693 Thousand balance on the line of credit. How is not artificially inflating FPI's revenues to lend money to a tenant who apparently cannot orderly complete farming operations nor obtain other credit and then reserve a large percentage of the loan, which suggests it is a bad loan?

**Areas for Additional Inquiry.** In addition to the issues discussed above, I believe other matters compel further inquiry:

1. On November 1, 2016, when FPI was in the midst of closing its acquisition of American Farmland Corporation, FPI attorney, Justin Salon, corresponded via email with the USAO. (*See* fifteenth enclosure). The correspondence was in relation to allegations that FPI is a "successor" to American Farmland Partners (*See* sixteenth enclosure). The allegations were put forth by Todd Dyer, a felon who regulators charged with running an investment scheme under the names American Farmland Partners and Midwestern Farmland Partners. (*See* seventeenth enclosure). While his allegations may be false, FPI made no disclosures about the allegations or Mr. Dyer's threatened lawsuit. It is unclear to me how such information would not be considered material for investors, if for no other reason than to clear FPI's name.

2. On August 12, 2015, PHS Holdings, LLC acquired the Linwood Farm. According to FPI's July 25, 2014 SEC filing, Pittman Hough Farms held a 30% interest in PHS Holdings. Based on my research, I believe the Linwood Farm is located in the Platte township of Butler County, NE. If Pittman still had an interest in PHS Holdings, this acquisition would appear to have breached Pittman's Homestead Exemption Policy, which did not include the Platte township.

3. FPI's public rebuttal explained that it reported the acquisitions of Ryan Niebur's property as a loan because Niebur has the right to repurchase the property. However, deed records show that FPI has acquired numerous properties from sellers who had the right to repurchase—including the Linwood Farm purchased in 2018 from PHS Holdings (Jesse

November 16, 2018

Hough)—yet I could not find where FPI reported these acquisitions as loans. (*See* <u>eighteenth</u> enclosure). Has FPI made any disclosure to sufficiently explain the difference?

4. FPI's first quarter 2017 cash-flow statement shows 'Principle Receipts on Note Receivable' of $801,000 (which I believe is the repayment by Ryan Niebur after FPI acquired the property collateralizing his defaulted loan). However, the second quarter 2017 cash-flow statement shows no 'Principle Receipts on Note Receivable.' Cash-flow statements are cumulative throughout the year, so it appears the financials were restated. I was unable to find any disclosure of any such restatement.

**Conclusion.** In sum, I believe the information herein introduces significant questions regarding Paul Pittman's purported disinvolvement with FPI's "former related tenants," as well as FPI's representations about Pittman's business partnership with Hough and his potential involvement in two of the three loans FPI made to Hough. It is wholly unclear to me how a reasonable investor would not view this information as material in making an investment decision about FPI securities.

Perhaps the board was previously unaware of this information. But in light of my bringing it to your attention, I believe the Board can no longer remain silent while still upholding its fiduciary duty to shareholders. At very least, it seems appropriate that the Board address these issues with all shareholders and commence an independent investigation. I sincerely hope that this letter helps the Board better fulfill its fiduciary duties, and that FPI decides to provide shareholders the transparency they deserve.

— Rota Fortunae

*Cc:*   Chris Downey, Joseph W. Glauber
John A. Chanin

November 16, 2018

## <u>Paul Pittman Listed as Current Manager of Pittman Hough Farms</u>



*Source: Illinois Secretary of State*

FIRST ENCLOSURE

7

November 16, 2018

# FPI Presentation Showing Paul Pittman is an owner of Pittman Hough Farms



## Company Overview
### Management Team

**Management Team Is Experienced in Agriculture and Capital Markets**

*Paul Pittman, Executive Chairman, President and Chief Executive Officer*
Paul grew up in a farm family and has been buying and operating farms on his own account since 1999. In addition to his roles at Farmland Partners, Paul is also an owner of Pittman Hough Farms, LLC. Before devoting full attention to his farming business, Paul was a public company CFO (Jazz Technologies), investment banker (Merrill Lynch, Wasserstein Perella, ThinkEquity) and lawyer (Sullivan & Cromwell). Paul was also founder and CEO of HomeSphere, an enterprise software company. He has a B.S. in Agriculture from the University of Illinois, an M.P.P. from Harvard University, and a J.D. with Honors from the University of Chicago.

*Luca Fabbri, Chief Financial Officer, Secretary and Treasurer*
Luca has been active in the agricultural industry for over a decade, first evaluating farmland investments and then in an operating role as Senior VP of American Agriculture Corporation. Luca was also a tech entrepreneur (co3 Systems and HomeSphere), served as head of corporate development for a public company (Jazz Technologies), worked as a consultant in technology, finance, and corporate development (Elk Creek Ventures), and worked in investment banking (Merrill Lynch). He has a B.S. with Honors in Economics from the University of Naples (Italy) and an M.B.A. in Finance from the Massachusetts Institute of Technology.

*Rich Keck, VP Operations*
Rich grew up on a family farm in East-Central Illinois and funded a portion of his college expenses with a diverse set of jobs in agriculture. Rich began his career in commercial banking with Continental Illinois, which is now part of Bank of America. After leaving banking, Rich spent most of his career in finance and operating roles in the logistics industry (C.H. Robinson) and four technology companies, including three which were acquired by public companies. He has a B.S. with Honors in Accounting from the University of Illinois and an M.B.A. from the University of Chicago.

*Wade Harrison, Director of Acquisitions*
Wade has been active in the agricultural industry for over two decades. Before joining Farmland Partners, Wade served as the Row Crop Farm Manager (Chess Ag Full Harvest), General Manager and Partner for the operation, growth, and development of a 5,500 acre farm (South Park Farms Inc.), and General Manager and Chief Member overseeing all activities for a heavy equipment rental / leasing and custom farming business (W.W. Planting, LLC). Wade has a B.A. in Political Science from Rhodes College and an M.A. from the University of Memphis.

*Eric Sorfl, Farm Manager (Midwest, Great Lakes)*
Eric grew up on a family farm in West-Central Illinois, where in addition to traditional row crops, they also produce specialty crops such as popcorn, green beans, and pumpkins. Eric comes to Farmland Partners from The Loranda Group, Inc., a real estate firm based in Bloomington, Illinois, where he was a sales and acquisitions manager of farms throughout the Midwest, including serving as the sale manager for an auction of a high profile 960 acre farm in East-Central Illinois. Eric has a B.S. in Agribusiness, Farm & Financial Management from the University of Illinois, Urbana-Champaign.

*Ryan Niebur, Farm Manager (High Plains, Mountains)*
Ryan is a fourth generation farmer from Eastern Colorado. After college, Ryan began his career by returning to his roots where he started his own family farm and agricultural retail business (Tri-County Ag Inc.). Although Ryan has pursued other interests in the agricultural industry, he still is involved in the daily operations of his family farm. He attended Colorado State University where he received a B.S. in Business Marketing.

*Jesse Hough, Responsible for TRS*
Jesse grew up on a family farm in Central Nebraska, where he worked throughout high school and college. Jesse currently serves as an owner and the CEO of Pittman Hough Farms, LLC. He was with Kennedy and Coe, a top 100 accounting firm with the main emphasis in agri-business accounting - for 18 years, the last ten of which he served as a member, partner and owner. While at Kennedy and Coe, Jesse was responsible for consulting with large agri-business operations throughout the United States on their financial models and organizational structures. He has a B.S. in business with an emphasis in Accounting from the University of Nebraska.

FARMLAND

FPI LISTED NYSE

*Source: August 2016 FPI Investor Presentation*

**SECOND ENCLOSURE**

November 16, 2018

## Astoria Farms Partnership Assumed Name Certificate

*Pd $20.00 Cash  #2565  10/1/16*

| FORM AB-12 | ASSUMED-NAME CERTIFICATE | FIDLAR ELECTION CO., ROCK ISLAND, ILLINOIS |
| --- | --- | --- |

STATE OF ILLINOIS,
County of __Fulton__ } ss.

This is to certify that the undersigned __are__ conducting and transacting a __general agribusiness, and any other__ __business that may from time to time be agreed upon by the Partners, except ownership of real estate__ business in said County and State under the name of [ __Astoria Farms Partnership__ ] at the following post office address:

__1471 Co. Hwy 33 N. Astoria, Illinois  61501__

that the true and real full names of all persons owning, conducting or transacting such business, with the respective post-office address of each, are as follows:

| NAME | POST-OFFICE ADDRESS |
| --- | --- |
| Andy Merrick Farms, L.P. | 4600 S Syracuse St; Ste 1450; Denver, CO  80237 |
| Matt Frye Farms, L.P. | 4600 S Syracuse St; Ste 1450; Denver, CO  80237 |
| Pittman Hough Farms LLC | 4600 S Syracuse St; Ste 1450; Denver, CO  80237 |

Dated this __11__ day of __May__ A.D. 20 __16__.

Andy Merrick Farms, L.P. (Jesse Hough)     as General Partner
Matt Frye Farms L.P. (Jesse Hough)     as General Partner
Pittman Hough Farms LLC
(Jesse Hough)     as Manager
(Paul A. Pittman)     as Manager

STATE OF ILLINOIS } ss. I, _Lawrence Hyde_, a Notary Public
County of __Denver__

in and for said County and State, do hereby certify that __Paul A. Pittman, as Manager of Pittman Hough Farms LLC__ __Jesse Hough, as General Partner of Matt Frye Farms L.P. ; as General Partner of Andy Merrick Farms L.P.__ __and Manager of Pittman Hough Farms LLC__

personally known to me to be the same person ___ whose name __is__ subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that ___ ho ___ ha_ read and signed said instrument and that the statements therein contained, and each thereof, are true.

LAWRENCE HYDE
Notary Public
State of Colorado
Notary ID 20154047320
My Commission Expires Dec 9, 2019

_Lawrence Hyde_
Notary Public.

My commission expires on the __9th__ day of __December__ A.D. 20 __19__

*Source: Fulton County Illinois County Clerk*

**THIRD ENCLOSURE**

9

November 16, 2018

## Astoria Farms Nov. 2017 Auction On Pittman's Personal Property



Sullivan AuctioneersUpcoming Events » » Timed Online Only No ...
www.sullivanauctioneers.com/auction/astoriafarms/ ▾
Nov 29, 2017 - Physical Address: 6001 E Jones Rd, Astoria, IL 61501 ... Astoria
Farms Partnership is discontinuing their farming operation and have rented ...

*Source: Google Search "Sullivan Auctioneers Astoria Farms"*

**Property Information**

| Parcel Number | Site Address | Owner Name & Address |
|---|---|---|
| 25-27-30-100-003 | 5991 E JONES | PITTMAN, PAUL A |
| | ASTORIA, IL 61501 | 4600 SOUTH SYRACUSE ST |
| **Tax Year** | | SUITE 1450 |
| 2017 (Payable 2018) ▾ | | DENVER, CO, 802372766 |
| **Property Class** | **Tax Code** | **Tax Status** |
| 0011 - Homesite-Dwelling | 25007 | Taxable |
| **Net Taxable Value** | **Tax Rate** | **Total Tax** |
| 77,500 | 10.057500 | $7,794.56 |

**Legal Description**
SECT: 30 TWP: 03 RANGE: 02 PT S1 2 NW BG SW COR TH E 136 N 400 W 136 S 400

*Source: Fulton County Illinois Appraiser*





*Source: Google Maps (6001 E. Jones)*          *Source: Fulton County Illinois Appraiser*

FOURTH ENCLOSURE

10

DOT Safer Information On Astoria Farms

FIFTH ENCLOSURE

*Source: DOT Safer Website*

November 16, 2018

○ USDOT Number  ○ MC/MX Number  ● Name

Enter Value: ASTORIA FARMS PARTNER

Search

...hes In US | Inspections/Crashes In Canada | Safety Rating

...lowing ID/Operations information, please complete and submit form MCS-150 which can be obtained online or from your State FMCSA office. If you would like to challenge the accuracy of your
g FMCSA's DataQs system.

...e the Company Safety Profile (CSP) to motor carriers and the general public interested in obtaining greater detail on a particular motor carrier's safety performance then what is captured in the
...se visit the CSP order page or call (800)832-5660 or (703)280-4001 (Fee Required).

...ta fields, click on any field name or for help of a general nature go to SAFER General Help.

...ent of the FMCSA management information systems as of 11/14/2018.

**Company Snapshot**
PAUL PITTMAN
USDOT Number: 1813714

Other Information for this Carrier
---
▾ SMS Results
▾ Licensing & Insurance

| | | | | |
|---|---|---|---|---|
| Entity Type: | CARRIER | | | |
| Operating Status: | ACTIVE | | Out of Service Date: | None |
| Legal Name: | PAUL PITTMAN | | | |
| DBA Name: | ASTORIA FARMS PARTNERSHIP | | | |
| Physical Address: | 1471 N COUNTY HIGHWAY 33 ASTORIA, IL  61501-9131 | | | |
| Phone: | (309) 329-1350 | | | |
| Mailing Address: | 1471 N COUNTY HIGHWAY 33 ASTORIA, IL  61501-9131 | | | |
| USDOT Number: | 1813714 | | State Carrier ID Number: | |
| MC/MX/FF Number(s): | | | DUNS Number: | -- |
| Power Units: | 6 | | Drivers: | 5 |
| MCS-150 Form Date: | 05/14/2017 | | MCS-150 Mileage (Year): | 10,000 (2016) |

Operation Classification:

| | | |
|---|---|---|
| Auth. For Hire | Priv. Pass.(Non-business) | State Gov't |
| Exempt For Hire | Migrant | Local Gov't |
| x Private(Property) | U.S. Mail | Indian |
| Priv. Pass. (Business) | Fed. Gov't | Nation |

Carrier Operation:

November 16, 2018

# Pine Ridge Holdings' Application To Do Business In Nebraska



*Source: Fulton County, Illinois County Clerk.*

**SIXTH ENCLOSURE**

November 16, 2018

# FPI Loan To Hough Farms Secured By Butler County, NE Property

**TRUST DEED**
**WITH POWER OF SALE**

This Trust Deed made August 25, 2017, by and among the following:

DATE:                August 25, 2017

TRUSTOR:            HOUGH FARMS,
                    a Nebraska General Partnership
                    810 Montgomery Street
                    Bellwood, Nebraska 68624

TRUSTEE:            ANDREW J. HOFFMAN
                    ATTORNEY AT LAW
                    PO Box 910
                    47640 E. HWY 20, Ste #1
                    Atkinson, Nebraska 68713

BENEFICIARY:        FARMLAND PARTNERS OPERATING
                    PARTNERSHIP, LP
                    a Delaware Limited Partnership
                    4600 S. Syracuse St., #1450
                    Denver, CO 80237

CONSIDERATION:      $669,000.00

Trustor, in consideration of the sum of SIX HUNDRED SIXTY-NINE THOUSAND DOLLARS AND NO CENTS ($669,000.00), receipt of which is hereby acknowledged, conveys to Trustee, in trust, with power of sale, the following-described real estate (as defined in Neb. Rev. Stat. §76-201):

A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., and the Southwest Quarter (SW¼) of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, more particularly described as follows:

Commencing at the Southeast corner of Section Two (2), Township Sixteen (16) North, Range One (1) East; thence due North along and upon the West line of said Section Two (2), a distance of 2,782.85 feet to the point of beginning; thence continuing due North along and upon the West line of said Section Two (2), a distance of 2,499.16 feet to the Northwest corner of said Section Two (2); thence N89H59'35"E a distance of 340.89 feet, along and upon the North line of said Section Two (2) to the Southwest corner of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East; thence N12H04'45"E, a distance of 33.00 feet (to a fence); thence S80E35'45"E a distance of 200.87 feet (along a fence); thence N56E37'05"E, a distance of 212.36 feet (along a fence); thence N33E50'55"E a distance of 169.52 feet (along a fence); thence S72E47'35"E a distance of 621.67 feet; thence S40H06'15"E a distance of 192.87 feet; thence S69E23'50"E a distance of 853.44 feet; thence S45E56'25"E a distance of 96.06 feet; thence S31H09'40"E a distance of 91.64 feet; thence S53E46'40"E a distance of 823.72 feet; thence N67E54'45"E a distance of 164.97 feet; thence

S40E22'55"E, a distance of 203.86 feet; thence S18H53'45"E a distance of 190.55

feet; thence S42E27'20"E a distance of 248.67 feet; thence S72E52'15"E a distance of 333.05 feet; thence S41F2E'10"E a distance of 120.60 feet; thence S0E31'45"W a distance of 1,262.15 feet along the approximate land line; thence N84E49'30"W a distance of 690.06 feet; thence N83H58'25"W a distance of 3,348.13 feet, to the point of beginning, containing 209.12 acres, including County road right-of-way;

AND

A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, described as follows:

Beginning at a point 2,782.02 feet North of and 4,020.62 feet East of the Southwest corner of Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, (the West line of said Section Two (2) has an assumed bearing of N00H00'00"E, and this description is from a survey by R. Rystrom, L.S. 241 dated August 19, 1982 and revised September 13 and 22, 1982); thence N00H31'45"H 848.41 feet; thence S41E28'10"E 378.19 feet; thence S05H33'00"E 83.75 feet; thence S84H26'35"W 77.87 feet; thence S02E33'25"E 102.21 feet; thence S24H33'30"W 114.77 feet; thence S75E10'40"E 166.86 feet; thence S53H49'25"W 381.28 feet to the point of beginning, containing 3.2 acres more or less.

*Source: Butler County, Nebraska Deed Records*

**SEVENTH ENCLOSURE**

13

November 16, 2018

# Bank Loan To Hough Farms Secured By Same Property & Cross-Collateralized By Promisory Note With Pine Ridge Holdings

RECORDED
BUTLER COUNTY, NEBRASKA
INST. 17-00854
DATE June 8, 2017
TIME 10:35 Am
[signature]
COUNTY CLERK/REGISTER OF DEEDS
BY [signature], Deputy

WHEN RECORDED MAIL TO:
First Midwest Bank
302 East Main Street
Galesburg, IL 61401

FOR RECORDER'S USE ONLY

**DEED OF TRUST**

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $21,977,403.00.

THIS DEED OF TRUST is dated May 25, 2017, among HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP, whose address is 4291 H ROAD, BELLWOOD, NE 686242457 ("Trustor"); FIRST MIDWEST BANK, whose address is GALESBURG, ONE PIERCE PLACE, SUITE 1500, ITASCA, IL 60143 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and BRIAN F. BECKNER, whose address is P.O. BOX 1185, COLUMBUS, NE 68602 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in BUTLER County, State of Nebraska:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 216 ACRES OF FARMLAND (EAST OF E ROAD) IN ALEXIS TOWNSHIP, BELLWOOD, NE 68624. The Real Property tax identification number is 120030506, 120030501 AND 120042380.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Trustor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Trustor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Trustor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Note.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means FIRST MIDWEST BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP; and PINE RIDGE HOLDINGS, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Note.** The word "Note" means the promissory notes or credit agreements dated February 14, 2017 in the original principal amounts of $5,350,000.00, $350,106.00 and $225,000.00 from Borrower to Lender and the promissory notes or credit agreements dated February 14, 2017 in the original principal amounts of $431,250.00, $219,448.00 and $750,000.00 from Astoria Farms, an Illinois General Partnership to Lender together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the promissory notes or credit agreements. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**Schedule A**

**A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East, and the Southwest Quarter (SW1/4) of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, more particularly described as follows: Commencing at the Southwest corner of Section Two (2), Township Sixteen (16) North, Range One (1) East; thence due North along and upon the West line of said Section Two (2), a distance of 2,782.85 feet, to the point of beginning; thence continuing due North along and upon the West line of said Section Two (2), a distance of 2,499.16 feet to the Northwest corner of said Section Two (2); thence N89°59'35" E, a distance of 340.89 feet, along and upon the North line of said Section Two (2) to the Southwest corner of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East; thence N 12°04'15" E, a distance of 33.80 feet (to a fence); thence S 80°35'45"E, a distance of 200.87 feet (along a fence); thence N 56°37'05" E, a distance of 212.36 feet (along a fence); thence N 33°50'55" E, a distance of 169.52 feet (along a fence); thence S 71°47'35" E, a distance of 621.67 feet; thence S 40°06'15" E, a distance of 192.87 feet; thence S 69°25'50" E, a distance of 853.44 feet; thence S 45°56'25" E, a distance of 96.06 feet; thence S 31°09'40" E, a distance of 91.64 feet; thence S 53°46'40" E, a distance of 823.72 feet; thence N 67°54'45" E, a distance of 164.97 feet; thence S 40°22'55" E, a distance of 203.86 feet; thence S 18°53'45" E, a distance of 190.55 feet; thence S 42°27'20" E, a distance of 248.67 feet; thence S 72°53'15" E, a distance of 333.05 feet; thence S 41°28'10" E, a distance of 120.60 feet; thence S 0°31'45" W, a distance of 1,262.15 feet along the approximate land line; thence N 84°45'30" W, a distance of 690.06 feet; thence N 83°58'25" W, a distance of 3,348.13 feet; to the point of beginning, containing, including County Road Right-of-Way, 209.12 acres, more or less;**
**Together With**
**A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, described as follows: Beginning at a point 2,782.02 feet North of and 4,020.62 feet East of the Southwest Corner of Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, (the West line of said Section Two (2) has an assumed bearing of N00°00'00"E, and this description is from a survey by R. Rystrom, L.S. 241, dated August 19, 1982 and revised September 13 and 22, 1982); thence N00°31'45"E, 848.41 feet; thence S41°28'10"E, 378.19 feet; thence S05°33'00"E, 83.75 feet; thence S84°26'35"W, 77.87 feet; thence S02°33'25"E, 102.21 feet; thence S24°13'30"W, 114.77 feet; thence S75°10'40"E, 166.86 feet; thence S53°49'25"W, 381.28 feet to the point of beginning, containing 3.3 acres more or less.**

*Source: Butler County, Nebraska Deed Records*

EIGHTH ENCLOSURE

November 16, 2018

## Deed Of Trust To Hough Farms Reconveyed By Bank

```
                                    RECORDED
                             BUTLER COUNTY, NEBRASKA
                        INST.   2017-01486
                        DATE    October 02 2017
                        TIME    12:46 PM
                              Julie L Spohn
                        COUNTY CLERK/REGISTER OF DEEDS
                        BY:  Sharon Woolery
                                              Deputy
```

Tri-County Title & Escrow Co.
P.O. Box 1185
Columbus, NE 68602

**DEED OF RECONVEYANCE**

THAT WHEREAS, all of the indebtedness secured by the Deed of Trust executed by Hough Farms, a Nebraska General Partnership, trustors to Brian F. Beckner, as Trustee and to First Midwest Bank, Beneficiary, dated May 25, 2017 and recorded June 2, 2017 at Instrument No. 17-00854 in the Records of Butler County, State of Nebraska, securing the following described premises situated in Butler County, State of Nebraska, to-wit:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION

has been paid and that said Beneficiary has requested in writing that this Deed of Reconveyance be executed and delivered.

NOW THEREFORE, in consideration of such payment and in accordance with the request of the Beneficiary named therein, the undersigned as Trustee does by these presents, grant, revise, release and reconvey to the person or persons entitled thereto all the interest and estate derived to said Trustee by or through said Deed of Trust, together with all buildings, fixtures, improvements and appurtenances belonging to such premises.

| DATED THIS 29th DAY OF September, 2017. |

                              Brian F. Beckner
                              Brian F. Beckner

STATE OF NEBRASKA          )
                           )ss:
COUNTY OF PLATTE           )

The foregoing instrument was acknowledged before me on September 29, 2017, by Brian F. Beckner.

                              Notary Public

My Commission Expires:     GENERAL NOTARY-State of Nebraska
                           TINA L THIES
                           My Comm. Exp. October 16, 2017

*Source: Butler County, Nebraska Deed Records*

**NINTH ENCLOSURE**

15

November 16, 2018

# Nebraska UCC Showing Pine Ridge Holdings Using Siffring Farms Address

NE Sec. of State-UCC
9318026927-6
Filed 01/24/2018 11:05 a.m.
H-KO LAND AND CATTLE COMPANY
Pg 1 of 5

UCC FINANCING STATEMENT

BANK OF THE VALLEY

| | | | | | |
|---|---|---|---|---|---|
| 1. DEBTOR'S NAME | H-KO LAND AND CATTLE COMPANY | | | | |
| | 1197 34 ROAD | DAVID CITY | NE | 68632 | USA |
| 2. DEBTOR'S NAME | HOUGH FARMS | | | | |
| | 1197 34 ROAD | DAVID CITY | NE | 68632 | USA |
| 3. SECURED PARTY'S NAME | BANK OF THE VALLEY | | | | |
| | PO BOX 71 | DAVID CITY | NE | 68632 | USA |

4. COLLATERAL: ALL FARM PRODUCTS INCLUDING WITHOUT LIMITATION, ALL (1) CROPS GROWN, GROWING OR TO BE GROWN, INCLUDING CROPS PRODUCED ON TREES, VINES AND BUSHES, AND AQUACULTURAL GOODS PRODUCED IN AQUACULTURAL OPERATIONS (2) LIVESTOCK, BORN OR UNBORN, (3) SUPPLIES USED OR PRODUCED IN FARMING OPERATIONS, AND (4) PRODUCTS OF CROPS OR LIVESTOCK IN UNMANUFACTURED STATES. ALL PERSONAL PROPERTY OF EVERY KIND, INCLUDING WITHOUT LIMITATION, MACHINERY AND EQUIPMENT, TRUCKS, TRAILERS AND VEHICLES (WITH A CERTIFICATE OF TITLE OR WITHOUT), ACCESSIONS, FIXTURES, AND GENERAL INTANGIBLES (INCLUDING PAYMENT INTANGIBLES AND SOFTWARE), INSTRUMENTS (INCLUDING PROMISSORY NOTES), DOCUMENTS, DEPOSIT ACCOUNTS, ALL ATTACHMENTS, ACCESSORIES, TOOLS, PARTS, SUPPLIES, INCREASES, AND ALL ADDITIONS TO, REPLACEMENTS OF AND SUBSTITUTIONS FOR ANY OF THE PROPERTY AND GOODS, ANY INSURANCE REFUNDS ON ANY OF THE

NE Sec. of State-UCC
9318026927-6
Filed: 01/24/2018 11:05 a.m.
H-KO LAND AND CATTLE COMPANY
Pg 3 of 5

UCC FINANCING STATEMENT ADDITIONAL PARTY

9. NAME OF FIRST DEBTOR: H KO LAND AND CATTLE COMPANY

| | | | | | |
|---|---|---|---|---|---|
| 19. ADDITIONAL DEBTOR'S NAME | GRASS VALLEY FARMS INC | | | | |
| | 1197 34 ROAD | DAVID CITY | NE | 68632 | USA |
| 20. ADDITIONAL DEBTOR'S NAME | PINE RIDGE HOLDINGS INC | | | | |
| | 1197 34 ROAD | DAVID CITY | NE | 68632 | USA |

21. ADDITIONAL DEBTOR'S NAME

*Source: Nebraska Secretary Of State*

**Parcel Information**

| | |
|---|---|
| Parcel ID | 120033852 |
| Links | |
| Map Number | N/A |
| Cadastral # | 15-2E-27--1480 |
| Current Owner | SIFFRING FARMS INC |
| Mailing Address | 1197 34 RD<br>DAVID CITY NE 68632- |

*Source: Butler County, NE Assessor*

TENTH ENCLOSURE

November 16, 2018

# Letter From Jesse Hough

Jesse Hough
197 24 Road
David City, NE 68632

July 27, 2018

*VIA CERTIFIED MAIL*

Matthew L. Mizener
Mizner PLLC
P.O. Box 38036
Dallas, Texas 75238

Re:    Notice of Defamation and demand for retraction

Dear Mr. Mizener,

This letter is in regard to the maliciously false and defamatory content published by your client under the pseudonym Rota Fortunae on the Seeking Alpha website located at http://seekingalpha.com on July 11, 2018, for its own profit (hereinafter "the Defamatory Post on the Seeking Alpha website"). This letter is sent pursuant to Nebraska Revised Statute § 25-840.01. This letter is notice of the defamatory statements and a demand by me, Hough Farms, Sifting Farms, Inc., and H-KD Land and Cattle Company ("Hough Companies") that the statements be retracted and corrected. It should also be considered a demand that your client cease and desist publishing any further libelous, slanderous, or defamatory content regarding me or the Hough Companies.

The Defamatory Post on the Seeking Alpha website falsely states that I received improper loans from Farmland Partners Inc. ("FPI") due to my alleged status as a "related party" to FPI. The Defamatory Post on the Seeking Alpha website maliciously and falsely states that I am a related party under the "audit rules." There is no basis for this statement. I am not a "related party" as defined by the applicable rules of the SEC and Financial Accounting Standards Board. I had previous relationships with FPI that were all properly disclosed in SEC filings. Furthermore, the Defamatory Post on the Seeking Alpha website falsely alleges that I am a member of FPI's management team. I have never been an officer or employee of FPI, and I have never served on FPI's board of directors. The maliciously false statements were designed to injure me and the Hough Companies by falsely suggesting that there was something inappropriate about the transactions and inaccurately alleging with no basis that there was some sort of secret "side agreement." Your client tried to create a sensational story with complete disregard for the truth.

The Defamatory Post on the Seeking Alpha website also falsely suggests that I was manipulative in obtaining loans from FPI and that I improperly benefited from transactions with FPI. All proceeds for the $5.25 million loan were used to facilitate a stock purchase of Sifting Farms, Inc. as were all proceeds for the $100,000 loan and the vast majority of the $969,000

July 27, 2018
Page 2

loan. After the transaction was complete, I became the authorized president of Sifting Farms, Inc. There is no basis for the innuendo in the Defamatory Post on the Seeking Alpha website suggesting that the loan proceeds were somehow sent back to FPI improperly.

As your client had every reason to expect, the false statements about me and the Hough Companies have already caused me and the Hough Companies damage, and they will continue to cause damage. The statements have falsely damaged my reputation, and they have falsely suggested that I have engaged in some sort of conspiracy to help FPI distort its financial statements. Your client wilfully and recklessly disregarded that potential damage in its attempt to harm FPI. Your client has tortiously interfered with my ongoing and future business relationships and has harmed me through malicious libel and deceptive trade practices.

If a correction and retraction is not properly published within three weeks from the date of this letter as conspicuously as the Defamatory Post on the Seeking Alpha website, then you will face expanded liability under Nebraska law.

Sincerely,

Jesse Hough

cc:  Pat Brookhouser, McGrath North law firm

ELEVENTH ENCLOSURE

November 16, 2018

## PH Land, LLC Dissolved Two Days After July 11 Article



**OFFICE OF THE ILLINOIS SECRETARY OF STATE**

**JESSE WHITE**
**SECRETARY OF STATE**

### LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **File Number** | 04236459 | | |
| **Entity Name** | PH LAND LLC | | |
| **Status** | INVOLUNTARY DISSOLUTION | **On** | 07/13/2018 |
| **Entity Type** | LLC | **Type of LLC** | Domestic |
| **File Date** | 01/08/2013 | **Jurisdiction** | IL |
| **Agent Name** | COLLINS LAW OFFICE PC | **Agent Change Date** | 01/08/2013 |
| **Agent Street Address** | 177 W LINCOLN AVE | **Principal Office** | 900 E LOUISIANA AVE; SUITE 209 DENVER, CO 80210 |
| **Agent City** | LEWISTOWN | **Managers** | View |
| **Agent Zip** | 61542 | **Duration** | PERPETUAL |
| **Annual Report Filing Date** | 00/00/0000 | **For Year** | 2018 |
| **Series Name** | NOT AUTHORIZED TO ESTABLISH SERIES | | |

*Source: Illinois Secretary of State*

TWELFTH ENCLOSURE

November 16, 2018

# PH Land (Jesse Hough) Deeds Properties To Paul Pittman



PREPARED BY & RETURN TO:
COLLINS & COLLINS
ATTORNEYS AT LAW, P.C.
177 West Lincoln Avenue
Lewistown, IL 61542

Send tax statement to:
Paul A. Pittman
4600 S. Syracuse Street
Suite 1450
Denver, CO 80237

**1882063**

JAMES J. NELSON
COUNTY CLERK & RECORDER
FULTON COUNTY, IL
RECORDED ON
08/08/2018 09:38 AM

RECORDING FEE     68.00
RHSP FEE           9.00
PAGES: 3

**LIMITED LIABILITY COMPANY DEED**
[805 ILCS 180/35-30(c)]

THE GRANTOR, PH LAND LLC, an Illinois Limited Liability Company, now dissolved, pursuant to 805 ILCS 180/35-30(c), for and in consideration of one dollar and other good and valuable consideration CONVEYS and WARRANTS to PAUL A. PITTMAN the following described Real Estate, to-wit:

**Tract I:**

Part of Corporation Lots 12 and 13 to the Town, now Village of Astoria, Fulton County, Illinois, and being part of the Southeast Quarter and the Northeast Quarter of Section 23, Township 3 North of the Base Line, Range 1 East of the Fourth Principal Meridian, Fulton County, Illinois, described, to-wit:

All that portion of Burlington Northern Railroad Company's (formerly Chicago, Burlington and Quincy Railroad Company) 150.0 foot wide Station Ground Property at Astoria, Illinois located on the Vermont to Astoria, Illinois Branch Line right of way, now discontinued, being 50.0 feet wide on the Northerly side and 100.0 feet wide on the Southerly side of said Railroad Company's Main Track centerline as originally located and constructed and situated in the NE¼ SE¼ and the SE¼ NE¼ of Section 23, Township 3 North, Range 1 East of the 4ᵗʰ Principal Meridian, Fulton County, Illinois bounded between the Southerly extension of the East line of Pearl Street, according to the recorded plat thereof, and a line drawn at right angles to said Main Track centerline distant 240.0 feet Easterly of said Southerly extension of the East line of Pearl Street as measured at right angles to, said Main Track centerline.

PIN:   24-26-23-403-019

Property Address:  Pearl Street, Astoria, IL  61501

**Tract II:**

Part of Corporation Lots 12 and 13 to the Town, now Village of Astoria, Fulton County, Illinois, and being part of the Southeast Quarter and the Northeast Quarter of Section 23, Township 3 North of the Base Line, Range 1 East of the Fourth Principal Meridian, Fulton County, Illinois, described, to-wit:

All that portion of Burlington Northern Railroad Company's (formerly Chicago, Burlington and Quincy Railroad Company) 100.0 foot wide Station Ground Property at Astoria, Illinois, being variable widths on

each side of said Railroad Company's Main Tract centerline situated in the North Half of the Northeast Quarter (NE¼) of the Southeast Quarter (SE¼) and the South Half (S½) of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) of Section 23, Township 3 North, Range 1 East of the Fourth Principal Meridian, lying between two lines drawn parallel with and distant, respectively, 25.0 feet Northerly and 125.0 feet Southerly of the North line of said North Half (N½) of the Northeast Quarter (NE ¼) of the Southeast Quarter (SE¼) and bounded between two lines drawn parallel with and distant, respectively, 240.0 feet and 490.0 feet Easterly of, as measured at right angles to, the Southerly extension of the East line of said Pearl Street, according to the recorded plat thereof;

Situated in Fulton County, Illinois.

PIN:   24-26-23-403-022

Property Address:  Pearl Street, Astoria, IL  61501

This deed represents a transaction exempt under the provisions of Section 31-45(e) of the Real Estate Transfer Tax Law.

Dated this   2ⁿᵈ   day of August, 2018.

PH LAND LLC

By _____
    JESSE J. HOUGH, Manager

STATE OF Nebraska
                            ) SS.
COUNTY OF Butler   )

I, the undersigned, a Notary Public, in and for said County, in the State aforesaid, do hereby certify that JESSE J. HOUGH, personally known to me to be the Authorized Manager of PH LAND LLC, an Illinois Limited Liability Company, and personally known to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and acknowledged that as such Authorized Manager, he signed and delivered the said instrument pursuant to authority given by Members of said Limited Liability Company, as the free and voluntary act of the Authorized Manager, and as the free and voluntary act and deed of said Limited Liability Company, for the uses and purposes therein set forth.

Given under my hand and seal this  2nd  day of August, 2018.

SEAL:                        _____
                                       Notary Public

*Source: Fulton County, Illinois Deed Records*

THIRTEENTH ENCLOSURE

November 16, 2018

# Paul Pittman Deeds Same Properties To Third Party



**1882417**

This instrument prepared by & return to:
COLLINS & COLLINS, P.C.
177 West Lincoln
Lewistown, IL 61542

Send tax statement to:
Martin Scott Cameron
P.O. Box 225
Astoria, IL 61501

JAMES J. NELSON
COUNTY CLERK & RECORDER
FULTON COUNTY, IL
RECORDED ON
08/31/2018 08:42 AM

RECORDING FEE       68.00
RHSP FEE             9.00
REV STAMPS FEE      41.25
PAGES: 3

**WARRANTY DEED**

THE GRANTOR, PAUL A. PITTMAN, by Ted G. Collins, as Agent under Illinois Short Form Power of Attorney for Property dated August 20, 2004, and for and in consideration of one dollar and other good and valuable consideration, CONVEYS AND WARRANTS to MARTIN SCOTT CAMERON and STEVE EARL CAMERON, brothers, as tenants in common and not as joint tenants, of Astoria, Fulton County, Illinois, the following described Real Estate, to-wit:

**Tract I:**

Part of Corporation Lots 12 and 13 to the Town, now Village of Astoria, Fulton County, Illinois, and being part of the Southeast Quarter and the Northeast Quarter of Section 23, Township 3 North of the Base Line, Range 1 East of the Fourth Principal Meridian, Fulton County, Illinois, described, to-wit:

All that portion of Burlington Northern Railroad Company's (formerly Chicago, Burlington and Quincy Railroad Company) 150.0 foot wide Station Ground Property at Astoria, Illinois located on the Northerly to Astoria, Illinois Branch Line right of way, now discontinued, being 50.0 feet wide on the Northerly side and 100.0 feet wide on the Southerly side of said Railroad Company's Main Track centerline as originally located and constructed and situated in the NE¼ SE¼ and the SE¼ NE¼ of Section 23, Township 3 North, Range 1 East of the 4th Principal Meridian, Fulton County, Illinois bounded between the Southerly extension of the East line of Pearl Street, according to the recorded plat thereof, and a line drawn at right angles to said Main Track centerline distant 240.0 feet Easterly of said Southerly extension of the East line of Pearl Street as measured at right angles to, said Main Track centerline.

The Grantor, for himself, his successors and assigns, reserves a perpetual, non-exclusive easement for ingress and egress over and across the West 70 feet of the South 40 feet of the above described Tract I, for the use and benefit of a driveway to access the land (now currently owned by Grantor), which is situated South and Southeasterly of the aforesaid described Tract I. Said easement shall be deemed to be a covenant running with the land.

PIN: 24-26-23-403-019
Property Address:  Pearl Street, Astoria, IL  61501

**Tract II:**

Part of Corporation Lots 12 and 13 to the Town, now Village of Astoria, Fulton County, Illinois, and being part of the Southeast Quarter and the Northeast Quarter of Section 23, Township 3 North of the Base Line, Range 1 East of the Fourth Principal Meridian, Fulton County, Illinois, described, to-wit:

All that portion of Burlington Northern Railroad Company's (formerly Chicago, Burlington and Quincy Railroad Company) 150.0 foot wide Station Ground Property at Astoria, Illinois, being variable widths on each side of said Railroad Company's Main Tract centerline situated in the North Half of the Northeast Quarter (NE¼) of the Southeast Quarter (SE¼) and the South Half (S½) of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) of Section 23, Township 3 North, Range 1 East of the Fourth Principal Meridian, lying between two lines drawn parallel with and distant, respectively, 25.0 feet Northerly and 125.0 feet Southerly of the North line of said North Half (N½) of the Northeast Quarter (NE¼) of the Southeast Quarter (SE¼) and bounded between two lines drawn parallel with and distant, respectively, 240.0 feet and 490.0 feet Easterly of, as measured at right angles to, the Southerly extension of the East line of said Pearl Street, according to the recorded plat thereof;

Situated in Fulton County, Illinois.

PIN: 24-26-23-403-022
Property Address:  Pearl Street, Astoria, IL  61501

Dated this 30 day of August, 2018.

PAUL A. PITTMAN

By_____
TED G. COLLINS, as Agent

STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF FULTON   )

I, the undersigned, a Notary Public, in and for said County, in the State aforesaid, do hereby certify that TED G. COLLINS, as Agent for PAUL A. PITTMAN, as aforesaid, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth.

Given under my hand and seal this 30 day of August, 2018.

(SEAL)    "OFFICIAL SEAL"
          JENNY M BEATTY
          Notary Public, State of Illinois
          My Commission Expires 12/3/2021

_____
Notary Public

*Source: Fulton County, Illinois Deed Records*

**FOURTEENTH ENCLOSURE**

20

Source: Case: 2:15-cv-00115-JPS Document 172-21

FIFTEENTH ENCLOSURE

## Question and Answer Emails With FPI Attorneys

From: Salon, Justin
Sent: Tuesday, November 01, 2016 2:58 PM
To: Wall, Joseph (USAWIE) 1
Cc: Kaufmann, Steven M.
Subject: RE: Questions

1.  Have any of the following individuals had any business relationship with FPI in an employment or advisory capacity, including whether they have ever purchased any limited partnership interests: Nicholas Hindman, Trent Griffith, Richard Hesler, Michael Dinapoli, Phil Jordan, Charles Rea, Charles Sorensson, or Justin Tuggle? **NO**

2.  Approximately when did Paul Pittman start buying farms? **MID TO LATE 1990s**

3.  Approximately when did Mr. Pittman and his partner form "American Agriculture"? I assume that that entity, too, was in the model of a REIT. **American Agriculture dates back to late 2011/early 2012, first as a DBA for Paul himself and then incorporated in Colorado as American Agriculture Corporation in July 2012. It was never a REIT and it never owned land, but was rather an operating company.**

4.  Approximately when did Mr. Pittman create and incorporate FPI? **Farmland Partners Inc. was incorporated in Maryland in September 2013. Properties in the land portfolio that got merged into FPI at the IPO were acquired by Paul as early as the very early 2000s**

5.  What was the approximate value of FPI when it launched the IPO? **FPI's land portfolio was valued roughly $70 million at the IPO, of which $27 million was equity and $43 million was debt contributed together with the land. The IPO consisted of 3.8 million shares at $14/share, with gross proceeds of $53.2 million.**

Because our defendants told their investors that there was going to be an IPO soon, we are trying to get a handle on how much money a company needs to launch an IPO and what other factors are important for a company to be able to launch an IPO? (The prosecution team is a bit light on corporate attorneys.) **SEE MY PRIOR RESPONSE ON THIS POINT**

6.  Outside of the material that Steve Kaufmann sent me, can you direct me to any FPI-related websites or just send as pdfs, any prospectuses or solicitation brochures and things of that nature that helped (or helps) FPI market itself and market its IPO. If these items are not dated, would you have an approximate date in which they were made available to the public? **HERE IS A LINK TO THE PRELIMINARY PROSPECTUS THAT WAS USED BY THE UNDERWRITERS IN THE IPO —** https://www.sec.gov/Archives/edgar/data/1591670/000104746914002858/a2219123zs-11a.htm

---

From: Salon, Justin R.
Sent: Thursday, October 20, 2016 12:48 PM

To: Wall, Joseph (USAWIE) 1
Subject: RE: Questions

Joe, I forwarded your questions to FPI's General Counsel and asked her to work with Paul and Luca to provide responses. I am able to provide full or partial responses to questions 5 and 6:

5. There is no set amount of money that a company needs before it can go public, but the process of conducting an IPO can be very expensive because it requires audited financial statements for several years, reviewed financial statements for fiscal quarters after the date of the last set of audited financial statements, legal fees, accountant's fees, printing fees, SEC filing fees, FINRA filing fees and other miscellaneous fees and expenses. In my experience, those amounts can exceed $1.5 million and, in some cases, can be significantly higher than that amount. There are numerous factors that are relevant to a company seeking to consummate an initial public offering, including, among others, general economic conditions, capital market conditions, the strength of the company's historical business, the perceived strength of the company's management team, the company's business and growth strategies, the company's corporate governance profile, the projected dividend yield (if any), and the distribution network of the underwriters (i.e., investment banks).

6. FPI's only website is http://www.farmlandpartners.com/. Here is a link to FPI's preliminary prospectus (i.e., the marketing document for its IPO) from the SEC's website - https://www.sec.gov/Archives/edgar/data/1591670/000104746914002858/a2219123zs-11a.htm

All of this information is publicly available.

FPI Attorney Email With USAO

November 16, 2018

November 16, 2018

# Todd Dyer Accusation That FPI Is Successor To American Farmland Partners

*As you probably know, AFPC never went public and its common shares are virtually worthless, as are ABILP's stock warrants to buy AFPC common shares at a dollar per share. Based on information procured by Mr. Dyer through discovery in his pending criminal matter and, apparently, through an inside source at FPI, in an effort to cut out ABILP and other investors from the inevitable IPO based on the Midwest Farmland/AFPC/FPI business model, certain directors and officers of AFPC hatched a plan to tank the company by reporting the Midwest Farmland entities and AFPC to the FBI and Illinois Securities Department as fraudulent schemes geared toward ripping off unknowing investors. On information and belief,*

12

Case 2:15-cr-00115-JPS   Filed 12/05/16   Page 12 of 18   Document 194

*these officers and directors simultaneously created FPI as a successor to AFPC by selling or otherwise transferring AFPC's assets to FPI in order to continue the legitimate and profitable business model which Mr. Dyer had sold to AFPC in exchange for the AFPC stock warrants. On information and belief, these same AFPC directors and officers exchanged the AFPC common shares of select insiders for FPI common shares as part of the merger/acquisition transaction. Shortly after these transactions, FPI went public with the early insider investors—including former directors and officers of AFPC—receiving a lucrative windfall from which they intentionally and fraudulently cut out ABILP and other investors.*

*Source: Case: 2:15-cr-00115-JPS Document 194*

SIXTEENTH ENCLOSURE

November 16, 2018

## Todd Dyer Indicted On Farmland Investment Scheme

# Grand jury responds to felon's bravado with new fraud charges


🕐 June 10, 2015
💬 10 Comments
SHARE f 🐦 ✉ 🖨



Todd Dyer, a Lake Geneva felon, was indicted this week on federal charges of running an $1.5 million investment scheme. - Milwaukee Journal Sentinel

*By Cary Spivak of the Journal Sentinel*

Todd Dyer, the Lake Geneva felon who taunted federal prosecutors investigating him saying they should "bring it on," got his wish when a federal grand jury this week indicted him on charges of helping launch and run a $1.5 million investment scheme.

Dyer, 51, and three co-defendants — a group that includes a Catholic priest banned from conducting public Mass — were charged with being part of a scheme that conned investors into pouring money into firms created to buy farmland. The companies, Midwest Farmland Properties and American Farmland Properties, never bought a single acre, the indictment charges — a fact confirmed by Dyer in a 2013 Milwaukee Journal Sentinel interview.

During the two-hour interview in 2013, a defiant Dyer defended his actions, virtually challenging federal prosecutors to indict him. Told Wednesday that he had been indicted on 31 counts of fraud and related charges, Dyer responded with laughter and bravado.

Dyer was "concept creator or founder" behind the farmland companies and sold investments in the firms from 2008 to 2012, the indictment states. Dyer said he had no ownership of the companies.

"I'm going to blow Joe Wall out of court," Dyer said of the assistant U.S. attorney and former Milwaukee County circuit judge who is prosecuting the case. "Wall is going to look like the biggest moron who ever walked on this Earth."

Told of Dyer's comments, Wall said: "Perhaps he (Dyer) needs to read the grand jury indictment."

Dyer said the indictment differed from his 1999 fraud conviction — a case also prosecuted by Wall. In that case, Dyer pleaded guilty for running a Ponzi scheme that bilked investors out of more than $2 million.

"I did what they said I did" in 1999, Dyer said, adding, "but this is total bull."

The latest indictment accuses Dyer and his cohorts of collecting funds from investors in at least nine states, promising the funds would be used to purchase farmland. Radio ads stating that investors were earning interest and that farmland had been purchased by the companies were broadcast in Chicago, the indictment states.

**CRIME NEWS UPDATES**

Council suspends Walker's Point strip club license 90 days *(1:07)*

Convicted kidnapper's confession not enough to charge in Deples case

Inmate charged with trying to hire hit on officer for $30

Truck falls on Sheboygan man trying to steal vehicle's rims

Police identify victims in Saturday homicides

MORE

Advertisement

*Source: Milwaukee Journal Sentinel*

SEVENTHEENTH ENCLOSURE

**SUBORDINATION AGREEMENT**

THIS SUBORDINATION AGREEMENT ("Agreement") is dated as of the 6th day of May, 2018, and is by PHS Holding LLC, an Illinois limited liability company with principal offices at 900 E. Louisiana Ave, Suite 209, Denver, CO 80210 (the "Subordinating Party"), and Cottonwood Valley Land, LLC, or assigns, a Nebraska limited liability company with principal offices at 4600 S. Syracuse St., Suite 1450, Denver, CO 80237 ("CVL"). Attention: Chief Financial Officer and BRIGHTHOUSE LIFE INSURANCE COMPANY, a Delaware corporation, on behalf of itself, and any of its subsidiaries, affiliates, successors and assigns with an interest in the Loan (defined herein, individually and collectively the "Lender");

**WITNESSETH**

WHEREAS, CVL intends to obtain a loan from the Lender (the "Loan").

WHEREAS, the Loan will be secured, without limitation, by a first mortgage or deed of trust on the real estate located in Butler County, Nebraska, and described on Exhibit A, attached (the "Land") together with all improvements located on the Land and other real and personal property described therein (collectively, the "Mortgaged Property"; and that mortgage or deed of trust granted by CVL to the Lender, as it is now or may hereafter be amended, modified or restated in its entirety, the "Security Instrument");

WHEREAS, the Subordinating Party has certain repurchase rights as provided in the real estate purchase agreement between the Subordinating Party, as "Seller" and CVL, as "Buyer" signed and effective on December 20, 2017(that agreement, as amended, the "REPA"); specifically providing as follows (the "Repurchase Rights"):

7.    *Additional Provisions.*

a.    *Repurchase Option and Deadline  On the third, fourth and fifth anniversary of this Agreement [as defined in the REPA] (the "Repurchase Option Deadline") Seller shall have the option to repurchase the Property [as defined in the REPA](the "Repurchase Option") for a total consideration (the "Repurchase Price") equal to the sum of: (a) the Purchase Price (defined in the REPA) multiplied by 1.093 if exercised on or prior to the third anniversary [of the REPA], or 1.126 if exercised on or prior to the fourth anniversary [of the REPA] and , or 1.159 if exercised on or prior to the fifth anniversary [of the REPA] and , (b) the Total Investment made from the Effective Date [as defined in the REPA] through the Repurchase Option Deadline by Buyer for any improvements multiplied by 1.08.  The "Total The "Total Investment" at any time will equal the actual out-of-pocket costs Landlord [Buyer] and its affiliates incurred in arms-length transactions with third parties in connection with Landlord's [Buyer's] development of the Farm [defined in the REPA]. The Total Investment will be determined in good faith by Landlord [Buyer], provided however that Landlord [Buyer] will provide Tenant [Seller] with such evidence of the Landlord's [Buyer's] determination of the Total Investment as Tenant [Buyer] may reasonably require. Failure of the Seller to comply with any term of this Agreement [defined in the REPA] or the Linwood Farm Lease Agreement [as defined in the REPA] will immediately terminate the Seller's Repurchase Option. Upon such termination, Seller agrees, upon the request of the Buyer, to do, execute, acknowledge and deliver such other acts, consents, instruments, documents and other assurances as may be reasonably necessary to terminate the rights set forth in Section 7(a) [of Exhibit B to the REPA]. The decision to exercise the Repurchase Option shall be communicated to Buyer no later than six months prior to the applicable Repurchase Option Deadline (" Repurchase Notification Deadline") Buyer shall then have 30 days to provide Seller with an estimate of the Repurchase Price. Within ten (10) days of receipt of the Repurchase Price, Seller shall make a non-refundable down payment equal to 15% of the estimated Repurchase Price.*

**PHS HOLDINGS LLC**

By: _____

Name: _Jesse Hough_

Title: _Manager_

Date: _5-31-18_

Source: Butler County Nebraska Deed Records

EIGHTEENTH ENCLOSURE

November 16, 2018