**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CASE NO. 1:18-cv-02351-KLM

FARMLAND PARTNERS, INC.,

      Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME IS UNKNOWN), JOHN/JANE DOES 2-10 (WHOSE TRUE NAMES ARE UNKNOWN),

      Defendants.

---

**REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND/OR STAY OF DISCOVERY PURSUANT TO F.R.C.P. 26(c)**

---

Defendant Rota Fortunae ("RF") submits his Reply in support of his Motion for a Protective Order and/or Stay of Discovery as follows.

Despite the extensive motions practice that has already occurred, this case remains at the pleadings stage. There are numerous unresolved jurisdictional issues, including Plaintiff Farmland Partners, Inc's ("FPI") motion to remand and the Court's related inquiry into subject matter jurisdiction, RF's motion to dismiss for lack of personal jurisdiction, which he plans to refile when appropriate pursuant to the Court's December 20, 2018 Order, and RF's pending appeal of the denial of the TCPA Motion, which, as RF has argued in many other motions, divests the Court of jurisdiction due to the immunity-like protections that the TCPA affords RF. Additionally, RF has repeatedly taken the position—in the Rule 26(f) conference, in the parties' proposed scheduling order pursuant to F.R.C.P 26(a)(1)(C), and after FPI served RF with the discovery—that undertaking full-blown discovery, including initial disclosures, is inappropriate at this stage of the proceedings.

Notwithstanding all that, FPI refused to extend the deadline to answer its propounded discovery. RF was therefore left with three unappealing choices: (1) answer FPI's merits discovery and reveal his identity; (2) not answer, and face a certain motion to compel along with accusations that RF was engaging in "procedural shenanigans" for invoking his rights or (3) file a motion for a protective order. RF chose the last, and in the Motion [Doc. No. 56] demonstrated that a protective order or stay of discovery was appropriate because of the case's procedural posture, pending jurisdictional issues, because FPI's discovery would reveal RF's identity in contravention of his First Amendment right to remain anonymous at this stage of the proceedings, and his rights under the TCPA. FPI's response in opposition to the Motion failed to rebut these arguments.

First, the elements of a stay weigh heavily in RF's favor. Most importantly, FPI cannot demonstrate it has been harmed, either by the delay or by the Article. FPI merely makes general and conclusory statements that it is "still dealing with the fallout of the short and distort attack." Furthermore, FPI's stock has continued to decline (hitting a new all-time low in December 2018) despite its claim that it "revealed the falsity" of RF's Article. And, FPI's own expert, Joshua Mitts, has stated that the drop in FPI's stock price was not due to the content of RF's Article about FPI. Mitts recently elaborated on Twitter that market manipulation via "mechanical" stock trading was what was responsible for FPI's stock drop. Since FPI claims that defamation, not illegal market manipulation, caused its damages, its expert confirms that RF did not damage FPI and any delay in FPI's case against RF cannot continue to harm FPI.

Second, contrary to FPI's arguments, RF has clearly demonstrated that the discovery FPI seeks—including discovery regarding the nonexistent "Does"—would infringe on RF's First Amendment privilege by revealing RF's identity. Further, while RF has never taken the position

that his First Amendment privilege supersedes all other litigation concerns, he has always taken the position—which is supported by substantial case law across the country—that it is FPI's burden to demonstrate that its defamation claim has merit in order to pierce the privilege and unmask RF. FPI has failed to even come close to meeting that burden (nor has this case developed anywhere near that stage in the ordinary and due process).

Third, FPI's TCPA arguments again miss the boat. As RF argued in its Motion to Stay [Doc. No. 52], because the TCPA grants RF immunity-like protections, RF's appeal of the denial of the TCPA motion stays the underlying case, including this discovery. FPI's new alleged "gotcha"—that RF engaged in commercial speech because RF has long-standing, non-FPI specific, advisory agreements with several individuals—is irrelevant to the effect of RF's appeal on this underlying case. Further, the Texas Supreme Court definitively negates FPI's argument that RF's Article fits into the TCPA's "commercial speech" exemption, which is limited to instances when the defendant got sued for advertising his goods or services. That is not the case here. FPI sued RF for publishing a research piece he wrote, not for making a sales pitch for his goods or services.

A.  **The interests weigh in favor of protecting RF from discovery, particularly because FPI cannot demonstrate that it was harmed by RF's published opinions**

In arguing that the interests weigh against a stay of discovery or a protective order, FPI repeatedly concludes that a stay is inappropriate because it has been harmed by RF. *See* Resp. at 4–7 ("FPI has an obvious interest in proceeding expeditiously, given the harm it has suffered from the actions of RF and the Does."). Not only is that statement conclusory, every plaintiff says the same thing. The fact remains that RF has appealed a collateral order which divests this Court of jurisdiction while the appeal is pending. *Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990) (appeal of denial of governmental immunity stays underlying case). That the appeal should stay the

underlying case while pending makes sense. Like immunity, the TCPA's purpose is to protect the defendant from the burden and expense of litigation in the first instance. Requiring RF to appeal the denial of his immunity protection while litigating the case eliminates the possibility of the protection.[1]

At any rate, FPI's claims of defamation and associated damage at RF's hands have been utterly undermined by FPI's own expert, Joshua Mitts.  He has published his opinion that history shows that companies like FPI bring "defamation lawsuits [] fail on First Amendment grounds;" and "[t]he options trading data show that much of the decline in the price of Farmland Partners' stock *was not attributable to the content of the article."* Joshua Mitts*, A Data-Driven Defense Against "Short and Distort", N.Y. Law. Journal* (September 12, 2018), https://www.law.com/newyorklawjournal/2018/09/12/a-data-driven-defense-against-short-and-distort/ (emphasis added).

Recently, Mitts further elaborated on Twitter that any damage to FPI's stock price was caused by market manipulation via "mechanical" trading, not RF's Article. He also conceded that such alleged "mechanical" trading is not even conclusive proof of intent to manipulate the market.



**Joshua Mitts** @mittslaw                                    21d
@muddywatersre @CivilTrial Thanks for clarifying! Regulators have access to more detailed trading data than the general public. I am not suggesting that mechanically crashing prices via derivatives is conclusive proof of intent, but it is probative and should prompt a thorough regulatory investigation. 1/

Mitts acknowledges the author may not be involved in the "coordinated, manipulative attack."

---

[1] FPI used the Tenth Circuit's characterization of the "unusual procedural posture of this appeal" as an argument that the appeal is meritless while failing to inform the Court that the Tenth Circuit told the parties to fully brief the merits.




Joshua Mitts @mittslaw

@muddywatersre @IvanaBoastsky Certain players (like hedge funds) may be crashing the price at the same time the report is released, possibly without the author even knowing. The presence of a coordinated, manipulative attack does not always mean the author of the post was behind it. /2

And, Mitts does not deny RF's First Amendment protection.




Joshua Mitts @mittslaw

@cablecarcapital But that's not the point, because the First Amendment gives authors wide protection to state their opinion. It's when that opinion is combined with this kind of trading activity that we have market manipulation. 2/

Mitts affirmatively sought to bring about this litigation himself, based solely on the trading he found, not based on the alleged defamation in the Article.





Joshua Mitts @mittslaw

@TheNarrenschiff @cablecarcapital Actually, I reach out to companies who I believe have been unfairly targeted. I reached out to FPI, not the other way around. And I've reached out to every client I have. So yes, I believe in these companies. I also believe S&D is wrong, a fraud itself, and bad for our economy.




Paul Narrenschiff @TheNarrenschiff

@mittslaw @cablecarcapital So you look at the short case presented from an investment perspective, decide it is without (much) merit, and if there has been corresponding unusual trading activity you call them? Would you feel bad if, in retrospect, one of your clients turned out to be an actual bad actor?

In fact, Mitts condones exactly RF did: state his well-supported opinions and short FPI's stock:



Joshua Mitts @mittslaw  ⏲ 20d

@TheNarrenschiff @cablecarcapital Generally, yes. Like most people, I'm trying to do the right thing, and might get it wrong from time to time. But two wrongs don't make a right. As I said in the interview, if you have a short case —present your thesis. Short the stock. But don't manipulate the price.

Mitts' Tweets and articles establish that RF's article didn't damage FPI (an essential element of defamation). Instead, per Mitts, any harm to FPI was from possible market manipulation, which, crucially, FPI did not bring as a claim (and likely can't assert as a claim, since Mitts concedes the trading data does not conclusively show an intent to manipulate the market). FPI's entire complaint is that RF wrote and published an allegedly defamatory article which caused FPI's stock price to drop, thereby injuring FPI. Since Mitts has confirmed that in fact this action did not actually harm FPI, a stay of discovery from RF will not "continue" to harm FPI.

FPI also failed to argue that the other interests do not favor a stay. Putting aside the highly unique procedural posture here, discovery would be unduly burdensome on RF at this stage not only because of his First Amendment rights (addressed below) but also because he will promptly refile valid motions to dismiss, including for lack of personal jurisdiction and failure to state a claim. This District recognizes that "subjecting a party to discovery when a motion to dismiss for lack of personal jurisdiction is pending may subject [it] to undue burden or expense, particularly if the motion to dismiss is later granted." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, *2 (D. Colo. Mar. 30, 2006). FPI does not address this authority but suggests that such motions will not resolve the case. That is incorrect.

All told, the interests weigh in favor of a discovery stay.

**B.     The proposed discovery infringes on RF's First Amendment rights**

RF has amply demonstrated that he is entitled to the First Amendment right to anonymity and that FPI's proposed discovery will infringe on that right by revealing his identity. *See* Mot. [Doc. No. 56] at 6-7. Pursuant to *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 488 (10th Cir. 2011), on which FPI relies, RF's only burden at this point is to "articulate some

resulting encroachment of [his] liberties." *Id.* (citation omitted). RF has easily met that burden. First, it is undisputed that RF has a right to anonymity under the First Amendment. *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1052 (Colo. 2002) ("Anonymity is often essential to the successful and uninhibited exercise of First Amendment rights, precisely because of the chilling effects that can result from disclosure of identity.").[2]

Second, FPI's discovery will infringe on that right because it will reveal his identity. As explained in the Motion at 6-7, FPI seeks RF's communications about FPI, his trading information, and his research into the Article. All of this requested information unavoidably reveals RF's identity, as a matter of common sense. All communications, research, and trading were done in his own name and he communicated with, among others, a close family member, the disclosure of whom would necessarily also reveal RF's identity. (Doc. No. 55 at 3–4.) That explanation well exceeds the prima facie showing of the First Amendment privilege's applicability. Thus, the burden is on FPI to demonstrate that it is entitled to such information by showing that its claims have merit. *See id.; Dendrite Intern., Inc. v. Doe No. 3*, 342 N.J. Super. 134, 157-58 (N.J. Super. App. Div. 2001) (Defendant has the right to anonymity until the Court determines that Plaintiff has demonstrated its claims and the need to know Defendant's identity outweighs Defendant's right to anonymity right). Unsurprisingly, FPI has neither addressed this authority nor made such a showing.

---

[2] None of FPI's asserted First Amendment authorities concern unmasking an anonymous author sued for defamation. That fact cannot be ignored. *See, e.g., In re Kaiser*, 791 F.2d 73, 76 (7th Cir. 1986) (Posner, J.) ("The cardinal sin of legal reasoning … is to take judicial language out of its original context and apply it uncritically in a materially different context.").

Although RF seeks protection from the specific discovery requests attached to its Motion as Exhibit A on First Amendment grounds, RF also objects to (at this point) hypothetical discovery regarding nonexistent Does. Mitts' recent Tweets confirm that FPI's purpose with discovery is not about proving its defamation case—something its own records should do—but rather about unmasking RF and obtaining information about the non-existent Doe co-conspirators and their alleged market manipulation—a claim that FPI did not even bring. For the same First Amendment issues articulated above, such discovery is merely an end-run around FPI's burden to show its case has merit before it can unmask RF. Indeed, FPI pays only lip-service to the idea that discovery into the nonexistent Does will not reveal RF's identity, because practically speaking, such discovery would do just that. For example, among other reasons, at least one of the individuals mentioned in RF's prior discovery responses is a close family member. (Dkt. 55 at 3–4.)[3] Moreover, if the nonexistent Does have defaulted as FPI repeatedly asserts, no discovery is needed to establish any alleged already-established liability. But of course, the Does and their default are both a sham.[4]

FPI also ineffectively argues that because RF has long-standing, non-FPI specific, non-discretionary investment advisory agreements with several individuals, he engaged in commercial speech and is not entitled to First Amendment protection. That is wrong on many levels. RF's Article does not fit the definition of commercial speech. "Commercial speech is speech proposing

---

[3] Furthermore, as RF's ROG responses show, FPI's attempt to transform RF's family members and business associates into co-conspirators in the publication of the at-issue statements does not present a factually plausible basis that would meet *Twombly/Iqbal*.

[4] FPI grossly mischaracterizes its exchange with the SEC in FPI's unsuccessful attempt to unmask the SEC's whistleblower as an "invitation" to seek documents from the SEC. Not only does the SEC have its noted law-enforcement privilege (Doc. No. 67-3), it also holds a confidential-informer privilege, which protects the identity of an informant such as RF. *Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773 (10th Cir. 1993).

a commercial transaction," or advertising. *Central Hudson Gas v. Public Service Comm.*, 447 U.S. 557, 562 (1980). RF's Article was not advertising. It did not offer any goods or services. It was a research paper positing opinions about a publicly traded company with direct hyperlinks to its supporting documents—FPI's public documents. (*See also* Doc. No. 22 at 21 (discussing RF's privilege to share his opinions about his observed concerns with other potential investors)).

Regardless, even if RF's Article were somehow misinterpreted as "proposing [some] commercial transaction," his First Amendment protections do not disappear. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) ("[S]peech does not lose its First Amendment protection because … it is carried in a form that is 'sold' for profit…"). As FPI has not demonstrated that RF's factual premises were inaccurate or RF's opinions unsupported, FPI cannot overcome RF's right to anonymity.

**C.     The TCPA applies, and precludes discovery**

Finally, FPI's arguments against the TCPA are mislaid yet again. First, as RF has argued in other pleadings, *see* Doc. No. 40 (Reply to TCPA Motion) at 5-8, *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668-69 (10th Cir. 2018) does not control whether the TCPA applies in federal court. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, No. 18-CV-00064-TCK-FHM, 2018 WL 4038117, at *3 (N.D. Okla. Aug. 23, 2018), *appeal filed by Barnett v. Hall Estill Hardwick Gable, et al.,* No. 18-5092 (10th Cir. Sept. 5, 2018) (holding *Los Lobos* does not control whether the Oklahoma Citizen Participation Act, which is substantively identical to the TCPA, applies in federal court, and concluding the OCPA does apply in federal court). Thus, *Los Lobos's* holding that the New Mexico anti-SLAPP statute does not grant immunity is inapplicable to whether the TCPA grants immunity. The Fifth Circuit, which has

explicitly considered the TCPA, concluded that the TCPA creates "not simply the right to avoid ultimate liability in a SLAPP case, but rather . . . the right to avoid trial in the first instance." *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 751-52 (5th Cir. 2014). For this reason, denials of TCPA motions are treated as denials of statutory immunity rights. *Id.* ("the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression"). FPI seems desperate to ignore this authority.

Second, the TCPA's commercial-speech exemption, on which FPI relies to argue that the TCPA does not apply, has been limited by the Texas Supreme Court to instances when the defendant was primarily engaged in the business of selling or leasing goods or services and is sued in that capacity, out of a commercial transaction involving the goods or services that the defendant provides. *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018) (online statements about interactions with former business partner's business practice do not fall within exemption). The facts of this case do not fit into that narrow exception. RF published the Article on an investor website internationally known for publishing opinion research and his intended audience was not potential customers (especially since he published anonymously), but the entire readership on *Seeking Alpha. See id.* (for exemption to apply, "'the intended audience' of the statement or conduct must be actual or potential customers of the defendant"); *see also Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 303–04 (Tex. App.—Dallas 2013, pet. denied) (holding that the exemption did not apply because the "intended audience of the business review was the general public," not an entity seeking the defendant's services).

## CONCLUSION

RF therefore respectfully requests that this Court enter a protective order staying all

discovery pending resolution of the appeal, the jurisdictional issues, and RF's motions to dismiss.

Respectfully submitted this 22nd day of February, 2019.

                                */s/ John A. Chanin*
                                John A. Chanin
                                Katherine Roush
                                Melanie MacWilliams-Brooks
                                FOSTER GRAHAM MILSTEIN & CALISHER, LLP
                                360 South Garfield Street, 6th Floor
                                Denver, Colorado 80209
                                *jchanin@fostergraham.com*
                                *kroush@fostergraham.com*
                                *mbrooks@fostergraham.com*
                                Phone: 303-333-9810
                                Facsimile: 303-333-9786
                                *Attorneys for Defendant Rota Fortunae*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22d day of February, 2019, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND/OR STAY OF DISCOVERY PURSUANT TO F.R.C.P. 26(c)** with the Clerk of the Court using the ECF system, and served via ECF to the following:

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
sllewellyn@mofo.com
kpietari@mofo.com

and

Michael D. Birnbaum
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
mbirnbaum@mofo.com

*/s/     Rita Sanders*
Rita Sanders