**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

      Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE
NAME IS UNKNOWN), JOHN/JANE
DOES 2-10 (WHOSE TRUE NAMES
ARE UNKNOWN),

      Defendants.

---

**FARMLAND PARTNERS INC.'S RENEWED MOTION FOR A DEFAULT JUDGMENT
AGAINST JOHN/JANE DOES 2-10**

---

# TABLE OF CONTENTS

**Page**

I. THE DOES FAILED TO TIMELY RESPOND TO FARMLAND PARTNERS' COMPLAINT. .................................................................................................. 2

II. THE UNDISPUTED FACTS BEFORE THIS COURT SUPPORT A DEFAULT JUDGMENT AGAINST THE DOES. ............................................................... 3

    A. This Court Has Jurisdiction over the Does. ........................................... 4

    B. The Facts Before This Court Demonstrate Defendants' Conspiracy .................... 6

    C. The Facts Before This Court Adequately Support Farmland Partners' Claims Against the Does. .................................................................. 8

III. THE COURT SHOULD SET A HEARING TO FIX THE AMOUNT OF DAMAGES. ....................................................................................... 11

    A. Defendants Exploited Their Defamatory Posting to Profit from an Illegal "Short-and-Distort" Scheme at Farmland Partners' Expense. ........................... 11

    B. Farmland Partners Suffered Substantial Damages as a Result of the False and Defamatory Statements Defendants Made and Exploited for Profit. ............. 13

    C. The Malicious Nature of Defendants' Conduct Calls for Punitive Damages. ............................................................................... 14

IV. BOTH THE FEDERAL RULES AND INCORPORATED COLORADO LAW PROVIDE FOR DISCOVERY IN AID OF EXECUTING A DEFAULT JUDGMENT. ................................................................................ 14

V. CONCLUSION ........................................................................... 15

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpert v. Resolution Tr. Corp.*,
   142 F.R.D. 486 (D. Colo. 1992) ...........................................................................5

*AW Licensing, LLC v. Bao*,
   No. 15-cv-1373 (KBF), 2016 U.S. Dist. LEXIS 66791
   (S.D.N.Y. Jan. 11, 2016)......................................................................................6

*Bolduc v. Bailey*,
   586 F. Supp. 896 (D. Colo. 1984)......................................................................14

*Bolsa Res., Inc. v. Martin Res., Inc.*,
   No. 11-cv-01293-MSK-KMT, 2014 WL 4882132
   (D. Colo. Aug. 28, 2014) ...................................................................................13

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   861 F.3d 1081 (10th Cir. 2017) ...............................................................8, 13, 14

*Calder v. Jones*,
   465 U.S. 783 (1984).............................................................................................4

*Combs v. Doe*,
   No. C10-01120 HRL, 2011 U.S. Dist. LEXIS 17599
   (N.D. Cal. Feb. 23, 2011)....................................................................................6

*Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*,
   97 P.3d 140 (Colo. App. 2003).............................................................................6

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ...........................................................................5

*Fink v. Swisshelm*,
   185 F.R.D. 353 (D. Kan. 1999) ...........................................................................2

*Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*,
   153 F. Supp. 2d 1253 (D. Kan. 2001) ..................................................................5

*Greenwich Ins. Co. v. Daniel Law Firm*,
   No. 07-cv-02445-LTB-MJW, 2008 U.S. Dist. LEXIS 122917
   (D. Colo. Mar. 24, 2008)......................................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page

*Heritage Vill. Owners Ass'n, Inc. v. Golden Heritage Inv'rs, Ltd.*
   89 P.3d 513 (Colo. App. 2004) ................................................................................13

*Investors Warranty of Am. V. Underhill & Underhill Prof'l Corp.*,
   No. 2012CV201031, 2014 Colo. Dist. LEXIS 3075
   (Colo. Dist. July 23, 2014) ....................................................................................15

*James v. Coors Brewing Co.*,
   73 F. Supp. 2d 1250 (D. Colo. 1999) .....................................................................14

*Lewis v. Lewis*,
   189 P.3d 1134 (Colo. 2008) ...................................................................................10

*Loughridge v. Goodyear Tire & Rubber Co.*,
   192 F. Supp. 2d 1175 (D. Colo. 2002) .....................................................................9

*Martinez v. Colo. Dep't of Human Servs.*,
   97 P.3d 152 (Colo. App. 2003) .........................................................................11, 12

*MDM Grp. Assocs., Inc. v. CX Reinsurance Co. Ltd.*,
   165 P.3d 882 (Colo. App. 2007) ...............................................................................7

*Navika Capital Grp., LLC v. Doe*,
   No. 14 CV 5968 (DLI) (CLP), 2017 U.S. Dist. LEXIS 2926
   (E.D.N.Y. Jan. 6, 2017) .......................................................................................5, 14

*Purzel Video GmbH v. Martinez*,
   13 F. Supp. 3d 1140 (D. Colo. 2014) ...............................................................2, 3, 8

*S.E.C. v. CFO-5*,
   No. 08-cv-01594-PAB-MEH, 2010 WL 1790414
   (D. Colo. May 4, 2010) ..........................................................................................11

*Satriano v. Countrywide Home Loans, Inc.*,
   No. 14-cv-02216-KLM, 2015 U.S. Dist. LEXIS 53982
   (D. Colo. Apr. 23, 2015) ...................................................................................3, 4, 5

*Silver v. Brown*,
   382 F. App'x 723 (10th Cir. 2010) ...........................................................................4

-iii-

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Teilhaber Mfg. Co. v. Unarco Materials Storage, Div. of Unarco Indus., Inc.*,
    791 P.2d 1164 (Colo. App. 1989) .......................................................................13

*TMJ Implants, Inc. v. Aetna, Inc.*,
    405 F. Supp. 2d 1242 (D. Colo. 2005) ..................................................................9

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*,
    898 F. Supp. 2d 1213 (D. Colo. 2012) ................................................................10

**Statutes**

Colo. Rev. Stat. § 6-1-105(1)(h) .............................................................................10

**Other Authorities**

Fed. R. Civ. P.
    Rule 12(a) ..............................................................................................................2
    Rule 55(a) ..............................................................................................................3
    Rule 55(b) ..........................................................................................................2, 3
    Rule 69(a)(2) .......................................................................................................14
    Rule 69(d)(1) .......................................................................................................15
    Rule 69(e)(1) .......................................................................................................15
    Rule 69(i) .............................................................................................................15

As set forth in Farmland Partners' Complaint, John/Jane Does 2-10 (the "Does") were part of a conspiracy to launch a "short-and-distort" attack on Farmland Partners, which included building short positions designed to profit from a stock price drop following the publishing of false and defamatory statements.  *See* Compl. ¶¶ 3, 6-48, 94, 97-98, ECF No. 3.  Rota Fortunae's ("RF") responses to this Court's jurisdictional interrogatories confirmed as much, by identifying four individuals and a company that benefitted from RF's publication (the "Known Does").  *See* March 8, 2019 Declaration of Michael D. Birnbaum in Support of Farmland Partners Inc.'s Renewed Motion for a Default Judgment Against John/Jane Does 2-10 ("Birnbaum Decl."), Ex. A at 3-5.  RF identified the Known Does as parties who received "direct or indirect benefits Relating to [his] role in researching, drafting, or disseminating" the Seeking Alpha Posting, and confirmed that those Known Does profited from trades in Farmland Partners' stock and compensated RF.  *Id.*  Further, given the trading data analyzed by Farmland Partners' expert, there are almost certainly additional Does that were involved in and benefitted from the short-and-distort scheme.  *See* Birnbaum Decl., Ex. B, Oct. 3, 2018 Declaration of Joshua Mitts ("Mitts Decl.").

Farmland Partners timely served the Does with the Complaint on August 30, 2018, pursuant to an order permitting substituted service issued by the Colorado State Court in which the Complaint was filed.  The Does had 21 days, or until September 20, 2018, to respond to the Complaint or seek an extension, but failed to do so, and it has now been months since the Does were required to respond to the Complaint.  Moreover, Farmland Partners previously filed a motion for default judgment to which the Does failed to respond.  Because the Does are in default, this Court should enter a default judgment against the Does pursuant to Federal Rule of

1

Civil Procedure 55(b)—including, but not limited to, the Does identified in RF's interrogatory responses, who have notice of this litigation, as counsel for RF confirmed at the March 5 hearing, *see* Birnbaum Decl., Ex. C at 21:25; 22:1-1—set a hearing to determine the amount of the judgment, and permit discovery in aid of enforcement of the resulting judgment.

## I.   THE DOES FAILED TO TIMELY RESPOND TO FARMLAND PARTNERS' COMPLAINT.

Federal Rule of Civil Procedure 55(b) provides for a default judgment where, like here, a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the time proscribed by the Federal Rules.  Fed. R. Civ. P. 55(b); *see also Purzel Video GmbH v. Martinez*, 13 F. Supp. 3d 1140, 1148, 1152-53 (D. Colo. 2014).  Pursuant to Federal Rule of Civil Procedure 12(a) (and the corresponding Colorado Rules that initially applied), the Does had 21 days from the time they were served with the Complaint to answer or otherwise respond.  That 21-day clock began to run on August 30, 2018, when Farmland Partners served the Does pursuant to the Colorado State Court's August 29 Order permitting substituted service.  *See* Birnbaum Decl., Ex. D, Proof of Service, filed herewith.  RF's counsel has recently confirmed that at least five of the Does—the persons and company identified in RF's interrogatory responses—have notice of this litigation.  Therefore, the Does have no excuse for their failure to appear in this litigation, particularly where Farmland Partners previously filed a motion for default judgment against the Does, and the time for a response ran without any response.  *See* ECF No. 39; *see also Fink v. Swisshelm*, 185 F.R.D. 353, 357-58 (D. Kan. 1999) (finding defendants culpable when they had actual notice of the complaint but failed to appear until after default judgment was issued).

2

Because the Does have not filed any response to Farmland Partners' Complaint, the Does are in default.[1]   Accordingly, consistent with the Court's guidance at the March 5 hearing, Farmland Partners renews its request for an entry of default and a default judgment pursuant Federal Rule Civil Procedure 55(b).  *See* Birnbaum Decl. Ex. C at 12:1-8.

## II.    THE UNDISPUTED FACTS BEFORE THIS COURT SUPPORT A DEFAULT JUDGMENT AGAINST THE DOES.

The standard of review is not controversial.  A default judgment against the Does is appropriate where "the unchallenged facts constitute a legitimate basis for the entry of a judgment." *Purzel Video*, 13 F. Supp. 3d at 1148.  As this Court has explained, in "determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true." *Id.* (collecting cases); *see also Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-02445-LTB-MJW, 2008 U.S. Dist. LEXIS 122917, at *4-5 (D. Colo. Mar. 24, 2008) (same).  Farmland Partners is entitled to a deferential review of the facts before this Court. *See Satriano v. Countrywide Home Loans, Inc.*, No. 14-cv-02216-KLM, 2015 U.S. Dist. LEXIS 53982, at *9 (D. Colo. Apr. 23, 2015) ("the moving party enjoys the benefit of deferential pleading interpretation").  Furthermore, the court should "accept[] the undisputed facts set forth in any affidavits and exhibits." *Purzel Video*, 13 F. Supp. 3d at 1148 (citation omitted). Consistent with that standard, the Court should grant this motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 55(a), Farmland Partners requested an entry of default from the Clerk of this Court on November 28, 2018.  *See* ECF No. 36.

3

### A.     This Court Has Jurisdiction over the Does.

As a threshold matter, this court has both personal and subject matter jurisdiction over the

Does.  At this stage, Farmland Partners "need[s] only make a prima facie showing [of personal

jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties'

affidavits and other written materials."  *Satriano*, 2015 U.S. Dist. LEXIS 53982, at *8 (citation

and quotation marks omitted).  And as set forth in Farmland Partners' opposition to defendant

Rota Fortunae's ("RF") motions to dismiss, defendants' short-and-distort attack was directed at,

published in, and caused the brunt of the injuries to be felt in Colorado, which satisfies the

personal jurisdiction test set forth in the Supreme Court's decision in *Calder v. Jones*, 465 U.S.

783 (1984).  *See* Farmland Partners' Opp'n to RF's Mots. to Dismiss ("FPI's Opp'n") at 16-23,

ECF No. 34.

As more fully set forth in the Complaint, the Does, in concert with RF, sent a letter into

Colorado at the heart of this dispute, caused to be published an "article" and Tweets concerning a

Colorado company and CEO, amassed short positions in a Colorado company's stock to profit

from their attack on the Colorado company, and specifically targeted Colorado resident Paul

Pittman, all while knowing they would cause financial and reputational harm to a Colorado

company, Colorado residents, and Colorado investors.  *See* Compl. ¶¶ 3, 9, 18, 20-27, 30-31, 35,

39-40, 57, 93-100.  Because the claims Farmland Partners asserts arose out of these contacts with

Colorado, this Court has specific personal jurisdiction over the Does.  *See Calder*, 465 U.S. at

788-91; *Silver v. Brown*, 382 F. App'x 723, 729-30 (10th Cir. 2010) (applying the *Calder* test

and holding that personal jurisdiction existed over the author of an allegedly defamatory weblog,

or "blog," because the content was "aimed" at the forum where the company resided and the

4

website was available in that forum); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008) (finding plaintiffs satisfied their burden by establishing "that defendants knew plaintiffs' business and auction were based in Colorado, and therefore knew the effects of [their actions] would be felt there"); *see also* FPI's Opp'n at 16-23.

This Court also currently has subject matter jurisdiction over the Does, because RF removed this case based on diversity jurisdiction.[2] *See Satriano*, 2015 U.S. Dist. LEXIS 53982, at *4 (entering a default judgment where matter was removed to federal court based on diversity jurisdiction) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008)).

That the Does are anonymous defendants does not present any impediment to entering a judgment against them.  Where, as here, unknown individuals have been properly served with a complaint and failed to timely respond, default judgments protect diligent plaintiffs who would otherwise face "interminable delay and continued uncertainty as to [their] rights." *Satriano*, 2015 U.S. Dist. LEXIS 53982, at *3 (quoting *In Re Rains*, 946 F.2d 731, 733 (10th Cir. 1991)). "[T]o hold otherwise . . . would permit individuals who have violated federal law to continue to do so without redress for the harmed parties solely due to the fact that the wrongful party has successfully concealed himself or herself from identification." *Navika Capital Grp., LLC v. Doe*, No. 14-CV-5968 (DLI) (CLP), 2017 U.S. Dist. LEXIS 2926, at *13-14 (E.D.N.Y. Jan. 6, 2017) (collecting cases entering default judgment against unnamed defendants).  This is particularly

---

[2] Farmland Partners reserves all rights with respect to its motion to remand this action for, *inter alia*, failure to obtain consent to such removal from the Does, as set forth in Farmland Partners' motion to remand.  ECF No. 15.  Unless and until this case is remanded, this Court has subject matter jurisdiction to resolve motions brought before it.  *See Alpert v. Resolution Tr. Corp.*, 142 F.R.D. 486, 487 (D. Colo. 1992); *Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*, 153 F. Supp. 2d 1253, 1256 (D. Kan. 2001).

5

true where the Known Does have notice of this lawsuit, as RF's counsel indicated at the March 5

hearing, yet have not appeared to defend.  *See* Birnbaum Decl., Ex. C at 19: 6-7.[3]

**B.      The Facts Before This Court Demonstrate Defendants' Conspiracy.**

The Does are liable for civil conspiracy because defendants carried out the scheme in

concert.  Here, the facts demonstrate "(1) an object to be accomplished; (2) an agreement by two

or more persons on a course of action to accomplish that object; (3) in furtherance of that course

of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful

goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and

(4) damages to the plaintiff as a proximate result."  *Double Oak Constr., L.L.C. v. Cornerstone*

*Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) (citations omitted).  Defendants' attack on

Farmland Partners involved a concerted effort, shared object, and a "meeting of the minds"

between RF and the Does.  *See* Compl. ¶¶ 93-100.

First, the posting at the center of defendants' short-and-distort attack, as well as

communications to Farmland Partners sent before and after the posting was published,

demonstrated that RF was conspiring with others in its efforts to drive the company's stock price

down to profit from defendants' short positions.  *See* Compl. ¶¶ 30, 96; Birnbaum Decl. Ex. E,

July 9, 2018 Letter from RF's counsel Matthew Mitzner to Farmland Partners' Colorado

---

[3] *See also id.* ("[W]here an unidentified defendant has been properly served with a complaint and
has nevertheless failed to answer or otherwise respond, the fact that the defendant cannot be
physically identified does not impede a court's ability to enter judgment against it"); *see also AW*
*Licensing, LLC v. Bao*, No. 15-cv-1373 (KBF), 2016 U.S. Dist. LEXIS 66791, at *1-3 (S.D.N.Y.
Jan. 11, 2016) (entering default judgment against Doe defendants after Doe defendants had been
properly served with a complaint); *Combs v. Doe*, No. C10-01120 HRL, 2011 U.S. Dist. LEXIS
17599, at *2 (N.D. Cal. Feb. 23, 2011) (recommending default judgment be entered against
defendant that plaintiff had been unable to identify but served through alternative means).

6

headquarters ("July 9 Letter") (Mr. Mitzner writing Farmland Partners on behalf of "a group of investors" who "have prepared and anticipate publishing an article"); *id.* Ex. F, July 11, 2018 Seeking Alpha Posting by Rota Fortunae concerning Farmland Partners ("Posting") at 1-3 (RF referring in the Posting time and again to what "we found," "[w]e believe," "[w]e know," and "[w]e think" and presented "[o]ur research" and "our opinion."); *id.* Ex. G at Tweet 19 ("We are not done here. We haven't even touched on Pittman"); *id.* at Tweets 9, 14, 16, 18, 20. In fact, upon learning of the Complaint in this case, RF immediately published a Tweet saying "$FPI is down 2.9% on news it is suing us." *Id.* at Tweet 22. Further, RF himself has identified four individuals and a company that benefitted from his publication of the Seeking Alpha Posting, bolstering the evidence that Does exist here. *See* Birnbaum Decl. Ex. A.

Moreover, defendants' scheme involved trading in Farmland Partners' stock carefully timed to combine with defendants' false and misleading statements to maximize the impact on Farmland Partners (and capture maximum profit). *See* Mitts Decl. ¶¶ 8, 15-23; *see also* Compl. ¶¶ 29, 31, 57, 65, 66, 76, 81. Defendants' lies about Farmland Partners were disseminated as their put options written for Farmland Partners' stock approached their expiration dates. *See* Mitts Decl. ¶¶ 8, 15, 17; Compl. ¶ 31. By timing their attack as they did, defendants prompted trading that multiplied the impact of their published falsehoods (and damage to Farmland Partners) manifold. Mitts Decl. ¶ 19; Compl. ¶¶ 31-34. This civil conspiracy is the core of defendants' misconduct and the Does' refusal to answer for it cries out for a default judgment.

7

ny-1477828

**C.    The Facts Before This Court Adequately Support Farmland Partners'
Claims Against the Does.**

The facts set forth in the Complaint, its attachments, documents referenced therein, RF's

interrogatory responses, Birnbaum Decl. Ex. A, and the October 3, 2018 Declaration of Joshua

Mitts—accepted as true for purposes of this motion—support each of Farmland Partners' claims

against the Does.  *See Purzel Video*, 13 F. Supp. 3d at 1148 (in ruling on a motion for default

judgment, the Court should "accept[] the undisputed facts set forth in any affidavits and

exhibits").  For example, these documents amply demonstrate that defendants' statements were:

(1) defamatory, (2) materially false, (3) concerning Farmland Partners, (4) published to a third

party, (5) published with actual malice, and (6) the cause of actual or special damages.  *See*

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017).

Defendants conspired to publish statements about Farmland Partners on Seeking Alpha and

Twitter.  *See* Compl. ¶¶ 2-4, 34, 38-41, 55, 67, 94, 98-100.  And the Complaint satisfies the

remaining elements for defamation by describing how the published statements were defamatory,

materially false, made with malice, and the cause of damage to Farmland Partners.  *See, e.g.*,

Compl. ¶¶ 24, 34, 38-41, 55, 67, 94, 98-100.

Farmland Partners likewise has established intentional interference with prospective

business relations under Colorado law.  *See MDM Grp. Assocs., Inc. v. CX Reinsurance Co. Ltd.*,

165 P.3d 882, 886 (Colo. App. 2007) (stating that a claim for intentional interference with

prospective business relations requires "a showing of improper and intentional interference by

the defendant that prevents the formation of a contract between the plaintiff and a third party"

where there is a "reasonable likelihood or reasonable probability that a contract would have

resulted") (citations omitted).  The Complaint satisfies each of these elements.  *See, e.g.*, Compl. ¶¶ 69-76.  Defendants knew Farmland Partners is a publicly traded company in the business of managing and acquiring land and that the short-and-distort scheme attacked the integrity and viability of Farmland Partners' business.  *Id*. ¶¶ 20-30.  And Farmland Partners lost prospective business relations with current and potential investors and shareholders of its stock, along with prospective business relations with other third parties, including lenders, property owners, potential investors, and farmers, due to defendants' scheme.  *Id*. ¶¶ 6, 68-75.

The proof before this Court also supports Farmland Partners' disparagement claim under Colorado law.  "A claim for disparagement requires demonstration of 1) a false statement; 2) published to a third party; 3) derogatory to the plaintiff's title to his property or its quality, to his business in general or to some element of his personal affairs; 4) through which defendant intended to cause harm to the plaintiff's pecuniary interest or either recognized or should have recognized that it was likely to do so; 5) malice; and 6) special damages."  *TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242, 1249 (D. Colo. 2005) (citations omitted).  Farmland Partners pled that defendants conspired to make a litany of false statements about it that were published on Seeking Alpha and Twitter.  *See* Compl. ¶¶ 2-4, 34, 38-41, 55, 67, 94, 98-100.  And those statements were derogatory to the Company's and Mr. Pittman's business and personal reputations respectively.  *Id*. ¶¶ 21-29, 34, 40-41, 64.  Further, defendants intended to cause harm to the Company and acted with malice.  *Id*. ¶¶ 8-18, 21-29, 31, 65-66.  Finally, defendants' disparagement caused Farmland Partners damages.  *Id*. ¶¶ 34, 63, 67.

The Does also violated the Colorado Consumer Protection Act.  "A valid claim under the [Colorado Consumer Protection Act] consists of the following elements: (1) that the defendant

engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003)). "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:  Disparages the goods, services, property, or business of another by false or misleading representation of fact." Colo. Rev. Stat. § 6-1-105(1)(h).  Here, defendants engaged in a deceptive trade practice when they publicly and falsely disparaged Farmland Partners and Mr. Pittman through the Posting and Tweets, which impacted the public as actual or potential consumers of published information about financial markets.  *See* Compl. ¶¶ 2-4, 34, 38-41, 55, 67, 83-92, 94, 98-100.  That disparagement was followed by a 39% drop in Farmland Partners' stock price and significant harm to Farmland Partners' business.  *Id.* ¶¶ 34, 57, 76, 81.

Farmland Partners has also adequately pled an unjust enrichment claim against the Does. *See Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) ("a party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation") (citations omitted).  Farmland Partners pled that defendants' short-and-distort scheme conferred an ill-gotten monetary benefit on the Does at Farmland

10

Partners' expense.  *See* Compl. ¶¶ 30-31, 97; *see also* Mitts Decl. ¶¶ 5, 22-27.  Default judgment

against the Does on this claim is therefore proper.

Through their short-and-distort scheme, Defendants were unjustly enriched and caused

significant injury to Farmland Partners and its employees, partners, and investors.  Entry of a

default judgment would be the first step to holding the Does accountable for their misconduct.

## III.   THE COURT SHOULD SET A HEARING TO FIX THE AMOUNT OF DAMAGES.

Farmland Partners suffered, and continues to suffer, severe financial and reputational

damages as a result of defendants' short-and-distort scheme.  Compl. ¶¶ 34, 77-82.  Accordingly,

the Does should be held jointly and severally liable for all damages incurred.  *See Loughridge v.*

*Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1186 (D. Colo. 2002) ("Both negligent and

intentional acts are sufficient to give rise to joint liability" for purposes of civil conspiracy

actions) (citation and quotation marks omitted).  The Does should also be held jointly and

severally liable for their ill-gotten profits.  *See S.E.C. v. CFO-5*, No. 08-cv-01594-PAB-MEH,

2010 WL 1790414, at *4 (D. Colo. May 4, 2010) (holding defendants jointly and severally liable

for disgorgement representing profits gained from fraudulent scheme).

There are three types of damages here:  profits stemming from the Does' ill-gotten gains;

reputational and financial damages sustained by Farmland Partners; and punitive damages owing

to the malicious nature of the defamatory statements.

### A.   Defendants Exploited Their Defamatory Posting to Profit from an Illegal "Short-and-Distort" Scheme at Farmland Partners' Expense.

The Does are liable to Farmland Partners for the money they made by cashing in on their

short positions in Farmland Partners' stock following the short-and-distort scheme.  *See Martinez*

11

*v. Colo. Dep't of Human Servs.*, 97 P.3d 152, 159 (Colo. App. 2003) (an unjust enrichment plaintiff is entitled to relief where "(1) at the plaintiff's expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying"). The Does had a short position in Farmland Partners' stock, and thus realized unjust gains at the expense of Farmland Partners when the price of Farmland Partners' stock plummeted following defendants' attack on the company. Compl. ¶¶ 77-82.

In the period prior to the Posting, defendants took extraordinary derivatives positions, such that a slight decline in stock price following the Posting rapidly transformed into a "sudden and sharp crash." Mitts Decl. ¶¶ 5, 19. Trading activity demonstrates large bets that the stock of Farmland Partners would drop precipitously on, or soon after, July 11, 2018. *Id.* ¶ 5. Those bets included short-dated put options ordinarily purchased in advance of specific events expected to move a stock's price, such as earnings calls. *Id.* ¶ 9. Farmland Partners had no such events scheduled on or around July 11, 2018. *Id.* ¶ 10.

Defendants' scheme proved to be effective: On July 11, 2018, the date of the defamatory Posting, Farmland Partners' stock price fell to a low of $5.28, having never previously closed at a price under $7.00 over the year spanning June 1, 2017 to May 31, 2018. *Id.* ¶¶ 11, 27. Farmland Partners currently estimates that defendants' profits from their attack on Farmland Partners exceeds $10 million, and requests a hearing to demonstrate the extent to which defendants profited from their scheme. And RF's interrogatory responses confirmed that the Known Does he identified in fact profited on their investments in Farmland Partners. *See* Birnbaum Decl. Ex. A.

**B.      Farmland Partners Suffered Substantial Damages as a Result of the False and Defamatory Statements Defendants Made and Exploited for Profit.**

Farmland Partners suffered both a severe, abrupt stock price decline following the publication of the defamatory Posting, and a decline in business in the period after the Posting, thereby suffering both general business and special damages that it is entitled to relief for from the Does.  *See* Mitts Decl. ¶¶ 24-27, 32; Compl. ¶¶ 34, 57, 67-76, 81; *see also Teilhaber Mfg. Co. v. Unarco Materials Storage, Div. of Unarco Indus., Inc.*, 791 P.2d 1164, 1167 (Colo. App. 1989) (disparagement plaintiff is entitled to general business and special damages where a pecuniary loss has been realized); *Heritage Vill. Owners Ass'n, Inc. v. Golden Heritage Inv'rs, Ltd.* 89 P.3d 513, 516 (Colo. App. 2004) (damages awarded for a violation of the Colorado Consumer Protection Act "must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered") (citation omitted).

Further, Farmland Partners suffered harm to its reputation, loss of business, and other monetary harm as a result of the publication of the false and defamatory written statements. Compl. ¶¶ 67, 81.  Since the Posting, Farmland Partners has continued to contend with the reputational fallout from the defamatory Posting and the massive price decline that followed.  *Id.* ¶¶ 4, 67, 81.  The Does must be held liable for these reputational damages.  *See Brokers' Choice*, 861 F.3d at 1109 n.32 (defamation plaintiff is entitled to actual damages, which, in addition to out-of-pocket loss, may include reputational injury, mental anguish and suffering, and humiliation); *Bolsa Res., Inc. v. Martin Res., Inc.*, No. 11-cv-01293-MSK-KMT, 2014 WL 4882132, at *10 (D. Colo. Aug. 28, 2014) (a plaintiff asserting a claim for intentional interference with prospective business relations is entitled to the pecuniary loss of the benefits of

13

the prospective relations, consequential losses resulting from the interference, and emotional

distress and reputational harm resulting from the interference).

       **C.**       **The Malicious Nature of Defendants' Conduct Calls for Punitive Damages.**

The Does should be ordered to pay punitive damages due to the malicious nature of their

short-and-distort attack and the Does' profits therefrom.  *See Brokers' Choice*, 861 F.3d at 1109

n.32 (states may permit recovery of presumed or punitive damages in a case involving a matter

of public concern when the plaintiff has proved actual malice); *see also Navika Capital Grp.,*

2017 U.S. Dist. LEXIS 2926, at *49; *Bolduc v. Bailey*, 586 F. Supp. 896, 901 (D. Colo. 1984);

*James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1254-55, 1262 (D. Colo. 1999).  Defendants

acted with "actual malice" in publishing the defamatory statements with reckless disregard for

their truth or falsity, the sole objective of their Posting being to capitalize on the resulting price

decline.  *See Brokers' Choice*, 861 F.3d at 1106; Compl. ¶¶ 29, 33, 35, 63, 65, 97-98.

**IV.**      **BOTH THE FEDERAL RULES AND INCORPORATED COLORADO LAW
PROVIDE FOR DISCOVERY IN AID OF EXECUTING A DEFAULT
JUDGMENT.**

Federal Rule of Civil Procedure 69(a)(2) provides for discovery in aid of executing a

judgment, in part by incorporating the relevant state procedure.  *See* Fed. R. Civ. P. 69(a)(2).

Rule 69(a)(2) provides:  "In aid of the judgment or execution, the judgment creditor or a

successor in interest whose interest appears of record may obtain discovery from any person—

including the judgment debtor—as provided in these rules or by the procedure of the state where

the court is located."  Colorado law, in turn, provides that a party who obtains a money judgment

may serve written interrogatories, document requests, and requests for a deposition on any

<div align="center">14</div>

party.[4]  Here, Farmland Partners anticipates serving discovery in aid of execution, including

discovery sufficient to identify all Does and to identify any property or assets that may satisfy the

judgments against them.  *See Investors Warranty of Am. v. Underhill & Underhill Prof'l Corp.*,

No. 2012CV201031, 2014 Colo. Dist. LEXIS 3075, at *11 (Colo. Dist. July 23, 2014) ("As a

discovery device, the scope of inquiry pursuant to C.R.C.P. 69 is broad, and extends to any

information reasonably calculated to lead to discovery of a debtor's property.").

V.     **CONCLUSION**

Because the Does remain in default, and the facts before this Court establish each of the

elements of the claims brought by Farmland Partners against them, this Court should enter a

default judgment against the Does, hold a hearing to determine the amount of damages for which

the Does should be jointly and severally liable, and permit discovery in aid of enforcement of the

resulting judgment.

---

[4] *See* C.R.C.P. 69(d)(1) ("At any time after entry of a final money judgment, the judgment creditor may serve written interrogatories upon the judgment debtor in accordance with C.R.C.P. 45, requiring the judgment debtor to answer the interrogatories. Within 21 days of service of the interrogatories upon the judgment debtor, the judgment debtor shall appear before the clerk of the court in which the judgment was entered to sign the answers to the interrogatories under oath and file them."); C.R.C.P. 69 (e)(1) ("At any time after entry of a final money judgment, a judgment creditor may cause a subpoena or subpoena to produce to be served as provided in C.R.C.P. 45 requiring the judgment debtor to appear before the court, master or referee with requested documents at a specified time obtained from the court to answer concerning property. A judgment debtor may be required to attend outside the county where such judgment debtor resides and the court may make reasonable orders for mileage and expenses. The subpoena shall include on its face a conspicuous notice to the judgment debtor that provides: 'Failure to Appear Will Result in Issuance of a Warrant for Your Arrest.'"); C.R.C.P. 69(i) ("After entry of a final money judgment, the judgment creditor, upon order of court which may be obtained ex parte, may take the deposition of any person including the judgment debtor, in the manner provided in these Rules.").

15

Dated:  March 8, 2019

Respectfully submitted,


*/s/ Scott F. Llewellyn*

Scott F. Llewellyn
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202
Telephone:  303.592.1500
Facsimile:  303.592.1510
sllewellyn@mofo.com

Michael D. Birnbaum
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone:  212.336.4079
Facsimile:  212.468.7900
mbirnbaum@mofo.com

*Attorneys for Plaintiff, Farmland Partners Inc.*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of March, 2019, the foregoing motion a default judgment, the related declaration, and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jchanin@fostergraham.com,
kroush@fostergraham.com,
mbrooks@fostergraham.com

*Counsel for Defendant, Rota Fortunae*

*/s/ Scott F. Llewellyn*
Scott F. Llewellyn

17