IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02351-KLM

FARMLANDS PARTNERS INC.,

　　　Plaintiff,

v.

ROTA FORTUNAE, whose true name is unknown, and
JOHN/JANE DOES 2-10, whose true names are unknown,

　　　Defendants.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　This matter is before the Court on Defendant Rota Fortunae's ("Rota") **Motion to Reconsider Order Granting Substituted Service of Fictitious Defendants John/Jane Does 2-10** [#72] (the "Motion").  Defendant Rota[1] initially filed the Motion in Denver District Court on August 30, 2018.  After the case was removed, Defendant Rota re-filed the Motion in this Court on March 14, 2019, separately from its Notice of Removal [#1].  In adjudicating the Motion, the Court has reviewed the entire case file, the applicable law, and the following briefs: (1) Plaintiff's Response [#73] in opposition to the Motion; (2) Rota's Reply [#74] in support of the Motion; (3) Plaintiff's Supplemental Response [#77]; and (4) Rota's Supplemental Reply [#78].  Being fully advised in the premises and for the reasons stated below, the Motion [#72] is **GRANTED**.

---

[1] "Rota Fortunae" is a fictitious name used by a person who wrote and published an allegedly defamatory article about Plaintiff which is the subject of this litigation.  Rota's true name remains unknown.  The Court refers to Rota as "he" and "him" for purposes of convenience only.

## I.  Procedural Background

Plaintiff initiated this action against Defendants on July 23, 2018, in Denver District Court.  *Compl.* [#3].  In short, Plaintiff alleges that Defendants conspired to publish false, misleading, and defamatory statements regarding Plaintiff's company in an attempt to profit from Plaintiff's declining stock price in what is known as a "short and distort" scheme. *Id.* at 1-7.  The Complaint asserts claims for defamation/defamation by libel per se, disparagement, intentional interference with prospective business relations, unjust enrichment, deceptive trade practice in violation of the Colorado Consumer Protection Act, and civil conspiracy.  *Id.* at 7-12.

On August 13, 2018, the Denver District Court granted Plaintiff's request to serve Defendant Rota by substituted service through his former counsel, Matthew Mitzner ("Mitzner").   *Order Granting Plaintiff's Motion to Allow Substituted Service* [#1-4]. Subsequently, Plaintiff served Rota through Mr. Mitzner on August 16, 2018.  *See Proof of Service of Rota* [#1-3].

On August 28, 2018, Plaintiff moved to effect substituted service on Defendants John/Jane Does 2-10 (the "Doe Defendants")[2] by filing its Motion to Allow Substituted Service [#1-6] (the "Motion for Substituted Service").   In the Motion for Substituted Service, Plaintiff explained that it had conferred with Rota's current counsel, John Chanin

---

[2]  Plaintiff identifies the Doe Defendants as "individuals or entities who worked with or for Rota Fortunae in connection with the false and misleading statements about Farmland Partners that Rota Fortunae made publicly in an internet posting and on Twitter, including members, partners, affiliates, employees, consultants, clients, agents, and/or counsel of or for Rota Fortunae." *Compl.* ¶ 3.

("Chanin"), regarding service on the Doe Defendants. [#1-6] at 3. According to Plaintiff, Mr. Chanin declined Plaintiff's request to accept service on behalf of the Doe Defendants and informed Plaintiff "that he was not authorized to accept such service." *Id.* For that reason, Plaintiff sought an order from the Court permitting Plaintiff to serve the Doe Defendants pursuant to Colorado Rule of Civil Procedure 4(f) by delivering process to Mr. Chanin. *Id.*

On the following day, August 29, 2018, the Denver District Court granted Plaintiff's Motion for Substituted Service. *Order Granting Plaintiff's August 28, 2018, Motion to Allow Substituted Service* [#1-7] (the "State Court Order"). Accordingly, Plaintiff delivered service to Mr. Chanin and filed its Proof of Service [#15-10] with respect to the Doe Defendants on August 30, 2018.

That same day, August 30, 2018, Rota filed the instant Motion [#72] in state court requesting that the state court reconsider its order granting Plaintiff's Motion for Substituted Service [#1-6]. The Denver District Court ordered the parties to submit expedited briefing on Rota's Motion on August 31, 2018. Pursuant to the expedited briefing schedule, Plaintiff filed its Response [#73] on September 7, 2018, and Defendant filed his Reply [#74] on September 11, 2018. Before the state court could rule on the Motion [#72], however, Rota removed the case to this Court on September 14, 2018, leaving the Motion unresolved.

Rota's Notice of Removal [#1] attached, among other things, the Motion, the relevant briefing, and the register of actions for the state court proceedings. [#1-8]; [#1-9]; [#1-10]; [#1-11]. However, the Motion was not separately filed on the docket in this

case to indicate that it was pending before this Court until March 14, 2019. *See* D.C.COLO.LCivR 81.1(b) ("No later than 14 days after the filing of the notice of removal, the removing party shall file a current docket sheet (register of actions) and shall separately file each pending motion, petition, and related response, reply, and brief."). Subsequently, Plaintiff filed its Supplemental Response [#77] regarding the Motion on March 20, 2019, and Rota filed his Supplemental Reply [#78] on April 3, 2019.

In the Motion, Rota primarily contends that the substituted service on the Doe Defendants permitted by the State Court Order [#1-7] was inappropriate because the Doe Defendants "are purely fictitious" and simply do not exist. *Motion* [#72] at 2. According to Rota, because the Doe Defendants do not exist, Mr. Chanin cannot be reasonably calculated to give those defendants actual notice of this suit. *Id.* In Plaintiff's Response, Plaintiff argues that Rota fails to allege a manifest error of fact or law that clearly mandates reconsideration of the State Court Order and that Rota has failed to refute the validity of substituted service established by Plaintiff's Motion for Substituted Service [#1-6]. *Response* [#73] at 2, 5. Plaintiff's Supplemental Response further argues that recent factual admissions by Rota confirm that substituted service on the Doe Defendants via Mr. Chanin was appropriate. *Pl.'s Supplemental Response* [#77] at 1. Rota counters this point, arguing that "[n]one of the so-called new 'factual admissions' . . . retroactively render substituted service via Mr. Chanin proper." *Rota's Supplemental Reply* [#78] at 1.

## II.  Authority to Review the State Court Order and Standard of Review

As an initial matter, the parties do not address Rota's standing to challenge the State Court Order [#1-7] which, as explained above, concerned service of process on the

Doe Defendants, not on Rota.[3]   Rota seeks to vacate the State Court Order and deny Plaintiff's Motion for Substituted Service [#1-6].   *Motion* [#72] at 4.   Therefore, Rota effectively seeks to quash the service already completed on the Doe Defendants under the Colorado Rule of Civil Procedure which permits substituted service.   *See* Colo. R. Civ. P. 4(f) ("Service shall be complete on the date of delivery to the person deemed appropriate for service.").   Generally, "[a] party may object to personal jurisdiction or improper service of process only on behalf of himself or herself, since the objection may be waived."   *Burnett v. Country Mut. Ins. Co.*, No. 12-cv-0019-SLC, 2013 WL 12234282, at *6 (W.D. Wis. May 3, 2013) (quotation omitted) (collecting cases); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed.) (noting that "the defense of insufficient service of process is personal").

Nevertheless, "[a]fter removal, the federal court takes the case up where the State court left it off."   *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 (1974) (internal citation omitted).   "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."   28 U.S.C. § 1450.   "A prior state court order in essence is federalized when the action is removed to federal court, although the order 'remains subject to reconsideration just as it had been prior to removal.'"   *Laney ex rel. Laney v. Schneider Nat'l Carriers, Inc.*, 259 F.R.D. 562, 564 (N.D. Okla. 2009) (quoting *Resolution Trust Corp. v. Northpark Joint Venture*, 958

---

[3]  Plaintiff briefly raises the issue by stating that Rota "has no legitimate interest in trying to block substituted service," but does not directly address the issue of standing.  *Response* [#73] at 8.

F.2d 1313, 1316 (5th Cir. 1992)).  "Thus, a federal court is free to reconsider a state court order and to treat the order as it would any interlocutory order it might itself have entered." *Id.* (citing *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988)); *see also* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3738 (Rev. 4th ed.) ("The federal court thus may redetermine, for example, the propriety of state-court orders concerning the sufficiency of process, and even may reconsider a default judgment entered by the state court prior to the removal, if the removal notice has been filed within the time period specified in the removal statute.").  Finally, "the state court order is not entitled to deference in federal court and because federal procedure governs the enforcement of a prior state court order removed to federal court, the federal court should ensure that the order is consistent with the federal rules[.]"  *Id.* at 565 (citation omitted).

Accordingly, the Court finds that it may reconsider the State Court Order [#1-7] "based on the court's inherent power to review its [own] interlocutory orders."[4]  *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006); *see Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) ("Thus, plaintiff's January 17, 1990, motion for reconsideration was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment[.]"); *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010) (holding

---

[4]  The State Court Order [#1-7] is an interlocutory order because it does not adjudicate any claims.  Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b); *see Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).

federal court free to reconsider earlier summary judgment decisions entered by state court because they were "interlocutory" rather than final judgments).

In doing so, the Court is not required to consider Rota's request according to any particular standard. *See, e.g., Trujillo v. Bd. of Educ. of Albuquerque Public Schools*, 212 Fed. App'x 760, 765-66 (10th Cir. 2007) (discussing standard to be applied when considering motion seeking reconsideration of interlocutory court order and determining that district court had "general discretionary authority" to review order and "was not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion"). For guidance, however, the Court may look to the standard used by courts to review a motion made pursuant to Fed. R. Civ. P. 59(e). *See Sump v. Fingerhut, Inc.*, 208 F.R.D. 324, 327 (D. Kan. 2002) (noting that "courts routinely turn to standards established under Rule 59(e) for instruction in constructing a review standard when considering a possible revision of an interlocutory order"). It is well established in the Tenth Circuit that grounds for a motion to reconsider pursuant to Rule 59(e) include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir.1995)). Therefore, reconsideration of a prior order is "appropriate [only] where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

### III.  Analysis

As an initial matter, the Court acknowledges that the State Court Order [#1-7] was issued one day after Plaintiff's Motion for Substituted Service was filed and without the

benefit of a response from Rota or any objection by his counsel.  Moreover, the State

Court Order does not include an analysis of the substituted service issue, as the state

court simply entered the proposed order Plaintiff attached to the Motion for Substituted

Service.  In light of this, the Court is unable to discern the reasoning behind the state

court's decision to grant substituted service in this circumstance.  Nevertheless, the Court

has reviewed Plaintiff's Motion for Substituted Service [#1-6] pursuant to Colo. R. Civ. P.

4(f)[5] and the arguments raised by the parties.  For the reasons stated below, the Court

ultimately concludes that new evidence previously unavailable to the state court and the

lack of legal authority to support substituted service in these circumstances, necessitate

vacating the State Court Order to correct a clear error.  *See Servants of Paraclete*, 204

F.3d at 1012.

Pursuant to Colorado Rule of Civil Procedure 4(f), when "a party attempting service

of process by personal service . . . is unable to accomplish service, and service by

publication or mail is not otherwise permitted[,] . . . the party may file a motion, supported

---

[5]   Although federal law governs the course of proceedings following removal, issues regarding service of process prior to removal require federal courts to look to the law of the forum state.  *See Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) ("federal courts in removed cases look to the law of the forum state, in this case [Colorado], to determine whether service of process was perfected prior to removal."); *see also Palzer v. Cox Oklahoma Telecom, LLC*, 671 F. App'x 1026, 1028 (10th Cir. 2016); *Sandoval v. TGM Oak Tree Park*, No. 16-cv-144-MCA-SCY, 2016 WL 9818312, at *1 (D.N.M. Nov. 30, 2016) ("Where an action is commenced in state court, and removed to federal court, an inquiry into the sufficiency of the service of process begins with the issue whether service of process was perfected prior to removal." (citing *Wallace*, 596 F.3d at 706)).  Moreover, Fed. R. Civ. P. 4(e)(1) provides that an individual may be served by following state law for serving a summons in courts of general jurisdiction in the state where the court is located or where service is made.  *See also Allen v. The Pinery, LLC*, No. 17-cv-00688-MSK-STV, 2017 WL 3492872, at *1 (D. Colo. Aug. 15, 2017) (applying Colo. R. Civ. P. 4(f) in federal court).

by an affidavit of the person attempting service, for an order for substituted service." Colo.

R. Civ. P. 4(f).  Such a motion shall state:

> (1) The efforts made to obtain personal service and the reason that personal service could not be obtained, (2) the identity of the person to whom the party wishes to deliver the process, and (3) the address, or last known address of the workplace and residence, if known, of the party upon whom service is to be effected.

*Id.*  If the court is satisfied that due diligence has been used to attempt personal service, that further attempts to obtain personal service would be to no avail, and "that the person to whom [process would be delivered] is appropriate under the circumstances and [that such delivery is] reasonably calculated to give actual notice to the party upon whom service is to be effective, [the court] shall: (1) authorize delivery to be made to the person deemed appropriate for service, and (2) order the process to be mailed to the address(es) of the party to be served by substituted service, as set forth in the motion, on or before the date of delivery."  *Id.*; *see Allen v. The Pinery, LLC*, No. 17-cv-00688-MSK-STV, 2017 WL 3492872, at *1 (D. Colo. Aug. 15, 2017).[6]  On the date process is delivered to the person designated for service, service is deemed complete.  *Id.*

"For substitute service to be valid, it must comport with due process by being calculated 'to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Allen*, 2017 WL 3492872, at *1 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  As the Colorado Supreme Court explains:

---

[6] Here, Rota does not ask the Court to reconsider whether Plaintiff's Motion for Substituted Service [#1-6] demonstrated due diligence in attempting to obtain personal service of the Doe Defendants or that additional attempts to obtain personal service would be to no avail.  *See* Colo. R. Civ. P. 4(f).

> A due process guarantee is built in to the concept of substituted service in Colorado.  Before authorizing substituted service, a Colorado court must consider whether delivery of process to the substituted person "is appropriate under the circumstances and reasonably calculated to give actual notice to the [defendant]."  Only after determining that due process is satisfied and substituted service appropriate, does a court order that a copy of process be mailed to the defendant.

*Willhite v. Rodriguez-Cera*, 274 P.3d 1233, 1240-41 (Colo. 2012) (quoting Colo. R. Civ.

P. 4(f)) (brackets in the original).  Recently, the Colorado Court of Appeals further

addressed the due process requirement for substituted service, stating:

> The ultimate determination of whether service on the proposed designated person is "reasonably calculated" to give notice to the named defendant is a question the trial court must resolve before authorizing service under Rule 4(f).  But we emphasize that the trial court's duties in this respect are very limited.  It is solely the burden of the party seeking substitute service to allege sufficient facts to support a determination that service on the proposed designated person is "reasonably calculated to give actual notice" of suit to the defendant.
>
> The court is not required to investigate the alleged facts. It may (indeed, it must because this is an *ex parte* proceeding) assume the truth of the facts alleged by the moving party.

*Minshall v. Johnston*, 417 P.3d 957, 962 (Colo. App. 2018).  In *Minshall*, the trial court

permitted plaintiffs to effect substituted service on the registered agent of the corporation

of which the defendant was a co-owner and shareholder.  417 P.3d at 958-959.  On

appeal of the defendant's motion to set aside default judgment, the Court of Appeals

determined that the record was insufficient to determine whether service on the registered

agent was "reasonably calculated to give actual notice" to the defendant and remanded

the case to determine whether the substituted service satisfied this due process

requirement.  *Id.* at 962.  The court found that "[o]ther than showing that [defendant's

corporation] engaged [the registered agent] to act as its agent for service of process, the

record is devoid of any indication of a separate relationship between [the registered agent] and [the defendant] or other facts which would support the required finding under Rule 4(f)." *Id.*

Here, the obvious issue raised by Plaintiff's Motion for Substituted Service [#1-6] and the State Court Order [#1-7] is that the Doe Defendants have not yet been identified. Although Plaintiff has obtained some information regarding the identities of some of the Doe Defendants since the Motion for Substituted Service was filed, Plaintiff remains unsure as to who these defendants are, whether they are male or female, how many there are, and to what extent each played a role in the alleged "short and distort" scheme. *See, e.g., Response* [#73] at 8 (Plaintiff identifying "the important factual question of whether Rota Fortunae worked alone in executing its illegal short and distort scheme — and if not alone, how many and which people conspired with it, including those who traded with knowledge of the short and distort scheme and profited thereby."). However, to the extent that Rota asks the Court to vacate the State Court Order on the ground that the Doe Defendants do not exist, the Court declines to do so.

Whether the Doe Defendants in fact exist is a factual question which is likely to be the subject of formal discovery in this case. As Plaintiff notes in its Response, the Motion for Substituted Service [#1-6] offers evidence of the Doe Defendants' existence which contradicts Rota's assertion that the at-issue publication was authored by him alone. *See, e.g., Response* [#73] ¶ 3 (Rota's prior counsel had previously written Plaintiff "on behalf of 'a *group* of investors' who 'have prepared and anticipate publishing an article'"), ¶ 4 (the article at issue described the authors in the plural), ¶ 5 (an email from Mr. Mitzner's

then-counsel referenced multiple clients of Mr. Mitzner), ¶ 6 (Rota's announcement on Twitter that Plaintiff "is suing us"), ¶ 7 (Mr. Chanin's "email stating that he would 'be representing Mr. Mitzner and his *clients* in this matter.'") (emphasis in original).  Moreover, as the Court has previously acknowledged, Plaintiff's claims allege other conduct related to the broader "short and distort" scheme and thus, go beyond the narrow question of who authored the at-issue publication.  *See generally Compl.* [#3].  Therefore, given that it was proper for the state court to "assume the truth of the facts alleged by" Plaintiff in the Motion for Substituted Service, this Court may not vacate the State Court Order as a result of this factual dispute alone.  *Minshall*, 417 P.3d at 962.

Nevertheless, Rota's objection that Mr. Chanin was not the appropriate person under the circumstances to receive substituted service and that such service was not reasonably calculated to result in actual notice to the Doe Defendants is well-taken.  *See generally Motion* [#72].  Plaintiff's Motion for Substituted Service [#1-6] argued that service on Mr. Chanin was appropriate under the circumstances and was reasonably calculated to give actual notice to the Doe Defendants because, according to Plaintiff, "the Court may presume that Mr. Chanin can contact John/Jane Does 2–10 about this lawsuit and has already done so."  *Motion for Substituted Service* [#1-6] at 10.  Notably, Plaintiff relied on the belief that Mr. Chanin served as counsel for Rota *and* the Doe Defendants.  *Id.* at 6.  Assuming that Mr. Chanin represented the Doe Defendants, Plaintiff's Motion for Substituted Service heavily relied on the decision in *Allen* where this Court permitted substituted service on an attorney representing the defendant in a different proceeding.  *See Allen*, 2017 WL 3492872, at *2 ("Notably, [defendant's attorney]

- 12 -

did not express any concern in being able to deliver notice to [defendant], but rather responded only that she was not 'authorized' to accept service.").

Since Plaintiff filed its Motion for Substituted Service, however, it has become less than clear whether Mr. Chanin does in fact represent any of the Doe Defendants.  At the time of filing of the Motion for Reconsideration in state court, Mr. Chanin provided sworn statements that he only represented Rota in this case and had no knowledge of the existence of the Doe Defendants.  *See Motion* [#72] at 6.  Plaintiff contended nonetheless that "even if Mr. Chanin is no longer counsel to the Does, he remains counsel to Rota Fortunae, the Defendant with whom the Does are alleged to have collaborated, and also to Matthew Mitzner, Rota Fortunae's erstwhile counsel who told Farmland Partners that he represented Rota Fortunae and those working with Rota Fortunae in drafting and publishing the defamatory statements at issue."  *Response* [#73] at 5; *see also id.* at 2 ("[T]he Court's Order was amply supported, regardless of whether Mr. Chanin currently represents the Does.").

The first problem with Plaintiff's assertions is that they fail to demonstrate a "separate relationship" between Mr. Chanin and the Doe Defendants.  *Minshall*, 417 P.3d at 962.  In challenging Mr. Chanin's Affidavit, Plaintiff concedes that "Mr. Chanin does not have personal knowledge regarding Rota Fortunae's activities prior to his engagement as counsel in this matter[,]" which the parties agree was on or about August 20, 2018.  *Response* [#73] at 6.  Thus, according to Plaintiff, Mr. Chanin "can only be relying on information provided by Rota Fortunae, Mr. Mitzner, or others" regarding the Doe Defendants' involvement in the alleged conspiracy.  *Id.*  It is unclear to the Court how Mr.

Chanin was reasonably expected to know the identities of the Doe Defendants and provide actual notice of this case while not having any personal knowledge of the facts which serve as the basis of Plaintiff's claims.  Moreover, because the Doe Defendants are unidentified, Plaintiff's reliance on *JDK LLC v. Hodge*, No. 15-cv-00494-NYW, 2015 WL 2455504 (D. Colo. May 22, 2015) is unpersuasive.  *Pl.'s Supplemental Response* [#77] at 2 (citing *JDK LLC v. Hodge*, No. 15-cv-00494-NYW, 2015 WL 2455504 at *2 (D. Colo. May 22, 2015)).  In that case, this Court permitted substituted service on an attorney who no longer represented the defendants in the litigation.  *JDK LLC*, 2015 WL 2455504, at *2.  However, the defendants for whom substituted service was directed were identified in the complaint and the attorney designated for service had previously represented those defendants in settlement negotiations in the matter.  *Id.* at *1.

The second and most significant problem with Plaintiff's position is that it requires an overly expansive reading of Colo. R. Civ. P. 4(f) and its purpose.  Plaintiff argues that "[t]he standard for substituted service is not whether Mr. Chanin is the perfect vehicle to guarantee actual service on all parties[ ]" but that the rule is "instead intended for situations in which a defendant cannot be served personally, but process can be delivered to someone able to provide notice."  *Response* [#73] at 5.  While this is true, the manner in which Plaintiff seeks substituted service in this case lacks legal precedent.  According to Plaintiff, because Mr. Chanin represents Rota, who is "at the center of the conspiracy at issue here, Mr. Chanin can easily ensure any Does not already on notice of this matter are made aware of it via his client, Rota Fortunae, who worked with or for those Does."  *Id.* at 5-6.  Aside from the attorney-client privilege and ethical concerns implicated by this

proposition, Plaintiff cites no authority, and the Court finds none, to suggest that Colo. R. Civ. P. 4(f) is intended to function this way.   By Plaintiff's logic, Colo. R. Civ. P. 4(f) provides all plaintiffs a convenient short-cut to identifying unknown defendants before discovery wherever a conspiracy is alleged.   As long as one defendant is identified, a plaintiff could simply invoke Colo. R. Civ. P. 4(f) to compel that defendant's attorney to identify his client's alleged co-conspirators merely based on the facts alleged in the complaint.   The Court finds that this simply cannot be the purpose of the rule and that any such conclusion lacks legal support.

The Motion for Substituted Service [#1-6] and Plaintiff's subsequent briefing does not cite any case from Colorado where a party was permitted to serve an unidentified John Doe defendant by substituted service.   Instead, the Motion for Substituted Service cites one case from the California Court of Appeals, *Trackman v. Kenney*, for the proposition that substituted service on a "John Doe" defendant is appropriate.   *Motion for Substituted Service* [#1-6] at 11 (citing *Trackman v. Kenney*, 114 Cal. Rptr. 3d 619 (Cal. Ct. App. 2010)).   That case, however, simply held that proof of substituted service was not void on its face despite the summons identifying the defendant as "John Doe, co-resident."   *Trackman*, 114 Cal. Rptr. 3d at 624.   Contrary to Plaintiff's description of *Trackman*, the complaint in that case <u>did</u> include the defendant's true name and the proof of service was delivered by a registered process server to a home which the defendant concededly owned.   *Id.* at 621, 626.   The court in *Trackman* did, as Plaintiff notes, comment on its liberal construction of California's service-of-process statute and the fact that, because "[p]ersons in apparent charge of businesses and residences often refuse

- 15 -

to give their true legal names[,] . . . it is an accepted practice to name such a person as 'John Doe' or similar fictitious name, or by description." *Id.* at 624-25.   However, this conclusion was drawn in the context of "minor deficiencies" regarding service of process where the identity of a defendant is in fact known but the proof of service fails to state the defendant's true legal name. *Id.*; *see also id.* at 621 (Noting that "[a]lthough the use of a fictitious name may at times be risky, leading to a successful *evidentiary* challenge to service, it does not make a proof of service void on its face." (emphasis in the original)). Thus, despite Plaintiff's argument to the contrary, *Trackman* does not support the proposition that substituted service is appropriate where the identity of a defendant is largely unknown.

Again, the state court was required to determine that service on Mr. Chanin was "reasonably calculated to give actual notice" of the suit to the Doe Defendants.   It is unclear to this Court how such a conclusion could be reached given the limited amount of information available regarding the Doe Defendants' identities.   Simply put, to whom was actual notice reasonably calculated to be given?   Plaintiff has provided no legal support for construing Colo. R. Civ. P. 4(f) to shift the burden of identifying these defendants onto Mr. Chanin.   The previously undisclosed evidence that Mr. Chanin does not represent the Doe Defendants casts further doubt on this proposition and the state court's decision.   Accordingly, based on this previously unavailable evidence and Colorado law regarding substituted service, the Court finds that it was clear error for the state court to conclude that delivery of process on Mr. Chanin was "appropriate under the

circumstances and reasonably calculated to give actual notice to" the eight unidentified Doe Defendants. *See* C.R.C.P. 4(f); *Willhite*, 274 P.3d at 1240-41.

The "recent factual admissions" by Rota outlined in Plaintiff's Supplemental Response [#77] do not alter the Court's conclusion. Plaintiff asserts that, since the Motion for Substituted Service was filed, Rota has confirmed that "he worked with others in connection with the short-and-distort scheme"; and admitted that "Persons A-D and the Company" identified in Plaintiff's interrogatories are Rota's clients, were aware of Rota's research regarding Plaintiff, traded in Plaintiff's securities in connection with the research, and compensated Rota in connection with the at-issue publication. *Pl.'s Supplemental Response* [#77] at 1-2. The Court agrees that this evidence does speak to the existence of others in connection with Rota's alleged actions, but the Court fails to see why these others are necessarily the alleged John/Jane Doe co-conspirators, or, for the reasons previously stated, how their mere existence necessarily makes substituted service on Mr. Chanin reasonably calculated to provide actual notice of the lawsuit pursuant to Colo. R. Civ. P. 4(f).

Plaintiff further argues that, at the March 5, 2019 hearing, Mr. Chanin confirmed that he knows the identities of the Doe Defendants identified in Rota's interrogatory responses and that those Doe Defendants are aware of this case. *Id.* at 2 (citing *March 5, 2019 Hearing Transcript* [#70-4] at 21:25, 22:14-16 ("They all know about this case, Your Honor. They're all sophisticated people . . . [and] know what their obligations are")). To the extent that Mr. Chanin may have learned the identities of *some* of the Doe Defendants while Rota prepared responses to Plaintiff's interrogatories, the Court agrees

with Rota that this "does not provide a constitutional basis for substituted service [in August of 2018] without an agency or attorney client relationship." *Rota's Supplemental Reply* [#78] at 4.   As Rota notes, even if the individuals referred to in the interrogatory responses are in fact Doe Defendants, "Mr. Chanin only learned who they might be in early 2019, well after the purported service and well after removal." *Id.*   Therefore, "even if some new substituted service might be proper as of January 2019, the substituted service in August" of all eight Doe Defendants does not retroactively become appropriate. *Id.*

## IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#72] is **GRANTED**.   Accordingly, the State Court Order [#1-7] is **VACATED** and Plaintiff's Motion for Substituted Service [#1-6] is **DENIED without prejudice**.   Plaintiff's Proof of Service [#15-10] of process on the Doe Defendants is **STRICKEN**, although it was not properly filed as a separate entry on the Court's docket.  D.C.COLO.LCivR 81.1.[7]

Dated:  June 11, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[7]   This Order necessarily expresses no opinion and makes no ruling regarding the propriety of any future request for substituted service on the Doe Defendants under the Federal Rules of Civil Procedure.