**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

       Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME
IS UNKNOWN),
JOHN/JANE DOES 2-10 (WHOSE TRUE
NAMES ARE UNKNOWN),

       Defendant(s).

---

### DEFENDANT ROTA FORTUNAE'S MOTION TO DISMISS COMPLAINT

---

Defendant "Rota Fortunae" (a pseudonym[1]) ("RF") moves to dismiss Plaintiff Farmland

Partners, Inc's ("FPI") Complaint under Fed. R. Civ P. 12(b)(2) and (6), as follows.

### INTRODUCTION

This defamation action is a SLAPP suit filed solely as retaliation for RF's (an anonymous

individual SEC-whistleblower) exercise of his First Amendment rights.  RF wrote the at-issue

article criticizing FPI's business operations and value for the investor website Seeking Alpha

("Article").  In the Article, RF meticulously disclosed all facts upon which he based his analysis

and conclusions, (2) disclosed his short position on FPI's (publicly traded) stock, and (3) reiterated

that his conclusions were "opinions" and that readers should do their own research and draw their

---

[1]    RF has a First Amendment right to anonymity until FPI demonstrates, and the Court determines, that FPI's claims and need-to-know RF's identity outweigh RF's right. *See, e.g.*, *Dendrite Intern., Inc. v. Doe No. 3*, 342 N.J. Super. 134, 157-58 (N.J. Super. App. Div. 2001).

own conclusions.  FPI posits a conspiracy theory that RF intentionally manipulated securities markets—an absurd allegation given that RF provided his analysis to the SEC whistleblower hotline before Seeking Alpha published the Article – cloaked in defamation allegations.  The truth is FPI fails to identify one false, defamatory fact in the Article and cannot dispute that RF's well-supported opinions cannot form the basis of a defamation claim.

The Court should dismiss FPI's Complaint in its entirety for numerous reasons.  First, this Court lacks personal jurisdiction over RF, who is an individual residing in Texas with no minimum contacts with the State of Colorado.  Second, FPI fails to state a claim because the at-issue statements forming the basis of its claims constitute protected opinion as a matter of law.

## BACKGROUND

FPI is a publicly-traded farmland REIT (Real Estate Investment Trust) that acquires and leases farmland throughout the United States and also originates mortgage loans to farmers, including its own tenants. (*See* Compl. ¶ 6). FPI's stock is traded on the New York Stock Exchange. (*Id.* at ¶ 7). RF is the pseudonymous name of an individual who resides in Texas. (*See* **Exhibit A** at ¶¶ 1-6).[2] After two months of researching and evaluating public documents and information about FPI, RF wrote the Article published on Seeking Alpha on July 11, 2018 (*Id.* at ¶ 6 and Exhibit 1 (Article).[3] Seeking Alpha is a financial and investor media outlet in New York. (*Id.*). Based on his research, RF took a short position on FPI's stock. (*Id.* ¶ 9).  In the Article, RF disclosed (and provided live links to) the dozens of public documents he relied on in reaching his conclusion about

---

[2]     Courts may rely on affidavits when resolving a motion to dismiss for lack of personal jurisdiction. *Ball Metal Bev. Container Corp v. CML & J, LLC*, No. 1:13-CV-00695-REB, 2013 WL 3270614, at *2 (D. Colo. June 27, 2013).

[3]     "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

FPI's stock price and accounting practices.  (*See generally* Article). Throughout the Article, RF reiterated that the conclusions were "the opinions of the author," and disclosed that the author had a short position on FPI's publicly traded stock. (*See id.*).

Thirteen days after Seeking Alpha published the Article, FPI filed the instant lawsuit against RF and unknown "John/Jane Does 2-10," asserting claims of defamation, disparagement, intentional interference with prospective business relations (IIPBR), unjust enrichment, violation of the Colorado Consumer Protection Act (CCPA), and civil conspiracy.  (Compl. ¶¶ 49-100).

## ARGUMENT

### I.   This Court lacks personal jurisdiction over RF

FPI bears the burden to establish, via *prima facie* showing, that the Court has personal jurisdiction over RF. "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *Rocky Mtn. Chipseal, LLC v. Sherman Cty., Kan.*, 841 F. Supp. 2d 1224, 1227 (D. Colo. 2012). Colorado's long arm statute grants personal jurisdiction to the fullest extent permitted under federal law, and the analysis "collapses into a single inquiry: whether exercising personal jurisdiction over [RF] comports with due process." *Id.*

"To exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "Such contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." *Id.* General jurisdiction is based on an out-of-state

defendant's continuous and systematic" contacts with the forum state and does not require the claim be related to those contacts.

Specific jurisdiction, on the other hand, exists if the defendant "purposefully directs" his activities at Colorado or its residents when he (1) takes intentional action, (2) "expressly aimed" at Colorado, and (3) with the knowledge that "the brunt of th[e] injury" would be felt in Colorado. *Advanced Career Techs., Inc. v. Does*, No. 13-CV-0304-WJM-KLM, 2015 WL 328639, at *2 (D. Colo. Jan. 23, 2015) (hereinafter "*ACT*").

### A.  This Court lacks specific jurisdiction over RF

For specific jurisdiction in internet defamation cases, "[i]t is not enough that the plaintiff is a resident of the forum and suffered harm there." *ACT* at * 2 (*citing Shrader*, 633 F.3d at 1241, 1244).  Likewise, "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Shrader*, 633 F.3d at 1244. "This principle has particular salience for defamation cases: Posting on the internet from outside the forum state an allegedly defamatory statement about a forum resident does not create the type of substantial connection between the poster and the forum state necessary to confer specific personal jurisdiction." *Id.*

FPI cannot meet this standard because Colorado was not "the focal point" of RF's Article, "either in terms of its audience or its content." *See id.* Seeking Alpha is a New York media outlet that "targets a trading community . . . with no particular ties" to Colorado. *See id.* at 1245; *see also ACT*, 2014 WL 328639 at * 4 (no personal jurisdiction over internet poster because allegedly defamatory blog "highlights the geographically-neutral content and geographically-neutral nature of the forum," and defendant "targeted the blog and his messages at a nation-wide or world- wide audience with no inherent interest in or tie to Colorado"). Likewise, RF's Article is about FPI's

business and stock price, the former of which occurs nationwide and the latter of which is traded in New York. Thus, the alleged defamatory action (publishing the Article) and the alleged harm (drop in FPI's stock price) both occurred in New York.

FPI is headquartered in Colorado but does business "throughout North America." (Compl. ¶ 6). FPI's Colorado domicile is not enough to confer personal jurisdiction over RF. *See ACT*, 2014 WL 328639 at *4 (no personal jurisdiction where plaintiff's business "does not appear to have any particular connection to Colorado other than being its principal place of business" and plaintiff described itself as a "nationwide" company). Further, a "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state." *Shrader,* 633 F.3d at 1241.

*Shrader* is on point here. There, the Tenth Circuit held Oklahoma had no specific jurisdiction over defendant who posted an allegedly defamatory email about an Oklahoma resident on a trade-focused internet blog. *Id.* The Court explained:

> [W]e have already seen that the forum where [defendant] posted the email targeted a trading community with no particular tie to Oklahoma. As for content, the email was about [plaintiff's] work. That work was marketed and sold worldwide through the internet . . . and there is nothing about the nature of the work inherently linking it to Oklahoma—as there might be had [plaintiff] been located in a trading center like New York or Chicago and relied on that tie in producing or marketing his materials. He produced his materials in Oklahoma because he happened to live there; his professional reputation in the trading community was not tied to Oklahoma[.] To be sure, he suffered harm in Oklahoma in the sense that he incurred harm and resided in Oklahoma when he did so. But, as noted above, plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state.

*Id. See also ACT*, 2014 WL 328639 at * 4 (finding no personal jurisdiction over internet poster because to find minimum contacts, the defendant must have targeted "*Colorado itself,*" not a "known forum resident"). Like the defendants in *Shrader* and *ACT*, RF did not

deliberately target "Colorado itself" by posting its Article about FPI's national business and stock price on Seeking Alpha. Thus, no specific jurisdiction exists over RF in Colorado.

### B. FPI cannot establish this Court has general jurisdiction over RF

This Court also lacks general jurisdiction over RF because RF lacks the required systemic and continuing contacts with Colorado. *KEBD Enter., LLC v. Hider*, No. 08-CV-02665-REB-CBS, 2009 WL 1504748, at *3 (D. Colo. May 26, 2009). As RF's affidavit establishes, he does not reside in Colorado, does not vote in Colorado, does not have a driver's license issued by Colorado, does not own property in Colorado, and conducts no business within Colorado or even with Colorado residents. (*See* Ex. 1 ¶¶ 10-15); *Cf. Schneider v. Cate,* 405 F. Supp. 2d 1254, 1259–60 (D. Colo. 2005) (no general jurisdiction as to defendant who, *inter alia,* owned a second home in Colorado as well as part of several Colorado corporations).

Likewise, RF's web activity is devoted to investing, publishing articles, and Twitter and is thus devoid of any evidence of "substantial sales "and the "type of commercial contacts that approximate a physical presence in the state" necessary to confer general jurisdiction in the internet context. *Shrader,* 633 F.3d at 1243. There is no general jurisdiction over RF in this forum.

### II. FPI fails to state a claim upon which relief can be granted

To survive a motion to dismiss, a plaintiff must plead sufficient allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Broker's Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104-5 (10th Cir. 2017). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion to dismiss, "all well-pleaded *facts*, as distinguished from conclusory allegations, must be taken as true." *Broker's Choice,* 861 F.3d at

1105. "As applied here, a defamation complaint cannot couch allegations of falsity in vague, conclusory terms." *Id. See also, Pan Am Sys., Inc. v. Hardenbergh,* 871 F. Supp. 2d 6, 16 (D. Me. 2012) (mere allegations that statements are false is insufficient under *Iqbal* and *Twombly*).

### A.  FPI's defamation claim must be dismissed

FPI's defamation claim fails under Fed. R. Civ. P. 12(b)(6) for three reasons. First, the at-issue statements constitute protected opinion under the First Amendment to the U.S. Constitution and under article II, section 10 of the Colorado Constitution. Second, FPI fails to plausibly plead "actual malice." Third, FPI fails to plausibly plead material falsity.

### a.  Constitutional protections applicable to defamation claims

The First Amendment guarantee of freedom of expression limits the scope of state defamation laws. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990); *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r Servs.,* 175 F.3d 848, 853 (10th Cir. 1999). Thus, for cases involving public figures or statements of public concern, the plaintiff must prove by clear and convincing evidence that the defendant acted with "actual malice," defined in this context as knowledge of or reckless disregard for the truth or falsity of the challenged statement. *See id; Broker's Choice,* 861 F.3d at 1106. Likewise, in cases involving statements of public concern, a plaintiff must prove by clear and convincing evidence that the challenged statement is materially false.  *Id.*

Statements of opinion are generally protected. In *Milkovich*, the Supreme Court held that "a statement on matters of public concern must be provable as false before there can be liability under state defamation law." 497 U.S. at 19-20.  Thus, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 20.  "Rhetorical hyperbole" is protected; to be actionable, the allegedly defamatory statement must "reasonably be interpreted as stating actual facts." *Id.; see*

*also TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1184-85 (10th Cir. 2007); *Jefferson Cty Sch. Dist.,* 175 F.3d at 852. *Milkovich* distinguishes between what prior case law and scholars have termed "evaluative opinions" and "deductive opinions." *Jefferson Cty Sch. Dist.,* 175 F.3d at 853. A deductive opinion – one that indicates explicitly or implicitly that it is based on the existence of an undisclosed factual predicate – can support a cause of action in defamation. On the other hand, an evaluative opinion – one formed on the basis of an individual's intrinsic perceptions which are not provably true or false – is not defamatory. *Id.*; *see also Preeson v. Parkview Med. Ctr, Inc.,* 2017 WL 1197298 (D. Colo. March 30, 2017).

Colorado adopts similar protections.  "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Keohane v. Stewart,* 882 P.2d 1293, 1298 (Colo. 1994). In its analysis, a reviewing court uses a two-part test. The first inquiry is whether the statement is sufficiently factual to be susceptible of being proved true or false. *Id.* at 1299. The second inquiry is whether reasonable people would conclude that the assertion is one of fact, taking into account three factors: (1) how the assertion is phrased; (2) the context of the entire statement, and (3) the circumstances surrounding the statement, including the medium through which the information is disseminated and the audience to whom it is directed. *Id.* Thus, a statement that is "replete with speculative" language, stated in a context in which it was obvious that the speaker was stating her opinion, is not that which a reasonable reader would presume to be a factual declaration. *Jefferson Cty. Sch. Dist.*, 175 F.3d at 853.

In general, if the factual premise underlying an opinion is fully disclosed, the statement will be protected. *Id. See also Bucher v. Roberts,* 595 P.2d 239, 241 (Colo. 1979) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient

for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is"); *NBC Subsidiary v. Living Will Ctr,* 879 P.2d 6, 12 (Colo. 1994) ("Thus, his opinion was based on facts disclosed to the viewer. There is no hint that it was based on undisclosed information. Viewers were in a position to evaluate Marsh's views, and were free to form a judgment about LWC's product that differed from his"). "Even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002). Thus, a statement that discloses the facts on which it is based and makes clear that the conclusions drawn from those facts are simply an interpretation of them, is immune from defamation liability. *Piccone v. Bartels,* 785 F.3d 766, 771 (1st Cir. 2015). *See also Cummins v. Suntrust Capital Markets, Inc.,* 649 F. Supp. 2d 224, 234-35 (S.D.N.Y. 2009) (protected expression of opinion where defendant issued report accusing executives of stock option abuses and stating that "[a]t the end of the day, shareholders will have to decide whether this management team and its board of directors have fulfilled their fiduciary duty. We are currently hard pressed to reach such a conclusion").

Statements that are too indefinite or vague to be proven true or false are not actionable. *Jefferson Cty Sch. Dist.*, 175 F.3d at 853-4.  The same is true where there simply is no objective evidence that could prove that an allegedly defamatory statement false. *Id.* And if several statements are true, or substantially true, and there are no undisclosed material facts, no action can be brought based on an allegedly defamatory implication drawn from that information. *Pietrafeso v. D.P.I., Inc.*, 757 P.2d 1113, 1116 (Colo. App. 1988); *see also TMJ Implants,* 498 F.3d at 1196-97.

Whether a statement is defamatory or a protected opinion is a question of law to be determined by the Court. *Milkovich,* 497 U.S. at 17. Where, as here, several distinct statements are

challenged, the Court analyzes each independently. *Keohane*, 882 P2d at 1300.

### b.   FPI is a public figure and the Article involves statements of public concern

As an initial matter, because FPI is a public company regulated by the U.S. Securities and

Exchange Commission and traded on the New York Stock Exchange, there can be no dispute that

FPI is a public figure as to statements pertaining to its business, value, and stock price. *MiMedx*,

No. 17CV07568, 2018 WL 847014 *6 (S.D.N.Y. Jan. 12, 2018) ("When the plaintiff is a public

figure, such as a public company, the plaintiff must demonstrate that the defendant acted with

actual malice…."); *Reliance Ins. Co. v. Barron's,* 442 F. Supp. 1341, 1346 (S.D.N.Y. 1977) (public

company found to be a public figure). Likewise, articles concerning publicly-traded companies

affect the financial markets and "are plainly of public concern." *Treppel v. Biovail Corp.,* 233

F.R.D. 363, 375 (S.D.N.Y. 2006). *See also MiMedx*, 2018 WL 847014, at *7 (collecting cases);

*Aurelius v. BofI Fed. Bank,* 2016 WL 8925145 (C.D. Cal. 2016) (Anonymous short-seller's posts

on Seeking Alpha involved matters of public concern).

In fact, courts acknowledge "that the public interest is well served by encouraging the free

press to investigate and comment on business and corporate affairs in the same manner as it would

report on other public issues. *Barron's*, 442 F. Supp. at 1349. The court for the Southern District

of New York continued with explanation:

> Investigative reporting is not limited to the impeachment of presidents or the
> exposure of licentious congressmen. The public interest is served equally when
> reporters find a 'Deep Throat' in the executive suite, and when an accounting
> professor spotlights for the financial press, in common language, business dealings
> he regards as improper, improvident or unfair to investors. Whether his conclusions
> are right is to be resolved generally in the free market place of ideas.

*Barron's*, 442 F. Supp. at 1348.

### c.   The at-issue statements here constitute protected opinion

FPI alleges the Article contained six false and defamatory statements, set forth in Paragraphs

21 to 26 of its complaint.[4] It is also important to understand what the complaint does not allege –

that any of the numerous public documents and records included in the Article are somehow false,

or that any specific underlying fact is materially false.  Plaintiff only complains about *conclusions*

drawn from the disclosed facts and records, which cannot form the basis of a defamation claim.

When read as whole, the Article is clearly the very definition of "evaluative opinion." It is

the classic research report in which the author collects, reviews, and evaluates public records,

documents, and information, and then presents opinions and conclusions based on perceptions of

the evidence presented in the report. Each reader is left to decide for themselves if they agree with

those conclusions, which RF explicitly invited the readers to do in this case.

RF followed a consistent pattern setting forth items of public information or a public

record, and then drawing his conclusions based on that evidence. For example, the Article's

opening bullets express an opinion ("We believe" and "could be made up"), and then lists three,

true facts that undergird that opinion. Before the introduction even begins, RF disclaims, in bold

italic, that "This report represents the opinions of the author. Investors should do their own due

diligence and come to their own conclusions" and specifically directs readers to an even lengthier

disclosure at the end of Article. RF also disclosed his short position on FPI's stock.

RF repeats this pattern throughout the Article. For example, after discussing two of the

loans, he summarizes two important takeaways: "The partial pay-off of Loan #2 was funded by

FPI's acquisition of the property collateralizing the loan. We believe this means the loan lacked

economic substance," and, "because Neibur was already in default when FPI lent him the additional

$61,800 on the same day he owed $61,750 in rent, we think this transaction artificially increased

---

[4] FPI also alleges in conclusory fashion that RF posted false and misleading statements on Twitter on July 11, 12, and 16. (Compl. ¶¶ 38-40).  However, FPI never specifies what specific statement(s) were allegedly false and does not attach the Twitter posts.

revenues…." (Art. at 17). RF even excerpts the actual public documents and records, including them in the Article for the reader to review and providing links so the readers can find and review the documents and records for themselves.

Further, the Article is replete with conditional phrasing and speculative language, making clear to the audience of investors and market analysts that it represents the author's "intrinsic perceptions" of the public documents and information presented in the report. A small selection of examples include:

- "Our research leads us to believe…." (*Id.* at 2)

- "We believe these loans lack economic substance because whenever they come due, FPI happens to acquire the property collateralizing the loan…." (*Id.* at 3)

- "Our opinion that FPI appears to be playing accounting games is further bolstered by a Colorado UCC filing…." (*Id.* at 3)

- "If investors lose faith, FPI may quickly find its endless stream of capital has run dry. With only $19 million in cash, we think FPI will not only be forced to cut its dividend but also faces a significant risk of insolvency." (*Id.* at 4)

- "If our thesis is correct…." (*Id.* at 6)

- "We believe these loans lack economic substance and have been used to artificially increase revenues." (*Id.* at 10)

- "While we cannot be sure that the acquisition paid off the loan, an inconsistency in FPI's SEC disclosure bolsters our opinion that …." (*Id.* at 18)

- "If the acquisition paid off the loan, we think this would qualify as a loan that lacks economic substance." (*Id.* at 19)

- "We think there is a significant probability that part of the $5.25 million was used to pay PHS Holding's annual rent payment." (*Id.* at 21)

- "But the most important detail of Loan #8 is the fact that it was settled through the acquisition of a property, which again introduces the risk that the loan lacked economic substance." (*Id.* at 26)

- "Whether or not Jesse Hough used the money (directly or indirectly) to pay rent is for each investor to decide, but we think, taken together, all the evidence suggests a high probability that he did." (*Id.* at 28)

• "Our opinion that FPI appears to be playing accounting games is further bolstered by what we consider to be another major red flag." (*Id.* at 29)

• "Our opinion that Pittman pledged his shares is further bolstered by the fact that…." (*Id.* at 31).

Additionally, the medium used and the intended audience further support a conclusion that the Article constitutes protected opinion. Seeking Alpha is an internet media outlet that publishes research reports and analyses of interest to sophisticated investors and financial analysts. This discerning audience of interested readers knows what an evaluative opinion looks like and is equipped to evaluate the evidence presented in a report and decide for themselves if they agree with the author's perceptions and conclusions. In fact, Seeking Alpha's tagline is "Read. Decide. Invest." This impresses upon readers that the website merely gives people a place to express their opinion.

Statement regarding "substantial risk of insolvency."

FPI first claims the Article falsely asserts that FPI "faces a substantial risk of insolvency." (Compl. ¶ 21). FPI never contests any of the evidence presented in the report undergirding this opinion, but, rather, complains only that the Article did not refer to the "well-accepted concepts" of insolvency.

First, FPI takes this statement of opinion out of context by truncating the qualifying statement that proceeds it. The complete statement is clearly expressed as a conditional opinion – "If investors lose faith, FPI may quickly find its endless stream of capital has run dry. With only $19 million in cash, we think FPI will not only be forced to cut its dividend but also faces a significant risk of insolvency." (Art. at 4). Even the title of the article states that the facts presented "introduce" a risk of insolvency versus exclaiming it is some sort of imminent guarantee. Indeed, predictions about potential future consequences of events and conduct are unsuited to defamation.

Second, RF plainly identified the public information on which he bases his opinion regarding the potential future risk; no undisclosed, defamatory fact is implied. Third, the phrase

"significant risk" is inherently subjective and not susceptible to being proved true or false. Both words are subject to a myriad of definitions and subjective perceptions. What may be a significant risk to one person based on his subjective assessment of certain factors, may not be significant, or a risk at all, to another person based on her subjective assessment of different factors. Nor is there any requirement that the author use "well-accepted concepts" of insolvency in expressing his opinions. The numerous concepts of insolvency suggest this statement is subjective and not provable as true or false.

<u>Statement regarding artificially increasing revenues.</u>

Next, FPI alleges the Article falsely asserted that it "is artificially increasing revenues by loans to related-party tenants." (Compl. ¶ 23). It is unclear whether FPI claims the word "artificially" or the phrase "related-party" is false. In either case, the statement is protected opinion. Again, FPI takes this statement out of context. This statement was always accompanied by conditional language and words replete with opinion and speculation, such as "we believe," "our research has lead us to believe," "we think," and "If the acquisition paid off the loan, we think that would qualify as a loan that lacks economic substance." RF also fully disclosed the public information on which he based his conclusion and invited the reader to draw independent conclusions based on that evidence.  Again, no undisclosed, defamatory fact is implied.

Moreover, the word "artificially" in this context is inherently subjective and not capable of being proved true or false. RF disclosed the basis for his conclusion that lending money to tenants—particularly to those that have already defaulted on an FPI mortgage— concurrent with signing a new lease is conduct that, in his opinion, "artificially" increased revenues. Whether that conduct was artificial is a matter of subjective judgment based on myriad factors.

Regarding the phrase "related-party," RF disclosed that he was not using the SEC definition of related-party, but, rather, a belief that the relevant parties met a stricter definition set

out by audit rules and that investors would find the disclosure of relationships material. (Art. at 4-5). RF then identified the facts on which he concluded that 70% of the loan volume went to two related-parties. (*Id.*).

Statement regarding proper disclosure of Loan Program.

FPI next claims the Article falsely asserted that FPI "failed to properly disclose the financial impact of its Loan Program." (Compl. ¶ 24). It is difficult to respond to this allegation because the Article did not make such a statement. The Article did, however, assert that FPI failed to disclose numerous matters that would be of interest to investors, including the names of the borrowers, the uses of the loan funds, that 70% of the loan volume went to two related-party tenants, that FPI was acquiring properties that secured mortgages it had made to tenants and that the Defendant believes FPI misstated its financials when it reported certain transactions as loans instead of acquisitions—a belief that we now know was well supported by the fact that FPI had to provide "additional information" in its public rebuttal to explain why it did so. (*See* Art.).

Again, RF disclosed all facts undergirding this conclusion. The Article plainly explains: "So, if the loans are to be settled by property acquisitions, they need to be disclosed as such. Furthermore, we think a reasonable investor would want to know if FPI was acquiring properties it also lent against, as it may signal an underperforming property or tenant." (*Id.* at 28). Again, it is inherently subjective what constitutes "proper" disclosure in this circumstance and what constitutes a "financial impact" on the Loan Program. Given the numerous factors and interpretations that underlay these words, they cannot be considered a verifiable statement of fact. In the end, "proper disclosure" comes down to the subject of materiality, which in and of itself is subject to opinion.

Statement regarding departure of directors and auditor.

Next, FPI alleges the Article falsely claimed that four directors had the left the company, and the auditor had been dismissed "due to disputes with the company, based on issues raised in the posting." (Compl. ¶ 25). Again, the Article said no such thing; at most, it implied the departures and loan program were related based on the timing of events, stating "We do not appear to be the only concerned party." (Art. at 32).

As with the above statements, all of the facts underlying this implication are fully disclosed. RF includes a chart listing each departure, even including the publicly- disclosed reason for each departure and provides links to the SEC documents that state the departures were not due to disputes with FPI. RF then created a chronological chart plotting the departures and the related-party transactions. (*Id.*). No undisclosed defamatory fact is implied.  This is classic evaluative opinion – Plaintiff may complain about the conclusions and implications drawn by the author from the disclosed facts, but the facts themselves are true. Therefore, the implication that the departures show "concern" relating to the loan program is protected opinion.

Statement that CEO pledged some shares.

FPI next alleges the Article falsely asserted that Paul Pittman "pledged some of his shares." (Compl. ¶ 26). Again, the Article does not make that statement but, rather, provides RF's opinion that he thinks Pittman did pledge shares. This section of the Article is titled "'Pittman Hough' Get A Loan Against FPI Shares." (Art. at 29). That statement is based on 2017 Colorado UCC filing pledging FPI shares as collateral which lists "Pittman Hough" as an "Optional Filer Reference." The UCC itself is included in the Article. (*Id.* at 30). RF then states his opinion: "Being that Pittman-Hough Farms disclosed in its 2016 Form 4 that it distributed its shares to its members, we think the UCC filing is referring to Pittman and Hough personally." (*Id.* at 29). RF

continues: "Our opinion that Pittman pledged his shares is further bolstered by the fact that on July 19th, 2017 he converted 531,827 operating partnership shares (OP units) to common shares." (*Id.* at 31). Again, the Article disclosed the basis of RF's conclusions and opinions. No undisclosed defamatory fact is implied.

<u>Statement regarding funds from operations.</u>

Lastly, FPI alleges the Article falsely asserted that it "ignores very real expenses when it promotes adjusted funds from operations (AFFO). Excluded expenses include the dividend of FPI's preferred "B" shares." (Compl. ¶ 22). To be technically accurate, the Article should have referenced "funds from operations" (FFO) rather than "adjusted" funds from operations. FPI uses this minor mistake as its only provable fact but fails to acknowledge that the chart immediately below this language correctly represents Adjusted Funds From Operations and therefore proves that the reference does not indicate a reckless disregard for the truth. Furthermore, this minor mistake in no way affected the substance of the opinion being expressed – that FPI is overly-reliant on raising additional capital and that "AFFO has drifted miles away from free cash flow[.]" (Art. at 5). Indeed, FPI never claims that the chart presented in this section is incorrect.  Because this is not a material falsity and does not impact the Article's substance, it also cannot form the basis for a defamation claim. Moreover, RF addressed the error in the comment section on July 14, well before FPI pointed it out in its public rebuttal and Complaint. (Ex. A at Ex. 2).

In a defamation action, the plaintiff must show the statement is not only false, but "materially false." *Broker's Choice,* 861 F.3d at 1107. "The law of defamation overlooks inaccuracies and focuses on substantial truth." *Id.* "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge is justified." *Id.* "A statement is not considered false unless it would have produced a different effect on the mind of the reader from that

which the pleaded truth would have produced." *Id.* To be material, an alleged falsehood must be "likely to cause reasonable people to think significantly less favorably about the plaintiff than they would if they knew the truth." *Id.*

The alleged falsehood here is the use of the word "adjusted" rather than simply referring to "funds from operations." This minor inaccuracy in no way impacts the substance of the opinions and conclusions being expressed in the Article, and it is impossible to imagine that the exclusion of the word "adjusted" from this one sentence in the Article would change the overall effect on the mind of the reader. Given the length of the Article and the substantial evidence presented, using the word adjusted in one sentence of an introductory section cannot "cause reasonable people to think significantly less favorably about the plaintiff."  Therefore, as a matter of law, all six of the challenged statements are protected opinion and fail to support a claim for defamation.

### d.   FPI fails to plausibly allege actual malice

Under the pleading standards of *Iqbal* and *Twombly*, to survive a motion to dismiss, "a public figure plaintiff such as FPI must plead plausible grounds to infer actual malice by alleging "enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro v. Conde Nast,* 807 F.3d 541, 546 (2d Cir. 2015); *see also Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 58 (1st Cir. 2012) (complaint must "lay out enough facts from which malice might reasonably be inferred"); *Adelson v. Harris,* 973 F. Supp. 2d 467, 503 (S.D.N.Y. 2013) ("The pleading standards under *Iqbal* and *Twombly* require courts to dismiss defamation actions where the allegations in the complaint do not plausibly suggest actual malice"); *MiMedx*, 2018 WL 847014 at *6. Conclusory allegations are not sufficient.

The actual malice standard in this context is different from the concept of malice under common law. In the defamation context, actual malice does not implicate the defendant's motive

or attitude towards the plaintiff. "Even when a speaker is motivated by hatred or ill-will his expression is protected by the First Amendment." *Jefferson Cnty. Sch. Dist.,* 175 F.3d at 857-58. "Because actual malice is a measure of the defendant's attitude towards the truth, not his attitude towards the plaintiff, allegations of a defendant's bias or hostility fail plausibly to establish actual malice." *MiMedx,* 2018 WL 847014 at *8. To show reckless conduct, "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968).

Here, FPI makes no factual allegations permitting an inference that RF acted with actual malice or that he entertained serious doubts as to the truth of any factual statement in the Article. Indeed, FPI pleads actual malice "on information and belief." (Compl. ¶ 51). FPI thus attempts to conflate actual malice in defamation cases with common-law malice and goes to great lengths to plead RF's hostility and bad motive towards FPI. Those allegations are irrelevant to their defamation claim. Therefore, the Court should dismiss that claim.

### e.   FPI fails to plausibly alleged material falsity

Lastly, under *Iqbal* and *Twombly,* a defamation complaint "cannot couch allegations of falsity in vague, conclusory terms. *Broker's Choice*, 861 F.3d at 1104-5. Rather, the plaintiff must plead sufficient factual content that allows the court to draw the reasonable inference that the challenged statement is false. Here, FPI pleads falsity in bare, conclusory terms. It does not allege a single fact that would permit the Court to infer that the challenged statements are, in fact, false. Therefore, the Court should dismiss the defamation claim for failure to plead material falsity.

### B.   FPI's remaining claims are derivative of its defamation claim and otherwise fail to state a claim upon which relief can be granted

FPI's remaining claims—Disparagement, IIPBR, Unjust Enrichment, a CCPA violation, and Civil Conspiracy—are all derivative of FPI's defamation claim and must be dismissed

because FPI failed to state a claim for defamation. FPI has also failed to state essential elements of all its remaining claims, which also warrants their dismissal under F.R.C.P. 12(b)(6).

### a. FPI's remaining claims are derivative of its defamation claim

Plaintiffs cannot evade First Amendment protections for speech by dressing up a defamation claim as other torts. *See Hustler Magazine v. Falwell,* 485 U.S. 46 (1988); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) ("A plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim."); *See Jefferson Cty Sch. Dist.*, 175 F.3d at 857 (dismissing IIPBR claim and trade libel claim as derivative of defamation claim); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 368-69 (D. Mass 2017) ("IIEPA claim, which simply recasts the defamation claim, cannot proceed"); *MiMedx Grp.,* 2018 WL 847014, at *10 (Permitting tortious interference claims where alleged improper interference was "urging a stockholder of a publicly traded company to sell his shares to new owners" was impermissible and "would turn Wall Street norms on their head"); *Wedbush Morgan Sec., Inc. v. Kirkpatrick Pettis Capital Mgmt*, 2007 WL 1097872 at *8 (D. Colo. April 9, 2007) (disparagement, IIPBR, and CCPA claims are all derivative of defamation claim); *Ruffin-Steinbeck v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001) (dismissing unjust enrichment claim under First Amendment grounds because the claim was based on protected statements).

Here, all FPI's remaining claims are based on RF's protected speech. (*See* Compl. ¶¶ 59- 67 (FPI's disparagement claim based on alleged "false and disparaging statements" about FPI); ¶¶ 68- 76 (FPI's IIPBR claim based on Defendant's alleged "false, misleading, defamatory and/or disparaging statements about Farmland Partners"); ¶ 79 (Unjust enrichment claim based on Defendant's publication of "its false, misleading, defamatory, and/or disparaging information"); ¶¶ 87-91 (CCPA claim abased on "false and misleading representations"); ¶ 99 (conspiracy claims

based on the "unlawful overt act of publishing false, misleading, defamatory, and/or disparaging internet posting about [FPI]"). Thus, because all of FPI's remaining claims rest on protected speech, they must also be dismissed.

### b. FPI's remaining claims must be dismissed on individual grounds

In addition to being derivative of its defamation claim, FPI's remaining claims should be dismissed for failure to state a claim.

<u>Disparagement.</u> Disparagement, like defamation, "requires as a prerequisite a defamatory or derogatory false statement of fact." *Wedbush Morgan Sec., Inc.*, 2007 WL 1097872 at *8. As established above, such a statement is not present here.

<u>IIPBR.</u> FPI's IIPBR claim fails for two reasons. First, as established above, the alleged conduct that FPI claims is improper—RF's alleged "false, misleading, defamatory and/or disparaging statements about Farmland Partners"—cannot sustain an IIPBR claim because it is protected opinion speech. *See Jefferson Cty. Sch. Dist.*, 175 F.3d at 858 (protected speech insufficient to sustain intentional interference claim).

Second, to sustain an IIPBR claim, FPI must allege "a reasonable likelihood or probability that a contract would have resulted" but for Defendant's interference. *See Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017). FPI failed to make such an allegation, alleging conclusorily that "on information and belief," RF "prevented the formation of contracts" between FPI and others. (Compl. ¶ 75). This is insufficient to state a claim for IIPBR. *See Crocs*, 248 F. Supp. at 1060 (dismissing IIPBR claim when no evidence that individuals were in the process of contracting with plaintiff).

<u>Unjust Enrichment.</u> To state a claim for unjust enrichment, FPI must allege that RF received a benefit at FPI's expense, under circumstances that would make it unjust for RF to retain the benefit.

*See Scott v. Scott*, 2018 COA 25, ¶ 47. Here, FPI makes no factual allegation that it conferred any benefit on RF, and its unjust enrichment claim fails.

CCPA. In order to state a claim a claim for a CCPA violation, FPI must plead that RF made a "false or misleading statement of fact." C.R.S. § 6-1-105(h). A "false or misleading statement that induces the recipient to act or refrain from acting" is actionable when it is made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). As argued above, FPI has failed to plead RF made such a statement about FPI, and FPI has failed to state a claim of violation of the CCPA.

Civil Conspiracy. Conspiracy requires more than one defendant. As articulated in RF's affidavit, RF is an individual and no other person or entity aided him in drafting the Article. Without more defendants, there is no conspiracy.

## CONCLUSION

Based on the foregoing arguments, FPI's claim must be dismissed. There no personal jurisdiction over RF in this forum, and this forum is not proper. Moreover, FPI has failed to state any claim for which relief can be granted. RF respectfully requests this Court dismiss FPI's Complaint in its entirety.

Respectfully submitted this 14th Day of August, 2019

/s/ John A. Chanin
John A. Chanin
Katherine Roush
Melanie MacWilliams-Brooks
FOSTER GRAHAM MILSTEIN & CALISHER, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
jchanin@fostergraham.com
kroush@fostergraham.com
mbrooks@fostergraham.com
Phone:  303-333-9810
Facsimile: 303-333-9786
Attorneys for Defendant, Rota Fortunae

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th Day of August, 2019, I electronically filed the foregoing **DEFENDANT ROTA FORTUNAE'S MOTION TO DISMISS COMPLAINT** with the Clerk of the Court using the ECF system, and served via ECF to the following:

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
sllewellyn@mofo.com
kpietari@mofo.com

and

Michael D. Birnbaum
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
mbirnbaum@mofo.com

/s/      *Rita Sanders*
Rita Sanders