**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02351-KLM

FARMLAND PARTNERS, INC.,

   Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME IS UNKNOWN), JOHN/JANE DOES 2-10 (WHOSE TRUE NAMES ARE UNKNOWN),

   Defendants.

---

**DEFENDANT ROTA FORTUNAE'S MOTION TO DISMISS UNDER THE TEXAS CITIZENS' PARTICIPATION ACT**

---

  Defendant Rota Fortunae ("RF") moves to dismiss the claims of Plaintiff Farmland Partners, Inc ("FPI") under the Texas Citizens Participation Act ("TCPA"), as follows.

## I.  INTRODUCTION

  In light of the Court's July 31, 2019 denial of RF's motion to stay pending appeal, RF filed a motion to stay in the Tenth Circuit on August 5, 2019, which motion remains pending as of the date of this filing.  RF refiles this motion in an abundance of caution and to preserve all rights under the TCPA.  RF files this motion subject to the motion to stay in the appellate court and the issues raised by the appeal, and does not waive its appellate arguments.

  In addition to the arguments made in RF's F.R.C.P. 12(b) motion refiled on August 14, 2019, Plaintiff Farmland Partners. Inc's ("FPI") Complaint should also be dismissed in its entirety under Texas's anti-SLAPP statute, the TCPA codified in Texas Civil Practice and Remedies Code

at § 27.001 *et seq.* The TCPA, applicable here under a choice-of-law analysis, is a unique Texas substantive law designed to protect Texas's citizens from SLAPP ("Strategic Lawsuits Against Public Participation") suits aimed at chilling First Amendment expression by "provid[ing] a mechanism for early dismissal of suits based on a party's exercise of the right of free speech[.]" Tex. Civ. Prac. & Rem. Code § 27.003. A motion under the TCPA must be filed within 60 days of service of the Complaint and, on filed, stays all discovery until the court has ruled on the motion to dismiss. *Id.* The protections afforded by the TCPA are in addition to a defendant's right to file a motion to dismiss under F.R.C.P. 12 or a summary judgment motion under F.R.C.P. 56.

Under the TCPA, once RF establishes that FPI's lawsuit is "based on, relates to, or is in response to" RF's exercise of free speech, the burden shifts to FPI to "establish by clear and specific evidence a prima facie case for each element of the claim in question," *id.* § 27.005(c), — here, defamation, defamation by libel *per se*, disparagement, interference with prospective business relations, unjust enrichment, deceptive trade practices, and civil conspiracy. FPI brought these claims as retaliation for RF exercising his First Amendment right of free speech and publishing its July 11 Article about FPI on Seeking Alpha, an internet media outlet that provides content on financial markets and whose United States location is in New York, the same location where FPI's NYSE securities are traded. (*See* Doc. No. 18 at 3.) FPI cannot meet its burden.

## II.   TEXAS'S ANTI-SLAPP LAW APPLIES IN COLORADO

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Boone v. MVM, Inc.*, 572 F.3d 809, 811 (10th Cir. 2009). As an initial matter, the TCPA and Colorado law conflict on this issue; indeed, as of this action's filing, Colorado did not even have an anti-SLAPP statute. Thus, a choice-of-law analysis is necessary.

For tort claims, Colorado follows the Restatement (Second) of Conflict of Laws and applies the law of the state with the most significant relationship to the occurrence and parties. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509–10 (Colo. 2007). Under the Restatement, "[t]he rights and liabilities of the parties are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflicts of Laws § 145. The principles in § 6 include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2). Under the "most significant relationship" test in the tort context, the court considers four factors: (1) the place where injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship (if any) between the parties is centered. *Id.* § 145(2).

While Colorado law presumptively applies to FPI's defamation claims because Colorado is the forum state, RF is entitled to avail himself of the TCPA's protections under the doctrine of "dépeçage." "Dépeçage is the widely approved process whereby the rules of different states are applied on the basis of the precise issue involved." *Johnson v. Continental Airlines Corp.,* 964 F.2d 1059, 1062 n. 4 (10th Cir. 1992). This "parsing of issues" is consistent with the Restatement § 145 approach, which authorizes applying a separate choice-or-law analysis to separate issues. *Id.* Here, the substantive issue relevant for the choice-of-law analysis is whether RF is entitled to

the protection of the TCPA, not whether Texas law applies to FPI's defamation claims. *Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1321 (D. Utah 2015); *Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722–23 (N.D. Ill. 2014) ("In the specific case of an anti-SLAPP statute cited as a defense to a defamation claim, the choice-of-law question regarding the anti-SLAPP law is treated separately from whether a statement is defamatory. This is because the anti-SLAPP question involves whether a statement is privileged, not whether its content is defamatory.") (internal citation omitted).

In determining if another state's anti-SLAPP law applies, "[t]he place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice of law analysis on this issue." *Diamond Ranch*, 117 F. Supp. 3d at 1323 (citing *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 3d 797, 803 (N.D. Ill. 2014)). Further, "The purpose behind an anti-SLAPP law is to encourage the exercise of free speech" and Texas "has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens. *Id.*

For the same reasons, the Court should apply the TCPA to FPI's state-law claims. RF is domiciled in Texas and wrote the article in Texas. *See* Doc. No. 18-1. The Article was then published on Seeking Alpha, a website based in New York. *Id.* Texas has a strong interest in protecting its citizens' free speech activities. Comparatively, Colorado does not have a codified anti-SLAPP law; instead, the 1984 case *Protect our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo. 1984) (*POME*) protects Colorado citizens' right to petition the government but no case has specifically extended *POME's* protection to free speech.[1] All these factors "weigh

---

[1] On June 3, 2019, Colorado's Governor Polis signed into law a new Colorado Anti-SLAPP statute, available at C.R.S. § 13-20-1101, which applies to actions filed on or after July 1, 2019 and

strongly in favor" of applying Texas law to the anti-SLAPP issues because Texas has the "most significant relationship" to those issues.

### III.   INTRODUCTION TO TEXAS'S ANTI-SLAPP LAW AND ITS HEIGHTENED POLICY PROTECTIONS FOR PSEUDONYMOUS WRITERS

Texas enacted the TCPA in 2011. The TCPA provides a distinct type of a motion to dismiss a legal action that is based on, relating to, or in response to a party's exercise of the right of free speech, association, or to petition the government. TCPA § 27.003. When invoked, legal claims meeting the Act's definitions are tested at the lawsuit's outset, after the respective pleadings are exchanged, but before incurring the most significant costs in any case: fulsome discovery—which is automatically stayed by the filing. In this way, the TCPA screens certain kinds of claims which the Legislature says require more initial scrutiny. *See Combined Law Enforcement Ass'n of Texas v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. denied).

While the nametags of the right to free speech, association, and petition the government connote constitutional underpinnings, the Legislature chose not to take "the content and meaning derived from the constitutional text and longstanding interpretive jurisprudence" for those terms. *See Serafine v. Blunt,* 466 S.W.3d 352, 371 (Tex. App.—Austin 2015, no pet.). Instead, the Legislature chose "to provide explicit 'definitions' of conduct that qualifies as the 'exercise of' each right for TCPA purposes." *Id.* As a result, the "communications" the TCPA protects "are not confined solely to speech that enjoys constitutional protection. Any remaining doubts to the contrary were extinguished by the Texas Supreme Court's recent opinion in [*Coleman*]." *Elite*

---

which provides protections similar to the TCPA, such as a stay of discovery and a heightened burden for plaintiffs to meet (a reasonable likelihood that plaintiff will prevail on the claim).

*Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 193–94 (Tex. App.—Austin 2017,

pet. dism'd) (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017) (per

curiam) (emphasis added)). Consequently, "[t]he TCPA casts a wide net." *Adams v. Starside*

*Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

How the plaintiff characterizes the claim does not control, as the TCPA's coverage does

not "depend on the legal theory asserted by an inventive plaintiff." *Rehak Creative Servs., Inc. v.*

*Witt*, 404 S.W.3d 716, 733 (Tex. App.—Houston [14th Dist.] 2013, pet. denied. Rather, the focus

is upon whether the "factual bases of a challenged 'legal action' constitute expression within the

TCPA's definitions of" the protected rights. *Sloat v. Rathbun*, 513 S.W.3d 500, 503 (Tex. App.—

Austin 2015, pet. dism'd); *Adams*, 547 S.W.3d at 894.

And especially within the TCPA context, when the plaintiff is suing an unidentified

person protected by a pseudonym, the asserted "right of anonymous free speech can best be

balanced with [plaintiff's] right to file a meritorious lawsuit by requiring the district court to hear

the TCPA motion to dismiss before ordering a [] deposition." *In re Elliott*, 504 S.W.3d 455, 467

(Tex. App.—Austin 2016, orig. proceeding) (also involving an author who published a report on

SeekingAlpha.com).

Indeed, "because the First Amendment right to anonymous speech would be rendered

meaningless if it could be pierced merely by pleading a potentially actionable speech-based claim,

a prevailing rule has evolved whereby the claimant must also make a threshold showing of the

claim's potential merit (short of proving the alleged wrongdoer's identity) as a precondition for

that discovery." *Id.* at 468 (citing *In re Does 1–10,* 242 S.W.3d 805, 820–21 (Tex. App.—

Texarkana 2007, orig. proceeding) (compiling authorities)). The TCPA helps operationalize part

of that process, while also applying Texas's policy interest in eliminating the improper use of the litigation system to silence critics in the marketplace.

Here, the TCPA legally privileges the complained-of conduct. FPI's claims qualify as a "legal action" and relate and respond to RF's rights to free speech—which rights FPI's claims chilled. TCPA § 27.003(a). FPI cannot meet its burden to provide clear-and-specific evidence on each element of each of the asserted Claims. Accordingly, FPI's Claims should be dismissed with prejudice and a hearing set to address the amount of fees, costs, and sanctions to which RF is legally entitled.

## IV.    THE TCPA IS SUBSTANTIVE AND APPLIES IN FEDERAL COURT

### A.    *Erie*'s role in requiring the application of state substantive law.

The *Erie* doctrine dictates that federal courts sitting in diversity apply state substantive law and federal procedural law. *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017). Federal district courts must apply the substantive law of the state in which the district court sits. *See* U.S.C. § 1652 (requiring that the laws of the several states provide the rules of decision in civil actions in U.S. District Courts excepting only the Constitution, U.S. Treaties, and Acts of Congress requiring otherwise). When a valid Federal Rule of Civil Procedure governs an issue, however, *Erie*'s required application of state law is displaced so long as (a) the federal rule "answers the question in dispute" and (b) that federal rule is valid. *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 398 (2010). If the federal rule does not apply or is invalid, *Erie* returns to require applying the state's law. *See id.*

**B.  Federal rules comparative to the TCPA are substantially inapt.**

**1. Courts in the Fifth Circuit have been applying the TCPA as state substantive law—which it is.**

To date, the Fifth Circuit has not decided whether the TCPA applies in federal court. However, *at every opportunity*, the Fifth Circuit has assumed that the TCPA applies without deciding that it does.[2] The Circuit previously addressed this question definitively for Louisiana's ant-SLAPP statute, thus providing an anchor for the courts' continued assumption that it applies. *See Henry v. Lake Charles Am. Press*, 566 F.3d 164, 170 (5th Cir. 2009). Accordingly, each of Texas's federal district courts have applied the TCPA.[3]

While the TCPA's protections are mechanized procedurally, they reflect a deeply important public policy of Texas law. *Williams*, 2014 WL 2611746, at *1 (holding that, although there are procedural components to the statute, "these procedural features are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state law"); *see also Henry*, 566 F.3d at 170 (characterizing Louisiana's anti-SLAPP law as only "nominally-procedural" and thus governing in that diversity case).

---

[2]      *Diamond Consortium, Inc. v. Hammervold*, 733 Fed. App'x 151, 154 n.3 (5th Cir. 2018); *Cuba v. Plyant*, 814 F.3d 701, 706 (5th Cir. 2016); *Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2016); *Lozovyy v. Kurtz*, 813 F.3d 576, 582–83 (5th Cir. 2015); *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 753 (5th Cir. 2014).

[3]      *Haynes v. Crenshaw*, 166 F.Supp.3d 773, 776 (E.D. Tex. 2016); *MCR Oil Tools, LLC v. SPEX Offshore, Ltd.*, No. 3:18-cv-00731-M, 2018 WL 4362695, at *3 (N.D. Tex. Sept. 13, 2018); *Williams v. Cordillera Comms., Inc.*, No. 2:13-CV-124, 2014 WL 2611746, at *1 (S.D. Tex. June 11, 2014); *Hammond v. Lovings*, No. 5:15-CV-00579-RP, 2016 WL 9049579, at *2–3 (W.D. Tex. May 25, 2016).

Like other anti-SLAPP laws, the TCPA allocates burdens of proof, defines evidentiary presumptions, and identifies facts material to determining what is to be protected as legitimate expression activity—yet each of these items are governed by "substantive" law, not the Federal Rules. *E.g., Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 20–21 (2000) (regarding burden of proof); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that the federal government has no power to "declare substantive rules of common law applicable in a State").

Moreover, even if the TCPA includes some elements deemed procedural, the Supreme Court has recognized that a state law can be "procedural" and yet so important in defining the scope of substantive rights that the Federal Rules could not displace it. *Shady Grove*, 559 U.S. at 417; *see, e.g.*, *Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, No. 1:07-cv-0997-DFH-TAB, 2009 WL 838549, at *8 (S.D. Ind. Mar. 26, 2009) (holding that Indiana's anti-SLAPP law had a "distinctly substantive flavor").

### 2.  No federal rule answers the "question in dispute."

Under the *Shady Grove* analysis, "the question in dispute" is: Should the plaintiff be entitled to proceed, without initially closer scrutiny, with claims that concern or relate to conduct which by their nature concern one of the TCPA's three defined rights—speech, association, or petition? The answer: No, there is no federal rule that addresses, much less differentially screens, conduct exercising TCPA-defined rights as *elevated above* other types of litigated conduct.[4]

---

[4]      Perhaps the question might be reframed: Should the defendant be entitled to dismissal of *certain types of asserted claims* made in retaliation for, or in relation to, conduct that meets one of the TCPA's three defined rights—speech, association, or petition—before incurring the time and expense of the discovery process and chilling the defendant's expression-rights through the overwhelming force of the suit, silencing him?

Regardless, the question in dispute to be answered *cannot be* formed separately from the public policy underlying the TCPA because the Texas Legislature has specifically carved out these protected rights without eliminating the continued use in such cases of other kinds of dismissal motions for pleading sufficiency (Tex. R. Civ. P. 91a), or summary-judgment based on a record fully developed by the discovery process. Instead, the TCPA creates a protection that goes beyond merely pleading sufficiency, and yet stops short of attempting to determine whether there is a genuine dispute of material fact. Rule 12(b)(6) examines the pleadings only for any type of claim. In contrast, the TCPA can only be used for qualifying claims, in which case that process examines the parties' combating affidavits as well as the results from any "specific and limited" discovery which might have been permitted for good cause, alongside the claim's elements.

For these reasons, no federal rule provides TCPA protections—and Rules 12 and 56 can easily operate alongside the TCPA. *Shady Grove*, 559 U.S. at 421. Therefore, "there is no 'Act of Congress' governing that particular question, 28 U.S.C. § 1652," requiring the Court to engage in the traditional Rules of Decision Act inquiry, 28 U.S.C. § 1652, and make the "relatively unguided *Erie* choice" to determine whether the state law is the "rule of decision." *Shady Grove*, 559 U.S. at 417 (the *Erie* choice requires that the court consider "'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

Recently, the First Circuit also applied this framework to a state anti-SLAPP statute and found no conflict. *Godin v. Schenks*, 629 F.3d 79 (1st Cir. 2010) (finding Rules 12 and 56 "are not so broad as to cover the issues within the scope of [the anti-SLAPP statute]" because they answer different questions and address different (albeit related) subjects).

**C.      There are drastic differences in the means and manner of litigation between the TCPA and existing federal rules.**

The proper question following the *Hanna* test is whether the federal rule and the state rule can both be applied without one undermining the other. 19 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 4510 (3d ed.). And if there is some uncertainty about the intended scope of a particular Rule, and if the broader construction would interfere with state substantive policies, the concern for those policies reflected in the "substantive rights" provision of the Rules Enabling Act counsels for resolving the uncertainty in favor of the more narrow construction. *Id.*

Courts have already found that anti-SLAPP statutes are substantive because they are "designed to protect the defendant from having to litigate meritless claims aimed at chilling First Amendment expression…" *Diamond Ranch Academy, Inc. v. Filer*, 117 F.Supp.3d 1313, 1318 (D. Utah 2015) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003)). And such statutes do not directly conflict with the federal rules. *Id.* at 1319; *see also Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013), *reh'g en banc denied*, 736 F.3d 1180 (9th Cir. 2013) (holding that the "Supreme Court's decision in *Shady Grove*… does not change" the reasoning and analysis for applying California's anti-SLAPP statute in federal courts).

As with California's anti-SLAPP statute, the TCPA has no truly "contrary" federal rule, nor would applying it undermine any other federal rule. The TCPA has several distinct features, which are neither fulsomely nor even closely replicated by any federal rule. Specifically comparing and contrasting the TCPA with the federal rules shows just how much the TCPA differs from a pleadings-sufficiency analysis and summary-judgment procedure:

- The TCPA does not constrain the required analysis to only pleadings, as Texas Civil Rule of Procedure 91a or Federal Rule of Civil Procedure 12(b)(6) might. *See* TCPA § 27.006(a).

- Nor does the TCPA replace or abrogate the function of special-exception challenges to pleadings under the Texas Rules—the Texas parallel for Rule 12(b)(6) challenges. *See* Tex. R. Civ. P. 90, 91. Indeed, where the law allows for a *prima facie* showing to establish "a legally mandatory, rebuttable presumption," it represents "an evidentiary standard, not a pleading requirement." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 512 (2002) (distinguishing "flexible" evidentiary standards from "rigid" pleading standards). Besides, the Federal Rules of Evidence specifically provide that such presumptions are governed by state law. Fed. R. Evid. 302 ("In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision."); *see also* 28 U.S.C. § 2072(a).

- The TCPA requires only that the nonmovant establish a *prima facie* case by submitting "clear and specific" evidence of each element of each challenged claim. *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015). It does not concern itself with genuine disputes of material fact like Federal Rule of Procedure 56 and Texas Rule of Procedure 166a do. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The inquiry involved in ruling on a motion for summary judgment … necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *id.* at 248 (noting the distinction between materiality and the incorporated evidentiary standard).[5]

- Leading up to the TCPA Hearing, nonmovants and movants alike are permitted to seek "specific and limited" discovery upon a showing of good cause. TCPA § 27.006(b); *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). Nothing like this is permitted leading up to Rule 12(b)(6) determinations. *MCR Oil Tools*, 2018 WL 4362695, at *3 ("The TCPA is more restrictive than the Federal Rules, as the filing of a TCPA motion causes all discovery to be automatically suspended."). Moreover, generally, discovery leading up to motions for summary judgment in federal court is in no way required to be judicially approved only on a "specific and limited" basis upon a showing of good cause. Even still, the Supreme Court has recognized that some types of cases present a greater "potential for possible abuse." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

- Denial of a dismissal motion under Federal Rules of Civil Procedure 12(b)(6) and 56, as well as Texas Rule of Civil Procedure 56, are not appealable on an interlocutory basis unless specifically court-approved on a separate motion. In contrast, denials of TCPA dismissal motions are automatically permitted to be appealed on an interlocutory basis, as a statutory right. TCPA § 27.008.

---

[5] Summary judgment materially differs from the TCPA process. Once a movant established that the anti-SLAPP law applies, if the nonmovant cannot provide *prima facie* proof, the case does not continue. Summary judgment presumes a reasonable discovery period.

- Obtaining a dismissal under Rule 12(b)(6) does not provide a mandatory award of "damages," including court costs, reasonable attorneys' fees, and other expenses incurred in defending against the legal action as justice and equity require—but the TCPA does. TCPA § 27.009(a)(1).

- Nor does Rule 12(b)(6) provide that the Court must award the moving party "sanctions against the party who brought the legal action" to the degree sufficient to deter the plaintiff from bringing similar actions,[6] whereas the TCPA does. TCPA § 27.009(a)(2).

- Filing a Rule 12(b)(6) motion is not subject to an award of court costs and reasonable attorneys' fees to the responding party without a separate sanctions motion— whereas the TCPA provides for such an award where the dismissal motion is frivolous or solely intended to delay. TCPA § 27.009(b).

The TCPA protections have only grown in importance—for example, since 2017, via interlocutory appeal Texas courts of appeal and the Texas Supreme Court have issued more than 200 opinions addressing the TCPA.

Federal Rules are already applied alongside Supreme Court doctrines analogous to anti-SLAPP laws. *See, e.g.*, *Select Portfolio Servicing v. Valentino*, 875 F.Supp.2d 975, 988 (N.D. Cal. 2012) ("The first part of the anti-SLAPP inquiry is substantially the same as the inquiry into whether the *Noerr-Pennington* doctrine applies."); *Computer Assocs. Int'l v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1522 (D. Colo. 1993).

Anti-SLAPP protections also resemble absolute and qualified immunities, as they provide immunity from *suit* rather than merely a defense to liability—which doctrines apply alongside the Federal Rules while allowing for the dismissal of claims early in litigation, including before

---

[6]     This distinction has a collateral difference that further illuminates how the TCPA differs from pleadings-sufficiency analysis and summary-judgment procedures: The TCPA concerns itself with screening only certain kinds of qualifying claims for closer review early on in the matter, to help avoid leaving defendants to incur the expense of time and money of defending against litigation that has no demonstrable merit under state law. *See Williams v. Cordillera Comms., Inc.*, No. 2:13-CV-124, 2014 WL 2611746, at *1 (S.D. Tex. June 11, 2014).

discovery. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (noting the inequitable costs lawsuits impose on blameless officials, which claims pose the danger that fear of being sued would dampen their activities and ardor).

Also, First Amendment protections require the plain meaning of the Federal Rules to yield—the court's independent review "cannot be delegated to the trier of fact" because the independent examination is in place to prevent "forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 284–86 (1964)).

The notion that the above substantive rights are different in quality than TCPA *protections* such that the Federal Rules must yield to those doctrines but could not yield to the TCPA is nonsensical—and it would additionally conflict with Constitutional values and principles of federalism, which *Erie* and its progeny embody. Regardless, here, not applying the TCPA in federal courts would result in drastic differences in in both the means and manner by which the litigants' rights are enforced between the federal and state forum—thereby abridging and altering a state substantive right.[7]

### D.    State law can easily be substantive even if it is mechanized procedurally—just as the Texas Legislature did with the TCPA.

"In some situations, procedure and substance are so interwoven that rational separation becomes well-nigh impossible." *Id.* at 419. "A 'state procedural rule, though undeniably

---

[7]    One dissent addressing whether to apply the TCPA in federal court used the stark differences between the TCPA and Rule 12(b)(6) as proof of an "obvious" conflict because, in the dissent's view, "Rule 12 assesses the sufficiency of **a** claim prior to discovery," yet the TCPA allows specific and limited discovery. *Cuba*, 814 F.3d at 720 (emphasis added). However, Rule 12 does not differentiate between the types of claims entitled to elevated screening for *prima facie* proof before fully opening the defendant to the full swath of the costly discovery process.

'procedural' in the ordinary sense of the term,' may exist 'to influence substantive outcomes.'" *Id.*

at 419–20 (quoting *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 310 (7th

Cir. 1995) (Posner, J.).

> [E]ven if a federal rule in most cases "really regulates procedure," … it does not
> "really regulate procedure" when it displaces those rare state rules that, although
> "procedural" in the ordinary sense of the term, operate to define the rights and
> remedies available in a case. This is so because what is procedural in one context
> may be substantive in another.

*Id.* at 428 n.13.

In fact, in some instances, the state procedural rule may "become so bound up with the

state-created right or remedy." *Shady Grove*, 559 U.S. at 420. "Such laws, for example, may be

seemingly procedural rules that make it significantly more difficult to bring or to prove a claim,

thus serving to limit the scope of that claim." *Id.* (citing, among others, *Milam v. State Farm Mut.*

*Auto. Ins. Co.*, 972 F.2d 166, 170 (7th Cir. 1992) (Posner, J.), adding the parenthetical: "holding

that 'where a state in furtherance of its substantive policy makes it more difficult to prove a

particular type of state-law claim, the rule by which it does this, even if denominated a rule of

evidence or cast in evidentiary terms, will be given effect in a diversity suit as an expression of

state substantive policy.").

The TCPA—by eliminating (or, *with proof of good cause*, severely limiting) discovery

while demanding that the plaintiff provide clear-and-specific evidence of every element of every

claim—does make it more difficult to prove a particular type of state-law claim than it would with

the aid of discovery once the pleadings-sufficiency examination is over. *Cf. Satkar Hospitality*

*Inc. v. Cook Cty. Bd. of Review*, No. 10 C 6682, 2011 WL 4431029, at *8 (N.D. Ill. Sept. 21,

2011) ("[T]he ICPA limits a plaintiff's prospect of success in court, not its access to the courts in

the first instance."). As a result, the TCPA is a substantive state law, regardless of the procedural mechanisms by which its important public policy is mechanized. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, No. 18-cv-00064, 2018 WL 4038117, at * 6 (N.D. Okla. Aug. 23, 2018) (finding the OCPA—identical to the TCPA—substantive under *Erie*).

## V. *FIRST STEP* — THE TCPA APPLIES TO THE CLAIMS

Each of the three rights protected by the TCPA (right to petition, the right of association, and free speech) is implicated where someone sues another related to a "communication," which includes making or submitting a statement or document in any medium. TCPA § 27.001(1).

For the protected free-speech right, the communication must be made in connection with a matter of public concern. TCPA § 27.001(3). A "matter of public concern" includes any issue related to "economic well-being," "a public figure," or "an issue related to a good, product, or service in the marketplace." TCPA § 27.001(7). "[Movant] need show only that the plaintiff's legal action is based on, relates to, or is response to the defendant's exercise of" one of the three defined rights. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). The "legal action" may "consist of an entire lawsuit or a single cause of action." *Adams*, 547 S.W.3d at 891.

A legal action "relates to" or is "in response to" TCPA-protected conduct when the challenged claims have merely some "some sort of connection, reference, or relationship" to the protected conduct, even if the claims are not factually *based on* the protected conduct. *Cavin v. Abbott*, 545 S.W.3d 47, 69-70 (Tex. App.—Austin 2017, no pet.).

Here, FPI's Complaint condenses down to an allegation that RF's July 11 Article contained six false and defamatory statements, set forth in Paragraphs 21 to 26, as the basis for the entirety of its state-law tort claims. The Complaint also alleges in conclusory fashion that RF

posted false-and-misleading tweets on July 11th, 12th, and 16th, but does not attach the tweets

they generically reference. (Compl. ¶¶ 38, 39, and 40).  FPI's own pleadings thus prove the

TCPA's applicability to RF's free-speech expression, and the Complaint's averments otherwise

constrains FPI from evading the TCPA's applicability. *See Hersh*, 526 S.W.3d at 467.

## VI.  *SECOND STEP* — FPI CANNOT MEET ITS BURDEN TO ESTABLISH BY CLEAR AND SPECIFIC EVIDENCE A *PRIMA FACIE* CASE OF EACH ELEMENT FOR EACH CLAIM

### A.  Nonmovant's burden during Step 2.

Once the TCPA applies, the nonmovant (here, FPI) must "establish 'by clear and specific

evidence a *prima facie* case for each essential element of the claim in question.'" *Coleman*, 512

S.W.3d at 899 (TCPA § 27.005(c). Clear citations and arguments must be backed by actual

evidence for each element. *E.g.*, *See Hawxhurst*, *v. Austin's Boat Tours*, 550 S.W.3d 220, 227

(Tex. App.—Austin 2018, no pet.).  The Court "shall consider the pleadings and supporting and

opposing affidavits stating the facts on which the liability or defense is based." TCPA §27.006(a).

To show a *prima facie* case, nonmovants must submit clear-and-specific evidence for each

essential element of each challenged claim. *Coleman,* 512 S.W.3d at 899. "'Clear means 'free

from doubt,' 'sure,' or 'unambiguous.'" *Warner Bros. Enter., Inc. v. Jones*, 538 S.W.3d 781, 799

(Tex. App.—Austin Dec. 21, 2017, pet. filed). "'Specific' means 'explicit' or 'relating to a

particular named thing.'" *Id.*   Nonmovants must therefore provide "explicit proof as to the

particular fact at issue." *Schofield v. Gerda*, 02-15-00326-CV, 2017 WL 2180708, at *15 n.4

(Tex. App.—Fort Worth May 18, 2017, no pet.). "*Prima facie* proof may be comprised of

documents, answers to interrogatories, admissions, and affidavits on file along with such other

evidence that the trial court may receive in its discretion." *Baker v. Goldsmith*, 582 S.W.2d 404,

409 (Tex. 1979); *Hawxhurst*, 550 S.W.3d at 227. But the submitted testimony to support TCPA

briefing must be "based on personal knowledge." *MVS Int'l Corp. v. Int'l Advertising Solutions,*

*LLC*, 545 S.W.3d 180, 192 (Tex. App.—El Paso Oct. 11, 2017, no pet.). "Although circumstantial

evidence may be [] properly considered in response to a TCPA motion, *In re Lipsky,* 460 S.W.3d

579, 591 (Tex. 2015), the circumstantial evidence [must be] clear and specific." *MVS Int'l*, 545

S.W.3d at 196. It is *not* admissible for the TCPA-determination when "the connection between

the fact and the inference is too weak to be of help in deciding the case." *In re Lipsky*, 460 S.W.3d

at 589.[8]

> **B.    FPI cannot put forth clear-and-specific facts for each element of its claims.**
>
> > **1.    FPI cannot establish the elements of its claims, much less establish them by the heightened standard of "clear and specific evidence," as required by the TCPA.**

As argued in detail in RF's re-filed F.R.C.P. 12(b) Motion to Dismiss, incorporated here

by reference, RF has already demonstrated that FPI has failed to state a defamation claim for

which relief can be granted under the *Twombly* pleading standards. Those same problems leave

FPI unable to meet the TCPA's burden to proffer clear-and-specific evidence of each element of

---

[8]    Opinions must be based on demonstrable facts and a reasoned basis. *Id.* at 593. "[B]are, baseless opinions are not probative and accordingly do not establish a *prima facie* case." *Cashion*, 517 S.W.3d at 222 (citing *In re Lipsky*, 460 S.W.3d at 592–93). Supposition and comments by third parties are not based on personal knowledge—unless the affiant positively shows the basis for the alleged personal knowledge or authority to speak for them. *See MVS Int'l*, 545 S.W.3d at 192. Similarly, conclusory statements are insufficient. *Id.* ("A statement is conclusory if it provides a conclusion but no underlying facts in support of the conclusion."); *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied). In light of these guidelines, Texas courts have explained that, for TCPA determinations, they "will accept only those portions of the affidavit that make assertions of fact, or state a conclusion arrived at upon a reasoned basis," and "will limit [their] consideration to those statements where some basis is shown establishing [the affiant's] personal knowledge of the factual events described." *MVS Int'l*, 545 S.W.3d at 192. If a plaintiff cannot meet this standard, then their claims should be dismissed.

its claims. FPI cannot come forward with evidence that RF, in publishing the Article, acted with actual malice or that his statements in the Article were anything other than protected opinion or that they were false. There simply is no evidence establishing any of these elements, much less "clear and specific evidence."

There is nothing to even establish recklessness for malice purposes. *See Amant v. Thompson*, 390 U.S. 727, 731 (1968) (requiring evidence sufficient "to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication"). And the article is "plainly of public concerns." *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 375 (S.D.N.Y. 2006); *see also Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1348-49 (S.D.N.Y. 1977) (finding no basis for defamation-based claims for a Barron's article written by an accounting professor who was "spotlight[ing] for the financial press, in common language, [about] business dealings he regards as improper, improvident or unfair to investors").

Because FPI's other state-law claims are derivative of its defamation claim, the TCPA likewise requires their dismissal. When other claims are derivative of one that is dismissed, the TCPA mandates their dismissal too. *See Minett v. Snowden*, No. 05-18-00003-CV, 2018 WL 2929339, at *9 (Tex. App.—Dallas June 12, 2018, no pet. h; *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *15 (Tex. App.—Dallas Aug. 2, 2016, no pet.). Furthermore, FPI cannot produce "clear and specific evidence" of each element of those claims. See Doc. No. 18 at 25-27.

### 2. FPI cannot establish a *prima facie* claim for damages with clear-and-specific evidence.

Fatal to FPI's claims, FPI provides no competent evidence of damages. "[A] plaintiff must provide enough detail to show the factual basis for its claim," including how the "defendants

damaged the plaintiff." *In re Lipsky*, 460 S.W.3d at 591; *see also Miga v. Jensen*, 96 S.W.3d 207,

213 (Tex. 2002) ("Lost profits are damages for the loss of net income to a business measured by

reasonable certainty."). Merely pleading a "loss of good will, loss of renewal, loss of income and

profits, and loss of value to his business reputation," even if it includes an estimated value of

those losses, "will not suffice." *In re Lipsky*, 460 S.W.3d at 590; *Lippincott*, 474 S.W.3d 30, 45

(Tex. App.—Texarkana 2015, no pet.).

> **3. RF expressly disclosed the facts underlying his opinions, thus precluding liability as a matter of law.**

Here, the article appeared on SeekingAlpha.com—a website whose "tagline is 'Read.

Decide. Invest.' [thus] clearly giv[ing] the impression that the website is designed to give people a

place to express their opinions and for the reader to then form his or her own assumptions based on

the posted articles." *Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 WL

2930753, at *6 (N.Y. Sup. Ct., June 26, 2014). RF also stated that all statements in the article were:

> the opinion of the author . . . based upon interpretation of certain facts and observations, all of which are based upon publicly available information . . . obtained from sources the author believes to be reliable; however, such information and sources cannot be guaranteed as to their accuracy or completeness.

Dkt. 18-2 at 1, 170. Further, the article never implied to know undisclosed facts. *Id.* at 170 ("This

article expresses the author's investment observations, all of which are based on publicly available

information."). A statement of opinion can be "actionable only if it implies the allegation of

*undisclosed* defamatory facts as the basis for the opinion." *Keohane v. Stewart*, 882 P.2d 1293,

1299 (Colo. 1994) (emphasis added). Moreover, many of the at-issue statements related to FPI's

future financial wellbeing; yet it is axiomatic that opinions about the mere possibility (or even

probability) of future events are not "sufficiently facts to be susceptible of being proved true or

false." *Id.* And the remaining at-issue statements are expressly based on disclosed facts, *see generally* Dkt. 18-2, which precludes liability. *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1194 (10th Cir. 2007) ("an opinion is not actionable if it is based on defamatory facts that are disclosed"). Accordingly, the basis for each asserted claim fails as a matter of law.

## VII.   CONCLUSION

RF requests that the Court dismiss FPI's Claims pursuant to the TCPA and award them their attorneys' fees and any appropriate sanction permitted through the TCPA. RF asks that it may submit any application for an award of such fees after the hearing on this Motion. RF otherwise asks the Court to award it all general relief to which they have shown themselves entitled.

DATED: August 14, 2019.                FOSTER GRAHAM MILSTEIN & CALISHER, LLP

/s/ John A. Chanin
John A. Chanin
jchanin@fostergraham.com
Katherine Roush
kroush@fostergraham.com
Melanie MacWilliams-Brooks
mbrooks@fostergraham.com
360 South Garfield Street, 6th floor
Denver, CO 80209
Phone: 303-333-9810
Fax: 303-333-9786

ATTORNEYS FOR ROTA FORTUNAE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2019, a true and correct copy of this document was served upon counsel for Farmland Partners, Inc. via CM/ECF filing, to the following:

Scott F. Llewellyn
Kyle S. Pietari
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
sllewellyn@mofo.com
kpietari@mofo.com

and

Michael D. Birnbaum
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
mbirnbaum@mofo.com

*/s/ Rita Sanders*
Rita Sanders