**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

Plaintiff,

v.

ROTA FORTUNAE (WHOSE TRUE NAME IS UNKNOWN), JOHN/JANE DOES 2–10 (WHOSE TRUE NAMES ARE UNKNOWN),

Defendants.

---

**FARMLAND PARTNERS INC.'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT ROTA FORTUNAE**

---

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ....................................................................................................2

II. RF HAS NOT MET HIS BURDEN TO WITHHOLD INFORMATION RESPONSIVE TO THE REQUESTS. ....................................................................................................4

A. RF Is Not Entitled to Any First Amendment Protections And Has Conceded the Doe Defendants Are Not Either. ....................................................................................................5

B. Tenth Circuit Law Requires Compelling RF to Provide the Information Requested of Him. ....................................................................................................8

1. The Requests Seek Relevant and Necessary Information. ....................................................................................................8

2. The Information Sought by the Requests Is Not Available from Other Sources. ....................................................................................................10

CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaya v. Bregman*,
No. 14-cv-0599 WJ/SMV, 2016 U.S. Dist. LEXIS 63588 (D.N.M. May 13, 2016) ....... 8, 11

*Arkansas River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*,
C.A. No. 14-cv-00638-CMA-NYW, 2015 WL 2128312 (D. Colo. May 5, 2015) ....... 3

*Bacon v. Archer*,
C.A. No. 17-mc-00192-KLM, 2018 U.S. Dist. LEXIS 159794 (D. Colo. Sept. 17, 2018) ....... 5, 8, 10, 11

*Advanced Career Techs., Inc. v. Does 1-10*,
C.A. No. 13-cv-00304-WJM-KLM, 2013 WL 1934005 (D. Colo. Mar. 11, 2013) ....... 10, 12

*Dakota Station II Condo. Ass'n v. Owners Ins. Co.*,
C.A. No. 14-cv-2839-RM-NYW, 2016 U.S. Dist. LEXIS 192639 (D. Colo. May 16, 2016) ....... 4

*Dendrite International, Inc. v. John Does* 1-14,
775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) ....... 5

*Doe v. Cahill*,
884 A.2d 451 (Del. 2005) ....... 5, 6

*Grandbouche v. Clancy*,
825 F.2d 1463 (10th Cir. 1987) ....... 5

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
641 F.3d 470 (10th Cir. 2011) ....... 5

*Ohralik v. Ohio State Bar Ass'n*,
|436 U.S. 447 (1978) ....... 6

*Scotsman Indus. v. Broadbent*,
No. 11-cv-01793-JLK-KLM, 2012 U.S. Dist. LEXIS 126531 (D. Colo. Sept. 6, 2012) ....... 8, 9, 12

*Time, Inc. v. Firestone*,
424 U.S. 448 (1976) ....... 6

*United States v. Wenger*,
427 F.3d 840 (10th Cir. 2005) .......................................................6

*Voltage Pictures, LLC v. Doe*,
C.A. No. 13-cv-01121-WYD-MEH, 2013 U.S. Dist. LEXIS 111132 (D. Colo. Aug. 7, 2013) .......................................................6

**Other Authorities**

First Amendment .......................................................5, 6, 7

F.R.C.P. 26(b)(1) .......................................................7

F.R.C.P. 37(a)(5)(A) .......................................................12

Fourteen months after this case began, Farmland Partners Inc. ("FPI") has, finally, begun to obtain evidence describing the short-and-distort scheme by Defendant Rota Fortunae ("RF") and his co-conspirators. For example, on May 8, 2018, two months before the attack, RF received an email from a third party (redacted and identified by RF as "Person C") that suggested "collaborating" on a project and implied that short positions would not be profitable without a "catalyst." *See* Declaration of Rhiannon N. Batchelder ("Batchelder Decl."), filed herewith, Ex. A[1] ("Hey man, attaching a new idea that I'd love to hear your thoughts on, potentially something we could collaborate on if there's something juicy. . . . We're short it as a 1%, but it's relatively illiquid so unless we have a catalyst probably won't do too much higher than that"). Other documents produced by RF similarly expose the involvement of others in RF's scheme. *See, e.g.*, Ex. B ("Person B" writing, on email chain with "Person C" and RF: "[W]e essentially need Pitman [sic] to have a 5% or greater interest, executive position or have an immediate relative involved with an entity that conducts a transaction with FPI.").

What FPI still lacks, however, is knowledge of who Persons B, C and many other similarly situated individuals are—knowledge RF possesses, and which he must disclose so discovery can be taken of them, and, if appropriate, they can be added as parties to this action. Discovery from others involved in the attack is particularly important in this case, because RF has already demonstrated he is not trustworthy. Recall RF previously (and now we know falsely) represented to this Court that he acted alone in his attack on FPI. These recently produced documents show, as FPI has long suspected, that RF was part of a conspiracy to harm FPI.

---

[1] Unless otherwise indicated, all references to "Ex. __" herein refer to exhibits to the October 15, 2019 Batchelder Declaration.

Knowing he can only delay and not avoid the day of reckoning, RF continues his improper effort to frustrate lawful discovery by redacting relevant information without justification. It is time to put an end to RF's game playing with FPI and this Court, and to enforce the Federal Rules of Civil Procedure that govern this dispute. Accordingly, FPI hereby moves to compel RF to respond fully to FPI's first set of interrogatories and documents requests ("Requests") and sit for a deposition without unilaterally imposed limitations on the scope of questioning and testimony, as every defendant must do in discovery.

## I. BACKGROUND

On August 21, 2019, after a scheduling conference before this Court, FPI sent RF the discovery it previously served on RF nearly a year ago. *See* Exs. C, D. RF unsuccessfully moved for a stay of discovery, which this Court denied on August 30, 2019—as it had RF's previous stay motions (ECF Nos. 91, 113)—holding that in light of the "lengthy delays" that have forestalled discovery to date, discovery should proceed. ECF No. 108 at 5-7.

The seven interrogatories and five document requests FPI sent to RF seek information that is at the core of FPI's complaint. Specifically, the Requests seek information regarding (i) RF's "research" and communications concerning FPI; (ii) RF's conduct surrounding the Seeking Alpha Posting; (iii) the involvement of others in RF's scheme, including their role in compensating RF, aiding in researching or drafting the Posting, and trading in FPI's securities; (iv) RF's motivations for targeting FPI and its CEO Paul Pittman; (v) any other identities RF has used in connection with this matter or with regard to other publicly traded companies; (vi) communications between RF and the Securities and Exchange Commission; (vii) RF's trading activity in public companies in which he has taken a short position; and (viii) the basis of RF's false assertions in the Posting. *See* Exs. C, D. Further, on September 13, 2019, FPI sent

RF a notice for his deposition, offering to cooperate regarding the date and time of the deposition. *See* Ex. E.

In his interrogatory responses, RF effectively took the position that he need not disclose any names, anonymizing (1) his own name; (2) the names of two individuals RF claimed would lead to revealing RF's identity; and (3) the names of any individuals or entities who might be able to identify RF if asked and willing to provide that information (*i.e.*, traders, the persons for whom RF conducted the FPI "research," and more).[2] And in RF's first production of documents in response to FPI's Requests, RF produced documents that were anonymized, redacted, and lacked metadata and associated text.[3] *See* Batchelder Decl. ¶ 2. At no time did RF move for a protective order or otherwise seek leave to withhold relevant information, even after the Court reminded RF that this was the appropriate means to seek relief. *See* Aug. 30, 2019 Order, ECF No. 108, at 5-6 ("the Court notes that, although Rota has asserted his right to anonymity previously in the case, that issue has not been fully presented before the Court and Rota has not sought a protective order regarding Plaintiff's current discovery requests").

Similarly, in response to FPI's notice of deposition, RF's counsel said that he would only sit for a deposition if his testimony regarding not only his name, but the names of other

---

[2] *See* Ex. F, RF's Responses to FPI's First Set of Requests for Production of Documents to Rota Fortunae; Ex. G, RF's Responses to FPI's First Set of Interrogatories to Rota Fortunae; *see also* Ex. H, email from RF's counsel dated October 2, 2019.

[3] The improper scrubbing of metadata from RF's document production makes it impossible for FPI to ensure the dates and other information have not been altered and renders his document production "unusable" and in violation of the standards set by this District. *See Arkansas River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, C.A. No. 14-cv-00638-CMA-NYW, 2015 WL 2128312, at *12 (D. Colo. May 5, 2015) ("Memoranda, emails, and electronic records produced in PDF or TIFF format are in usable form if accompanied by a load file containing searchable text and selected metadata").

individuals and entities, were anonymized, consistent with his interrogatory responses.[4] Efforts to resolve this dispute informally were not successful. Thus, as directed by the Court on October 7, FPI now moves to compel.

## II. RF HAS NOT MET HIS BURDEN TO WITHHOLD INFORMATION RESPONSIVE TO THE REQUESTS.

To prevail on a motion to compel, "the party seeking discovery has the burden of establishing that the information sought is relevant to a claim or defense in the case." *See Dakota Station II Condo. Ass'n v. Owners Ins. Co*., C.A. No. 14-cv-2839-RM-NYW, 2016 U.S. Dist. LEXIS 192639, at *8 (D. Colo. May 16, 2016). "Once the discovery sought appears relevant, the party resisting the discovery has the burden to establish lack of relevance or that the information is of such marginal relevance that the potential harm occasioned by the discovery outweighs the benefit of production." *Id.* (citation omitted)

Here, the relevance of the discovery FPI seeks cannot credibly be disputed, as information relating to RF's defamatory Posting and the trading through which RF and others profited from, and exacerbated, that attack go to the core of FPI's claims. *See supra* at 2. Tellingly, RF largely concedes the relevance of FPI's discovery requests in his Responses.[5] *See generally,* Exs. F, G.

---

[4] Where RF does not anonymize his responses, he unreasonably refuses to respond at all. For example, in response to FPI's Interrogatory No. 4, calling for, among other information, the identity of all persons contributing to payment of RF's attorneys' fees, RF simply points to prior objections rather than disclose whether any individuals are paying any portion of his attorneys' fees, let alone the identity of such individual(s). *See* Ex. G.

[5] This Motion is limited to the issue of RF's refusal to disclose relevant information based on his argument that he can withhold any information that might reveal his identity, including his unilateral and unsupportable efforts to hide information concerning others in possession of relevant information. FPI reserves the right to move to compel any information sought in FPI's Requests but not produced for any other reason after the parties have had the opportunity to meet and confer regarding RF's other objections with the benefit of the Court's guidance as to issues raised in this Motion.

Unilaterally withholding discovery based on claimed First Amendment rights is contrary to the clear law of this Circuit. Instead, "[w]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure." *Bacon v. Archer*, C.A. No. 17-mc-00192-KLM, 2018 U.S. Dist. LEXIS 159794, at *6 (D. Colo. Sept. 17, 2018) (quoting *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987)). "Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Id.* at *6-7 (quoting *Grandbouche*, 825 F.2d at 1466).

"First, however, 'the [ ] court must determine the validity of the claimed First Amendment privilege.'" *Id.* at *7 (citation omitted). Under Tenth Circuit law, "the party claiming a First Amendment privilege in an objection to a discovery request bears the burden to make a prima facie showing of the privilege's applicability." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 488 (10th Cir. 2011) (citation omitted). "[T]he burden shifts to the party seeking discovery only after the party claiming the privilege makes this prima facie showing." *Id.* (citation omitted).

**A. RF Is Not Entitled to Any First Amendment Protections And Has Conceded the Doe Defendants Are Not Either.**

RF has not made the required prima facie showing that a First Amendment privilege protects him from any discovery that might reveal his identity. As noted above, he has not even made a motion seeking a protective order based on any such showing. Instead, throughout this litigation, RF has arrogated to himself the supposed protections of two out-of-circuit cases, *Doe v. Cahill*, 884 A.2d 451, 462 (Del. 2005), and *Dendrite International, Inc. v. John Does* 1-14, 775 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001), to the exclusion of controlling Tenth Circuit

precedent in arguing for a procedural approach that does not apply here.[6] Specifically, that FPI must show its claims against RF will be meritorious before FPI can "unmask" RF. *See, e.g.*, ECF No. 79; *see also* Ex. G, RF Response to Interrogatory No. 1 (claiming FPI must meet a "requisite threshold showing" without citing to any controlling authority therefor). RF's approach fails for several reasons.

First, his claim to First Amendment protections is tenuous at best and cannot overcome FPI's right to discovery. In particular, RF's admission that he was paid for (and profited from) the short-and-distort attack on FPI undermines RF's claim to special protection under the First Amendment. RF's recent interrogatory responses confirm that he "made $201,245.35 in profits on trades on FPI securities on July 11, 2018," the day of the attack, and that others profited from similar trading. Ex. G, RF Response to Interrogatory No. 2. Moreover, RF previously conceded he was paid by at least some of the very individuals RF now acknowledges profited from their scheme. Ex. I, Jan. 15, 2019 Response to Interrogatory No. 4. His speech is therefore commercial speech, which occupies a "subordinate position in the scale of First Amendment values." *United States v. Wenger*, 427 F.3d 840, 846 (10th Cir. 2005) (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)).

Further, RF's speech was defamatory. As the Supreme Court has noted, "inaccurate and defamatory reports of facts [are] matters deserving no First Amendment protection." *Time, Inc. v. Firestone*, 424 U.S. 448, 457 (1976) (citation omitted).[7] That rings especially true here. For

---

[6] Furthermore, RF's Posting does not resemble the "political criticism of a public figure" at issue in *Doe v. Cahill*. 884 A.2d at 457. Paid speech to further a short-and-distort scheme warrants no such protection under the First Amendment.

[7] Similarly, "[w]hile anonymous internet speech, including file sharing, enjoys some protection under the First Amendment, protection is not absolute." *Voltage Pictures, LLC v. Doe*, C.A. No. 13-cv-01121-WYD-MEH, 2013 U.S. Dist. LEXIS 111132, at *6, 10 (D. Colo. Aug. 7, 2013)

example, there is no dispute that the FPI Loan Program RF attacked in his "article" on Seeking Alpha constitutes approximately 1% of FPI's business. Yet RF baldly announced that the Loan Program introduced a "significant risk of insolvency." *See* ECF No. 110 at 17-18, 20-27. Leaving aside that RF's criticisms of the Loan Program are unfounded, RF has never, and we submit can never, justify the false and defamatory statement that FPI risked insolvency due to that program. Limited discovery to date suggests this false statement was designed to provide the requested "catalyst" RF's co-conspirators requested to obtain the desired effect of causing FPI's stock to drop and the wrongdoers to profit. *See, e.g.,* Exs. A, B.

In addition, RF concedes that the Doe defendants "do not have a First Amendment right to anonymity." *See* Ex. G, RF Response to Interrogatory No. 1. Accordingly, there has never been a proper basis on which to withhold discovery concerning the actions of others with knowledge of the short-and-distort attack, including those who need to be added as parties and held accountable for their misdeeds.

Under these circumstances, RF cannot credibly make a showing that his name, and the names of any parties that *might* lead to the discovery of RF's identity, are protected from disclosure by the First Amendment. As FPI is clearly entitled to the information it seeks under F.R.C.P. 26(b)(1), RF should be compelled to produce his responses in full, without redactions, and with full metadata intact. RF has already moved this Court to stay discovery, or alternatively to stay this matter entirely, and this Court rejected RF's arguments. ECF Nos. 91, 108, 113. RF may not now grant himself a stay of discovery into his co-conspirators simply because he disagrees with the Court's prior orders.

---

(holding "Doe #15's First Amendment right to anonymous file sharing is too slight to overcome" plaintiff's interest in fleshing out claims via discovery) (citation omitted).

### B. Tenth Circuit Law Requires Compelling RF to Provide the Information Requested of Him.

#### 1. The Requests Seek Relevant and Necessary Information.

As set forth above, FPI's Requests seek relevant information. *See supra* at 2; *Scotsman Indus. v. Broadbent*, No. 11-cv-01793-JLK-KLM, 2012 U.S. Dist. LEXIS 126531, at *6 (D. Colo. Sept. 6, 2012) (relevancy "is a deliberately broad standard which is meant to allow the parties to discover the information necessary to prove or disprove their cases") (citations omitted). Indeed, the Requests are tailored to seek essential information that goes to the heart of FPI's complaint against RF and the Doe Defendants. *See* Exs. C, D. The Requests center on RF's role in researching and drafting the Seeking Alpha Posting and trading in FPI's securities; the motive for attacking FPI—a key aspect of FPI's defamation claim; whether RF conspired with others to carry out the short-and-distort attack outlined in FPI's complaint; and what role third parties played in the scheme. *Id.* Because the Requests seek relevant information, this factor weighs in favor of disclosure.

Furthermore, FPI needs the information sought by the Requests to prove its claims against RF. *See Bacon*, 2018 U.S. Dist. LEXIS 159794, at *15 (the second factor in the balancing test requires a consideration of whether plaintiff needs the information to prove a claim or whether the information sought will lead to the just litigation of plaintiff's claims); s*ee also Amaya v. Bregman*, No. 14-cv-0599 WJ/SMV, 2016 U.S. Dist. LEXIS 63588, at *22 (D.N.M. May 13, 2016) ("the information sought is necessary for just litigation of Plaintiffs' claims, and especially for Plaintiffs to respond to Defendants['] … defenses. This is so because of the critically relevant nature of the information, and because it cannot be obtained any other way"). RF's deficient interrogatory and document request responses, and position regarding his

deposition, preclude meaningful discovery and severely prejudice FPI's ability to fairly litigate its claims.

FPI's right to discovery is sorely needed here, as limited discovery has already demonstrated that RF, at best, misled this Court about the short-and-distort attack on FPI. For example, RF has insisted throughout this case that he worked alone on the Posting. However, the first document in his recent production is a May 8, 2018 email from a third party (redacted and identified by RF as "Person C") suggesting "collaborating" on a project and implying that short positions would not be profitable without a "catalyst." *See* Ex. A ("Hey man, attaching a new idea that I'd love to hear your thoughts on, potentially something we could collaborate on if there's something juicy. . . . We're short it as a 1%, but it's relatively illiquid so unless we have a catalyst probably won't do too much higher than that"). This document clearly implies that someone reached out to RF—suggesting a catalyst that would cause a short position in FPI's stock to become profitable. But because RF anonymized this document, FPI is not able to question or serve discovery requests on Person C or other individuals who were clearly involved in the activities underlying FPI's complaint, which FPI is entitled to do to prove its claims of conspiracy and the requisite malice to support FPI's defamation claims. This demonstrates the necessity of full, non-anonymized responses and productions from RF. *See Scotsman Indus.*, 2012 U.S. Dist. LEXIS 126531, at *9 ("Plaintiffs are not required to simply accept Defendant's conclusory assertion without further inquiry. Plaintiffs must be allowed to challenge the accuracy of Defendant's assertions through further discovery.").

Moreover, FPI needs the information sought by the Requests to flesh out its claims against the Doe Defendants. As has been established, there are numerous potential Doe Defendants in this case. *See* Joshua Mitts Decl. in Support of Plaintiff's Motion to Remand,

ECF No. 37-6; *see also* Ex. I (confirming that (a) there are multiple other parties involved in the short-and-distort attack, whom RF calls Persons "A, B, C and D" and "the Company," and (b) at least some of these parties profited from positions they took in FPI's securities); Ex. G (noting that multiple parties profited from trading in FPI's securities in the wake of the attack). This information is essential to the prosecution of FPI's claims, and RF's continued delay tactics threaten FPI's ability to pursue claims for which Doe Defendants will no doubt argue statutes of limitations continue to run.

FPI must be permitted to gather discovery from co-conspirators and non-parties alike to learn their roles in the scheme before discovery closes. Obtaining their names is an important first step—one that will allow FPI to pursue, for example, trading records from brokers armed with the names of specific trading accounts—but FPI will need to do more probing to confirm facts to build its case against these parties. That probing cannot await RF's selective disclosure as the clock runs out on the discovery schedule ordered by this Court. *C.f. Advanced Career Techs., Inc. v. Does 1-10*, C.A. No. 13-cv-00304-WJM-KLM, 2013 WL 1934005, at *1 (D. Colo. Mar. 11, 2013) (permitting expedited discovery where "there is no other feasible method for Plaintiff to obtain the identity of John Does 1–10 other than through service of third party subpoenas prior to the commencement of discovery in this matter").

**2. The Information Sought by the Requests Is Not Available from Other Sources.**

FPI has tried to independently determine how the short-and-distort attack was planned and launched, including the identities of RF and the Does, but has been unsuccessful. Therefore, this factor weighs in favor of disclosure. *See Bacon*, 2018 U.S. Dist. LEXIS 159794, at *18 (noting that the Tenth Circuit requires an "independent attempt to obtain the information elsewhere" if this factor is to weigh in favor of disclosure) (citation omitted). In fact, FPI's

efforts to obtain information through other means has failed largely *because* of RF's tactics, so he can hardly claim FPI should look elsewhere. First, RF himself closed the most obvious avenues to the critical information FPI seeks by withholding the names of individuals he knows profited from taking short positions in FPI's securities and who communicated with RF before and after the publication of the Posting. Where FPI has pursued information from other sources, RF has likewise sought to prevent disclosure. For example, as this Court is aware, FPI has sent subpoenas to various entities, including Goldman Sachs and the SEC, and submitted a FOIA request to the SEC as well. Yet RF moved to quash FPI's subpoena to Goldman Sachs—a motion this Court denied while permitting RF to prevent the disclosure of certain identifying information. ECF No. 113.

Further, much of the information sought by the Requests—for example, information that will go to RF's motive and purpose in publishing the Posting—can only be answered by RF himself. This fact also supports the finding that this factor weighs in favor of disclosure. *See Bacon*, 2018 U.S. Dist. LEXIS 159794, at *19-20; *see also Amaya v. Bregman*, 2016 U.S. Dist. LEXIS 63588, at *21-22 ("This factor, therefore, weighs in favor of compelled disclosure because the information is not available other than from Defendants.").

Finally, the nature of the information sought is typically sought by plaintiffs in lawsuits against parties who have defamed them, which weighs in favor of disclosure here. The fact that the information is centered on the identities and conduct of individuals including actual and potential defendants in this action further supports disclosure. *See Amaya v. Bregman*, 2016 U.S. Dist. LEXIS 63588, at *22 ("Although it is not dispositive, the fact that they are Defendants, who are accused of wrongdoing, rather than undisputedly innocent non-parties (like the journalists in *Branzburg* and *Silkwood*), is also relevant to the *Grandbouche* calculus"). RF

should be compelled to provide this very information here. *See, e.g.*, *Advanced Career Techs.,* 2013 WL 1934005, at *1; *Scotsman Indus.*, 2012 U.S. Dist. LEXIS 126531, at *9 ("Plaintiffs must be allowed to challenge the accuracy of Defendant's assertions through further discovery").

**CONCLUSION**

For the reasons set forth here, FPI requests that this Court compel RF to provide full responses to FPI's discovery, including responses to the Requests within 5 days, a corrected document production within 5 days, and a deposition without limits based on anonymity within two weeks of this Court's order. Finally, FPI requests expenses for bringing this motion under F.R.C.P. 37(a)(5)(A).

Dated: October 15, 2019

Respectfully submitted,

*/s/ Scott F. Llewellyn*

Scott F. Llewellyn
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202
Telephone: 303.592.1500
Facsimile: 303.592.1510
sllewellyn@mofo.com

Michael D. Birnbaum
Rhiannon N. Batchelder
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone: 212.336.4079
Facsimile: 212.468.7900
mbirnbaum@mofo.com
rbatchelder@mofo.com

*Attorneys for Plaintiff, Farmland Partners Inc.*

**CERTIFICATE OF CONFERENCE**

Pursuant to D.C.COLO.LCivR 7.1(a), I certify that counsel for Plaintiff Farmland Partners Inc. conferred with counsel for Defendant Rota Fortunae regarding this motion to compel. Rota Fortunae opposes the relief requested.

Dated: October 15, 2019

*/s/ Scott F. Llewellyn*

Scott F. Llewellyn
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
Telephone: 303.592.1500
Facsimile: 303.592.1510
sllewellyn@mofo.com

*Attorney for Plaintiff, Farmland Partners Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2019, the foregoing request for a hearing and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jchanin@fostergraham.com,
kroush@fostergraham.com,
mbrooks@fostergraham.com

*Counsel for Defendant, Rota Fortunae*

*/s/ Scott F. Llewellyn*
Scott F. Llewellyn