# EXHIBIT J

# Farmland Partners: Undisclosed Loans To Management, Misstated Financials & Potential Roundtrip Transactions - Price Target $5.30

*Summary*

- *ABD*
- *DEF*
- *HIF*
- *UFI*
- *IFO*

*Please read the full disclaimer at the end of the report before reading further. This report represents the opinion of the author. Investors should do their own due diligence and come to their own conclusions.*

*Introduction*

Farmland Partners (NYSE: FPI) is a highly-levered farm REIT whose cash flow does not cover its dividend and who has admitted that its [ HYPERLINK "https://seekingalpha.com/article/4172577-farmland-partners-inc-fpi-ceo-paul-pittman-q1-2018-results-earnings-call-transcript?part=single" ]. Despite reassuring investors that the business is [ HYPERLINK "https://seekingalpha.com/article/4172577-farmland-partners-inc-fpi-ceo-paul-pittman-q1-2018-results-earnings-call-transcript?part=single" ], our research leads us to believe that FPI is using its mortgage lending program to prop up struggling tenants, engage in [ HYPERLINK "http://smallbusiness.chron.com/meaning-round-tripping-accounting-65720.html" ] to artificially increase earnings and fund the CEO's outside business activities..

FPI has neglected to disclose that the majority of its loans have been made to Ryan Niebur and Jesse Hough (both FPI tenants and [ HYPERLINK "http://ir.farmlandpartners.com/Cache/1001212949.PDF?Y=&O=PDF&D=&FID=1001212949&T=&IID=4426904" ]). Ryan Niebur is a now bankrupt tenant (not disclosed), who after defaulting on an FPI loan (not disclosed) was bailed out when FPI acquired his properties, falsely reported it as a loan and, we believe, extended additional funds that were roundtripped to pay off accrued interest that otherwise would have resulted in a revenue reversal.

Jesse Hough is CEO Paul Pittman's long-time business partner, the co-founder of FPI and currently a well-paid FPI consultant. Despite disclosure that their interests have been separated, we found that Pittman and Hough are still doing business together thru an entity that has a direct financial relationship with an entity Hough has used to receive loans from FPI.

We think the Hough loans, taken together with the recent dismissal of auditor PWC and an exodus of insiders, introduces the risk that FPI is not only using the loan program to improve its financials but also to fund Pittman and Hough's outside businesses.

[ PAGE ]

RF005498

We also think FPI has a motive to play accounting games. We found a UCC filing that shows Jesse Hough (and we believe Paul Pittman) pledged shares of FPI for a bank loan just days before FPI signed an agreement that Pittman later stated he thought would drive the stock price higher. Instead the stock tanked over the following months. And shortly after the stock made an all-time low, FPI made its first loan to Hough.

**While shareholders have expressed concern about [ HYPERLINK "https://seekingalpha.com/article/4147265-farmland-partners-wait-dividend-cut" ], we think this significantly understates the real risk, which is that FPI has relied on a hamster wheel of debt and equity raises to stay afloat. If the capital markets lose faith, FPI may quickly find that its endless stream of debt and equity has run dry. With only $19 Million in cash, we think FPI will not only be forced to cut its dividend, but will have to begin liquidating properties into a distressed farmland market.**

But even if the loans, misstated financials, insider departures, dismissed auditor, pledged shares and potential liquidity trap turn out to be benign risks, we still think FPI's shares carry significant downside. We found deed records that lead us to believe FPI has significantly overpaid for properties, in some instances paying over two times what the seller paid for the same land three years earlier. This does not surprise us given that Pittman stated he thinks purchase price is a better estimate of value than annual appraisals.

Using what FPI actually paid for properties and making adjustments (both up and down), we calculate net asset value to be $5.30 per share or 40% below the current stock price.

*The FPI Loan Program*

In [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000110465915062043/a15-18603_1ex99d1.htm" ], Farmland Partners introduced the FPI Loan Program to "address a market need created by short term cash flow pressure on farmers who otherwise maintain solid balance sheets" but cannot get traditional funding. The press release promoted FPI's quick underwriting abilities and conservative loan-to-value criteria. Further details were given in the [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837015002606/fpi-20150930x10q.htm" ]:

> *"The Company intends to make loans to **third-party** farmers (both tenant and non-tenant) to provide partial financing for working capital requirements and operational farming activities, farming infrastructure projects, and for other farming and agricultural real estate related projects."*

We believe that the early disclosures about the loan program and subsequent disclosures about individual loans have been at best misleading and in many cases false. To start, five loans totaling $9.2 Million (out of a total of $15.4 Million) have been made to Ryan Niebur and Jesse Hough. We are unsure how Niebur and Hough are considered third-party tenants when both are [ HYPERLINK "http://ir.farmlandpartners.com/Cache/1500078342.PDF?Y=&O=PDF&D=&FID=1500078342&T=&IID=4426904" ].

[ PAGE ]

RF005499

| FPI Loans | Borrower | 3Q2015 | 4Q2015 | 1Q2016 | 2Q2016 | 3Q2016 | 4Q2016 | 1Q2017 | 2Q2017 | 3Q2017 | 4Q2017 | 1Q2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan #1 | | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 | 1,800,000 |
| Loan #2 | Ryan Niebur | | 980,000 | 980,000 | 980,000 | 980,000 | 980,000 | 240,000 | 240,000 | 240,000 | 240,000 | 240,000 |
| Loan #3 | | | 50,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Loan #4 | Ryan Niebur | | | | | | | 2,194,000 | 2,194,000 | 2,194,000 | 2,194,000 | 2,194,000 |
| Loan #5 | | | | | | | | 1,647,000 | 1,647,000 | 1,647,000 | 1,647,000 |
| Loan #6 | Jesse Hough | | | | | | | | | 100,000 | 100,000 | 0 |
| Loan #7 | Jesse Hough | | | | | | | | | 663,000 | 669,000 | 0 |
| Loan #8 | | | | | | | | | | | 2,700,000 | 0 |
| Loan #9 | Jesse Hough | | | | | | | | | | | 5,250,000 |

*Source: Chart By Author, Using SEC Filings and Deed Records*

And while we will not discuss the other loans in detail, we think material information has been left out of FPI's disclosures. For instance, the [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837018004644/fpi-20180331x10q.htm" ] states Loan #1 is in default but collectability is "reasonably assured." However, [ HYPERLINK "https://deeds.vbco.org/recorder/web/" ] deed records (search Grantee: Farmland Partners) show the loan is with Boersen Land Co., a large farming operation that is on [ HYPERLINK "https://mibiz.com/item/25144-boersen-farms'-impending-bankruptcy-could-shake-west-michigan's-ag-industry" ].

Or Loan #8, which [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837018004644/fpi-20180331x10q.htm" ] was "settled on the closing of a property in North Carolina on January 12, 2018." We found that acquisition in [ HYPERLINK "http://216.27.81.171/pasquotanknc/disclaimer.asp" ] deed records (search Grantee: FPI Carolinas) between FPI and Justice Farms of North Carolina. This leads us to believe the loan was made with James C. Justice, the billionaire governor of West Virginia, who [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000110465917008559/a17-4259_1sc13ga.htm" ] owns 7.3% of FPI thru various entities. And similar to Boersen, Justice Farms of North Carolina was [ HYPERLINK "http://wvmetronews.com/2017/09/16/governor-justices-companies-accused-of-fraudulent-transfers-in-federal-court-case/" ].

**Furthermore, Loan #8 was "settled" when FPI purchased the property. This is an important fact that we will see in other FPI loans, and introduces the possibility that the reported interest and fees on the loans are effectively being paid, not by the borrower, but by FPI. We estimate this loan, which was only outstanding for a matter of months, resulted in [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837018004644/fpi-20180331x10q.htm" ] of interest and fee income (over 6% of 1Q2018 operating income).**

We now turn to the Ryan Niebur loans, which show us that FPI has made loans outside its state parameters, propped up a distressed tenant, misstated financials and, we believe, engaged in roundtrip transactions to increase earnings.

### The Ryan Niebur Loans

On November 16th, 2015, just three months after introducing the loan program, FPI leant $980 Thousand (Loan #2) to a [ HYPERLINK

[ PAGE ]

RF005500

"https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ].        The     only     other     [     HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ] was that the loan was collateralized by a first mortgage on farm real estate and the first year of interest was paid up front, which we think means it was paid out of the loan proceeds and allowed FPI to report immediate interest revenue.

What was not disclosed, was that this loan was made to [ HYPERLINK "https://www.linkedin.com/in/ryan-niebur-49947711a/" ].

863631
Page 1 of 7
Garland Wahl, Clerk & Recorder
Washington County, CO      RP $0.00
11-16-2015  01:43 PM  Recording Fee $41.00

**DEED OF TRUST AND SECURITY AGREEMENT**

THIS DEED OF TRUST is made effective this 30th day of October 2015.

The parties to this Deed of Trust are: **RYAN NIEBUR**, also known as Ryan B. Niebur, an individual, whose address is 411 West 4th, Wray, Colorado 80758, (the "GRANTOR"), and the Public Trustee of the County of Washington, State of Colorado, (the "PUBLIC TRUSTEE").

**AMOUNT AND TERMS**
The GRANTOR has made a promissory note payable to the order of **FARMLAND PARTNERS OPERATING PARTNERSHIP, LP,** a Delaware limited partnership, which has an address of 4600 S. Syracuse Street, Suite 1450, Denver, CO 80237, as beneficiary of this Deed of Trust (together with its successors and assigns) (the "BENEFICIARY"). The promissory note is dated October 30, 2015. The Deed of Trust secures the payment of $980,000.00 of the original principal sum and is payable with interest as shown in the promissory note and if not sooner paid, shall be due and payable in full on October 30, 2017, subject to extensions thereof. The promissory note states the interest rate on the principal sum, and also provides for future changes in the interest rate. The Deed of Trust secures the repayment of the principal sum with interest, and any additional indebtedness arising under the terms and conditions of this Deed of Trust.

*Source: Washington County, CO Clerk's Office*

It was also not disclosed that the loan was not used for farming operations but rather to pay off part of an existing mortgage (see Addendum A-1), which taken together with the following facts suggests Niebur was already in a financially precarious situation.

In                  the                  [                  HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837017004040/fpi-20170331x10q.htm" ], FPI disclosed that it "renegotiated" Niebur's loan while simultaneously entering into a new $2.194 Million loan (Loan #4) collateralized by two additional properties.

[ PAGE ]

RF005501

| ($ in thousands) Loan | Payment Terms | Principal Outstanding as of | | Maturity Date |
| | | March 31, 2017 | December 31, 2016 | |
|---|---|---|---|---|
| Mortgage Note [1] | Principal & interest due at maturity | $ 1,800 | $ 1,800 | 1/15/2017 |
| Mortgage Note [2] | Principal & interest due at maturity | 240 | 980 | 3/16/2022 |
| Mortgage Note [2] | Principal & interest due at maturity | 2,194 | - | 3/16/2022 |
| Total outstanding principal | | 4,234 | 2,780 | |
| Points paid, net of direct issuance costs | | (3) | (4) | |
| Interest receivable (net prepaid interest) | | 16 | 67 | |
| Total notes and interest receivable | | $ 4,247 | $ 2,843 | |

(1)   In January 2016, the maturity date of the note was extended to January 15, 2017 with year one interest received at the time of the extension and principal and remaining interest due at maturity.  The Company is currently in negotiations to extend the terms with the borrower.

(2)   The original note was renegotiated and a second note was entered into simultaneously, with the borrower during the quarter.  The notes include mortgages on two additional properties in Colorado that include repurchase options for the properties at a fixed price that are exercisable between the second and fifth anniversary of the notes by the borrower.

*Source:* [ HYPERLINK
"https://www.sec.gov/Archives/edgar/data/1591670/000155837017004040/fpi-
20170331x10q.htm" ]

**But this is not the whole story.  On March 16th, 2017, Niebur deeded a property to FPI.  The deed specifically states that Niebur was in default on the loan and obligated to pay a remaining balance of $240 Thousand (Loan #2's balance as of 1Q2017).**

### DEED
#### (Washington County)

KNOW ALL MEN BY THESE PRESENTS:

This Deed is made and entered into as of the 16th day of March, 2017 between Ryan B. Niebur ("Grantor") whose legal address is 411 W. 4th Street, Wray, CO  80758 and FPI Burlington Farms LLC, a Delaware limited liability company ("Grantee") whose legal address is 4600 S. Syracuse St., Suite 1450, Denver, CO 80237.

### RECITALS

WHEREAS, Grantor has reviewed the Grantee's lien secured by the Property set forth below, and Grantor desires to deed the Property to Grantee.

### WITNESSETH

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor acknowledges that Grantee's loan secured by the Property is in default, that Grantor is aware of its rights regarding cure and redemption under Colorado and federal law, including any rights of redemption, leaseback, first refusal, continued possession, homestead under C.R.S. §§ 13-54-102 and 38-41-201 et seq. or 11 U.S.C. § 522 or any other homestead right, reversion, or abandonment under 11 U.S.C. § 554 or otherwise to all or any part of the Property, and Grantor does hereby bargain, sell, transfer, assign, convey to Grantee its successors and assigns forever all of Grantor's right, title and interest in and to the Property, together with all crops, mineral rights and improvements, if any, situate, lying and being in the County of Washington State of Colorado described as follows:

Grantor acknowledges that after this conveyance, Grantor shall continue to be obligated for a deficiency of $240,000 plus accruing interest on the Promissory Note secured by the Grantee's Deed of Trust.

*Source: Washington County, CO Clerk's Office*

Then in January 2018, [ HYPERLINK "https://www.docketbird.com/court-cases/Ryan-b-Niebur-and-Stacie-k-Niebur/cob-1:2018-bk-10568" ] (also not disclosed).   Court records shows that the

[ PAGE ]

RF005502

remaining $240 Thousand owed is collateralized by a property worth $192 Thousand, resulting in a loan-to-value ratio of 125%. We hardly call this conservative.



*Source: Pacer – Case #1:2018bk10568 – Document #17 Schedule A/B*

We believe the loans the Niebur show FPI's willingness to make loans outside of the programs stated parameters and stabilize rental income by making risky loans to struggling tenants.

But, more importantly, we believe the loans show that FPI has misstated its SEC filings and used the loan program to artificially increase revenues.


### *Was It A Loan Or An Acquisition*

It turns out that the $2.194 Million loan to Niebur was not actually a loan, but an acquisition of three properties. FPI acquired one of the properties collateralizing Niebur's original loan for $801 Thousand (show above and in Addendum A-1). The other two properties are the same that purportedly collaterale the new loan. Deed records show FPI acquired these properties for $1.392 Million (Addendum A-1).

Low and behold, the total acquisition price is $2.194 Million (= 0.801 + 1.392), the same amount as Loan #4. Further proof there was no loan, is the fact that FPI did not list the loan in Niebur's bankruptcy.

**So in fact, FPI reported a loan on its financial statements when it actually was an acquisition.**

But that is not all. We believe FPI extended Niebur an additional $61 Thousand that was promptly returned and used to pay off unpaid interest. Evidence supporting our opinion, can be seen in the cash flow statement.

| CASH FLOWS FROM INVESTING ACTIVITIES | | |
|---|---|---|
| Real estate acquisitions, net of cash acquired | (79,220) | (93,187) |
| Real estate and other improvements | (3,947) | (698) |
| Principal receipts on notes receivable | 801 | 50 |
| Issuance of note receivable | (2,255) | — |
| Net cash used in investing activities | (84,621) | (93,835) |

*Source: [ HYPERLINK
"https://www.sec.gov/Archives/edgar/data/1591670/000155837017004040/fpi-
20170331x10q.htm" ]*

Principle receipts on notes receivable of $801 Thousands matches the acquisition of the first property mentioned above. But that would leave the original $980 Thousand loan (Loan #2) with a balance of

[ PAGE ]

$179 Thousand vs. the reported $240 Thousand.  The $61 Thousand difference is the same as the difference between the $2.255 Million Issuance of Note Receivable reported in the cash flow statement and $2.194 Million loan.

So FPI leant Niebur an additional $61 Thousand that was added to the original loan.  We believe this money was used to pay accrued interest that otherwise would have resulted in a revenue reversal.  Our opinion is supported by the fact that interest receivable [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837017004040/fpi-20170331x10q.htm" ] with no other reported loan activity in the quarter and the only other loan outstanding (Loan #1) under negotiation to extend the term a second time.

We know this was a mountain of numbers, so let us summarize.

**After Ryan Niebur defaulted on his loan, FPI settled part of the loan by purchasing a property, gave him an additional $2.2 Million for an acquisition that FPI reported as a loan and leant an additional $61 Thousand that we believe was promptly returned to FPI as interest.  In our opinion, these transactions describe non-economic transactions used to artificially inflate revenues and are similar to the type of transactions that caused the [ HYPERLINK "https://www.sec.gov/news/press/2003-120.htm" ]**

But we think there is even more to the loan program than improving FPI's financials.  We think there is a significant risk that shareholder capital is being used to fund Paul Pittman's outside businesses.   Before we get there, we must provide a history of Paul Pittman and Jesse Hough business partnership.

### *Pittman and Hough's Partnership*

Paul Pittman and Jesse Hough have been business partners since at least January 2012 when, according to [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000104746914006321/a2220721zs-11a.htm" ], Pittman-Hough Farms, LLC was formed as a merger of their personal farmland holdings. They were also partners in a number of entities that were engaged by FPI before and after the IPO.

Included in the list were Astoria Farms and Hough Farms, which were FPI's first tenants and are still tenants [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ].  American Agriculture was paid for [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ] and PHS Holdings [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000104746914006407/a2220909z424b4.htm" ].

Using SEC filings and corporate records, we put together a chart of relevant entities, their affiliation with FPI and the ownership structure (where known) that existed after FPI went public.

RF005504



*Source: Chart By Author, Using SEC and Corporate Filings*

This ownership structure remained intact even after the IPO when Jesse Hough became an FPI consultant and, despite obvious potential for conflicts of interest, was provided significant latitude to operate the businesses.

### *Jesse Hough's Consulting Agreement*

Jesse Hough's consulting agreement carved out a list of entities that were not considered "competing businesses." The list (presented below) includes numerous entities that, at the time, we know were either controlled by or affiliated with Paul Pittman (marked by a red star). In our opinion, this agreement allowed Pittman to use Hough as a surrogate to do deals with the outside entities.

American Agriculture Corporation ★
Pittman Hough Farms, LLC ★
PH Land, LLC
Cottonwood Valley Farms, LLC
Hough Farms ★
Astoria Farms ★
Pine Ridge Holdings, Inc. ★
Little Pine Ridge Feed Yard, Inc.
South Fulton Livestock, LLC
Hough Cattle Feeding, LLC
Schuyler Livestock, Inc. ★
PHS Farms, LLC ★
BPH Farms, LLC ★

*Source: Jesse Hough Consulting Agreement*

Then in March 2016, with little disclosure, Pittman and Hough restructured their holdings.

### *The Restructuring*

[ PAGE ]

The [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ] contained one sentence that revealed a change in the ownership structure of Pittman and Hough's outside entities:

> *"On March 11, 2016, Mr. Pittman and Jesse J. Hough entered into an agreement pursuant to which, effective December 31, 2015, Mr. Pittman ceased to hold any direct or indirect interests in, or have control of, Astoria Farms, Hough Farms and American Agriculture Corporation."*

Another clue was in a [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1389549/000092542116000077/xslF345X03/edgar .xml" ] that disclosed that [ HYPERLINK "https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntit yResults&nameTyp=ENT&masterFileId=20131030594&entityId2=20131030594&fileId=2013103 0594&srchTyp=ENTITY" ] gave Paul Pittman 233,400 shares of common stock (valued at $2.56 Million) in connection with the restructuring of Pittman-Hough Farms.  And that Paul Pittman increased his pecuniary interest in Pittman-Hough farms to 78%.

**Based on this disclosure and this [ HYPERLINK "http://ir.farmlandpartners.com/Cache/1001212949.PDF?Y=&O=PDF&D=&FID=1001212949&T =&IID=4426904" ], we believe Paul Pittman is still an owner of Pittman-Hough Farms and that Jesse Hough is an owner and its CFO.**

Around the same time, Jesse Hough relocated Pittman-Hough Farms, Hough Farms, American Agriculture, and PHS Holdings to a new office ([ HYPERLINK "https://www.google.co.id/maps/place/900+E+Louisiana+Ave,+Dallas,+TX+75216,+Amerika+Se rikat/data=!4m2!3m1!1s0x864e99dd23b76581:0xebc978ff04f4a2?sa=X&ved=0ahUKEwjlyNeNr uDbAhUs7IMKHRnAA8UQ8gEILjAA" ]).   Prior to this, all the entities shared [ HYPERLINK "https://www.google.co.id/maps/place/Farmland+Partners+Inc./@39.629234,-104.8988136,15z/data=!4m5!3m4!1s0x0:0xca1875c98ca29197!8m2!3d39.629234!4d-104.8988136" ].

We will show why they may have restructured on paper, Pittman still has a direct financial relationships with the restructured entities, which introduces the possibility that FPI is using the loan program, not only to improve its financials, but also to fund Pittman and Hough's outside businesses.

### The Jesse Hough Loans (Loan #6)

In [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837017008697/fpi-20170930x10q.htm" ], FPI made a $100 Thousand loan (Loan #6) to Jesse Hough thru PHS Holdings.

[ PAGE ]

RF005506

*Source:* [ HYPERLINK "http://nebraskadeedsonline.us/search.aspx?county=25" ]

According to [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000104746914006407/a2220909z424b4.htm" ], Pittman-Hough Farms owned a 30% interest in PHS Holdings. We do not know if the aforementioned restructuring resulted in Paul Pittman no longer having an interest in PHS Holdings; however, we have reason to believe he is still involved. Leading us to this opinion are details in the deed records of an Illinois farm [ HYPERLINK "http://www.sullivanauctioneers.com/auction/schuyler-county-il-land-auction-3/" ]

The records show that Jesse Hough signed the deed, but the document lists the address for PHS Holdings as 4600 South Syracuse (FPI's corporate headquarters) even though PHS Holdings purportedly moved to 900 E. Louisiana nearly two year prior to this.



*Source: Schuyler County, IL Clerks Office*

**If Paul Pittman still has an interest in PHS Holdings, then FPI made an undisclosed loan to its CEO. And more importantly then acquired the property right around when the loan came due.**

FPI acquired this property from PHS Holdings on January 12th, 2018 (Addendum B-1). While we cannot be sure that the acquisition paid off the loan (no reconveyance was filed), there is an inconsistency in the SEC disclosure. The [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837018004644/fpi-20180331x10q.htm" ] states the loan was settled on "the maturity date of January 1, 2018," (before the acquisition closed) but the maturity date listed right above this disclosure states it is January 31st, 2018, two weeks after the property was acquired.

RF005507

As of March 31, 2018 and December 31, 2017, the Company had the following notes receivable:

| ($ in thousands) Loan | Payment Terms | Principal Outstanding as of | | Maturity Date |
| --- | --- | --- | --- | --- |
| | | March 31, 2018 | December 31, 2017 | |
| Mortgage Note [1] | Principal & interest due at maturity | $ 1,800 | $ 1,800 | 1/15/2017 |
| Mortgage Note [2] | Principal & interest due at maturity | 240 | 240 | 3/16/2022 |
| Mortgage Note [2] | Principal due at maturity & interest due monthly | 2,194 | 2,194 | 3/16/2022 |
| Mortgage Note [2] | Principal & interest due at maturity | 1,647 | 1,647 | 4/27/2018 |
| Mortgage Note [3] | Principal & interest due at maturity | - | 100 | 1/31/2018 |
| Mortgage Note [4] | Principal due at maturity & interest paid in advance | - | 669 | 2/15/2018 |
| Mortgage Note [5] | Principal due at maturity & interest paid in advance | - | 2,700 | 1/29/2018 |
| Mortgage Note | Principal & interest due at maturity | 5,250 | | 8/19/2020 |
| Total outstanding principal | | 11,131 | 9,350 | |
| Points paid, net of direct issuance costs | | (1) | (6) | |
| Interest receivable (net prepaid interest) | | 609 | 461 | |
| Provision for interest receivable | | (91) | (45) | |
| Total notes and interest receivable | | $ 11,648 | $ 9,760 | |

(1) In January 2016, the maturity date of the note was extended to January 15, 2017 with year one interest received at the time of the extension and principal and remaining interest due at maturity. On July 28, 2017, the Company notified the borrower of default under the Promissory Note. The Company currently believes that collectability is reasonably assured as the fair value of the mortgaged farm is greater than the amount owed under the loan.

(2) The original note was renegotiated and a second note was entered into simultaneously with the borrower during the three months ended March 31, 2017. The notes include mortgages on two additional properties in Colorado that include repurchase options for the properties at a fixed price that are exercisable between the second and fifth anniversary of the notes by the borrower.

(3) The note was fully settled and outstanding amounts paid on the maturity date of January 1, 2018.

(4) The note was fully settled and outstanding amounts paid on the maturity date of February 2, 2018.

(5) The note was fully settled and outstanding amounts paid on the closing of an acquisition in North Carolina, which was completed on January 12, 2018.

(6) On April 17, 2018, the Company amended the loan to extend the term of the loan through March 1, 2020 and increased the interest rate to 7.5% per annum.

*Source: 1Q2018 FPI 10-Q*

If the acquisition did pay off the loan, we believe this would represent a non-economic transaction used to improve FPI's financials.

### *The Jesse Hough Loans (Loan #7)*

In [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837017008697/fpi-20170930x10q.htm" ] FPI made a $669 Thousand loan (Loan #7) to Jesse Hough thru Hough Farms.



*Source:* [ HYPERLINK "http://nebraskadeedsonline.us/search.aspx?county=25" ]

RF005508

We found that just three months before FPI made this loan, Paul Pittman and Jesse Hough, thru an entity called Pine Ridge Holdings, obtained a $21.9 Million bank loan with Hough Farms that was collateralized by the exact same property FPI leant against (addendum B-2).



**DEED OF TRUST**

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $21,977,403.00.

THIS DEED OF TRUST is dated May 25, 2017, among HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP, whose address is 4291 H ROAD, BELLWOOD, NE 686242457 ("Trustor"); FIRST MIDWEST BANK, whose address is GALESBURG, ONE PIERCE PLACE, SUITE 1500, ITASCA, IL 60143 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and BRIAN F. BECKNER, whose address is P.O. BOX 1185, COLUMBUS, NE 68602 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in BUTLER County, State of Nebraska:

**See EXHIBIT "A",** which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**Borrower.** The word "Borrower" means HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP; and PINE RIDGE HOLDINGS, INC.

**Note.** The word "Note" means the promissory notes or credit agreements dated February 14, 2017 in the original principal amounts of $5,350,000.00, $350,105.00 and $225,000.00 from Borrower to Lender and the promissory notes or credit agreements dated February 14, 2017 in the original principal amounts of $431,250.00, $219,448.00 and $750,000.00 from Astoria Farms, an Illinois General Partnership to Lender together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the promissory notes or credit agreements.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

*Source:* [ HYPERLINK "http://nebraskadeedsonline.us/search.aspx?county=25" ]

Pine Ridge Holdings is a Wyoming LLC. [ HYPERLINK "https://wyobiz.wy.gov/business/FilingDetails.aspx?eFNum=238247017115147177104235174065144069114223016131" ] show after the 2016 restructuring, Pittman's name was removed from the corporate records. However, when in January 2018 Jesse Hough [ HYPERLINK "https://www.nebraska.gov/sos/corp/corpsearch.cgi" ], Pittman reappears as both an officer and a director of Pine Ridge Holdings. Strangely, it lists his address in a Denver high rise that we believe is [ HYPERLINK "https://coloradovoters.info/by_number/0063/22040_jesse_james_hough.html" ].



| OFFICERS: | | | DIRECTORS: | | |
|---|---|---|---|---|---|
| Jesse J. Hough/President and Treasurer | | | Jesse J. Hough | | |
| Name/Title | | | Name | | |
| 1920 17th Street #1208 | | | 1920 17th Street #1208 | | |
| Street Address | | | Street Address | | |
| Denver | CO | 80210 | Denver | CO | 80210 |
| City | State | Zip | City | State | Zip |
| Paul Pittman/Vice Pres and Secretary | | | Paul Pittman | | |
| Name/Title | | | Name | | |
| 1920 17th Street #1208 | | | 1920 17th Street #1208 | | |
| Street Address | | | Street Address | | |
| Denver | CO | 80210 | Denver | CO | 80210 |
| City | State | Zip | City | State | Zip |

RF005509

*Source:* [ HYPERLINK "https://www.nebraska.gov/sos/corp/corpsearch.cgi" ]

**Here again, we believe this is a potential undisclosed related party transaction. While Pittman may not be involved with Hough Farms on paper, there are very conceivable situations where he could personally benefit from FPI's loan to Hough Holdings. For instance, if the bank required further collateral, how are shareholders to know if the FPI loan was used as said collateral.**

And more broadly, why would Pittman agree to put one of his businesses in a position to be joint and severally liable with Hough Farms if he did not have some sort of pecuniary interest in its business?

Lastly, we note that this loan was paid off on February 2nd, 2018 (see 10-Q disclosure above), two weeks after FPI made the next loan. This introduces the possibility that FPI rolled the loan over and therefore engaged in another potential non-economic transaction.

### *The Jesse Hough Loans (Loan #9)*

On [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837018004644/fpi-20180331x10q.htm" ] FPI made a $5.25 Million loan to Siffring Farms.



*Source:* [ HYPERLINK "http://nebraskadeedsonline.us/search.aspx?county=25" ]

We searched corporate filings and found that [ HYPERLINK "https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=0131334" ] whose president is Duane R. Siffring. However, the deed of trust was signed by Jesse Hough as President of Siffring Farms. And [ HYPERLINK "https://butler.gisworkshop.com/" ] show that Siffring Farms has owned the properties for years.

[ PAGE ]

RF005510



*Source:* [ HYPERLINK "http://nebraskadeedsonline.us/search.aspx?county=25" ]

**We ask, why is Jesse Hough signing on a loan for an inactive entity, that corporate records show he was never the president of, and that is collateralized by land that deed records show he does not own?**

We also wonder why days later Pine Ridge Holdings co-signed on another bank loan with [ HYPERLINK "https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=10255658" ] (an entity formed by Jesse Hough on January 9th, 2018) and with Hough Farms using an address that Butler County Appraiser shows as the mailing address for the properties owned by Siffring Farms.



*Source:* [ HYPERLINK "http://www.sos.ne.gov/business/ucc/UCC-EFS_SearchFiling.html" ] *&* [ HYPERLINK "https://butler.gisworkshop.com/" ]

Are shareholders supposed to believe that all these entities that share the same address and are co-signing loans are unrelated parties?

### Insider Departures & Auditor Dismissal

Our opinion that something is amiss is bolstered by the exodus of FPI insiders. Since the first loan to Jesse Hough in July 2017, four board members and FPI's president have announced resignations. Below we detail each of the departures.

[ PAGE ]

RF005511

| Date | | Name | Position | Reason |
|------|---|------|----------|--------|
| [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/0001104659 17055211/a17-21223_18k.htm" ] | | John Conrad | Director, Forsythe Farms nominee | Personal reasons |
| [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/0001104659 17072549/a17-28227_18k.htm" ] | | Dixon Boardman | Director, former Chairman of AFCO | Pursue other business interests |
| [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/0001104659 18003591/a18-3583_18k.htm" ] | | Darell Sarff | Director, father of FPI VP | Pursue other business interests |
| [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/0001104659 18018869/a18-7956_38k.htm" ] | | Thomas Gimbel | Director, former CEO of AFCO | Pursue other business interests |
| [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/0001104659 18023964/a18-9904_18k.htm" ] | | Robert Cowan | President, former President AFCO | Pursue other business interests |

Three of the directors and the president came from FPI's two largest acquisitions (Forsythe Farms and American Farmland Company). These are individuals with significant experience in farmland investing who sold their holdings to FPI and are now leaving.

In the case of Forsythe, the [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000104746918001924/a2234892zdef14a .htm" ] the Forsyth Sellers own 23.59% of the diluted shares and have to right to a nominate a board seat as long as they own 10%. In August, their representative resigned and Forsyth has yet to nominate another, which may indicate the intention to liquidate their stake below 10%.

In the case of AFCO, its former Chairman and [ HYPERLINK "https://www.fnlondon.com/articles/wall-street-hedge-fund-veteran-hits-highs-with-copycat-tactics-20171109" ], Dixon Boardman, had already [ HYPERLINK "https://www.gurufocus.com/insider/FPI" ] by the time he resigned in December 2017.

Then on [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000110465918016840/a18-7956_28k.htm" ], FPI dismissed PWC as its independent auditor. The same day, the company engaged

[ PAGE ]

EKS&H, who investors may recognize from MusclePharm and Heska.   [ HYPERLINK "https://www.denverpost.com/2016/03/16/musclepharm-founder-brad-pyatt-resigns-as-ceo-after-federal-investigation/" ] in 2016 after the SEC charged the company with accounting and disclosure violations.   [ HYPERLINK "https://seekingalpha.com/instablog/38059736-the-friendly-bear/5116702-suspect-related-party-dealings-infect-animal-house" ] for alleged related-party transactions.

Together with the loans to Ryan Niebur and Jesse Hough, we think the insider departures and auditor dismissal introduce the risk that FPI is using the loan program, not only to improve its financials, but to fund Pittman and Hough's outside businesses.

Our opinion is further bolstered by the fact that we believe there is a motive to play accounting games.

### *Hough Holdings' FPI Share Pledge*

According to a February 13th, 2017 Colorado UCC filing, Hough Holdings put up its equity interest in Farmland Partners for a loan.  Notable, at the bottom of the document is a line that states **"Optional filer reference: BOTW (Bank of the West)/Pittman Hough."**  Being that Pittman-Hough Farms disclosed in a   [   HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000092542116000078/xslF345X03/edgar.xml" ] that it distributed its shares to its members, we think it is likely that the UCC filings is referring to Pittman and Hough personally.



BOTW/PITTMAN HOUGH UCC - Colorado Secretary of State - Page 3 of 3.

RF005513

*Source:* [ HYPERLINK "https://www.sos.state.co.us/ucc/pages/search/advanceSearch.xhtml" ]

The timing of this loan is interesting because just days later, on [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000110465917010374/a17-4583_28k.htm" ], FPI entered into a termination agreement with Prudential as part of its acquisition of American Farmland Co.  And on the [ HYPERLINK "https://seekingalpha.com/article/4071346-farmland-partners-fpi-ceo-paul-pittman-q1-2017-results-earnings-call-transcript?part=single" ], Pittman stated:

> *"We frankly expected substantial stock price appreciation based on the AFCO acquisition and the termination of Prudential and all of that, and frankly none of which we got."*

Instead of going up, FPI's stock price declined 30% over the following months.  And shortly after the stock reached an [ HYPERLINK "https://finance.yahoo.com/quote/FPI/history?period1=1396328400&period2=1501563600&interval=1d&filter=history&frequency=1d" ], FPI made its first loan to Hough.

Further evidence suggesting Pittman's involvement in the loan is that on [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1389549/000092542117000298/xslF345X03/edgar.xml" ], he converted 531,827 OP units to common shares.  July 9th (a Sunday) came after [ HYPERLINK "https://finance.yahoo.com/quote/FPI/history?period1=1396328400&period2=1501563600&interval=1d&filter=history&frequency=1d" ] that Friday. Seeing that Pittman has not sold any shares, we question why he would be willing to convert OP Units, whose primary purpose is to [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000110465914029209/a14-10865_2ex10d7.htm" ].  We think the bank may have required the conversion of OP units because it wanted liquid collateral.

*The Timeline*

Below is a chart showing the timeline of events beginning in early 2017.  We will leave it to the readers to make an opinion on the overlap in timing.

RF005514

| Date | Event Description |
|------|-------------------|
| 2/12/17 | Hough Holdings pledges stock for loan |
| 2/18/17 | FPI terminates Prudential contract |
| 3/18/17 | FPI "renegotiates" Ryan Niebur loan |
| 5/8/17 | Pittman states he thought stock would go up |
| 7/7/17 | FPI stock closes at new all time low |
| 7/9/17 | FPI converts 531,827 OP Units |
| 7/25/17 | FPI makes $100 Thousand loan to PHS Holdings |
| 8/25/17 | FPI makes $600 Thousand loan to Hough Farms |
| 8/28/17 | John C. Conrad resigns from board |
| 12/5/17 | B. Dixon resigns from board |
| 12/27/17 | PHS Holdings sells Illinois property with FPI HQ address |
| 1/12/18 | FPI acquires property from PHS Holdings that FPI provided loan |
| 3/18/18 | FPI makes $5.25 Million loan to Sifting Farms signed by Jesse Hough |
| 3/16/18 | Darrell D. Sarff resigns from board |
| 3/19/18 | FPI dismisses PriceWaterHouseCoopers |
| 3/19/18 | Thomas Gimbel resigns from board |
| 4/19/18 | Robert Cowan resigns as President of FPI |

- ▓ = Potential related-party transactions
- ▓ = Executive, board or auditor events

*Source: Chart By Author, Using SEC Filings & Deed Records*

### What Is Jesse Hough Doing With The Loans?

Given the totality of the evidence, we see three possibilities for how the loans to Hough are being used. First, to artificially improve FPI's financials, second to fund Pittman and Hough's outside businesses, and third as collateral for the stock loan to Hough Holdings.

In the case of improving FPI's financials, we see three ways to to do this. First, FPI could loan money out thru investing cash flows and bring it back on the income statement thru rental income. We think this has already happened (at least indirectly) thru the loans to Ryan Niebur. Second, it could loan money out for "farming infrastructure projects" that are actually property-level operating expenses. Third, the loans create interest and fee revenue.

**And if FPI ends up acquiring the properties collateralizing the loans or rolling the loans over, then FPI would just be shuffling money from one side of the desk to the other.**

Regardless of how the loans are being used, we think the facts detailed in this report introduce the risk that FPI faces a liquidity trap if capital markets lose faith.

### The Liquidity Trap

Thru 2017, FPI generated *negative $3.1 Million* in cumulative free cash flow (operating cash flow – preferred dividends – depletion/depreciation). And this figure presumes an additional $69 Million in capital expenditures was all growth related, an incredulous assumption given the lack of organic growth.

[ PAGE ]

RF005515

In simple terms, millions in executive pay (including $0.5 Million for leasing Pittman's personal jet) and $27 Million in dividends, has been funded, not by profits, but by a hamster wheel of increasingly expensive debt and equity raises.

If the capital markets lose faith in FPI, the company may quickly find that its endless stream of debt and equity has run dry. With only $19 Million in cash, we think FPI will not only be forced to cut its dividend, but will have to begin liquidating properties into a distressed farmland market.

But even if the loans, misstated financials, insider departures, dismissed auditor, pledged shares and potential liquidity trap turn out to be benign risks, we still think FPI's shares carry significant downside.

### *Did FPI Overpay For Properties?*

Paul Pittman spends time on each conference trying to convince shareholders that the net asset value (NAV) of FPI is between $11.50 and $12.50 per share. On the [ HYPERLINK "https://seekingalpha.com/article/4172577-farmland-partners-inc-fpi-ceo-paul-pittman-q1-2018-results-earnings-call-transcript?part=single" ], he stated this value is based on what FPI paid for the assets and adjusting for modest increases and decreases in value across different regions of the portfolio.

The problem with Pittman's calculation is that he ignores the old adage that "you make your money when your buy" and so what matters most is not what prices do after you buy but what price you paid.

In fact, Pittman had this to say on the 1Q2016 conference call:

> *"I don't put a lot of stock in annual appraisals... not because appraisers are bad, but you have to understand, they are forced to perform a certain process and their charge is to do a process based on that set of rules and regulations. It is not really answering the question what farms are worth, it's actually answering a question of what farms are worth under this very mechanical valuation approach, which has a whole set of errors embedded in it."*

He then states:

> *"Given that everything we [acquired] has been an arm's length market transaction of some sort in the last two years, we think acquisition cost is probably the safest judgement of value."*

**We think these comments are absurd. First, apparently Pittman think the appraisal process is a poor judgement of value, despite its widely expected use across every real estate asset class. Second, he thinks what he pays, even if he overpays, is the safest judgement of value.**

This is akin to saying that if someone paid $1 Million for a house in a neighborhood filled with $500 Thousand houses that true value is $1 Million just because one person was willing to overpay. And in fact, we have evidence that suggests FPI has overpaid for properties.

### *Telfair County, GA*

FPI acquired two Telfair County, GA farms in 2015 and one in 2017. Based on what FPI paid for the properties vs. what the sellers paid for the properties in 2012 (and adjusting for value

RF005516

appreciation/depreciation reported by the [ HYPERLINK "https://www.usda.gov/nass/PUBS/TODAYRPT/land0817.pdf" ]), we believe FPI acquired these properties for 80% above market value.

| FPI Farm | County, State | Date | Buyer | Acres | Price/Acre | FPI Price / Seller Price | Avg. Land Appreciation (USDA) | Adjusted Overpayment |
|---|---|---|---|---|---|---|---|---|
| Selph Farm | Talfiar, Georgia | 5/4/12 | Ernest Selph | 116 | $1,724 | | | |
| | | 12/17/15 | FPI Properties | | $4,537 | 163% | -6.5% | 181.4% |
| Mobley Farm | Talfiar, Georgia | Throughout 2012 | Brad Mobley | 1,069 | $2,154 | | | |
| | | 10/9/15 | FPI Properties | | $3,460 | 61% | -6.5% | 71.8% |
| Dorminey Farm | Talfiar, Georgia | Throughout 2012 | Carlton Dorminey | 47 | $2,150 | | | |
| | | 4/25/17 | FPI Properties | | $3,809 | 77% | 1.4% | 74.7% |
| | | | Total Adjusted Overpayment % | | | 80% | | |

*Source: SEC Filings & Telfair County, GA Deed Records (Search: FPI Properties)*

While we cannot be sure what improvements, if any, were made to these properties during the sellers' ownership, we note the following:

- [ HYPERLINK "https://www.google.com/maps/place/GA-132,+Milan,+GA+31060,+USA/@31.9637474,-83.0320058,995m/data=!3m2!1e3!4b1!4m13!1m7!3m6!1s0x88f1b53ec4c8da69:0xd96229a276822208!2sTelfair+County,+GA,+USA!3b1!8m2!3d31.8907647!4d-82.9931607!3m4!1s0x88f1b1c97134b99b:0xeb66f5ec9bc04a3c!8m2!3d31.9637429!4d-83.0298118" ] shows that as far back as 2008 [ HYPERLINK "http://www.farmlandpartners.com/properties/selph/" ] was irrigated farm land.

- The deed record map shows that between 2010 and 2013, part of the [ HYPERLINK "http://www.farmlandpartners.com/properties/mobley-2/" ] was converted from timberland to farmland, which may explain part of the property value increase.

- The deed record map shows prior to the sellers' purchase, [ HYPERLINK "http://www.farmlandpartners.com/properties/dorminey/" ] had already been cleared of timber.

### *Yell County, AR*

FPI acquired two Yell County, AR farms in 2014. Based on what FPI paid or the properties vs. what the sellers paid for the properties in 2012 (and adjusting for value appreciation/depreciation reported by the [ HYPERLINK "https://www.usda.gov/nass/PUBS/TODAYRPT/land0817.pdf" ]), we believe FPI acquired these properties for 17% above market value.

| FPI Farm | County, State | Date | Buyer | Acres | Price/Acre | FPI Price / Seller Price | Avg. Land Appreciation (USDA) | Adjusted Overpayment |
|---|---|---|---|---|---|---|---|---|
| Ruder Farm | Yell, Arkansas | Throughout 2013 | Ruder Properties | 819 | $2,329 | | | |
| | | 9/24/14 | FPI Colorado | | $3,301 | 42% | 5.5% | 34.3% |
| Ballymore Farm | Yell, Arkansas | 4/3/13 | Ballymore Properites | 1,281 | $3,120 | | | |
| | | 10/24/14 | FPI Arkansas | | $3,588 | 15% | 5.5% | 9.0% |
| | | | Total Adjusted Overpayment % | | | 17% | | |

*Source: SEC Filings & Yell County, AR Deed Records (Search: FPI Colorado, FPI Arkansas)*

RF005517

We are unsure if any improvements were made to [ HYPERLINK "http://www.farmlandpartners.com/properties/ruder/" ] or [ HYPERLINK "http://www.farmlandpartners.com/properties/ballymore/" ] during the sellers' ownership.

### McDonough County, IL

On July 15th, 2015, FPI acquired the [ HYPERLINK "http://www.farmlandpartners.com/properties/tomasek/" ] from [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ]. According to SEC filings and deed records (search: PH Holdings) FPI acquired the property for 2.5% above what Paul Pittman paid for it in 2014. However, in December 2015 FPI acquired the [ HYPERLINK "http://www.farmlandpartners.com/properties/howe/" ], also in McDonough County, for a 15% premium to the Tomasek Farm.

| FPI Farm | County, State | Date | Buyer | Acres | Price/Acre | PH Price / Comp | Avg. Land Appreciation (USDA) | Avg. Land Appreciation (USDA) |
|---|---|---|---|---|---|---|---|---|
| Tomasek Farm | McDonough, Illinois | 2/20/14 | Paul Pittman | 58 | $11,700 | | | |
| | | 12/17/15 | PH Holdings | | $11,991 | 2% | -0.02% | 2.5% |
| Howe Farm | McDonough, Illinois | 12/1/15 | PH Holdings | 78 | $10,449 | 15% | -0.02% | |

*Source: SEC Filings & McDonough County, IL Deed Records (Search: PH Holdings)*

### American Farmland Company

Perhaps the biggest overpayment (in dollar terms) was FPI's acquisition of American Farmland Company (AFCO). The [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1474777/000104746916017299/a2230543zdefm14.htm" \l "bu12701_background_of_the_mergers" ] provides a background of the sale process.

The chart below shows that of the seven preliminary bids, FPI's offer was 12% above the average. The only bid (Company E) that was higher dropped out during diligence because of pricing. A comparable bid (Company F) also dropped out during due diligence.

The only other party to put in a secondary bid (Company G) lowered its price after getting *independent appraisals*. In the end, FPI paid 15% above the only other bidder.

[ PAGE ]

| AFCO Proposals | Preliminary Bids | Secondary Bids | Deal Notes |
|---|---|---|---|
| Company A | $6.61 | - | AFCO declined due to price |
| Company C & D | $6.75 | - | AFCO declined due to price |
| Company E | $8.82 | - | Dropped out because of "pricing a corporate level transaction" |
| Company F | $8.20 | - | Dropped out during due diligence |
| Company G | $7.72 | $7.13 | Lowered offer to $7.13 after getting independent appraisals |
| Company H | $8.00 | - | AFCO declined because would not alleviate challenges |
| Company J | $6.00 | - | AFCO declined |
| Average | $7.44 | $7.13 | |
| Farmland Partners | $8.35 | $8.23 | |
| Premium To Avg. | 12% | 15% | |

*Source: AFCO/FPI Merger Proxy*

To be clear, we do not believe that FPI overpaid for every property it purchased. However, we think it is highly likely that, in aggregate, FPI has paid an average of 10-15% above market price for its farms.

Finally, Pittman's NAV calculation assumes a buyer would take the company out. Given that only one other player was willing to acquire AFCO, which was less than half FPI's size, we think this is highly unlikely.

More likely is an liquidation scenario, which would include transaction costs and operating expenses during the liquidation. Evidence that these costs are very real and material is the fact that AVCO merger proxy (pg. 67) stated its investment bankers calculated the value of the company under a liquidation scenario. Their value was between $7.12 to $7.33 or 20% less than the $8.98 book value per share reported in the [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1474777/000156459016029085/afco-10q_20160930.htm" ] Note that his price was almost identical to what the Company G's.

*Calculating Net Asset Value*

We think the best way to calculate NAV is to take book value per share, which represents what FPI actually paid for the properties (land has no depreciation) and make the following adjustments based on a liquidation scenario:

1. Add appreciation for the legacy properties. On the 1Q2017 call, Pittman stated the difference between book value and his NAV estimate is largely "30-ish" million dollars for the legacy properties, many of which Pittman acquired in the mid-2000s.
2. Subtract overpayment on the remainder of the portfolio
3. Subtract transaction costs of 7% on the disposition of the portfolio
4. Subtract $30 Million in operating expenses incurred during liquidation period (approximate 3 years)
5. Discounting NAV back 1.5 years at 7.75%

Below we present our NAV calculation under four scenarios: a 15%, 10%, 5% and 0% overpayment for the post-IPO acquisitions. Using an average of the four scenarios, we believe FPI's NAV to be $5.30 per share (*Note, diluted share count is based on* [ HYPERLINK

[ PAGE ]

RF005519

"http://ir.farmlandpartners.com/Cache/1500110443.PDF?Y=&O=PDF&D=&FID=1500110443&T=&IID=4426904" ]).

| NAV Calculation | Scenario #1 (15% Overpay) | Scenario #1 (10% Overpay) | Scenario #2 (5% Overpay) | Scenario #3 (No Overpay) |
|---|---|---|---|---|
| Land Value at Cost | 975,107 | 975,107 | 975,107 | 975,107 |
| - Legacy Propert Cost | 38,415 | 0 | 38,415 | 38,415 |
| Post IPO Acquisitions at Cost | 936,692 | 975,107 | 936,692 | 936,692 |
| - Overpayment | -140,504 | -97,511 | -46,835 | 0 |
| Market Value of Post IPO Acquisitions | 796,188 | 877,596 | 889,857 | 936,692 |
| + Legacy Properties at Cost | 38,415 | 0 | 38,415 | 38,415 |
| + Legacy Property Appreciation | 30,000 | 30,000 | 30,000 | 30,000 |
| **Market Value of FPI Land Portfolio** | **864,603** | **907,596** | **958,272** | **1,005,107** |
| - 7% Transaction Costs | -60,522 | -63,532 | -67,079 | -70,357 |
| - Operating Expenses Over 3 Years | -30,000 | -30,000 | -30,000 | -30,000 |
| **Net Value of FPI Land Portfolio After Dispotion** | **774,081** | **814,065** | **861,193** | **904,750** |
| | | | | |
| Book Value As of 1Q2018 | 357,350 | 357,350 | 357,350 | 357,350 |
| - Net Value vs. Stated Value | -201,026 | -161,042 | -113,914 | -70,357 |
| **Post Disposition NAV** | **156,324** | **196,308** | **243,436** | **286,993** |
| Post Disposition NAV (Discounted 1.5 yrs @ 7.5%) | 140,253 | 176,126 | 218,410 | 257,489 |
| Post Disposition NAV / Share | $3.74 | $4.70 | $5.83 | $6.88 |
| *Diluted Share Count* | *37,451* | *37,451* | *37,451* | *37,451* |

*Source: Chart By Author, Using Author Estimates*

*Disclaimer*

IMPORTANT - Please read this Disclaimer in its entirety before continuing to read our research opinion. Investors are encouraged to conduct their own due diligence into these factors. This article represents the opinion of the author as of the date of this article. This article expresses the author's investment opinions, which are based upon interpretation of certain facts and observations, all of which are based upon publicly available information. The information set forth in this article does not constitute a recommendation to buy or sell any security. This article contains certain "forward-looking statements," which may be identified by the use of such words as "believe," "think," "expect," "anticipate," "should," "planned," "estimated," "potential," "outlook," "forecast," "plan" and other similar terms. All are subject to various factors, any or all of which could cause actual events to differ materially from projected events. This article is based upon information reasonably available to the author and obtained from sources the author believes to be reliable; however, such information and sources cannot be guaranteed as to their accuracy or completeness. The author makes no representation as to the accuracy or completeness of the information set forth in this article and undertakes no duty to update its contents. You should assume that as of the publication date the author (possibly along with or through our members, partners, affiliates, employees, and/or consultants) and clients have a short position in all stocks (and are long/short combinations of puts and call options of the stock) covered herein, including without limitation Farmland Partners, Inc. and therefore stand to realize significant gains in the event that the price of its stock declines. The author may also cover his/her short position at any point in time without providing notice. The author encourages all readers to do their own due diligence.

[ PAGE ]

RF005520

*Addendum A-1*

## Loan #2 ($980 Thousand)

**DEED OF TRUST AND SECURITY AGREEMENT**

THIS DEED OF TRUST is made effective this 30th day of October 2015.

The parties to this Deed of Trust are: RYAN NIEBUR, also known as Ryan B. Niebur, an individual, whose address is 411 West 4th, Wray, Colorado 80758, (the "GRANTOR"), and the Public Trustee of the County of Washington, State of Colorado, (the "PUBLIC TRUSTEE").

**AMOUNT AND TERMS**

The GRANTOR has made a promissory note payable to the order of FARMLAND PARTNERS OPERATING PARTNERSHIP, LP, a Delaware limited partnership, which has an address of 4600 S. Syracuse Street, Suite 1450, Denver, CO 80237, as beneficiary of this Deed of Trust (together with its successors and assigns) (the "BENEFICIARY"). The promissory note is dated October 30, 2015. The Deed of Trust secures the payment of $980,000.00 of the original principal sum and is payable with interest as shown in the promissory note and if not sooner paid, shall be due and payable in full on October 30, 2017, subject to extensions thereof. The promissory note states the interest rate on the principal sum, and also provides for future changes in the interest rate. The Deed of Trust secures the repayment of the principal sum with interest, and any additional indebtedness arising under the terms and conditions of this Deed of Trust.

**PROPERTY CONVEYED**

The GRANTOR, to secure the promissory note, does by this Deed of Trust grant and convey to the PUBLIC TRUSTEE the following property situated in the County of Washington, State of Colorado, described as follows:

*The Northwest Quarter (NW1/4) of Section 2, Township 3 South, Range 51 West of the 6th P.M., Washington County, Colorado; and*

*All of Section 23, Township 2 South, Range 51 West of the 6th P.M. (the "LAND").*

Containing 794 acres, more or less, and including, whether or not owned by GRANTOR on the date of this Deed of Trust, or acquired by GRANTOR after the date of this Deed of Trust, or whether now or later located on or appurtenant to the real estate described above:

All improvements, and all easements, appurtenances, and fixtures; all of which shall be considered a part of the security under the Deed of Trust.

This conveyance is subject to any existing easements, rights of way, and mineral interests or mineral leases owned by third parties which were validly reserved or conveyed and are now of record.

## Loan #2 For Partial Mortgage Repayment

**SUBORDINATION AGREEMENT**

THIS SUBORDINATION AGREEMENT is effective the 2nd day of November, 2015, by and among RYAN NIEBUR, also known as Ryan B. Niebur ("Borrower"); FARMLAND PARTNERS OPERATING PARTNERSHIP, LP, a Delaware limited partnership, which has an address of 4600 S. Syracuse Street, Suite 1450, Denver, CO 80237 (together with its successors and assigns, the "Lender"); GREAT WESTERN BANK, whose address is 211 W C St., McCook, NE 69001 ("Existing Mortgage Holder").

WHEREAS, Borrower is this day conveying to Lender a security interest in 794 acres located in Washington County, Colorado, described as follows:

*The Northwest Quarter (NW1/4) of Section 2, Township 3 South, Range 51 West of the 6th P.M.; and*

*All of Section 23, Township 2 South, Range 51 West of the 6th P.M.;*

*all in Washington County, State of Colorado; and*

WHEREAS, Lender is financing Borrower, such financing to be evidenced by a promissory note for $980,000.00 from Borrower to Lender (the "Lender's Note") and secured by a first-lien deed of trust for the benefit of Lender encumbering the Property (the "Lender Deed of Trust"); and

WHEREAS, Borrower is using the financing from Lender for repayment of Existing Mortgage Holder, such Existing Mortgage Holder having financed Borrower in the amount of $4,725,741.00 and being secured by a first-lien deed of trust recorded with the Washington County Clerk and Recorder on June 14, 2013 at Reception No. 857184 for the benefit of Existing Mortgage Holder encumbering the Property ("Existing Mortgage Holder Deed of Trust"); and

## Loan #2 ($980 Thousand)

**DEED OF TRUST AND SECURITY AGREEMENT**

THIS DEED OF TRUST is made effective this 30th day of October 2015.

The parties to this Deed of Trust are: RYAN NIEBUR, also known as Ryan B. Niebur, an individual, whose address is 411 West 4th, Wray, Colorado 80758, (the "GRANTOR"), and the Public Trustee of the County of Washington, State of Colorado, (the "PUBLIC TRUSTEE").

**AMOUNT AND TERMS**

The GRANTOR has made a promissory note payable to the order of FARMLAND PARTNERS OPERATING PARTNERSHIP, LP, a Delaware limited partnership, which has an address of 4600 S. Syracuse Street, Suite 1450, Denver, CO 80237, as beneficiary of this Deed of Trust (together with its successors and assigns) (the "BENEFICIARY"). The promissory note is dated October 30, 2015. The Deed of Trust secures the payment of $980,000.00 of the original principal sum and is payable with interest as shown in the promissory note and if not sooner paid, shall be due and payable in full on October 30, 2017, subject to extensions thereof. The promissory note states the interest rate on the principal sum, and also provides for future changes in the interest rate. The Deed of Trust secures the repayment of the principal sum with interest, and any additional indebtedness arising under the terms and conditions of this Deed of Trust.

**PROPERTY CONVEYED**

The GRANTOR, to secure the promissory note, does by this Deed of Trust grant and convey to the PUBLIC TRUSTEE the following property situated in the County of Washington, State of Colorado, described as follows:

*The Northwest Quarter (NW1/4) of Section 2, Township 3 South, Range 51 West of the 6th P.M., Washington County, Colorado; and*

*All of Section 23, Township 2 South, Range 51 West of the 6th P.M. (the "LAND").*

Containing 794 acres, more or less, and including, whether or not owned by GRANTOR on the date of this Deed of Trust, or acquired by GRANTOR after the date of this Deed of Trust, or whether now or later located on or appurtenant to the real estate described above:

All improvements, and all easements, appurtenances, and fixtures; all of which shall be considered a part of the security under the Deed of Trust.

This conveyance is subject to any existing easements, rights of way, and mineral interests or mineral leases owned by third parties which were validly reserved or conveyed and are now of record.

## FPI Acquires Property For $801 Thousand

**DEED**
(Washington County)

KNOW ALL MEN BY THESE PRESENTS!

This Deed is made and entered into as of this 16th day of March, 2017 between Ryan B. Niebur ("Grantor") whose legal address is 411 W. 4th Street, Wray, CO 80758 and FPI Burlington Farms LLC, a Delaware limited liability company ("Grantee") whose legal address is 4600 S. Syracuse St., Suite 1450, Denver, CO 80237.

**RECITALS**

WHEREAS, Grantor has reviewed the Grantee's lien secured by the Property set forth below, and Grantor desires to deed the Property to Grantee.

**WITNESSETH**

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor acknowledges that Grantor's loan secured by the Property is in default, that Grantor is aware of its rights regarding cure and redemption under Colorado and federal law, including any rights of reinstatement, leaseback, and redemption, contained potentially, homestead under C.R.S. §§ 13-54-102 and 38-41-201 et seq. or 11 U.S.C. § 522 or any other homestead right, reversion, or abandonment under 11 U.S.C. § 554 or otherwise to all or any part of the Property, and Grantor does hereby bargain, sell, transfer, assign, convey to Grantee its successors and assigns forever all of Grantor's right, title and interest in and to the Property, together with all rights, easements rights and improvements, if any, situate, lying and being in the County of Washington State of Colorado described as follows:

**THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF WASHINGTON, STATE OF COLORADO:**

*Township 2 South, Range 51 West of the 6th P.M., Washington County, Colorado*
*Section 23: All*

RF005521

*Addendum A-2*

Loan #4 ($1.394 Million) Is Actually An Acquisition Of Two Properties

**WARRANTY DEED**
(Kit Carson County)

THIS DEED, made this 16th day of March 2017, between Ryan S. Nieber of the County of Yuma and State of Colorado, grantor(s), and FPI Bellegaea Farms LLC, a Delaware limited liability company whose legal address is 4500 S. Syracuse St., Suite 1450, Denver, CO 80237 of the City and County of Denver and State of Colorado, grantee(s);

WITNESSETH, That the grantor(s), for and in consideration of the sum of One Million Three Hundred Ninety-Two Thousand Dollars ($1,392,000), the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, convey and confirm, unto the grantee(s), its heirs and assigns forever, all the real property, together with improvements, if any, situate, lying and being in the County of Kit Carson and State of Colorado, described as follows:

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF KIT CARSON, STATE OF COLORADO:

The Southwest Quarter (SW¼) of Section Four (4), Township Eight (8) South, Range Forty-three (43) West of the Sixth Principal Meridian, Kit Carson County, Colorado.

and

The Southeast Quarter (SE¼) of Section Five (5), Township Eight (8) South, Range Forty-three (43) West of the Sixth Principal Meridian, Kit Carson County, Colorado, and

A tract of land situate in the Southeast Quarter of Section 5, Township 8 South, Range 43 West of the 6th Principal Meridian, Kit Carson County, Colorado and being more particularly described as follows: Commencing at the East 1/4 Corner of said Section 5; Thence S 01°38'03" E along the easterly line of the Southeast Quarter of said Section 5 a distance of 1172.46 feet; Thence S 88°21'57" W a distance of 525.00 feet to the point on the northerly line of said Southeast Quarter of Section 5; Thence N 85°12'06" E along said northerly line a distance of 525.00 feet to the point of beginning; described parcel containing 14.12 acres more or less, as shown in that Survey Plat recorded November 27, 2013 at Document No. 564709 and in Plat Book 9 at Page 81 of the Kit Carson County, Colorado records, and

A tract of land situate in the Southeast Quarter of Section 5, Township 8 South, Range 43 West of the 6th Principal Meridian, Kit Carson County, Colorado and

being more particularly described as follows: Commencing at the East 1/4 Corner of said Section 5; Thence S 01°38'03" E along the easterly line of the Southeast Quarter of said Section 5 a distance of 1172.46 feet to the True Point of Beginning; Thence S 01°38'03" E along said easterly line of the Southeast Quarter a distance of 697.54 feet; Thence N 85°49'03" W a distance of 327.71 feet; Thence N 01°38'03" W a distance of 554.06 feet; Thence N 88°21'57" E a distance of 525.00 feet to the point of beginning, described parcel containing 7.98 acres more or less, as shown in that Survey Plat recorded November 27, 2013 at Document No. 564709 and in Plat Book 9 at Page 81 of the Kit Carson County, Colorado records.

Together with:

All irrigation equipment and fixtures specifically including but not limited to the following:

1–2013 T-tower Valley 8000 with drops SN: 10865503
1–100HP, GE electric motor DL3416149
1–Western Land roller pump, #106117

Together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property. PROVIDED, HOWEVER, NO MINERALS ARE INCLUDED.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the Real Property.

Together with all Grantor's licenses and permits now in existence or obtained in the future.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NO MINERALS ARE CONVEYED BY THIS DEED

TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and all the estate, right, interest, claim and demand

*Addendum B-1*

FPI Acquires Parcel From PHS Holdings It Has A Loan Against

**TRUST DEED**

**WITH POWER OF SALE**

This Trust Deed made July 25, 2017, by and among the following:

DATE:        July 25, 2017

TRUSTOR:     PHS HOLDINGS, LLC,
             an Illinois Limited Liability Company
             990 E Louisiana Avenue, Suite #209
             Denver, Colorado 80210

TRUSTEE:     ANDREW J. HOFFMAN
             ATTORNEY AT LAW
             PO Box 98b
             47640 E. HWY 20, Ste #1
             Atkinson, Nebraska 68713

BENEFICIARY: Farmland Partners Inc.,
             a Maryland Corporation
             1519 York Road
             Lutherville, Maryland 21093

CONSIDERATION: $100,000.00

Trustor, in consideration of the sum of ONE HUNDRED THOUSAND DOLLARS AND NO CENTS ($100,000.00), receipt of which is hereby acknowledged, conveys to Trustee, in trust, with power of sale, the following described real estate (as defined in Neb. Rev. Stat. §76-201):

The W1/2 NE1/4 of Section 27, Township 17 North, Range 4 East of the 6th P.M., Butler County, Nebraska. EXCEPT A part of the W1/2 NE1/4 of Section 27, Township 17 North, Range 4 East of the 6th P.M., Butler County, Nebraska, located in the NW1/4 NE1/4 and being more particularly described as follows: Beginning at the Northwest corner of the NE1/4 of said Section 27; thence S89°28'44" E (assumed bearing) on the North line of said NE1/4, a distance of 268.61 feet; thence S00°30'00" W perpendicular to said North line, distance of 33.00 feet; thence S00°00'00" W, a distance of 309.11 feet to a point on the West line of said NE1/4; thence N00°10'49" W on said West line, a distance of 193.00 feet to the point of beginning.

**WARRANTY DEED**

PHS Holdings, LLC, an Illinois Limited Liability Company, GRANTOR, in consideration of One Dollar ($1.00) and other good and valuable consideration, conveys to GRANTEE, Cottonwood Valley Land, LLC, a Nebraska Limited Liability Company the following described real estate (as defined in Neb. Rev. Stat. § 76-201):

Parcel 1:
The E1/2 NE1/4 of Section 27, Township 17 North, Range 4 East of the 6th P.M., Butler County, Nebraska.

Parcel 2:
The W1/2 NE1/4 of Section 27, Township 17 North, Range 4 East of the 6th P.M., Butler County, Nebraska. EXCEPT A part of the W1/2 NE1/4 of Section 27, Township 17 North, Range 4 East of the 6th P.M., Butler County, Nebraska, located in the NW1/4 NE1/4 and being more particularly described as follows: Beginning at the Northwest corner of the NE1/4 of said Section 27; thence S89°28'44" E (assumed bearing) on the North line of said NE1/4, a distance of 268.61 feet; thence S00°30'16" W perpendicular to said North line, a distance of 33.00 feet; thence S00°00'00" W, a distance of 309.11 feet to a point on the West line of said NE1/4; thence N00°10'49" W on said West line, a distance of 193.00 feet to the point of beginning.

[ PAGE ]

RF005522

*Addendum B-2*

## FPI Lends To Hough Farms On Same Property Hough Farms/Pine Ridge Holding Has Loan Against

TRUST DEED

WITH POWER OF SALE

This Trust Deed made August 25, 2017, by and among the following:

DATE: August 25, 2017

TRUSTOR: HOUGH FARMS, a Nebraska General Partnership, 318 Montgomery Street, Bellwood, Nebraska 68624

TRUSTEE: ANDREW J. HOFFMAN, ATTORNEY AT LAW, PO Box 930, 47046 E. HWY 20, Ste #1, Atkinson, Nebraska 68713

BENEFICIARY: FARMLAND PARTNERS OPERATING PARTNERSHIP, LP, a Delaware Limited Partnership, 4600 S. Syracuse St., #1450, Denver, CO 80237

CONSIDERATION: $669,000.00

Trustor, in consideration of the sum of SIX HUNDRED SIXTY NINE THOUSAND DOLLARS AND NO CENTS ($669,000.00), receipt of which is hereby acknowledged, conveys to Trustee, in trust, with power of sale, the following-described real estate (as defined in Neb. Rev. Stat. §76-201):

A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., and the Southwest Quarter (SW¼) of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, more particularly described as follows:

Commencing at the Southwest corner of Section Two (2), Township Sixteen (16) North, Range One (1) East; thence due North along and upon the West line of said Section Two (2), a distance of 2,782.85 feet to the point of beginning; thence continuing due North along and upon the West line of said Section Two (2), a distance of 2,499.16 feet to the Northwest corner of said Section Two (2); thence N89°59'35"E a distance of 348.89 feet, along and upon the North line of said Section Two (2) to the Southwest corner of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East; thence N12°04'15"E, a distance of 33.00 feet (to a fence); thence S80°35'45"E, a distance of 200.87 feet (along a fence); thence N56°27'05"E, a distance of 212.36 feet (along a fence); thence N33°50'55"E a distance of 169.52 feet (along a fence); thence S72°47'35"E a distance of 621.67 feet; thence S40°06'15"E a distance of 192.87 feet; thence S69°25'50"E a distance of 853.44 feet; thence S49°56'25"E a distance of 96.06 feet; thence S31°09'40"E a distance of 91.64 feet; thence S53°46'40"E a distance of 823.72 feet; thence N67°54'45"E a distance of 164.97 feet; thence

S40°22'55"E, a distance of 203.86 feet; thence S18°53'45"E a distance of 190.55 feet; thence S42°27'20"E a distance of 248.67 feet; thence S72°52'15"E a distance of 333.05 feet; thence S41°28'10"E a distance of 120.60 feet; thence S0°31'45"W a distance of 1,262.15 feet along the approximate land line; thence N84°45'30"W a distance of 690.06 feet; thence N83°58'35"W a distance of 3,348.13 feet, to the point of beginning, containing 209.12 acres, including County road right-of-way;

AND

A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, described as follows:

Beginning at a point 2,782.02 feet North of and 4,020.62 feet East of the Southwest corner of Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, (the West line of said Section Two (2) has an assumed bearing of N00°00'00"E, and this description is from a survey by R. Rystrom, L.S. 241 dated August 19, 1982 and revised September 13 and 22, 1982); thence N00°31'45"E 848.41 feet; thence S41°28'10"E 378.19 feet; thence S05°33'05"E 83.75 feet; thence S84°26'35"W 77.87 feet; thence S02°33'25"E 192.21 feet; thence S24°13'30"W 114.77 feet; thence S75°10'40"E 166.86 feet; thence S53°49'25"W 381.28 feet to the point of beginning, containing 3.2 acres more or less.

DEED OF TRUST

MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $21,977,403.00.

THIS DEED OF TRUST is dated May 25, 2017, among HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP, whose address is 4291 H ROAD, BELLWOOD, NE 686242457 ("Trustor"); FIRST MIDWEST BANK, whose address is GALESBURG, ONE PIERCE PLACE, SUITE 1500, ITASCA, IL 60143 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and BRIAN F. BECKNER, whose address is P.O. BOX 1185, COLUMBUS, NE 68602 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in BUTLER County, State of Nebraska:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

Borrower. The word "Borrower" means HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP; and PINE RIDGE HOLDINGS, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Schedule A

A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East, and the Southwest Quarter (SW1/4) of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, more particularly described as follows: Commencing at the Southwest corner of Section Two (2), Township Sixteen (16) North, Range One (1) East; thence due North along and upon the West line of said Section Two (2), a distance of 2,782.85 feet, to the point of beginning; thence continuing due North along and upon the West line of said Section Two (2), a distance of 2,499.16 feet to the Northwest corner of said Section Two (2); thence N89°59'35" E, a distance of 348.89 feet, along and upon the North line of said Section Two (2) to the Southwest corner of Section Thirty-five (35), Township Seventeen (17) North, Range One (1) East; thence N 12°04'15" E, a distance of 33.00 feet (to a fence); thence S 80°35'45" E, a distance of 200.87 feet (along a fence); thence N 56°27'05" E, a distance of 212.36 feet (along a fence); thence N 33°50'55" E, a distance of 169.52 feet (along a fence); thence S 72°47'35" E, a distance of 621.67 feet; thence S 40°06'15" E, a distance of 192.87 feet; thence S 69°25'50" E, a distance of 853.44 feet; thence S 49°56'25" E, a distance of 96.06 feet; thence S 31°09'40" E, a distance of 91.64 feet; thence S 53°46'40" E, a distance of 823.72 feet; thence N 67°54'45" E, a distance of 164.97 feet; thence S 40°22'55" E, a distance of 203.86 feet; thence S 18°53'45" E, a distance of 190.55 feet; thence S 42°27'20" E, a distance of 248.67 feet; thence S 72°52'15" E, a distance of 333.05 feet; thence S 41°28'10" E, a distance of 120.60 feet; thence S 0°31'45" W, a distance of 1,262.15 feet along the approximate land line; thence N 84°45'30" W, a distance of 690.06 feet; thence N 83°58'35" W, a distance of 3,348.13 feet; to the point of beginning, containing, including County Road Right-of-Way, 209.12 acres, more or less;

Together With

A tract of land located in Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, described as follows: Beginning at a point 2,782.02 feet North of and 4,020.62 feet East of the Southwest Corner of Section Two (2), Township Sixteen (16) North, Range One (1) East of the 6th P.M., Butler County, Nebraska, (the West line of said Section Two (2) has an assumed bearing of N00°00'00" E, and this description is from a survey by R. Rystrom, L.S. 241, dated August 19, 1982 and revised September 13 and 22, 1982); thence N00°31'45" E, 848.41 feet; thence S41°28'10" E, 378.19 feet; thence S05°33'05" E, 83.75 feet; thence S84°26'35" W, 77.87 feet; thence S02°33'25" E, 192.21 feet; thence S24°13'30" W, 114.77 feet; thence S75°10'40" E, 166.86 feet; thence S53°49'25" W, 381.28 feet to the point of beginning, containing 3.2 acres more or less.

RF005524