IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02351-KLM

FARMLAND PARTNERS INC.,

    Plaintiff,

v.

ROTA FORTUNAE, whose true name is unknown, and
JOHN/JANE DOES 2-10, whose true names are unknown,

    Defendants.

_____

### ORDER ON MOTION TO COMPEL DISCOVERY
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff Farmland Partner Inc.'s ("FPI") **Motion to Compel Discovery from Defendant Rota Fortunae** [#115][1] (the "Motion"). Defendant Rota Fortunae[2] filed a Response in Objection to FPI's Motion to Compel Discovery (the "Response") [#116], and FPI filed a Reply [#123]. The Court has reviewed these documents, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#115] is **GRANTED**.

---

[1] [#115]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] "Rota Fortunae" ("Rota") is a fictitious name used by a person who wrote and published an allegedly defamatory article about FPI which is the subject of the litigation. Rota's true name remains unknown, which is the subject of the Motion [#115]. The Court refers to Rota as "he" and "him" for purposes of convenience only.

## I. Background

Plaintiff FPI is a publicly traded real estate investment trust that purchases and manages farmland in North America. *Compl.* [#3], at 2 ¶ 6. Rota is the author of an anonymous internet posting which was published on the website Seeking Alpha on July 11, 2018 (the "Article"), and of subsequent Twitter posts published under the handle @RFortunae, in which Rota made statements about FPI's business. *Id.* ¶¶ 18, 38. Also parties to this lawsuit are John and Jane Does 2-10 ("the Doe Defendants"), who are the individuals and/or entities who allegedly assisted Rota with matters connected to the Article.[3] *Id.* ¶ 3. FPI alleges that Defendants conspired to publish false, misleading, and defamatory statements so that they could profit from FPI's declining stock price in what is known as a "short and distort" scheme. *Id.* at 1-7. The facts are discussed in more detail in the Court's Order [#136] on Rota's Motion to Dismiss [#97], that was filed concurrently with this Order. The Complaint [#3] asserts claims for defamation/defamation by libel per se, disparagement, intentional interference with prospective business relations, unjust enrichment, deceptive trade practice in violation of the Colorado Consumer Protection Act, and civil conspiracy. *Id.* at 7-12.

The discovery dispute presently before the Court centers on Rota's refusal to reveal his identity to FPI, or to reveal the identities of third parties who could, in turn, reveal his identity. *See, e.g., Response* [#116], at 2-3. The following is a brief, and by no means comprehensive, summary of the discovery in this lawsuit to date. FPI submitted its first set of interrogatories and requests for production of documents to Rota on November 30, 2018.

---

[3] Defendant Rota and the Doe Defendants are hereinafter referred to in the collective as "Defendants."

*See Motion* [#115], *Exs. C and D*. Following the Court's Orders [#91, #108, #113] denying Rota's Motion for a Stay Pending Appeal [#52][4] and Rota's motions to stay discovery [#56, #105], Rota submitted his responses to FPI's interrogatories and requests for production of documents on September 20, 2019, almost a year after they were served on Rota. *See Motion* [#115], *Exs. F and G*. Rota anonymized his produced documents by making redactions, removing metadata, and refusing to respond to certain interrogatories. *Motion* [#115], at 3, 4 n.4. FPI also wishes to depose Rota, and submitted a Notice of Deposition on September 13, 2019. *See Motion* [#115], *Ex. E*. Rota maintains that he will sit for a deposition only if he and the names of any relevant third parties can remain anonymous. *Response* [#116], at 1.

In the instant Motion [#115], FPI moves to compel Rota to provide responses to its initial seven interrogatories and five document requests, and to sit for a deposition without the limitations that Rota requests. *Motion* [#115], at 2, 12. FPI describes the information it wishes to obtain from Rota, who it refers to as "RF", through the discovery process as follows:

> (i) RF's 'research' and communications concerning FPI; (ii) RF's conduct surrounding the Seeking Alpha Posting; (iii) the involvement of others in RF's scheme, including their role in compensating RF, aiding in researching or drafting the Posting, and trading in FPI's securities; (iv) RF's motivations for targeting FPI and its CEO Paul Pittman; (v) any other identities RF has used in connection with this matter or with regard to other publicly traded companies; (vi) communications between RF and the Securities and Exchange Commission; (vii) RF's trading activity in public companies in

---

[4] Rota has appealed the Court's Orders [#45, #49] that, among other things, denied without prejudice Rota's Motion to Dismiss Under the Texas Citizens Participation Act, ordered Rota to respond in part to certain Interrogatories that are at issue in the instant Motion [#11], and granted in part and denied in part Rota's motion to reconsider a portion of the Court's December 20, 2018 Order. *See Notice of Appeal* [#49]. That appeal remains pending.

>which he has taken a short position; and (viii) the basis for-- RF's false assertions in the Posting.

*Id.* at 2.  Rota objects, asserting that he has a First Amendment privilege to remain anonymous and that he should not be required to waive that privilege.  *Response* [#116], at 2.

## II.  Standard of Review

Pursuant to Fed. R. Civ. P. 26(b)(1), parties may obtain discovery of matters that are not privileged and are relevant to the claim or defense of any party. The test for allowing discovery of information or documents is whether the information is "relevant to the claim or defense of any party." *Id.*  This is a deliberately broad standard which is meant to allow the parties to discover the information necessary to prove or disprove their cases.  *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 365 (D. Colo. 2004).  However, where the burden of producing relevant discovery outweighs the likely benefit, the Court has discretion to limit the discovery requested.  Fed. R. Civ. P. 26(b)(2)(C); *see Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

On a motion to compel, the moving party bears the initial burden of establishing that the requested information is relevant under Rule 26.  *Fox v. Morreale Hotels, LLC,* No. 10-cv-03135-RPM-MJW, 2001 WL 2894066, at *2 (D. Colo. Jul. 20, 2011).  The objecting party bears the burden to show why a discovery request is objectionable, and that burden cannot be sustained merely by asserting "boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003). "When a party files a motion to compel and asks the Court to

overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Sonninno v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).

### III. Analysis

#### A. Choice of Legal Test

Rota argues that the Court should evaluate the Motion [#115] under the rigorous test set forth in *Dendrite International, Inc. v. Doe Number 3*, a New Jersey state court decision. 775 A.2d 756, 760-61 (N.J. Ct. App. Div. 2001). *Response* [#116], at 4. The *Dendrite* decision held that before a court may order the disclosure of an anonymous defendant's identity, the court must first "determine whether the plaintiff has set forth a prima facie cause of action against the fictitiously-named anonymous defendant[ ]." *Dendrite*, 775 A.2d at 760. According to *Dendrite*, this requires not only that the plaintiff establish that the "action can withstand a motion to dismiss for failure to state a claim upon which relief can be granted[,]" but also that the plaintiff "produce sufficient evidence supporting each element of its cause of action, on a prima facie basis." *Id.* If the court finds that the plaintiff has presented a prima facie cause of action under the above test, then the court "must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Id.*; *see also Doe v. Cahill*, 884 A.2d 451, 460 (Del. 2005) (discussing *Dendrite* and holding "that before a

–5–

-5-

defamation plaintiff can obtain the identity of an anonymous defendant through the compulsory discovery process he must support his defamation claim with facts sufficient to defeat a summary judgment motion"). By contrast, the Tenth Circuit has adopted a balancing test that does not require a showing of a prima facie cause of action. S*ee Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987).

The Court finds that the *Grandbouche* test rather than the *Dendrite* test is applicable to the present Motion [#115]. First, and most persuasively, *Grandbouche* is the prevailing test in the Tenth Circuit for weighing one party's asserted First Amendment privilege to refrain from disclosing information against another party's need to conduct discovery. *See In re Bacon v. Archer*, No. 17-mc-00192-KLM, 2018 WL 4467182 at *3 (D. Colo. Sept. 17, 2018); *Johnson v. Sch. Dist. No. 1*, No. 12-cv-02950, 2014 WL 717003, at *2 (D. Colo. 2014); *Indep. Inst. v. Gessles*, No. 10-cv-00609-PAB-MEH, 2011 WL 809781, at *1 (D. Colo. March 2, 2011); *see also Faconnable USA Corp. v. John Does 1-10*, No. 11-cv-0941-CMA-BNB, 2011 WL 2015515, at *2-3 (D. Colo. May 24, 2011) (declining to apply *Dendrite* test, and finding that the existing procedures for resolving discovery disputes pursuant to Fed. R. Civ. P. 26 were sufficient when applied "with a heightened sensitivity to the First Amendment implications"), *vac'd on other grounds*, 799 F. Supp. 2d 1202 (D. Colo. July 27, 2011). At least one court in this District has held that *Grandbouche*, which addressed a First Amendment associational claim, applies in a broader context to "permit a court to balance the need for First Amendment protection (without regard to the subject matter of the privilege) with the need for discovery." *Johnson*, 2014 WL 717003, at *2 (applying

–6–

*Grandbouche* to the reporter's privilege under the First Amendment). Accordingly, Rota's argument that there is no precedent in this Circuit that is directly on point regarding the type of First Amendment privilege at issue is unavailing.

Having decided that the balancing test set forth in *Grandbouche* controls, the Court now applies it to the discovery dispute in the present Motion [#115].

### B.   Validity of Claimed First Amendment Privilege

The Tenth Circuit in *Grandbouche* held that "when the subject of a discovery order claims a First Amendment privilege not to disclose certain information," the trial court must first determine whether the claimed First Amendment privilege is valid. *Id.*, 825 F.2d at 1466. If the claimed First Amendment privilege is valid, the court uses a balancing test to determine whether the need for the requested information outweighs the privilege. *Id.* at 1466-67 (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)). The party claiming a First Amendment privilege in an objection to a discovery request "bears the initial burden of establishing the factual predicate for the privilege." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 488 (10th Cir. 2011).

Rota's asserted First Amendment privilege is the right to anonymity. Specifically, Rota asserts that the Article is protected speech under the First Amendment. As Rota recognizes, the United States Supreme Court has held that "an author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment." *See Response* [#116], at 6 (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). These First Amendment protections for speech "extend fully to communications

–7–

made through the medium of the internet." *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010); *see also Voltage Pictures, LLC v. Does 1-22*, No. 13-cv-01121-WYD-MEH, 2013 WL 4028587, at * 3 (D. Colo. Aug. 7, 2013). As the *Cahill* court noted:

> Internet speech is often anonymous. "Many participants in cyberspace discussions employ pseudonymous identities, and, even when a speaker chooses to reveal her real name, she may still be anonymous for all practical purposes." For better or worse, then, "the audience must evaluate [a] speaker'˞s ideas based on her words alone." "This unique feature of [the internet] promises to make public debate in cyberspace less hierarchical and discriminatory" than in the real world because it disguises status indicators such as race, class, and age.

884 A.2d at 456 (citations and internal footnotes omitted). Therefore, in the abstract, the Court finds that Rota has invoked a right to remain anonymous under the First Amendment.

However, protection of anonymous speech under the First Amendment "is not absolute." *Voltage Pictures, LLC*, 2013 WL 4028587, at *3. Certain classes of speech, including defamatory speech, are entirely "beyond the purview of the First Amendment." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 248 (N.D. Ill. 2011). As the Ninth Circuit noted, there is a "'great potential for irresponsible, malicious, and harmful communication'" in connection with anonymous speech. *In Re Anonymous Online Speakers*, 661 F.3d 1168, 1176 (9th Cir.2010) (citation omitted). "[P]articularly in the age of the internet, the 'speed and power of internet technology makes it difficult for the truth to catch up to the lie.'" *Id.* (citation and internal quotation marks omitted). Other types of speech, such as commercial speech, "are entitled to less First Amendment protection than speech directed at the discussion of controversial issues of public importance." *Columbia*

–8–

*Broadcasting Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 201 (1973) (Brennan, J., dissenting).

Here, FPI argues that Rota's Article is not protected speech under the First Amendment because it is both defamatory and constitutes commercial speech, as Rota garnered $201,245.35 in profits from securities trades in the aftermath of the Article. *Motion* [#115], at 6.  Rota denies that the Article is commercial speech, and contends that Plaintiff has yet to demonstrate that its claims have merit, much less that they can survive a motion to dismiss.  *Response* [#116] at 2.  Thus, Rota argues that Plaintiff's argument that the article is defamatory is "premature and circular."  *Id.* at 7.

The Court has now ruled, however, on Rota's Motion to Dismiss [#97].  *See Order* [#136].  As to the defamation claim, the Court found that while some statements in Rota's Article were protected opinion, other statements were not protected under the First Amendment, and FPI has pled a plausible defamation claim.  *Id.*  In light of that finding, Rota's argument that the entire Article is protected opinion under the First Amendment must be rejected.[5]  Even to the extent some of the statements were found to be protected, the Court finds for the reasons discussed below that FPI's need to identify Rota and the Doe Defendants overrides that protection.

---

[5] In light of this finding, the Court need not address for purposes of this Motion [#98] Rota's argument that the Article is protected as commercial speech.  Moreover, commercial speech is entitled to some protection under the First Amendment, unlike defamatory speech.  *See United States v. Wenger*, 427 F.3d 840, 847 (10th Cir. 2005) ("commercial speech deserves constitutional protection under the First Amendment", although it "occupies a 'subordinate position in the scale of First Amendment values'").  *Id.* at 846-47 (citation omitted).

### C. Balancing Test

As noted previously, when the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure. *Grandbouche*, 825 F.2d at 1466. The Tenth Circuit has specified that the following four factors must be considered as part of the balancing test: "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Id.* at 1466-67.

#### 1. Relevance of the Evidence

FPI must first demonstrate that the "information sought is centrally relevant." *Re/Max Int'l. v. Century 21 Real Estate Corp.*, 846 F. Supp. 910, 911 (D. Colo. 1994). If the information sought has "questionable relevance, this weigh[s] in favor of protection." *Johnson*, 2014 WL 717003, at *3 (quoting *Silkwood*, 563 F.2d at 438).

FPI contends that its request for information about Rota's motive for targeting its business is a "key aspect of [its] defamation claim." *Motion* [#115], at 8. FPI further avers that its requests for information about Rota's role in researching and drafting the article, the role that third parties may have played in the alleged scheme, and whether Rota conspired with others to carry out the alleged short attack, all "go to the heart of [FPI's] complaint." *Id.* In response, Rota contests only the relevance of his identity, not the other information that FPI requests. Rota argues that he has provided answers to all of FPI's questions with the exception of information that reveals his identity. *Response* [#116], at 12.

The Court finds that Rota's identity and the identity of others allegedly involved in the "short and distort" scheme (*Compl.* [#3], at 1) are clearly relevant to FPI's claims. As noted in the *Faconnable* case, "the identity of potential defendants in an action alleging . . . tortious misconduct certainly is relevant to the plaintiff's claims. Absent the ability to identify the alleged malefactors, [the plaintiff] is left with no ability to vindicate its rights, and legal process is rendered meaningless." *Id.*, 2011 WL 2015515, at *6.

Here, Rota is identified as the author of the Article at issue, and information relating to Rota's motives for posting the Article and the trading through which Rota and others profited from the Article go to the core of FPI's claims. Moreover, FPI alleges that Rota knew the Article contained false statements at the time it was published, that Rota "intend[ed] to obtain financial gain" from the Article by harming FPI, and that the Article was published "in the course of [Rota's] business, vocation, or occupation." *See Compl.* [#3], ¶¶ 50, 51, 65, 66, 87. Rota's identity is thus a critical part of understanding his motives relevant to the defamation claim and the requirement that FPI prove actual malice. *See Herbert v. Lando*, 441 U.S. 153, 160 (1979) ("*New York Times* and its progeny made it essential to proving liability [as to defamation] that the plaintiff focus on the conduct and state of mind of the defendant") (citing *New York Times v. Sullivan*, 376 U.S. 254 (1964)). Accordingly, this first factor weighs in favor of the discovery sought by FPI.

### 2. Necessity of Receiving the Information Sought

With regard to this factor, the Court considers "'whether [FPI] *needs* to obtain' information in order to prove a claim." *In re Bacon*, 2018 WL 4467182, at *6 (citing

–11–

*Johnson*, 2014 WL 717003, at *7) (considering whether the plaintiff needed the identities of a reporter's sources for a newspaper article in order to prove the sources acted with a retaliatory motive). If the information sought leads to "just litigation of [FPI's] claims," the information is considered "necessary." *Id.* (citing *Amaya*, 2016 WL 10296798, at *7). FPI argues that the information it seeks in the Motion [#115], including Rota's identity and the identities of the Doe Defendants as well as the metadata that Rota redacted from his produced documents, is necessary for "meaningful discovery." *Motion* [#115], at 9.

In particular, FPI alleges that Rota has misled the Court with regard to whether he acted alone in planning and publishing the Seeking Alpha article, and that FPI needs non-anonymized production from Rota in order to verify Rota's claim that he had no co-conspirators. *Id.*; *Reply* [#123], at 6. FPI also argues that it must obtain the identities of Rota and the Doe Defendants in order to verify, not only their motives, but the discovery responses that Rota has made to date about their trading histories in FPI's stock. *Id.* at 8. Finally, FPI argues that Rota's redaction of metadata from its produced documents, such as the dates and times that documents were created, impedes FPI's ability to ensure the dates and other information have not been altered and renders the document production "unusable." *Id* . at 3 n. 3, 7-8. *See Arkansas River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, C.A. No. 14-cv-00638-CMA-NYW, 2015 WL 2128312, at *12 (D. Colo. May 5, 2015) ("Memoranda, emails, and electronic records produced in PDF or TIFF format are in usable form if accompanied by a load file containing searchable text and selected metadata").

–12–

Rota, in response, admits that FPI "has demonstrated a potential need" to take discovery from the Doe Defendants and uncover their identities, but Rota disagrees that FPI may do so if the resulting discovery responses pierce Rota's anonymity. *Response* [#116], at 5. Rota also objects to FPI's request for the names of currently-anonymous third parties because of the possibility that FPI could seek Rota's identity from them. *Id.* at 13. Finally, Rota argues that FPI should not be permitted to learn the identities of the third parties before the Court has ruled on Rota's Motion to Dismiss [#97]. *Id.*

The Court has now ruled on the Motion to Dismiss (*see* #136) so Rota's argument as to that issue is unavailing. Moreover, the Court finds that the identifying information FPI seeks in the Motion [#115] is necessary to the just litigation of its claims. FPI has alleged that it needs to obtain Rota's and the Doe Defendants' identities so it can prove its claims, respond to Rota's defenses, and investigate potential inconsistencies in Rota's discovery responses. *See Amaya,* 2016 WL 10296798, at *4. Although Rota argues that none of the produced documents show that he was assisted by third parties in drafting the article, *Response* [#116], at 13, FPI has offered exhibits which suggest that anonymous third parties contributed to the editorial process by discussing the Article with Rota prior to its publication and by contributing their own research and writing. *See Reply* [#123], at 5-6. The Court fails to see how FPI can undertake meaningful discovery into whether third parties had a role in the editorial process without being provided their identities or means of contacting them.

Additionally, the Court finds that FPI has established that it is necessary to unmask Rota and those of the Doe Defendants for the purposes of investigating their purchases and sales of FPI stock. Although Rota has offered discovery responses which show his holdings in FPI securities and which report the profits that anonymous third parties obtained in the wake of the Seeking Alpha posting (Motion, Ex. G at 6-11), FPI asserts that it is unable to construct a complete picture of Rota's and the Doe Defendants' trading activities due to Rota's redaction of metadata in produced emails. *See Reply* [#123], at 8. Given that FPI's ability to succeed on its claims could turn on its ability to prove that the Article was a "catalyst" in an illegal "short and distort" scheme, *id.*, discovery of the timing of Defendants' securities trades in relation to the publication of the Article appears necessary.

The Court also finds that the redacted metadata from the produced documents is necessary to the litigation of FPI's claims. FPI has alleged that the removal of the metadata prevents it from reconstructing Rota's editing process: "[t]he documents' metadata would enable FPI to show how the Posting evolved to be more incendiary—and therefore more damaging to FPI—over time." *Reply* [#123], at 8. Courts have recognized the relevance of and need for discovery of metadata. *See Leidig v. Buzzfeed, Inc.*, No. 16 Civ. 542, 2017 WL 6512353, at *12 (S.D.N.Y. Dec. 19, 2017) (referring to the metadata as "perhaps critical" to the plaintiff's defamation claim and imposing sanctions for the failure to preserve this evidence); *Baily v. Alpha Tech. Inc.*, No. 2017 WL 2378921 (W.D. Wash. June 1, 2017) ("metadata and native format production are relevant and proportional to the needs of discovery. It is untenable to assert in this technology-driven age of litigation that

–14–

images of electronic documents provided in TIFF and PDF format offer all of the relevant information."). Moreover, the Supreme Court has rejected an argument that a plaintiff should be barred from inquiring into the editorial processes of those responsible for an alleged defamatory publication, finding that this "would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice[.]" *Herbert*, 441 U.S. at 170.

Accordingly, the Court finds that FPI has established that Rota's identity, the identities of currently anonymous third parties, and the redacted metadata are all necessary to the just litigation of its claims. Therefore, the second element also weighs in favor of discovery.

### 3. Whether FPI Exhausted Other Sources

As noted earlier, the third factor under the balancing test set forth in *Grandbouche* is whether the information is available from other sources. 825 F.2d at 1466-67. For purposes of succeeding under this factor, a party who wishes to overcome an asserted First Amendment privilege must show that he has made "an independent attempt to obtain the information elsewhere." *In Re Bacon*, 2018 WL 4467182, at *6 (citing *Silkwood*, 563 F.2d at 438).

Here, FPI has shown its attempts to independently obtain the information at issue in the instant Motion [#115]. *See Motion* [#115], at 10-11. First, it should be noted that Rota himself closed the most obvious avenues to the information FPI seeks by withholding the names of the individuals he knows profited from the Article by being in communication

–15–

with Rota and taking short positions in FPI's securities. *See id.* at 15. Thus, FPI argues that its attempts to obtain Rota's and the Doe Defendant's identities were not successful due to the redactions Rota made in his discovery responses and the other restrictions he has attempted to impose on the discovery process. *Id.* at 11; *Reply* [#123], at 4.

Further, FPI has sought information through other means. For example, FPI served a subpoena *duces tecum* on third-party Goldman Sachs on April 10, 2019, which was the subject of a Motion for a Protective Order Pursuant to F.R.C.P. 26(c) and/or to Quash a Subpoena Pursuant to F.R.C.P. 45 filed by Rota. *See* [#79, #113]. FPI also submitted a subpoena and FOIA request to the Securities and Exchange Commission that was unsuccessful. *Motion* [#115], at 15. FPI notes that Rota is sending every recipient of a subpoena from FPI a list of information to redact—a list that FPI has not seen and cannot comment on—effectively preventing it from gathering this information. *Reply* [#123] at 5.

Finally, FPI argues, and the Court agrees, that much of the information it seeks can only be answered by Rota himself, such as Rota's motive and purpose in publishing the Article. *Motion* [#115] at 15. Rota has essentially asserted an absolute privilege to prevent FPI from obtaining any identifying information about him or the Doe Defendants, *see Reply* [#123], 8 n. 6. Based on the foregoing, this factor also weighs in favor of discovery as the information is not available elsewhere. See *Amaya*, 2016 WL 10296798, at *7.

### 4. The Nature of the Information

Given that the information at issue in the instant Motion [#115] is Rota's identity, the Court acknowledges that there are important privacy interests at play. Indeed, courts have

–16–

allowed parties to proceed anonymously "in certain limited circumstances . . . where there are significant privacy interests." *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). Additionally, the Court is mindful that the unmasking of an anonymous party is not something that can be undone. However, the Court finds that the information at issue is critical to the case, which ultimately militates in favor of unmasking Rota.

In addition to the information's relevance to proof of actual malice, as discussed previously, FPI is seeking to unmask the actual Defendants in the case, not nonparties. This weighs in favor of disclosure. *Amaya*, 2016 WL 10296798, at *5 (affirming, in the context of discovery disputes in defamation cases, that "[t]here is a difference when . . . discovery is sought from a defendant . . . versus when it is sought from a non-party") (citing *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 172 (E.D.N.Y. 1988)). The circumstances surrounding the Article's publication, and the nature of the Article itself, further distinguish this case from litigation where reporters have invoked the First Amendment to protect the anonymity of their sources. *See, e.g., In re Bacon*, 2018 WL 4467182 at *2. Rather, FPI has alleged that the Article was part of a defamatory "short-and-distort" scheme whereby Rota profited from the rapid sell-off of stock in FPI's business that followed the Article's publication. *See id.* at *7 (finding under the fourth *Grandbouche* factor that "[b]ecause Respondent has arguably published articles . . . that can be construed to defame Petitioner, . . . , the nature of the information sought from Respondent weighs in favor of disclosure").

### 5. Weighing of the *Grandbouche* Factors

In sum, the four *Grandbouche* factors all weigh in favor of compelling discovery of the disputed information. Although the Court is sympathetic to Rota's asserted interest in remaining anonymous, an interest that certainly holds weight under the First Amendment, Rota's refusal to reveal his identity as requested in the interrogatory and document requests and to sit for a deposition without remaining anonymous preclude meaningful discovery and severely prejudices FPI's ability to fairly litigate its claims against Rota and the John Does, identify potential fact witnesses, and investigate the perceived inconsistencies in Rota's discovery responses. Obtaining the names of Rota and the John Does is an important first step, one that will allow FPI to pursue such things as trading records from brokers armed with the names of specific trading accounts, so that it can attempt to build a case against these parties. The Court thus finds that FPI has alleged a compelling need for the information it seeks through the Motion [#115]; namely, discovery of Rota's identity and the identity of the third parties requested in discovery.

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#115] is **granted**.

IT IS FURTHER **ORDERED** that within **20 days** of this Order, Rota must provide full responses to FPI's first set of interrogatories and documents requests, as set forth in the Motion [#115]. Within **45 days** of this Order, Rota must sit for a deposition without limits related to anonymity.

Dated:  May 18, 2020

BY THE COURT:

*Kristen L. Mix*

Kristen L.  Mix
United States Magistrate Judge