# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

      Plaintiff,

v.

ROTA FORTUNAE a/k/a DAVID
QUINTON MATHEWS, QKM, L.L.C.,
SABREPOINT CAPITAL
MANAGEMENT, LP, DONALD
MARCHIONY, GEORGE BAXTER, and
JOHN/JANE DOES 6–10 (WHOSE TRUE
NAMES ARE UNKNOWN),

      Defendants.

---

## FIRST AMENDED COMPLAINT

---

Farmland Partners Inc. ("Farmland Partners") brings this action against "Rota Fortunae," a pseudonym for David Quinton Mathews, and co-conspirators QKM, L.L.C., Sabrepoint Capital Management, LP, Donald Marchiony, George Baxter, and John/Jane Does 6–10 for an intentional and malicious scheme to manipulate the securities markets to secure a quick and illegal financial windfall by disseminating false and misleading statements about Farmland Partners. These false and misleading statements, which have caused reputational and monetary harm to Farmland Partners, along with its shareholders, were made as part of a "short-and-distort" campaign to disparage Farmland Partners and profit from trades with legitimate investors as they digested the falsehoods disseminated by Defendants. This insidious scheme took further

1

sf-4281807

aim at hardworking farmers, who toil under countless pressures to maintain a noble industry that feeds our families and furthers our national goals. While the SEC, Congress, and state legislatures grapple with how to stop this scourge on our public markets and protect small businesses, the engine of economic growth, this lawsuit is designed to bring into the light those who attempt to wreak havoc from the shadows, and hold accountable those who seek to undermine our free markets and venerable institutions.

## **PARTIES**

1. Plaintiff Farmland Partners Inc. is a corporation organized and existing under the laws of the State of Maryland, with its headquarters and principal place of business located in Denver, Colorado.

2. Defendant Rota Fortunae, whose true name is David Quinton Mathews a/k/a Quinton Mathews, published false and defamatory statements in a posting on the website Seeking Alpha (the "Posting") and comments on Twitter as @RFortunae regarding Farmland Partners. At all times relevant, he acted on behalf of himself and/or QKM, L.L.C. and/or Sabrepoint Capital Management, LP. He is a citizen and resident of Texas.

3. Defendant QKM, L.L.C. is an investment advisory firm principally owned and managed by David Quinton Mathews. On information and belief, QKM, L.L.C. is an alter ego of Mr. Mathews such that justice and equity require disregarding this corporate form. Its members, Mr. Mathews and his wife Kelly Hall Mathews, are citizens of Texas, and its headquarters and principal place of business are in Texas.

4. Defendant Sabrepoint Capital Management, LP ("Sabrepoint") has been a client of QKM, L.L.C. since at least January 1, 2018. Sabrepoint employed several people who

helped David Quinton Mathews with researching and drafting the Posting, and it profited from short sales of Farmland Partners' stock when the Posting achieved its aim of driving down Farmland Partners' stock price. Its sole member, George Baxter, is a citizen of Texas, and its headquarters and principal place of business are in Texas.

5. Defendant Donald Marchiony brought the idea of shorting Farmland Partners to David Quinton Mathews. He then helped Mathews with researching and drafting the Posting. Marchiony works for Sabrepoint Capital Management, LP, and, on information and belief, at all times relevant he acted on behalf of and/or in the course of his employment with Sabrepoint. He is a citizen and resident of Texas.

6. Defendant George Baxter owns and manages Sabrepoint Capital Management, LP. On information and belief, Sabrepoint is an alter ego of Mr. Baxter such that justice and equity require disregarding this corporate form. He previously worked at the same private equity firm as David Quinton Mathews. He also helped Mathews with researching and helping draft the Posting, and, on information and belief, at all times relevant he acted on behalf of and/or in the course of his employment with Sabrepoint. He is a citizen and resident of Texas.

7. Defendants John/Jane Does 6–10, whose true names are unknown, are individuals or entities who worked with or for the Defendants in connection with the short-and-distort attack on Farmland Partners, including members, partners, affiliates, employees, consultants, clients, agents, and/or counsel of or for the Defendants. Plaintiff's investigation remains ongoing nearly two years after initiating this action because Defendant Rota Fortunae a/k/a David Quinton Mathews improperly concealed the Defendants' identities for more than 19 months, from October 2018 until June 2020.

3

## JURISDICTION AND VENUE

8.    Defendants are subject to personal jurisdiction in Colorado under C.R.S. § 13-1-124 because the false and misleading statements about Farmland Partners made in the Posting and on Twitter were directed at and published in the State of Colorado, which Defendants knew was the focal point for the development and contents of the Posting as well as the harm suffered by Farmland Partners, its CEO Paul Pittman, other executives, and many of its shareholders.  The short-and-distort attack arose out of contacts with Colorado, concerned Farmland Partners' activities in Colorado, and caused reputational and other harm to Farmland Partners through wide circulation in Colorado.  The brunt of the injury suffered by Farmland Partners occurred in Colorado, where it is headquartered and where its executive-level business operations occur.  Defendants took intentional action expressly aimed at Colorado, out of which the claims asserted in this complaint arise, thereby committing an intentional and tortious act within this state.  Such acts include, among other things, sending a letter to Farmland Partners' headquarters in Colorado with a list of questions on behalf of a "group of investors" who "have prepared and anticipate publishing an article" about Farmland Partners, and retweeting the Posting while tagging the Denver Post and two Denver Post reporters.  Indeed, Rota Fortunae a/k/a David Quinton Mathews now "admits he is subject to personal jurisdiction in this Court." In addition to the other Defendants' direct contacts with Colorado, the jurisdictional contacts of Mr. Mathews are attributable to the other Defendants under agency and/or conspiracy theories of personal jurisdiction.  Mathews was paid by Sabrepoint and supervised by Marchiony and Baxter to research and ultimately publish the Posting and took overt acts in furtherance of the conspiratorial scheme that subject the other Defendants to personal jurisdiction in this state.

sf-4281807

9.   Subject matter jurisdiction lies in this Court under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, not including interest or costs, and the dispute is between citizens of different States.

10. Venue is proper in this Court, to which Defendant Rota Fortunae a/k/a David Quinton Mathews removed this action, under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

11. Farmland Partners is a publicly traded real estate investment trust (REIT) that manages and seeks to acquire both high-quality farmland and land with agricultural development potential located throughout North America.  Farmland Partners takes pride in its heritage in farming, and sees the partnership with its farmer tenants as key to its long term success. Farmland Partners works with its tenant base to lower their input costs and improve its farms, as a result increasing both their profitability and its own.

12. Farmland Partners is publicly traded on the New York Stock Exchange under the symbol FPI.

13. David Quinton Mathews provides investment advisory services through his company QKM, L.L.C., which is a registered investment advisor.

14. In May 2016, Mathews created a Twitter account with the username @RFortunae.

15. On or around February 1, 2017, Mathews created a Seeking Alpha account with the username "Rota Fortunae."

16. Mathews subsequently published a number of articles on Seeking Alpha from his Rota Fortunae account in 2017 and early 2018 about companies he targeted to short.

17. On information and belief, Mathews and his clients profited from his earlier work by taking short positions in the target companies before his alias Rota Fortunae published articles designed to drive down the price of the companies' stock.

18. On information and belief, Mathews's clients knew that Mathews's investment services included generating profits by targeting certain companies to short, building short positions in those companies, and then inducing the stock prices of those companies to fall.

19. In February 2018, Mathews entered into an investment advisory agreement via QKM, L.L.C. with Sabrepoint Capital Management.  Under the agreement, Mathews received a $9,500 monthly retainer fee from Sabrepoint.

20. Mathews also had investment advisory agreements at all relevant times with Keith Dilling and his father, Gary Mathews.  Mathews charged Dilling an advisory fee of 20% of the net profits made based on Mathews's investment advice.

21. On information and belief, Sabrepoint's investment strategy included taking short positions in companies, and then arranging for articles to be published about those companies that would serve as a catalyst to drive down the stock price of those companies and, in turn, manufacture profits on Sabrepoint's short positions.

22. Sabrepoint's employees and leadership were familiar with Seeking Alpha. Donald Marchiony published 12 articles on the website between March 2014 and August 2017. Jean Fonteneau, Sabrepoint's Chief Operating Officer, published five articles on the website between March 2014 and November 2015.  Many of these articles concerned "short ideas."

23. On information and belief, Sabrepoint paid Mathews to write and publish statements designed to drive down the stock price of companies in which it held short positions,

6

sometimes referring to them as "research reports," on Seeking Alpha, and/or to promote those statements on Twitter.

24. On information and belief, Sabrepoint knew that Mathews was in the business of publishing articles that would be read by Colorado investors, given his publication history as Rota Fortunae and Seeking Alpha's nationwide audience.

25. On information and belief, Sabrepoint knew and/or intended that Mathews would post his report on Farmland Partners on Seeking Alpha, based on its past experience with Mathews posting on Seeking Alpha his research for Sabrepoint about K12 Inc., his prior postings on Seeking Alpha, and their repeated communications and meetings leading up to the Posting's publication.

26. Notwithstanding the terms of the agreement regarding the nature of the relationship between Mathews and Sabrepoint, on information and belief, Mathews acted as Sabrepoint's agent such that Sabrepoint controlled and/or had the right to control his writing and publishing of the Posting on Seeking Alpha and related promotional tweets, and/or Mathews had a meeting of the minds with Sabrepoint, Marchiony, and Baxter to write and publish the relevant statements about Farmland Partners, based on their actual course of dealings, in which (among other things) Sabrepoint provided Mathews with the Posting idea and its key themes, suggested framing and content for inclusion in the Posting, provided additional "tools" such as research and resources, supervised Mathews's performance through repeated communications and meetings, and paid Mathews a monthly salary while he worked on the Posting.

27. On February 22, 2018, Mathews purchased an insurance policy covering liability for reports he published on Seeking Alpha's website. The policy was retroactively effective on January 29, 2018.

28. On April 16 and 18, 2018, "Rota Fortunae" published on Seeking Alpha reports about the company K12 Inc. Mathews worked on the reports with George Baxter and others at Sabrepoint Capital Management. Consistent with its investment strategy, Sabrepoint shorted K12 Inc.'s stock in advance of the reports being published, in anticipation of profiting when the reports hurt K12 Inc.'s share price. Mathews and his other clients, including Keith Dilling, likewise shorted K12 Inc.'s stock.

29. On April 25, 2018, Donald Marchiony, a financial analyst at Sabrepoint Capital Management, LP, sent George Baxter an email with the subject line "FPI," attaching a Microsoft PowerPoint slide deck about shorting Farmland Partners' stock.

30. Marchiony and Baxter used their Sabrepoint Capital Management emails to discuss Farmland Partners, and, on information and belief, at all relevant times were working within their scope of employment at Sabrepoint.

31. Shortly after sending his first email about Farmland Partners, Marchiony re-sent his slide deck to Baxter and noted that it "seems more like a Q short"—apparently referring to David Quinton Mathews who goes by the name "Quinton" and nickname "Q," on information and belief—because Marchiony was "not sure it's something someone else would like."

32. Marchiony's slide deck identified Farmland Partners' headquarters as being in Denver, Colorado, and recognized that Farmland Partners has substantial business in Colorado.

8

33. On May 1, 2018, Sabrepoint Capital Management short sold 30,000 Farmland Partners shares at approximately $7.52 per share, at a total cost of over $225,000.

34. On May 3, 2018, Donald Marchiony emailed an acquaintance at Cloverdale Capital Management, a Dallas-based hedge fund, to discuss Marchiony's ideas about shorting Farmland Partners.

35. On May 8, 2018, Donald Marchiony emailed David Quinton Mathews about Farmland Partners, saying he was attaching a "new idea" that they might "collaborate on." Marchiony noted that Sabrepoint had invested 1% of its assets in short positions in Farmland Partners and was looking for a "catalyst." He also attached his slide deck on Farmland Partners, which highlighted (among other things) Farmland Partners' loan program, land valuation, and change of auditor, all of which were covered in the Posting.

36. Later that morning, Marchiony emailed Neel Tanna, a senior analyst at Yost Capital Management about Farmland Partners, attaching the same slide deck. The email followed up on the Farmland Partners short Marchiony had told Mr. Tanna about the week prior.

37. After receiving Marchiony's message, David Quinton Mathews began working on the research report he ultimately published on Seeking Alpha about Farmland Partners.

38. Over the next two months, Mathews and Marchiony exchanged dozens of emails about their research regarding Farmland Partners' finances and business relationships, many of which copied George Baxter.

39. In these emails, Sabrepoint personnel provided various resources, datasets, and financial analyst reports to Mathews. Marchiony sent Mathews a "[f]irst stab at [the]

9

valuation discussion" and provided ideas about how to frame the research report ultimately published on Seeking Alpha. Baxter identified specific content for Mathews to include. Baxter also directed Mathews to send them an expense report for which Sabrepoint would reimburse him.

40. In addition, Mathews had at least 20 to 30 phone calls with Sabrepoint Capital Management employees about Farmland Partners.

41. Mathews also met in-person with Marchiony and Baxter for several hours to discuss their Farmland Partners "research." On information and belief, Mathews brought a hard copy of his draft research report to this meeting for review by Marchiony and Baxter. On information and belief, Mathews had numerous informal lunch meetings with Marchiony and Baxter during the same period in which they discussed, among other things, their research and the report.

42. On information and belief, the emails and conversations between Mathews, Marchiony, and Baxter shared and discussed numerous documents that were obtained from Colorado sources and that were ultimately mentioned in the Posting, including Colorado UCC filings; Washington County, Colorado deed and appraisal records; documents pulled from a District of Colorado bankruptcy case; Kit Carson County, Colorado deed records; and a 2017 Colorado Farm Land Values & Rents Survey.

43. On information and belief, the Sabrepoint employees' actions were directed at Farmland Partners in Colorado, based on their knowledge of Farmland Partners' headquarters and business activities in Colorado and their repeated communications and meetings with Mathews during the relevant period.

44. On May 24, 2018, Mathews made his first trades short selling and purchasing short-dated put options in Farmland Partners' stock.  He continued to increase his short position until the Posting was published.

45. On June 1, 2018, Mathews drafted the first, second, and third version of the Posting.

46. That same day, Sabrepoint purchased thousands of short-dated put options in Farmland Partners' stock expiring July 20, 2018.

47. David Quinton Mathews shared at least four pre-publication drafts of the Posting with his father, Gary Mathews.

48. Gary Mathews shorted Farmland Partners' stock before the Posting was published on Seeking Alpha.

49. On information and belief, Mathews's father knew and/or intended that Mathews would post his report about Farmland Partners on Seeking Alpha, based on his past experience with Mathews drafting articles for publication on Seeking Alpha, his accumulation of short positions in Farmland Partners, and their communications leading up to the Posting's publication.

50. On June 7, 2018, David Quinton Mathews saved version four of the draft, which recognized that Farmland Partners' loans to purportedly related parties were "small on an absolute scale."  In fact, those loans represented only 1% of Farmland Partners' total revenue. Mathews subsequently removed this language from the Posting prior to publication.

11

51. On June 16, 2018, David Quinton Mathews saved version six of the Posting, which admitted that "on its face there is nothing inappropriate about the loan program." Mathews subsequently removed this language from the Posting prior to publication.

52. On June 18, 2018, Jean Fonteneau, an employee at Sabrepoint, sent an email to Donald Marchiony, George Baxter, and others at Sabrepoint Capital Management to let them know that Sabrepoint's fund was down 0.66%, listing Farmland Partners' stock under a header for stocks that stood to lose Sabrepoint more than 10% of its investment.

53. At that time, Farmland Partners' stock was trading around $9 per share, well above the $7.52 per share at which Sabrepoint had short sold 30,000 shares.

54. The next day, June 19, 2018, Donald Marchiony sent David Quinton Mathews a "[f]irst stab at [the] valuation discussion" for the Farmland Partners report.

55. Mathews saved version eight of the draft Posting that day, which recognized that "stock price declines . . . make it more difficult to raise money." On information and belief, Mathews and the other Defendants thus understood that the short-and-distort scheme would harm Farmland Partners, including the company's ability to raise money to purchase farmland.

56. On June 26, 2018, David Quinton Mathews emailed his client Keith Dilling version 10 of the draft Posting.

57. From June 26 to July 6, 2018, Mr. Dilling purchased put options shorting Farmland Partners' stock. On information and belief, Dilling shorted Farmland Partners because he knew and/or intended that Mathews would post his report on Farmland Partners on Seeking Alpha, based on his past experience with Mathews drafting articles for publication on Seeking

12

Alpha, his accumulation of short positions in Farmland Partners, and their communications leading up to the Posting's publication.

58. On or around July 2, 2018, David Quinton Mathews submitted a near-final draft of the Posting to Seeking Alpha for publication to the investing community under the alias Rota Fortunae, using a different email address than the QKM, L.L.C. email account he used with his clients. A follow-up email stated: "As always, I asked that it not be published until we provide a date and time."

59. Many of David Quinton Mathews's and Sabrepoint's put options were set to expire on July 20, 2018, if Farmland Partners' stock price did not fall by more than $1 per share by that date. Farmland Partners did not have any earnings call or other disclosures or events scheduled before then that might explain the timing of those purchases and their expiration date.

60. On information and belief, Marchiony and Baxter knew that Mathews was going to publish the draft Posting on Seeking Alpha, based on their recent work with Mathews on shorting K12 Inc., the fact that Mathews had published the results of that work on Seeking Alpha, and their numerous meetings, emails, and calls during the relevant period.

61. On information and belief, Marchiony and Baxter were aware of the contents of the Posting before its publication based on their role in spurring and developing Mathews's article; their provision of ideas for the Posting; their supporting the Posting through framing, content, research, and resources; their repeated communications and meetings with Mathews throughout the period in which he was drafting the Posting; and the fact that they paid Mathews to research and draft the research report ultimately published on Seeking Alpha that drove down Farmland Partners' stock price.

13

62. Also on July 2, 2018, Mathews sent Dilling version 14 of the draft of the Posting, to which Dilling replied: "Will review."

63. On information and belief, Sabrepoint and others who, after corresponding with Mathews, purchased short-dated put options in Farmland Partners that would expire on July 20, 2018 or shortly thereafter knew or had reason to know that he was planning on publishing the Posting on or around July 11, 2018. Farmland Partners did not have any earnings call or other disclosures or events scheduled during the pendency of these short-dated put options, and/or immediately preceding or following the ultimate publication date of the Posting, that might explain the volume of short trading in Farmland Partners' stock by Mathews, Sabrepoint, and/or others in the lead up to the Posting's publication.

64. On July 3, 2018, a Seeking Alpha editor with whom Mathews had worked previously, John Edwards, provided feedback and identified three questions related to the Posting's allegations that Mathews was required to raise with Farmland Partners prior to publication.

65. On information and belief, Marchiony and Baxter knew that Seeking Alpha policy required Mathews to reach out to Farmland Partners in Colorado with questions concerning certain allegations, having themselves published or been involved in the publication of articles on Seeking Alpha before and/or having read Mathews's February 6, 2018 posting about NQ Mobile—more than a month after Sabrepoint's investment advisory agreement with Mathews through QKM, L.L.C. began—and having seen the list of questions that Mathews sent to NQ Mobile's management.

14

66. Mathews implemented the requested changes, and then, on July 9, 2018, he informed Edwards that he would be "reaching out to management today around lunch" and then would resubmit the article the next day for publication "before [the] market opens on Wednesday," July 11, 2018.

67. On July 9, 2018, Farmland Partners received a letter by email from Texas attorney Matthew Mitzner of the law firm Mitzner PLLC.

68. The letter was addressed to Farmland Partners' headquarters in Denver, Colorado.

69. Mr. Mitzner's letter stated that he represented a "group of investors" who "have prepared and anticipate publishing an article about the Farmland Partners Inc. ('Farmland Partners') Loan Program."

70. On information and belief, the phrase "group of investors" in Mitzner's letter to Farmland Partners' headquarters in Colorado included not just David Quinton Mathews but also Sabrepoint and others, based on Sabrepoint's role as one of Mathews's investor clients, its short position in Farmland Partners, and its role in spurring and developing the Posting.

71. On information and belief, Marchiony and Baxter knew that Mathews was going to send a letter to Farmland Partners' headquarters in Colorado, having been familiar with Seeking Alpha's publication policies and Mathews's history with publication on Seeking Alpha, and having had regular communications with Mathews via email, telephone, and in-person during this time period.

15

72. Mitzner's letter stated that, "[p]rior to publishing the prepared article, by this email, we are providing your company the opportunity to respond to the main issues the article addresses, represented by our below-listed questions."

73. Mitzner's letter listed 31 bullet points setting forth even more numerous questions spanning more than two pages.

74. The questions in Mitzner's letter covered a broad range of topics and sought precise details about dollar values, individuals, and timeframes.

75. Undermining any notion that anyone involved in the short-and-distort attack was genuinely interested in answers to those questions, Mitzner's letter provided Farmland Partners with only 24 hours to respond prior to publication of the "prepared article." On information and belief, Defendants would not have sent this letter had Seeking Alpha not required Mathews to do so before publication of the Posting.

76. Mr. Mitzner's letter included no justification or proper purpose for the unreasonable time period provided for a response, did not mention that short positions in Farmland Partners' stock were expiring soon, and refused to discuss any of the questions posed. Mitzner's letter stated that, "in light of the deadline and a variety of prior obligations that have me out of the office during this period, we will neither receive nor be responding to any phone calls concerning this matter."

77. Mr. Mitzner's letter did not attach a copy of the "prepared article" or identify the related short-and-distort scheme.

78. Farmland Partners did not provide responses to the questions in Mr. Mitzner's letter within the 24-hour deadline, in part given the limited time available to even ascertain

16

whether doing so could have implicated regulations governing the selective disclosure of

material non-public information, and also because of Mr. Mitzner's unavailability to discuss the

questions during the limited time window he provided for a response.

79. Mr. Mitzner's letter did not provide an explanation for why the questions

posed were not raised through appropriate, available investor-relations channels.

80. On July 10, 2018, David Quinton Mathews informed Seeking Alpha that

Farmland Partners did not respond to his questions and confirmed his request for publication of

the Posting on July 11, 2018 at 8:30am Eastern Time.

81. On July 11, 2018, the anonymous Posting about Farmland Partners was

published on the website Seeking Alpha, which identified the Posting as an "Editors' Pick."

82. On its website's "About" page, Seeking Alpha states that it has 13 million

visitors, which on information and belief include numerous visitors from Colorado.

83. The Posting represented that its authors had significant knowledge about

Farmland Partners' business, yet it contained numerous false and misleading statements about

Farmland Partners.  In addition, the Posting was purportedly based on information that was

already in the public domain, not on new information.

84. The Posting falsely and misleadingly asserted that Farmland Partners "faces a

significant risk of insolvency."  This statement was first drafted in substantially similar form no

later than version 10 of the draft Posting, on or around June 26, 2018, and thus all Defendants

who reviewed the document on or after that date knew or had reason to know that the false and

misleading statement would be published.  Not surprisingly, the Posting did not refer to the

actual definitions of insolvency or how those well-accepted concepts could apply to Farmland

Partners' financial condition (they do not apply, as evidenced by Farmland Partners' continued solvency).

85. The Posting falsely and misleadingly asserted that Farmland Partners "ignores very real expenses when it promotes adjusted funds from operations (AFFO). Excluded expenses include the dividend on FPI's preferred 'B' shares." More than a week after the Posting was published, and after Farmland Partners had pointed out the falsity of this statement, on July 19, 2018, Seeking Alpha required Mathews to revise the Posting to refer to "funds from operations (FFO)" instead, conceding that the previously published statement was false.

86. The Posting falsely and misleadingly asserted that Farmland Partners "is artificially increasing revenues by making loans to related-party tenants." This statement was first drafted in substantially similar form no later than version five of the draft Posting, on or around June 11, 2018, and thus all Defendants who reviewed the document on or after that date knew or had reason to know that the false and misleading statement would be published.

87. On information and belief, Sabrepoint and its employees knew and/or were recklessly indifferent to the fact that the statements to be published in the Posting were false and defamatory, based on their frequent discussions with Mathews about the contents of his "research report," their review of a draft of the Posting prior to publication, and several of the false and defamatory statements having first appeared in the draft Posting at least a month before publication.

88. The Posting falsely and misleadingly asserted that Farmland Partners failed to properly disclose the financial impact of its loan program.

sf-4281807

89. The Posting falsely and misleadingly asserted that directors and an officer of Farmland Partners have left the company, and a Farmland Partners auditor was dismissed due to disputes with the company, based on issues raised in the Posting. The Posting stated that "it appears that we are not the only concerned party. Since making its first loan to [a non-party] . . . four board members and FPI's president have resigned. And in March, Farmland Partners dismissed PWC."

90. The Posting falsely and misleadingly asserted that Paul Pittman, Farmland Partners' Chairman and CEO, pledged some of his shares.

91. The Posting also took aim at Paul Pittman, Farmland Partners' Chairman and CEO and a Colorado resident, personally, by repeatedly attacking his public statements regarding Farmland Partners' valuations and financial health and his business dealings with Farmland Partners. Among other things, in the context of the Posting's false and misleading assertions, the Posting displayed malice by attacking Mr. Pittman's defense of Farmland Partners with respect to short sellers, evincing an intent to punish Mr. Pittman for stating that "the roughly 10% short in our stock are going to get killed, and I'll be cheering the day it happens."

92. The Posting displayed further malice by stating that Rota Fortunae "think[s] the shares [of Farmland Partners' stock] are uninvestible."

93. On information and belief, the Posting's statement that the company's stock is "uninvestible," like the Posting's unsupportable statement that Farmland Partners "faces a significant risk of insolvency" (and many other statements described herein), was included in the Posting specifically to drive the price of Farmland Partners' stock down so that Defendants could profit before the falsity of its statements could be revealed, in part based on how various trading

19

algorithms, traders, and/or the public would respond to those terms—both of which appear in the Posting's title.

94. The Posting stated that readers "should assume" that Rota Fortunae's "members, partners, affiliates, employees, and/or consultants" and "clients" had short positions in Farmland Partners' stock as of the date of the Posting's publication.

95. On information and belief, at the time of publication, there were investors with substantial short positions and/or put options in Farmland Partners' stock that were soon going to expire.

96. Short selling can be a legitimate investment strategy, if done appropriately and in compliance with applicable laws, and can in some circumstances improve market efficiency and liquidity.

97. But there is a cottage industry of illegitimate short sellers who, through coordinated campaigns, anonymously publish intentionally false and misleading information about publicly traded companies, frame it as a well-researched and legitimate report, and spread that information online to cause panic selling for the purpose of lowering stock prices so that illegitimate short sellers can make a profit by closing their short position while the price is low. This type of "short-and-distort" scheme violates numerous securities laws and permits traders engaging in deceptive practices to profit at the expense of legitimate investors and to undermine confidence in our public markets. The scourge of "short-and-distort" online posting market manipulation schemes not only hurts investors, but also typically involves leveling unfair, egregious allegations about a company that can smear its reputation and those of individuals associated with the company, causing various types of monetary harm and lost business

20

opportunities.  Throughout this complaint, the terms "short" and "shorting" are used to reference any and all types of trading to profit from a decline in a stock's price.

98. Defendants achieved their nefarious goal because soon after publication of the Posting, Farmland Partners' stock price dropped by approximately 39%.

99. On information and belief, the Posting hurt significant shareholders in Farmland Partners, including shareholders in Colorado who sold following the decline in Farmland Partners' stock price.

100.     Defendants profited from the related short positions they held when Farmland Partners' stock price dropped.  On information and belief, David Quinton Mathews made at least $201,245.35, Keith Dilling made at least $197,059.70, Gary Mathews made at least $28,346.48, and Sabrepoint Capital Management profited as well.

101.     On information and belief, John/Jane Does 6–10 also profited from short positions in Farmland Partners' stock.

102.     Seven minutes after the Posting was published on Seeking Alpha, David Quinton Mathews's Twitter handle @RFortunae tweeted a link to the report and tagged the Denver Post and two Denver Post reporters.

103.     On information and belief, George Baxter and Sabrepoint employee Stephen Marshall "liked" @RFortunae's tweet sharing the Posting, helping spread its publication.

104.     Donald Marchiony sent a link to the Posting shortly after its publication to Neel Tanna and acknowledged that he worked "to develop the thesis" of the Posting.

105.     Later on July 11, 2018, Farmland Partners promptly issued a press release denying several of the more spurious allegations in the Posting.

106.     Also on July 11, 2018, based on statements made in the Posting and repeated by Defendants and other individuals who further disseminated the same falsehoods, a class action lawsuit was filed against Farmland Partners in the United States District Court for the District of Colorado, alleging violation of federal securities laws.  That suit, which essentially regurgitates the Posting, is without merit and is being vigorously defended.  In addition, four derivative actions have been filed against Farmland Partners based on the defamatory statements made in the Posting.

107.     On July 11 and 12, 2018, Rota Fortunae posted more false and misleading statements on Twitter regarding Farmland Partners, using the Twitter handle @RFortunae, repeatedly characterizing the false information in the Posting as "facts."

108.     On July 16, 2018, the Twitter handle @RFortunae posted further false and misleading statements on Twitter about Farmland Partners, again characterizing the false information in the Posting as "facts."

109.     @RFortunae's false and misleading statements on Twitter also took aim at Paul Pittman, Farmland Partners' Chairman and CEO, personally, by, among other things, attacking his public statements regarding Farmland Partners' loan program and responding to Farmland Partners' July 11, 2018, press release by threatening additional postings that would focus specifically on Mr. Pittman.

110.     On information and belief, Defendants intended for the Posting and related Twitter statements to be read by members of the public, including current and prospective shareholders and business partners of Farmland Partners, and members of the public did so.

111.     On July 17, 2018, Farmland Partners issued a second statement ("July 17 Statement") providing a detailed, comprehensive, and accurate rebuttal of the false and misleading statements in the Posting, consistent with its obligations as a publicly traded company.

112.     Farmland Partners' July 17 Statement responded to specific false and misleading statements in the Posting, including the following:

a)  Farmland Partners faces no material risk of insolvency;

b)  Farmland Partners did not exclude dividends on the Company's Series B Participating Preferred Stock from Adjusted Funds From Operations ("AFFO"), as the inclusion of such dividends in the AFFO calculation is clearly explained in Farmland Partners' disclosures;

c)  Farmland Partners did not make undisclosed loans to related parties;

d)  Farmland Partners did not fail to properly disclose the financial impact of the loan program;

e)  No director or officer has left Farmland Partners due to a dispute with the company;

f)  No auditor has been dismissed due to a dispute with the company; and

g)  Farmland Partners' Chairman and CEO has never pledged any of his shares.

23

113.    Farmland Partners notified Seeking Alpha regarding the false and misleading statements in the Posting through Seeking Alpha's "dispute an article" process, but Seeking Alpha refused to withdraw the Posting, based in part on Defendants' "correction" published on July 19, 2018.

114.    The July 19 "correction" was published that day without changing the original July 11, 2018, date and continued to identify the Posting as a "Jul[y] 11" "Editors' Pick."

115.    The July 19 "correction" conceded that material misstatements were made on July 11 and attempted to change portions of the original Posting, but it did not correct all the false and misleading statements Farmland Partners specifically identified in its press release, and the "correction" was published long after the decline in Farmland Partners' stock price resulting from the original Posting on July 11, 2018.

116.    The Posting falsely stated that Farmland Partners had not contacted Seeking Alpha or Rota Fortunae.  The former statement is false.  Farmland Partners disputed the posting on Seeking Alpha.  The latter is misleading.  Rota Fortunae is represented by counsel, Mr. Mitzner.  Farmland Partners, through counsel, contacted Mr. Mitzner.  Mr. Mitzner retained counsel who replied to Farmland Partners' counsel.

117.    Following up on an earlier request made in July 2018, Farmland Partners recently requested yet again that Seeking Alpha remove the Posting, but Seeking Alpha refused, and the Posting remains published on Seeking Alpha's website.

## CLAIMS FOR RELIEF

118.    Based on the preceding paragraphs, Farmland Partners brings the following claims for relief, reserving the right to add additional claims against Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C., Sabrepoint Capital Management, LP, Donald Marchiony, George Baxter, John/Jane Does 6–10, and/or other individuals or entities working with or for Mathews, including members, partners, affiliates, employees, consultants, clients, agents, relatives, and/or counsel of or for Mathews, as new information is discovered related to the events giving rise to the claims below:

## FIRST CLAIM FOR RELIEF
### (Defamation/Defamation by Libel Per Se)
*Defendants Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C., Sabrepoint Capital Management, LP, Donald Marchiony, George Baxter, and John/Jane Does 6–10*

119.    Farmland Partners incorporates by reference the preceding paragraphs of this Complaint.

120.    Defendants maliciously published, or caused to be published, false and defamatory written statements about Farmland Partners that held Farmland Partners up to contempt or ridicule.

121.    On information and belief, Defendants knew that their written statements about Farmland Partners were false, or made those statements with reckless disregard as to their veracity, by, for example, personal attacks on Paul Pittman, Farmland Partners' Chairman and CEO, among other things.

122.    On information and belief, Defendants knew that their written statements about Farmland Partners would hold Farmland Partners up to contempt or ridicule.

123.    Defendants' false and defamatory written statements published about Farmland Partners were read by members of the public, including holders of Farmland Partners' stock, and current and prospective business partners of Farmland Partners.

124.    Defendants' false and defamatory written statements published about Farmland Partners implied the existence of undisclosed defamatory factual predicates.

125.    Defendants' false and defamatory written statements on Twitter implied that both the Posting and statements made on Twitter about Farmland Partners were based on undisclosed defamatory factual predicates.

126.    On information and belief, Defendants' false and defamatory written statements about Farmland Partners were understood to be assertions of fact or based on undisclosed factual predicates by members of the public, including holders of Farmland Partners' stock, and current and prospective business partners of Farmland Partners.

127.    Farmland Partners suffered harm to its reputation, loss of business, and other monetary harm as a result of Defendants' publication of false and defamatory written statements.

128.    Defendants' false and defamatory written statements are defamation per se because they wrongly impute professional misconduct by Farmland Partners that is incompatible with Farmland Partners' business.

### SECOND CLAIM FOR RELIEF
**(Disparagement)**
*Defendants Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C., Sabrepoint Capital Management, LP, Donald Marchiony, George Baxter, and John/Jane Does 6–10*

129.    Farmland Partners incorporates by reference the preceding paragraphs of this Complaint.

26

130.     Defendants published, or caused to be published, false and disparaging statements about Farmland Partners.

131.     Defendants published, or caused to be published, false and disparaging statements about Farmland Partners in a manner that ensured third parties would read them.

132.     Defendants' false and disparaging statements published about Farmland Partners were read by members of the public, including holders of Farmland Partners' stock and current and prospective business partners of Farmland Partners.

133.     On information and belief, Defendants understood and intended that their false and disparaging statements about Farmland Partners would have the effect of preventing others from doing business with Farmland Partners and interfering with and disrupting Farmland Partners' business relationships.

134.     Defendants' false and disparaging statements about Farmland Partners were and are derogatory to Farmland Partners' business.

135.     Defendants published false and disparaging statements about Farmland Partners intending to obtain financial gain by causing harm to Farmland Partners' pecuniary interest.

136.     On information and belief, Defendants published false and disparaging statements about Farmland Partners with malice, with knowledge of the statements' falsity or reckless disregard for their truth, intending to cause financial harm to Farmland Partners, by, for example, personal attacks on Paul Pittman, Farmland Partners' Chairman and CEO, among other things.

137.    Farmland Partners suffered substantial damages, including a drop in its stock price, lost business opportunities, and defense costs, as a direct and proximate result of Defendants' publishing false and disparaging statements about Farmland Partners.

**THIRD CLAIM FOR RELIEF**
**(Intentional Interference with Prospective Business Relations/Advantage)**
*Defendants Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C.,*
*and John/Jane Does 6–10*

138.    Farmland Partners incorporates by reference the preceding paragraphs of this Complaint.

139.    Farmland Partners is a publicly traded company whose stock is purchased and owned by various shareholders, with whom Farmland Partners has business relations.

140.    The purchase and holding of Farmland Partners' stock by shareholders confers a benefit upon Farmland Partners that was expected to continue prospectively.

141.    Farmland Partners had prospective business relations and advantages with many third parties, including, but not limited to, current and potential investors, lenders, property owners, and farmers.

142.    Having represented that it had significant knowledge about Farmland Partners' business, Defendants knew or should have known about Farmland Partners' prospective business relations and advantages with many third parties, including, but not limited to, current and potential investors, lenders, property owners, and farmers.

143.    Defendants intentionally induced Farmland Partners shareholders to sell their shares by making false, misleading, defamatory, and/or disparaging statements about Farmland Partners, thus interfering with prospective business relations and advantages that Farmland Partners anticipated would confer benefits upon it in the future.

28

144. On information and belief, Defendants intentionally induced potential Farmland Partners shareholders and other potential business partners to decide not to purchase Farmland Partners shares or engage in other business activities with Farmland Partners by making false, misleading, defamatory, and/or disparaging statements about Farmland Partners, thus interfering with prospective business relations and advantages that Farmland Partners anticipated would confer benefits upon it in the future.

145. On information and belief, Defendants intentionally and improperly prevented the formation of contracts between Farmland Partners and current and/or potential shareholders and/or other business partners.

146. Farmland Partners suffered direct harm from Defendants' intentional interference with Farmland Partners' prospective business relations and advantages, including a drop in its stock price and the loss of business opportunities.

### **FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**
*Defendants Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C., Sabrepoint Capital Management, LP, Donald Marchiony, George Baxter, and John/Jane Does 6–10*

147. Farmland Partners incorporates by reference the preceding paragraphs of this Complaint.

148. Defendants realized a benefit at Farmland Partners' expense.

149. Defendants caused Farmland Partners' stock price to decline through shorting Farmland Partners' stock and participating or acquiescing in the deceitful, misleading act of publishing false, misleading, defamatory, and/or disparaging information about Farmland Partners.

29

150.     Defendants had short positions in Farmland Partners and thus realized gains when the price of Farmland Partners' stock declined following Defendants' publication of false, misleading, defamatory, and/or disparaging information about Farmland Partners.

151.     Defendants' gains were at Farmland Partners' expense because they were realized as a result of Farmland Partners being harmed by false, misleading, defamatory, and/or disparaging information in multiple ways, including a decline in its stock price, harm to its reputation, and the loss of business opportunities.

152.     It would be unjust under the circumstances for Defendants to retain the gains they realized at Farmland Partners' expense without just compensation to Farmland Partners.

## FIFTH CLAIM FOR RELIEF
### (Deceptive Trade Practice in Violation of the Colorado Consumer Protection Act)
*Defendants Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C.,*
*and John/Jane Does 6–10*

153.     Farmland Partners incorporates by reference the preceding paragraphs of this Complaint.

154.     Defendants engaged in a deceptive trade practice by publishing, or causing to be published, false and misleading representations of fact that disparaged the services, property, and business of Farmland Partners.

155.     Defendants work in the field of securities trading as part of their businesses, vocations, and/or occupations.

156.     Defendants make public statements about financial markets in the course of their businesses, vocations, and/or occupations.

30

157.    Defendants buy and sell securities in the course of their businesses, vocations, and/or occupations.

158.    Defendants made false and misleading representations of fact about Farmland Partners in the course of their businesses, vocations, and/or occupations.

159.    Defendants' false and misleading representations of fact about Farmland Partners did and do significantly impact the public as actual or potential consumers of published information about financial markets.

160.    Defendants' false and misleading representations of fact about Farmland Partners did and do significantly impact the public as actual or potential investors in securities by harming purchasers, prospective purchasers, and shareholders of Farmland Partners' stock.

161.    Defendants' false and misleading representations of fact about Farmland Partners did and do significantly impact the public by harming consumers of Farmland Partners' services who have past, present, or future business relationships with Farmland Partners, including its current or potential tenant farmers and business partners.

162.    Farmland Partners, in the course of its business, suffered an injury in fact to its legally protected interests, including the right not to have its stock price wrongly manipulated by unethical short sellers through disparagement and defamation.

163.    Farmland Partners' injury in the course of its business was a result of Defendants' deceptive trade practices.

### SIXTH CLAIM FOR RELIEF
**(Civil Conspiracy)**
*Defendants Rota Fortunae a/k/a David Quinton Mathews, QKM, L.L.C., Sabrepoint Capital*
*Management, LP, Donald Marchiony, George Baxter, and John/Jane Does 6–10*

164.     Farmland Partners incorporates by reference the preceding paragraphs of this Complaint.

165.     Sabrepoint Capital Management, Donald Marchiony, and George Baxter worked with Rota Fortunae a/k/a David Quinton Mathews and QKM, L.L.C. in connection with the false and misleading statements about Farmland Partners that Defendants made publicly in an internet posting and on Twitter.

166.     On information and belief, John/Jane Does 6–10 are individuals or entities who worked with or for Defendants in connection with the false and misleading statements about Farmland Partners that Defendants made publicly in an internet posting and on Twitter, including members, partners, affiliates, employees, consultants, clients, agents, and/or counsel of or for Defendants.

167.     Mr. Mitzner's letter to Farmland Partners stated that there is "a group of investors" behind the "prepared article," rather than an individual.

168.     The Posting repeatedly indicated that there were multiple individuals involved in creating the Posting, by repeated use of the word "we" and references to Rota Fortunae's "members, partners, affiliates, employees, and/or consultants" and "clients."

169.     On information and belief, Defendants shared the object to be accomplished of improperly profiting from short positions by causing Farmland Partners' stock price to decline.

170.     On information and belief, Defendants had a meeting of the minds on the object to be accomplished, agreeing to cause Farmland Partners' stock price to decline so they

would profit illegally from short positions through a "short-and-distort" scheme involving the publication of the Posting and related Twitter comments regarding Farmland Partners.

171.    On information and belief, Defendants undertook the unlawful overt act of publishing, or causing to be published, a false, misleading, defamatory, and/or disparaging internet posting about Farmland Partners and related comments on Twitter, for purposes of causing a decline in Farmland Partners' stock price.

172.    Farmland Partners was proximately harmed by the publication of the Posting and the @RFortunae statements on Twitter.

## PRAYER FOR RELIEF

WHEREFORE, Farmland Partners requests that the Court grant the following relief:

1.     Enter Judgment in favor of Farmland Partners, and against Defendants, on all Claims for Relief Farmland Partners asserts in this Complaint;

2.     Award Farmland Partners damages incurred as a result of Defendants' false, defamatory, and derogatory statements about Farmland Partners;

3.     Award Farmland Partners attorney fees and costs, as available;

4.     Award Farmland Partners injunctive relief to prevent further, irreparable harm from Defendants' false, defamatory, disparaging, and derogatory statements about Farmland Partners;

5.     Award Farmland Partners prejudgment and post-judgment interest; and

6.     Award Farmland Partners all other relief to which it may be entitled.

Farmland Partners reserves the right to make amendments to this Complaint as it discovers new information, including, but not limited to, (a) amending the Complaint to reflect

33

the true identities of John/Jane Does 6–10, (b) adding new claims, (c) adding a claim for exemplary damages following appropriate disclosures and further proceedings, and/or (d) adding new defendants, including those working with or for Defendants, such as members, partners, affiliates, employees, consultants, clients, agents, relatives, and/or counsel of or for Defendants.

Plaintiff demands a trial by jury for all issues so triable.

Dated: July 10, 2020

Respectfully submitted,

/s/ Scott F. Llewellyn

Scott F. Llewellyn
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202
Telephone:  303.592.1500
Facsimile:   303.592.1510
sllewellyn@mofo.com

Michael D. Birnbaum
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone:  212.468.8000
Facsimile:  212.468.7900
mbirnbaum@mofo.com

*Attorneys for Plaintiff, Farmland Partners Inc.*

sf-4281807

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of July, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

jchanin@fostergraham.com,
kroush@fostergraham.com,
mbrooks@fostergraham.com

*Counsel for Defendant Rota Fortunae a/k/a David Quinton Mathews*

/s/ Scott F. Llewellyn
Scott F. Llewellyn

35

sf-4281807