# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02351-KLM

FARMLAND PARTNERS INC.,

    Plaintiff,

v.

ROTA FORTUNAE a/k/a DAVID QUINTON MATHEWS; QKM, LLC; SABREPOINT CAPITAL MANAGEMENT, LP; DONALD MARCHIONY; GEORGE BAXTER, and JOHN/JANE DOES 6-10 (WHOSE TRUE NAMES ARE UNKNOWN),

    Defendants.

## DECLARATION OF DAVID QUINTON MATHEWS IN SUPPORT OF SUMMARY JUDGMENT

    I, David Quinton Mathews, declare that I am over 18 years of age, am competent to testify, and if called as a witness, would testify as follows:

    1.    I am the sole employee of QKM, a Texas LLC. I am the 99% managing member and my wife is a 1% member.

    2.    QKM provides investment research in exchange for compensation to a handful of clients, including Defendant Sabrepoint Capital Management, LP.

    3.    I first learned about Farmland Partners, Inc., ("FPI") when Defendant Donald Marchiony brought the company to my attention in early May, 2018. I spent approximately two months researching FPI. My research consisted of finding and reviewing publicly available

{00625987.DOCX / 1 }

documents, including FPI's Securities and Exchange Commission (SEC) filings, deed records, UCC statements, court records, transcripts of FPI's earnings calls, FPI's press releases, USDA data, general and geographic specific farming and agriculture news and FPI investor presentations that were available on the internet. I chose to rely on public information because it came from reliable sources (e.g. filed by FPI) and provided detailed information that was sufficient to make the opinions stated in my research.

4.   I compiled my research on FPI into a research report. As my research progressed, I continually modified and edited the research report to reflect the new information I acquired. This meant that I was continually adding sections and removing sections as I learned more about FPI. I ultimately drafted approximately fourteen different drafts of my research report on FPI.

5.   Based on my research, I believed that FPI's shares were overvalued, so I took out a short position in FPI stock. This meant that if FPI's shares decreased in value, I had the potential to make money.

6.   I eventually decided I wanted to publish my research and I submitted the Article to the website Seeking Alpha. On July 11, 2018, Seeking Alpha published the Article under my pseudonym Rota Fortunae. At the time of publication, and today, I believed the Article was complete, ready for publication, and accurate.

7.   Seeking Alpha is a financial and investor media outlet in New York. (*Id.*). Its tagline at the time the Article was published was "Read. Decide. Invest." The website is www.seekingalpha.com.

8.   Prior to publishing the Article, I submitted my research report to the SEC via its

2

online whistleblower portal. As part of the process, I declared under penalty of perjury that the information was true and correct to the best of my knowledge and belief.

9. Prior to publishing the Article, the editors at Seeking Alpha engaged in an editing process to ensure the Article met Seeking Alpha's editorial standards, which are available here https://seekingalpha.com/page/editorial_principles. The process included an effort to ensure there was support for the material factual assertions in the Article and that the research opinions based on the factual assertions were appropriately labeled as such.

10. On July 9, 2018, in accordance with Seeking Alpha's policy, I, via my lawyer Mathew Mitzner, sent FPI a list of questions regarding issues raised in the Article and asked for a response within 24 hours. FPI did not respond to the request in any way, including by asking for more time to respond.

11. In the Article, I disclosed and hyperlinked to the Article the documents I relied on in reaching my opinions about FPI's stock price, disclosure policies, loan program, and accounting practices. All the documents I relied on were publicly available documents.

12. Three days after publishing the Article, I was alerted, via a comment to the Article in the comments section, that on page 5, the Article referred to "AFFO" when it should have referred to "FFO," or funds from operations. I acknowledged the mistake in the Article's comments section and later, at Seeking Alpha's behest, corrected the mistake in the Article itself.

13. When asking me to make the correction, Seek Alpha editors told me that "we maintain our opinion that you did an excellent job qualifying your opinion statements, supporting your statements of fact, and differentiating between the two." Attached here as

3

Attachment 1 is a true and correct copy of the email from Seeking Alpha asking me to make the correction and one other. Seeking Alpha declined to take down the article, and it remains online today.

14. The Article was and remains an "Editors Pick."

I swear or affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct.

David Quinton Mathews, aka Rota Fortunae

Message

| | |
|---|---|
| **From**: | Rebecca Oliver [disputes@seekingalpha.com] |
| **Sent**: | 7/18/2018 3:27:11 PM |
| **To**: | rotafortunae29@gmail.com |
| **CC**: | Article Disputes [disputes@seekingalpha.com]; Article Corrections [corrections@seekingalpha.com]; John Leonard [jleonard@seekingalpha.com] |
| **Subject**: | Please respond to dispute on your Farmland Partners article |

Hi David,

As you know, Farmland Partners has issued a press release disputing many elements of your recent article on the company.

Although Farmland *has not contacted Seeking Alpha* regarding the matter, we are going to treat their press release as an official statement and apply the same procedure we use for officially reported article disputes.

Two editors have closely reviewed every claim in Farmland's release. We maintain our opinion that you did an excellent job qualifying your opinion statements, supporting your statements of fact, and differentiating between the two. As such, we've identified just two issues we'd like you to clarify in the article:

> 1. Farmland disputes the claim that it excludes preferred dividends from AFFO. The inclusion of these dividends in the AFFO calculation is explained in the disclosures — i.e., see 10-Q here, page 41. It looks like you've acknowledged this in the comments already, so **please also update the article's discussion of this calculation.**
>
> 2. Under "The Ryan Niebur Loans," you say "the first year of interest was due up front (allowing FPI to report immediate interest revenue)." **Please clarify the difference between interest being paid at note issuance and how it is treated under GAAP accounting rules.**

Please file a correction request to address these two points. You can do so by clicking the pencil icon next to the article in your "Manage Articles" dashboard. We do not feel the need to pull down the article, as long as you address these updates in a timely fashion. Once your corrections have been implemented, we will add an Editors' Note with a link to Farmland's rebuttal, as we are treating the press release as the company's official response.

Thank you.

Sincerely,
Rebecca Oliver


--
Rebecca M. Oliver
*Deputy Managing Editor*

**e:** roliver@seekingalpha.com
**w:** seekingalpha.com

Seeking Alpha$^\alpha$