IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:18-cv-02351-RBJ

FARMLAND PARTNERS INC.,

      Plaintiff,

v.

ROTA FORTUNAE a/k/a David Quinton Mathews,
QKM, L.L.C., FIRST SABREPOINT CAPITAL MANAGEMENT d/b/a
SABREPOINT CAPITAL MANAGEMENT, LP,
DONALD MARCHIONY,
GEORGE BAXTER, and
JANE AND JOHN DOES 6-10, whose true names are unknown,

      Defendants.

---

## ORDER ON DEFENDANT SABREPOINT'S MOTION TO DISMISS

---

This matter is before the Court on the Sabrepoint Capital, LP defendants' motion to dismiss for lack of personal jurisdiction. ECF No. 172. For the reasons discussed below, Sabrepoint's motion is GRANTED.

### I. FACTUAL BACKGROUND

The following facts are derived from plaintiff's amended complaint, ECF No. 203, and the evidence cited in support of the parties' briefs. Farmland Partners, Inc. ("FPI") alleges that defendants engaged in a "short-and-distort attack" against FPI when defendant Quinton Mathews, under the pseudonym Rota Fortunae, authored an article ("the article") about plaintiff and published it on Seeking Alpha, an investment-related blog. ECF No. 155. The article resulted in defendants' profiting from their short positions in FPI. Plaintiff asserts the following

claims against defendants: defamation, disparagement, intentional interference with prospective business relations, unjust enrichment, deceptive trade practices in violation of the Colorado Consumer Protection Act, and civil conspiracy.

FPI is a publicly traded farmland Real Estate Investment Trust ("REIT") that acquires and leases farmland throughout the United States.  It also originates mortgage loans to farmers, including its own tenants.  FPI's headquarters and principal place of business are located in Denver, Colorado, and its stock is traded on the New York Stock Exchange.  ECF No. 155 at 3. Defendant David Quinton Mathews is the owner and sole employee of QKM, L.L.C. ("QKM"), an investment advisory firm principally owned and managed by Mr. Mathews with its principal place of business in Texas.  *Id*. at 3.  Mr. Mathews also operates under the pseudonym Rota Fortunae on both Seeking Alpha and Twitter.  *Id*.  Defendant Sabrepoint Capital, LP ("Sabrepoint") is a hedge fund that owned stock in FPI during the relevant time period underlying this case.  Sabrepoint's principal place of business and headquarters are also in Texas. George Baxter, Sabrepoint's Chief Executive Officer, and Donald Marchiony, a senior analyst at Sabrepoint, are also defendants to this lawsuit.  For the purposes of this motion the Court refers to Baxter, Marchiony, and Sabrepoint Capital, LP collectively as "Sabrepoint."

In February 2018 defendant QKM entered into an investment advisory agreement with Sabrepoint under which QKM received a $9,500 monthly retainer.  *See* ECF No. 172-4.  The agreement stated that Sabrepoint hired QKM to conduct investment research and advisory services.  *Id*. at 2.  Prior to the FPI research project, Sabrepoint worked with Mr. Mathews on other research projects.  One such project involved another company in which Sabrepoint owned stock.  Following that project Mr. Mathews, under his Rota Fortunae guise, published an article on Seeking Alpha about the subject company.  Additionally, Mr. Mathews and defendant

Marchiony worked on three to four research projects together in which they researched various companies, including Capital Senior Living, Cambrex, Inseego, and Safehold.  ECF No. 172-2 at 53:10–16.  None of those research projects resulted in an article on Seeking Alpha.  *Id*.  Mr. Marchiony also published his own articles on Seeking Alpha.  ECF No. 178-5 at 48:13–17.  When publishing those articles, Seeking Alpha did not require him to contact the subject company's management team.  *Id*.

In May 2018 Sabrepoint and QKM began working on an FPI-centered research project.  Mr. Marchiony emailed Mr. Mathews regarding his FPI idea on May 8, 2018.  The email stated, "Hey man, attaching a new idea that I'd love to hear your thoughts on, potentially something we could collaborate on if there's something juicy."  ECF No. 178-6 at 2.  Attached to the email is what the parties call the FPI slide deck, a compilation of PowerPoint slides that Mr. Marchiony prepared outlining FPI's investment structure and assets.  *Id*. at 3–33.

Mr. Mathews prepared a research report after a "constant back and forth with Sabrepoint."  ECF Nos. 178-2 at 61:16–17; 178-9.  As a part of this back and forth Mr. Baxter emailed Mr. Mathews and encouraged Mr. Mathews to include certain information in his research.  ECF No. 178-8 at 2.  In addition to the research report on FPI, Mr. Mathews was simultaneously working on an article he intended to publish on Seeking Alpha about FPI.  In July 2018 Mr. Mathews submitted his draft to Seeking Alpha under the pseudonym Rota Fortunae.  The article contained similar themes and concepts that had been outlined in his research report to Sabrepoint.  Upon receiving the article, Seeking Alpha edited the article and notified Mr. Mathews that he would be required to reach out to FPI's management so they could respond to the article's allegations.

To comply with Seeking Alpha's request, Mr. Mathews hired an attorney, Matthew

Mitzner, to send a letter to FPI's management.  On July 9, 2019 Mr. Mitzner sent a letter to FPI stating that he represented "a group of investors who have been analyzing publicly available information about [FPI] . . . ."  ECF No. 172-9 at 1.  The letter gave FPI management twenty-four hours to respond to various allegations.  *Id.*  FPI did not respond, and the article was published to Seeking Alpha on July 11, 2019.  ECF No. 18-2.  Mr. Marchiony, Mr. Baxter, Mr. Mathews, and Mr. Mitzner all stated that Sabrepoint was not a part of the group of investors mentioned in the article.  ECF Nos. 178-5 at 51:1-20; 172-1 at 57:4–58:7; 172-7 at 53:6–10.

Defendants Sabrepoint, Baxter, and Marchiony have never met, spoken with, or hired Mr. Mitzner.  ECF Nos. 172-1 at 37:4–23; 172-2 at 52:7–19.  Additionally, Sabrepoint is not mentioned in the Seeking Alpha article; and Baxter, Marchiony, and Mathews all provided sworn testimony in which they stated that Sabrepoint did not know about the Seeking Alpha article until after it had been published.

## II. PROCEDURAL BACKGROUND

This case was initially filed in the Denver County District Court against Rota Fortunae, whose true name was unknown at the time of filing, and John and Jane Does.  ECF No. 4. Defendant Rota Fortunae filed a notice of removal on September 14, 2018.  ECF No. 1.  On October 15, 2018 defendant Mathews (Rota Fortunae) filed a motion to dismiss pursuant to the Texas Citizens Participation Act and alleged that plaintiff sought to punish defendant's "right to free, anonymous speech."  ECF No. 22 at 1.  Judge Mix, who was initially assigned this case, denied the motion without prejudice on December 20, 2018.  ECF No. 45.  Defendant renewed the motion on August 14, 2019.  ECF No. 98.  Judge Mix again denied the motion without prejudice on March 9, 2020.  ECF No. 127.

Defendant Mathews also filed a motion to dismiss for lack of personal jurisdiction and

for failure to state a claim.  Judge Mix denied the motion to dismiss for personal jurisdiction.

ECF No. 136.  Plaintiff filed an amended complaint on July 28, 2020 and named the following

additional defendants: David Quinton Mathews, QKM L.L.C., Sabrepoint Capital Management,

LP, Donald Marchiony, and George Baxter.  ECF No. 155.

On August 25, 2020 this matter was reassigned to this Court.  ECF No. 161.  On October

16, 2020 defendants Baxter, Marchiony, and Sabrepoint (referred to collectively as "Sabrepoint")

filed a motion to dismiss plaintiff's first amended complaint.  ECF No. 172.  FPI filed its

response on October 26, 2020.  ECF No. 176.  Sabrepoint filed its reply on November 19, 2020.

Plaintiff filed yet another amended complaint on February 12, 2021.[1]  ECF No. 203.  The matter

is now ripe for review.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(2) requires the Court to determine whether it

has personal jurisdiction over the parties.  The plaintiff bears the burden of establishing personal

jurisdiction over an out-of-state defendant.  *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744

F.2d 731, 733 (10th Cir. 1984).  "[W]hen a motion to dismiss for lack of jurisdiction is decided

on the basis of affidavits and other written materials, the plaintiff need only make a prima facie

showing."  *Rocky Mountain Chipseal, LLC v. Sherman Cty., Kan.*, 841 F. Supp. 2d 1224, 1227

(D. Colo. 2012) (citing *Behagen*, 744 F.2d at 733.).  A plaintiff can make its prima facie showing

by "demonstrating, via affidavit or other written materials, facts that if true would support

jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d

1086, 1091 (10th Cir. 1998).  When a court evaluates a plaintiff's prima facie case of jurisdiction

---

[1] FPI filed its second amended complaint, ECF No. 203, while the Court was in the midst of drafting this order.  The Court is aware that Sabrepoint's motion to dismiss addresses the previous complaint.  However, the Court has reviewed the second amended complaint and finds that it does not change the Court's analysis.  The Court deems Sabrepoint's motion to dismiss to apply to the second amended complaint.

it must resolve all factual disputes in favor of the plaintiff.  To defeat plaintiff's prima facie showing of jurisdiction, "a defendant must present a compelling case demonstrating that the presence of some other consideration would render justice unreasonable."  *Id.*

## IV. ANALYSIS

Defendant Sabrepoint urges this Court to dismiss the claims against it for lack of personal jurisdiction.  ECF No. 172 at 5.  Plaintiff contends that the Court has specific personal jurisdiction over Sabrepoint because it purposely directed its conduct at Colorado through its alleged involvement in the Seeking Alpha article and Mitzner letter.  ECF No. 178 at 8.  Plaintiff also asserts that this Court has personal jurisdiction over Sabrepoint under conspiracy and agency theories of jurisdiction.  *Id.* at 10, 12.

## A. Whether the Court has Specific Personal Jurisdiction over Sabrepoint

A court has personal jurisdiction over a defendant when the defendant has sufficient contacts with the forum state.  *OMI Holdings, Inc.*, 149 F.3d at 1090.  The contacts requirement can be satisfied in two ways.  The first, known as general personal jurisdiction, arises where the defendant's contacts with the forum are "so continuous and systematic as to render it essentially at home there."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  The second, known as specific jurisdiction, gives a court jurisdiction over defendants who purposefully avail themsleves of the privilege of conducting activities in the forum state.  *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).  Plaintiff does not assert that the Court has general jurisdiction over Sabrepoint.  I therefore limit my analysis to whether the defendant is subject to the Court's specific personal jurisdiction.

The Tenth Circuit has established a two-part test for personal jurisdiction.  "First, we ask whether any applicable statute authorizes service of process on defendants.  Second, we examine

whether the exercise of statutory jurisdiction comports with constitutional due process demands." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005), *as modified on denial of reh'g* (Dec. 19, 2005). Because the Colorado long-arm statute mirrors that which is permitted by the due process clause, it collapses the two-part inquiry into one. *Dudnikov*, 514 F.3d at 1070 (". . . the first, statutory inquiry effectively collapses into the second, constitutional, analysis."). The Court therefore need only determine whether asserting jurisdiction over Sabrepoint comports with due process.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). This inquiry "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In all, the defendant's contacts with the forum must be such that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

For specific jurisdiction to comport with due process, the out-of-state defendant must have "purposefully established minimum contacts within the forum state," and the "assertion of personal jurisdiction must comport with fair play and substantial justice." *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322–23 (10th Cir. 2019) (citing *Burger King Corp.*, 471 U.S. at 475). Determining whether a defendant has sufficient contacts with the forum state involves yet another two-step inquiry. The court must determine whether (1) defendant

"purposefully directs its activities at residents of the forum state," and (2) "plaintiff's injuries must arise out of defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 905.

In *Calder v. Jones*, the Supreme Court explained that courts analyzing purposeful direction should consider "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotations omitted).  The Tenth Circuit in *Dudnikov* distilled the Supreme Court's *Calder v. Jones* decision "to its essence" and set forth a three-part test to determine whether a defendant's activities satisfied the purposeful direction requirement.  Purposeful direction is satisfied when the defendant (1) engages in an intentional action; (2) that is expressly aimed at the forum state; and (3) has knowledge that the brunt of the injury will be felt in the forum state.  *Dudnikov*, 514 F.3d at 1072.

Here, plaintiff alleges that Sabrepoint purposely directed its activities at Colorado when (1) Quinton Mathews a/k/a Rota Fortunae published the article on Seeking Alpha, and (2) Matthew Mitzner, QKM's attorney, sent the letter to FPI regarding the article.  I consider each alleged activity in turn.

1. The Seeking Alpha Article

Plaintiff argues that Sabrepoint purposely directed its activities at Colorado when it hired Mr. Mathews to perform stock research on FPI, who in turn published the Seeking Alpha article under the pseudonym Rota Fortunae.  ECF No. 178 at 8.  Plaintiff urges this Court to find that it has specific jurisdiction over Sabrepoint due to its involvement in the article's publication.  Meanwhile, Sabrepoint argues it was not involved in the article's publication and therefore not subject to this Court's jurisdiction.  ECF No. 183 at 2.

As mentioned above, to establish a prima facie case of specific jurisdiction, plaintiff must present facts that show the defendant (1) took an intentional action, (2) expressly aimed at the

8

forum state, and (3) knowing that the brunt of the injury would be felt there.  *Dudnikov*, 514 F.3d at 1072.  However, this test becomes thornier when internet activity is the basis for the intentional action.  As the Tenth Circuit has noted, many of the pre-internet personal jurisdiction principles—such as the contacts analysis—are greatly complicated because "the internet operates in every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011).

To avoid such an outcome, the Tenth Circuit has modified the purposeful direction analysis when internet activity is involved.  The modified standard emphasizes "whether the website or internet user intentionally directed his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Advanced Career Techs., Inc. v. Does*, No. 13-cv-0304-WJM-KLM, 2015 WL 328639 at *2 (D. Colo. 2015) (citing *Shrader*, 633 F.3d at 1240.)  "Simply posting defamatory statements on a website will not, standing alone, form a basis for personal jurisdiction against the poster in any state where the post may be read." *Id.* at *2.  Courts instead "look to indications that a defendant deliberately directs its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader*, 633 F.3d at 1241.

The Tenth Circuit court goes on to say that this principle—that an internet post is insufficient on its own to give rise to specific jurisdiction over an out-of-state defendant—is especially salient in defamation cases.  *Id.* at 1244.  The court explained that "[p]osting on the internet from [outside the forum state] an allegedly defamatory statement [about a forum resident] . . . does not give rise to the type of substantial connection between [the poster] and [the forum state] necessary to confer specific personal jurisdiction." *Id.* (quoting *Johnson v. Arden*,

614 F.3d 785, 797 (8th Cir. 2010)).  In reaching its decision, the Tenth Circuit relied on the Fifth

Circuit's interpretation holding that "the plaintiff's residence in the forum, and suffering of harm

there, will not alone support jurisdiction . . . ."  *Id.* (quoting *Revell v. Lidov*, 317 F.3d 467, 473

(5th Cir. 2002)).  As the Court stated in *Dudnikov*, "[s]ome courts have held that the 'expressly

aimed' portion of *Calder* is satisfied when the defendant individually targets a known forum

resident.  We have taken a somewhat more restrictive approach, *holding that the forum state*

*itself must be the focal point of the tort."  Dudnikov*, 514 F.3d at 1074.

Thus, under the Tenth Circuit's modified standard for internet-based defamation cases,

the Court must determine whether Sabrepoint (1) committed an intentional action, (2) intended

Colorado to be the focal point of the action, and (3) knew that the brunt of the injury would be

felt in Colorado.

Many courts have held that posting on an internet blog satisfies the intentional action

prong of the purposeful direction test.  *See Silver v. Brown*, 382 F. App'x 723, 730 (10th Cir.

2010) (unpublished) ("First, the posting of the blog was clearly an intentional act."); *Shrader*,

633 F.3d at 1240 (explaining that an intentional action includes "writing, editing, and publishing

an article.").  Although it is well established that posting an article to a blog is an intentional

action, the intentional action must be committed by the defendant questioning the Court's

jurisdiction.  *See Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, No. 09CV01767-

CMA-KLM, 2010 WL 845927, at *2 (D. Colo. Mar. 9, 2010) (explaining that "personal

jurisdiction requires a purposeful act by the defendant itself" and "personal jurisdiction is not

associational or derivative in nature.").  I must therefore determine whether Quentin Mathews'

publishing the article is an intentional action attributable to Sabrepoint.

Prior to analyzing this issue, it bears repeating that plaintiff bears the burden and must demonstrate sufficient facts to establish personal jurisdiction. A prima facie case of jurisdiction "must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts." *Good v. Fuji Fire & Marine, Ins. Co.*, 271 F. App'x 756, 758 (10th Cir. 2008) (unpublished). Further, when plaintiff presents its prima facie case "the court must accept the facts the complaint alleges relating to the jurisdiction issue as true, *at least to the extent they are uncontroverted by whatever material the defendant submits in support of its motion to dismiss*." 4 Fed. Prac. & Proc. Civ. § 1067.6 (4th ed.) (emphasis added). Plaintiff has not met its burden.

Here, the evidence presented to the Court indicates that neither Sabrepoint, George Baxter, nor Donald Marchiony knew about the blog post until after it was published. Mr. Marchiony stated that Mr. Mathews never told him he was going to publish the FPI article, that he never saw a copy or draft of the article, and that he did not pay Mr. Mathews to publish the article. ECF No. 178-5 at 51:1-20. Mr. Baxter similarly states that he did not know that Rota Fortunae intended to publish the article or that there was even going to be an article about FPI. ECF No. 172-1 at 57:4–58:7. He also says he never saw a copy of the article, did not hire Mr. Mathews to publish the article, and Mr. Mathews never communicated his intention to publish the article. *Id.* Additionally, in his declaration Mr. Mitzner indicated that Sabrepoint was not involved in the transmittal of the letter, which was a precursor to the article's publication, and both Mr. Mitzner and Mr. Mathews state that the "group of investors" referenced in the letter did not include Sabrepoint. *Id.* at 246: 1-4; *See* Part IV.A.2, *infra*.

In response to these facts, plaintiff asks the Court to disregard all of these clear, mutually consistent statements and to instead make attenuated inferences to conclude that Sabrepoint directed activities at Colorado. Plaintiff writes,

> Farmland has made more than a prima facie showing of jurisdiction based on Sabrepoint's purposeful direction of its actions at Colorado.  As a factual matter, Sabrepoint:
>
> > (1) contracted with Mr. Mathews for stock research shortly before he took out an insurance policy for articles published on Seeking Alpha;
> > (2) brought a short idea about K12 to Mr. Mathews, who then published an article attacking K12 on Seeking Alpha
> > (3) brought a short idea about Farmland Partners to Mr. Mathews, who then published an article attacking FPI on Seeking Alpha;
> > (4) provided information to Mr. Mathews about FPI's headquarters and operations on Colorado, which was covered in the article;
> > (5) discussed with Mr. Mathews research obtained from Colorado sources, which was covered in the article;
> > (6) provided framing, language and content for inclusion, some of which Mr. Mathews put in the article, including content targeting FPI's CEO, a Colorado resident; and
> > (7) had prior experience with Seeking Alpha, whose policies required outreach to management about "short" articles raising serious allegations.
>
> These irrefutable facts support the reasonable inference that Sabrepoint understood and/or intended that Mr. Mathews would (a) publish the article on Seeking Alpha attacking FPI, and (b) would reach out to Farmland Partners in Colorado for comment, as required by Seeking Alpha, before doing so.

ECF No. 178 at 9.

The Court disagrees that the above facts support plaintiff's inferences.  As an initial matter, plaintiff does not mention that Sabrepoint worked with Mathews other research projects, only one of which resulted in Mathews' publishing a Seeking Alpha article.  Additionally, plaintiff ignores Mr. Marchiony's testimony about his working with Mr. Mathews on four other research projects, none of which resulted in a Seeking Alpha article.  ECF No. 172-2 at 53:10–16.  In another portion of testimony ignored by plaintiff, Marchiony states that he himself had previously published articles on Seeking Alpha.  However, he had never been required to contact

the subject company's management team prior to publication, undermining plaintiff's claim that this is a strict publishing obligation and thus something Sabrepoint would have known Mathews would need to do.

Plaintiff does present evidence that Sabrepoint knew Mr. Mathews was Rota Fortunae, and that he had published articles on Seeking Alpha in the past.  At most plaintiff's facts support a reasonable inference that Sabrepoint knew that, by hiring QKM to research FPI, it was *possible* Quinton Mathews would publish an article about FPI as Rota Fortunae.  However, even if the Court makes this deduction, a defendant's mere knowledge that a third party *may* purposely direct activity toward a forum state is insufficient to establish an intentional action for purposeful direction.  Put differently, Sabrepoint's knowledge that Mr. Mathews might publish an article about FPI is insufficient to establish that *Sabrepoint* purposely directed its activities at Colorado. In sum, there is nothing in the record to support an inference that the Seeking Alpha article is attributable to Sabrepoint.  Thus, the article on its own cannot establish that Sabrepoint purposely directed its activity at the forum state.

### 2. The Mitzner Letter

Plaintiff alleges that Sabrepoint purposely directed its activities at Colorado when Matthew Mitzner sent the letter to FPI notifying it of the imminent Seeking Alpha article.  ECF No. 178 at 8.  Sabrepoint argues it never hired Mr. Mitzner and was not involved in sending the letter to FPI.

The evidence and allegations presented to this Court do not support an inference that Sabrepoint was involved in sending the letter to FPI.  Both employees of Sabrepoint state they have never hired, met with, or spoken with Mr. Mitzner.  ECF No. 172-1 at 37:4–23; ECF No. 172-2 at 52:7–19.  Mr. Mathews confirms that he hired Mr. Mitzner to send the letter and

reviewed a copy of it prior to it being sent.  Furthermore, he states that Sabrepoint was not involved.  ECF No. 172-7 at 247:7–11.  Finally, in his declaration Mr. Mitzner states that he "does not know, ha[s] never met or spoken to George Baxter, Donald Marchiony or Sabrepoint Capital Management, LP."  ECF No. 172-8 at 2.  He also writes, "I do not represent, and have never represented or acted on behalf of, the Sabrepoint defendants in any capacity."  *Id.*  And, finally, he says "[t]he Sabrepoint defendants were not part of the 'group of investors' referenced in my July 9, 2018 letter to Farmland Partners. . . I have also provided prior testimony concerning the identify of my client . . . and explanation for the use of the plural reference: to meet my obligations to preserve my client's then-anonymity."  ECF No. 172-8 at 2–3.

To rebut these facts plaintiff presents evidence that Mr. Marchiony had previously published articles on Seeking Alpha, and he therefore should have known that someone would need to contact FPI prior to the article's publication.  However, as mentioned above, plaintiff has not produced sufficient evidence to support its claim that Sabrepoint was involved in the article's publication.  Additionally, even if it had, with respect to the Mitzner letter, plaintiff has presented no evidence to rebut Sabrepoint's which shows that Sabrepoint did not hire, meet with, or ask Mr. Mitzner to send a letter.  ECF No. 178-5 at 48:13–17.

Plaintiff is correct that at this stage of litigation all factual disputes must be interpreted in its favor.  However, plaintiff has presented no factual dispute.  Plaintiff, in essence, asks this Court to ignore the depositions of three individuals, and the declaration of Mr. Mitzner himself— all of which establish that Sabrepoint had no connection with Mr. Mitzner or the letter he sent to FPI—without providing its own evidence to controvert the witness testimony.  Thus, because Sabrepoint was not involved with Mr. Mitzner, his sending the letter cannot be deemed Sabrepoint's intentional action.

Based on the evidence and allegations before the Court, Sabrepoint was involved in neither the Mitzner letter nor the article. Thus, plaintiff has not established that Sabrepoint committed an intentional act aimed at the state of Colorado. To subject Sabrepoint to specific jurisdiction on these facts would fly in the face of constitutional due process protections. This Court would have personal jurisdiction over Sabrepoint "solely as a result of random, fortuitous, and attenuated contacts." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp.*, 471 U.S. at 475.). Furthermore, even if the Court assumes Sabrepoint knew that Mr. Mathews a/k/a Rota Fortunae might publish an article on Seeking Alpha, the mere foreseeability of causing injury in another state is insufficient to establish purposeful direction. *Id.*

Plaintiff makes another argument in support of its position: it implies that this Court should rule consistently with Judge Mix's order, which found that the court had personal jurisdiction over Quinton Mathews. ECF Nos. 178 at 9; 136. However, my ruling on Sabrepoint's personal jurisdiction motion is in no way inconsistent with Judge Mix's ruling on jurisdiction as to Quinton Mathews. Plaintiff encourages the Court to conflate the actions of QKM, Quinton Mathews, and Rota Fortunae with those of Sabrepoint. I will not do so. Mathews and Sabrepoint, while both named defendants in this suit, are distinct. Judge Mix held that the court had jurisdiction over Quinton Mathews because of his involvement with the Mitzner letter and the article. Had plaintiff presented evidence that Sabrepoint was involved in either of the above actions—thereby controverting the sworn testimony of Baxter, Marchiony, Mathews, and Mitzner—the Court might have reached a different result. But plaintiff did not present such evidence. Accordingly, the Court finds that it does not have specific personal jurisdiction over defendant Sabrepoint.

**B. Whether the Court has jurisdiction under an agency theory of jurisdiction**

In its complaint plaintiff also alleges an agency theory of jurisdiction.  Plaintiff asserts that Mr. Mathews a/k/a Rota Fortunae was acting as Sabrepoint's agent when he posted the article, and therefore the Court can exercise jurisdiction over Sabrepoint based on the imputed contacts of Mr. Mathews.  ECF No. 178 at 12.  Sabrepoint argues that Mr. Mathews was not its agent, and that Mr. Mathews' unilateral actions therefore cannot subject Sabrepoint to this Court's jurisdiction.  ECF No. 172 at 12.

"The jurisdiction of a district court over a nonresident defendant in a suit based on diversity of citizenship is determined by the law of the forum state." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1304 (10th Cir. 1994).  The Court therefore looks to Colorado law to determine whether an agency theory of jurisdiction is appropriate.  Under Colorado agency law "the contacts of an agent can be imputed to the principal for purposes of personal jurisdiction."  *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 67 (Colo. 2007).  The *Goettman* court explains that "to establish this agency theory of personal jurisdiction under Colorado's long-arm statute, the jurisdictional facts must connect the actions of the agent to the principal by either the transaction of any business or the commission of a tortious act within the state."  *Id*.  The Court must thus determine whether the well-pled, non-conclusory facts in the amended complaint alongside the evidence in the record establish that Mr. Mathews was Sabrepoint's agent.

A plaintiff can "connect the actions of the agent to the principle" by demonstrating the agent had either actual or apparent authority to act on the plaintiff's behalf.  *Tripoli Management, LLC*, 2010 WL 845927, at *6.  In *Tripoli*, this court succinctly summarized both actual and apparent authority:

Actual authority incorporates the concepts of express and implied authority.  Express authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf.  Implied authority. . . embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent.  *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994) (citations and internal quotation marks omitted).  Apparent authority, on the other hand, exists when the principal acts "in a manner that, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.  In such a case, the agent is said to have apparent authority."  *Johnson v. Chilcott*, 658 F. Supp. 1213, 1219 (D. Colo. 1987) (citations and internal quotation marks omitted).

*Id.*

In *Tripoli Management, LLC*, this court applying Colorado law, considered whether the jurisdictional facts alleged in plaintiff's complaint were sufficient to establish an agency theory of jurisdiction.  There, the court acknowledged that the plaintiff made no claim as to whether the alleged agent acted with apparent or actual authority.  The court stated "[t]hat will not do.  Though light, plaintiff does have a burden.  It must allege facts in its complaint and, if jurisdiction is attacked, present argument in response, which would allow the Court to reasonably infer that it has jurisdiction over defendant."  *Id.* at 6.  Like the plaintiff in *Tripoli*, plaintiff has not alleged whether Mr. Mathews had actual or apparent authority to act on behalf of Sabrepoint.  Instead, plaintiff writes, "Mathews acted as Sabrepoint's agent such that Sabrepoint controlled and/or had the right to control his writing and publishing of the Posting on Seeking Alpha and related promotional tweets. . . ."  ECF No. 203 at 33.  The above statement is conclusory as it does not provide facts to support its conclusion that Sabrepoint controlled Mathews.  It is therefore not entitled to a presumption of truth.

Even if the Court were to have found that the statement is not conclusory, Sabrepoint has presented sufficient evidence to rebut plaintiff's allegation.  First, Sabrepoint points to the contract outlining the relationship between Sabrepoint and QKM.  It reads, in pertinent part,

> The Parties acknowledge that Adviser is, and shall for all purposes be considered, an independent contractor, and nothing in this Agreement shall be deemed  to create or imply any agency or employment relationship between Adviser and Client (or any affiliate of client). . . .
>
> Adviser shall determine the means and manner of performance of the Services rendered pursuant to this agreement.  Adviser shall not be subject to direction or control by Client.  Adviser shall not hold itself out to be an employee of Client.  Adviser will at all times be free from control  of Client as to the time and manner in which Adviser will work.  Adviser will pay all of its own expenses, costs and charges, and will furnish all needed equipment and materials, in connection with Services rendered under this agreement.

ECF No. 172-4 at 2.  Thus, when forming the relationship, defendants agreed that Sabrepoint would *not* have control over Mr. Mathews, and that Mr. Mathews would be an independent contractor.  In addition to the advisory agreement, in his declaration Mr. Baxter states that the relationship between QKM LLC and Sabrepoint is governed by the terms of the agreement, and that "Quinton Mathews never had any authority to speak on [Sabrepoint's] behalf."  ECF Nos. 172-1 at 60:17–61:13.

Notwithstanding the provisions in the advisory agreement and the deposition testimony presented to this Court, in its response plaintiff contends that Mr. Mathews was Sabrepoint's agent.  To support this argument, plaintiff argues (1) that the factors outlined in Section 220 of the Restatement (Second) of Agency supports a finding of agency in this case; (2) the advisory agreement is not dispositive; and (3) soliciting someone to write an article is sufficient to establish an agency relationship.  I address each argument in turn.

Plaintiff first argues that the Court should not only rely on the contract and should instead focus on the numerous factors outlined in the Restatement.  Section 220(2) of the Restatement reads,

> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant;
(j) whether the principail is or is not in business.

Plaintiff relies on *Norton v. Gilman*, a Colorado Supreme Court case, to argue that an individual's independent contractor status is only one of several factors courts consider. FPI writes, "Colorado Courts consider several indicia of agency status, including the factors listed in the Restatement (Second) of Agency." ECF No. 178 at 13. However, *Norton* also clearly states "[t]his list of factors is not exhaustive. . . . each factor need not be discussed in every case. Instead of applying the common law factors as a rigid test, we consider the circumstances of each case." *Norton v. Gilman*, 949 P.2d 565 (Colo. 1997). Thus, the Court need not analyze every factor as plaintiff urges. Instead, the Court must consider the relevant factors given the facts of the case.

Plaintiff contends that "the only factor cutting against a finding of agency is the agreement's labeling of Mr. Mathews as an independent contractor." ECF No. 178 at 14. The Court disagrees. The Restatement explains that

the important distinction [between an independent contractor and a servant] is . . .service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants.

Restatement (Second) of Agency § 220 cmt. e (1958).  Thus, whether someone is an independent

contractor is inextricably linked to whether the principal has the right to control the person's

work.

Even if this was the only factor weighing against plaintiff, the extent of control alone can

determine the issue.  The Colorado Supreme Court states,  "[u]nder the common law, the most

important factor in determining whether a worker qualifies as an employee is the alleged

employer's right to control the details of performance."  *Norton*, 949 P.2d at 567.  The

Restatement also says that the right to control is "important" and "in many situations is

determinative."  Restatement (Second) of Agency § 220 cmt. d (1958).  Additionally, in *Eim v.*

*CRF Frozen Foods LLC*, this court found that plaintiff's "inability to show that the defendants

exercised control. . . is fatal to her ability to establish jurisdiction" based on the agency theory.

*Eim v. CRF Frozen Foods LLC*, 18-cv-01404-PAB-KLM, 2018 WL 1382790, n.11 (D. Colo.

2019).

Here, the agreement clearly states that Mr. Mathews is an independent contractor, and

that Sabrepoint has no right to control any of Mr. Mathews work.  Deposition testimony further

demonstrates that Mr. Mathews had no authority to act on Sabrepoint's behalf.  ECF No. 172-1

at 60:17–61:17.  Plaintiff has produced no evidence to rebut the evidence proffered by

Sabrepoint.  As mentioned above, the Restatement, the Colorado Supreme Court, and this court

have concluded that the extent of the control is the most significant factor in the analysis.

Plaintiff next argues that the parties' labeling Mr. Mathews an independent contractor is

not dispositive.  I agree.  However, that is not the only basis for the Court's decision.  First, as

mentioned above, plaintiff did not allege nor brief the issue of whether Mr. Mathews acted with

actual or apparent authority when he published the article.  Instead, plaintiff alleges that

Sabrepoint controlled Mr. Mathews without offering any facts to support that conclusion.  As the *Tripoli* court stated, that is insufficient.  Second, plaintiff has produced no evidence to rebut the evidence proffered by Sabrepoint.  Plaintiff instead only relies on the Section 220 factors, despite the most important factor—the extent of control—not weighing in its favor.

Third, plaintiff argues that only one of those factors cuts against a finding of agency.  The Court again disagrees.  While the *Norton* court states that the list of factors is not exhaustive and that it is unnecessary to consider every factor in every case, the Court briefly addresses the factors that weigh against a finding of agency.  Section 220(a)—the extent of control which, by the agreement, the master may exercise over the details of the work—supports a finding that there was no agency relationship.  At the risk of redundancy, there are no well-pled allegations or evidence to support the conclusory statement that Mr. Mathews was subject to Sabrepoint's control.  The agreement between the parties outlined that Sabrepoint had no control over Mr. Mathews.  Further, both Mr. Baxter, Mr. Mathews, Mr. Marchiony, and Mr. Mitzner each admit that Sabrepoint was not involved in the article, did not read the article, or did not know the article was being written prior to it being published.  Thus, there is no evidence tending to show that Sabrepoint had any control over Mathews or the article he wrote.  This factor alone is dispositive of the agency issue.

Section 220(2)(e)—whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work—also supports a finding that Mr. Mathews was not Sabrepoint's agent.  Plaintiff argues that this factor weighs in its favor because "Sabrepoint provided [Mr. Mathews] key themes and specific framing, language, and content" to include in his research report.  ECF No. 178 at 13.  Plaintiff misconstrues the meaning of this factor.  The Restatement explains

> The ownership of the instrumentalities and tools used in the work is of importance.  The fact that a worker supplies his own tools is some evidence that he is not a servant.  On the other hand, if the worker is using his employer's tools or instrumentalities, especially if they are of substantial value, it is normally understood that he will follow the directions of the owner in their use, and this indicates that the owner is master."

Restatement (Second) of Agency § 220 cmt. k (1958).  The instrumentalities factor applies to equipment necessary to perform the job, not simply providing an individual with information.  Here, there is no evidence that Sabrepoint provided Mr. Mathews with a computer, telephone, or any other type of tool that would be necessary for him to perform his research job.  Additionally, the advisory agreement states that Mr. Mathews will complete the work using his own tools.  ECF No. 172-4 at 2.  Thus, this factor too weighs against plaintiff.

Section 220(i)—whether the parties believe they are creating the relation of master and servant—also weighs against a finding of agency.  Here, the contract terms and the deposition testimony of both Mr. Baxter and Mr. Mathews indicate that defendants did not intend to create an agency relationship, and that Sabrepoint had no right to control Mr. Mathews.  Thus, plaintiff's argument that only one factor cuts against the agency relationship is unavailing.  In addition to the most significant factor—the extent of control—numerous other factors weigh against plaintiff.

Plaintiff's final argument is that soliciting an individual to write an article is sufficient to support a finding of agency.  In making this argument plaintiff relies on *Gertz v. Robert Welch, Inc.*, a Seventh Circuit case that found an agency relationship where the "writer was solicited to write [the] specific article [at issue], was given the story line and background material, was reimbursed for his expenses, and kept in contact with [the managing editor] during the preparation of the article."  ECF No. 178 at 15 (quoting *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 539 (7th Cir. 1982)).  However, *Gertz* is distinguishable.  Here, four separate individuals

have provided sworn testimony that Sabrepoint was not involved in the preparation of the article, did not solicit the article, and did not know about the article until after its publication, and FPI has failed to rebut that testimony.  *See* Part IV.A.1, *supra*.  Therefore, the Court cannot assume that Sabrepoint, like the defendant in *Gertz*, solicited Mr. Mathews to write the specific article at issue.  Furthermore, there is no evidence or allegation that Sabrepoint reimbursed Mr. Mathews for his expenses.  While Sabrepoint paid Mr. Mathews for his services, the advisory agreement states that "Adviser will pay all of its own expenses, costs and charges, and will furnish all needed equipment and materials, in connection with Services rendered under this agreement."  ECF No. 172-4 at 2.  The Court is therefore unpersuaded by plaintiff's reliance on *Gertz*.

For the above reasons, the Court finds that FPI has not established that personal jurisdiction is appropriate under the agency theory.

## C. Whether the Court has jurisdiction under a conspiracy theory of jurisdiction

In its complaint plaintiff also alleges a conspiracy theory of personal jurisdiction. Defendant argues that plaintiff's conspiracy theory must fail because the undisputed evidence proves there was no conspiracy.  ECF No. 172 at 10.  Plaintiff argues that "the same facts and inferences establish jurisdiction based on conspiracy."  ECF No. 178 at 10.

Plaintiff alleges several facts to prove that Sabrepoint conspired with Mathews and QKM to publish the article and bring FPI's stock price down.  Plaintiff writes that "Mr. Mitzner's letter to Farmland Partners stated that there is a 'group of investors' behind the 'prepared article,' rather than an individual."  ECF No. 203 at 32.  They also allege "[o]n information and belief, Defendants undertook the unlawful overt act of publishing, or causing to be published, a false, misleading, defamatory, and/or disparaging internet posting about [FPI] and related comments on Twitter, for purposes of causing a decline in FPI's stock price."  *Id*. at 33.

Plaintiff argues that (1) because it has demonstrated a prima facie case of conspiracy, it has also established jurisdiction under the conspiracy theory, and (2) because this Court has personal jurisdiction over Mathews, it therefore also has jurisdiction over Sabrepoint. *Id.* As this Court has stated throughout this order, the burden lies with plaintiff to prove jurisdiction. To meet its burden plaintiff must allege uncontroverted facts that if true would support its claim for jurisdiction. However, Sabrepoint has presented evidence to contradict both facts on which plaintiff relies—Sabrepoint's involvement in the article's publication and the Mitzner letter. Plaintiff has presented no comparable evidence to rebut defendant's evidence. There is therefore insufficient evidence to support jurisdiction under a conspiracy theory.

For the above reasons, defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.

## **ORDER**

1. Defendant Sabrepoint's motion to dismiss for lack of personal jurisdiction, ECF No. 172, is GRANTED.

DATED this day 26th day of February, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge