# EXHIBIT 51

# Farmland Partners: Undisclosed Loans To Related Party Tenants Make Shares Uninvestible

*Summary*

- *ABD*
- *DEF*
- *HIF*
- *UFI*
- *IFO*

*Introduction*

Farmland Partners, Inc. (NYSE: PFI) is the largest farmland real estate investment trust (REIT) in the country. The company went public in April 2014 after CEO Paul Pittman and his business partner (and FPI consultant), Jesse Hough, put up their personal farmland holdings as the initial portfolio.

Billed as low-risk play on the world's ever-growing demand for food, FPI spent the last four years acquiring over a billion dollars of farmland into the worst ag economy in decades. Judged by any measure, the investments have been an unmitigated disappointment. Since its IPO, FPI has generated a measly $590 Thousand in free cash flow, and that excludes $81 Million spent on capex, which management incredulously claims was all growth expenditures.

In simple terms, over $1 Billion in acquisition, millions in executive pay (including leasing Pittman's personal jet) and $27 Million in dividends has been funded by a hamster wheel of debt and equity raises. While investors have not turned a blind eye to FPI's precarious financial position. (the stock is down 40% since the IPO), we do think they have a clear view of the risks lurking below the surface

**With our interest piqued by the recent dismissal of PWC for EKS EKS&H (auditor for [ HYPERLINK "https://www.denverpost.com/2016/03/16/musclepharm-founder-brad-pyatt-resigns-as-ceo-after-federal-investigation/" ] and [ HYPERLINK "https://seekingalpha.com/instablog/38059736-the-friendly-bear/5116702-suspect-related-party-dealings-infect-animal-house" ]), we reviewed hundreds of deed records in dozens of counties across the country. We found that FPI has made millions of dollars in loans to related party tenants including: Jesse Hough, an FPI employee and a large shareholder. Our research leads us to believe the loans are being used to artificially increase revenue and to fund Paul Pittman and Jesse Hough's outside business ventures.**

Evidence supporting our opinion includes a $2.8 Million loan made to Ryan Neibur, an FPI tenant and its director of acquisitions, which was used to pay off part of FPI's previous $980 Thousand loan that Niebur defaulted on shortly before he entered bankruptcy. Not only did FPI benefit from giving a life line to Niebur, but the they reported interest income as part of the "pay off" that allowed them to beat quarterly estimates(?).

But that is just the tip of the iceberg. In February, FPI made a $5.2 Million loan that was signed by Hough as the president of an inactive entity, that corporate records show he was never the president of, and that is secured by land that deed records show he does not own. Days later, an entity owned by

RF004070

Pittman and Hough co-signed on a bank loan using the same address for the properties collateralized by the FPI loan.

Compounding the risks is the fact that the loans are almost always "paid off" when FPI later acquires the property, effectively making the loan free money. If our analysis is correct, the circular capital flow brings cash in thru share raises, sends it out as investing cash flow, brings it back in as revenue and then satisfies the loan with a property acquisition.

While the numbers may seem too small to matter, they are significant when compared to same-property growth, a highly-watched metric by investors. A hundred thousand dollars from a struggling tenant could be the difference between reporting a negative or positive figure and thus directly effecting the stock's performance.

We think this is important because we uncovered a UCC filing that shows Hough (and we think Pittman) pledged FPI shares for a loan just days before FPI signed an agreement that Pittman later stated he thought would drive the stock price higher. Instead the stock tanked over the following months. Shortly after the stock made an all-time low, FPI made its first loan to Hough. The share pledge could explain why Pittman spends so much time discussing the stock price on conference calls (a classic red flag).

Our opinion that something is amiss is strengthened by the exodus of FPI insiders and auditor change. Since the first loan was made in July 2017, four board members and FPI's president have resigned. Three of the directors and the president came from FPI's two largest acquisitions (Forsythe Farms and American Farmland Company).

We think the transactions detailed in this report introduce two significant risks that leave the highly levered FPI dangerously close to the edge of disaster. First, if revenue and cash flow being misreported, the company may quickly find itself with liquidity issues if the capital market spigot loses confidence. Second, the stock pledge risks driving the stock price lower as need to be liquidated to meet margin demands. In a classic case of reflexivity, the stock price declines make it harder to raise money, which in turn drives the price even lower. At this point, shareholders are looking at the liquidation of a billions in farmland into a depressed ag economy.

Even if the loans, insider departures, pledged shares and dismissed auditor turn out to be benign risks, we still think FPI's shares carry significant downside. We found deed records that lead us to believe FPI has significantly overpaid for properties, in some instances paying over two times what the seller paid for the same land a year earlier. Using comps, USDA data and AcreValue estimates, we calculate FPI's net asset value per share to be $5.30, 40% below the current stock price or over 60% below what Paul Pittman says the stock is worth.

Given what we see as potentially material impacts to FPI financials, we think the shares are uninvestible. Furthermore, we think shareholders deserve transparency into all transactions involving Jesse Hough and entities that Paul Pittman is either now or formerly was involved with. To that end, we have written a letter to the board of directors demanding an internal investigation into these matters. We will publish the letter shortly after this article is published.

*The FPI Loan Program*

In                                      [                                      HYPERLINK
"https://www.sec.gov/Archives/edgar/data/1591670/000110465915062043/a15-

RF004071

18603_1ex99d1.htm" ], Farmland Partners introduced the FPI Loan Program to "address a market need created by short term cash flow pressure on farmers who otherwise maintain solid balance sheets" but cannot get funding through traditional lenders. The press release promoted FPI's quick underwriting abilities and conservative loan-to-value criteria. Further details were provided in the [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837015002606/fpi-20150930x10q.htm" ]:

> *"The Company intends to make loans to **third-party** farmers (both tenant and non-tenant) to provide partial financing for working capital requirements and operational farming activities, farming infrastructure projects, and for other farming and agricultural real estate related projects."*

While on its face there is nothing inappropriate about the loan program, lending to tenants provides management with a mechanism (if so used) to obscure FPI's financial performance. We see two potential opportunities to artificially improve FPI's financials.

First, management could agree to lend money in return for moving property operating expenses (a.k.a. infrastructure projects) off the income statement into investing cash flows. This financial maneuver would improve net income by both lowering expenses and increasing revenue via interest income.

Second, management could use the program as a backdoor to prop up struggling tenants, thereby artificially supporting rental income. For instance, imagine if you borrowed money from you landlord to pay your bills (including rent), should the landlord report your payment as rental income while also reporting interest income?

How aggressive FPI can get with the loan program depends, in part, on how willing the tenant is to play along. A financially sound tenant with alternate funding options is likely less willing than one that is underwater and looking for a lifeline.

But what about tenants with close financial relationships with FPI's management or those who own FPI stock? If management had a completely willing tenant, what would stop FPI from using the loan program from falsely inflating revenue by drastically increasing the tenants rent or siphoning off funds for non-FPI related purposes?

In the remainder of this report, we will reveal the details behind numerous FPI loans. We will show what we believe to be undisclosed related-party transactions, undisclosed defaults and numerous inconsistencies, all of which lead us to believe there is a significant risk that FPI is using the loan program in such aggressive manners.


### The Ryan Niebur Loans

On November 16th, 2015, just three months after introducing the loan program, FPI leant $980 Thousand to a tenant farmer. The only disclosure was that the loan was collateralized by a first mortgage on farm real estate and the first year of interest was paid up front (which likely means it was paid out of the loan proceeds).

What was not disclosed, is that this loan was made to Ryan Niebur, who according to [ HYPERLINK "https://www.linkedin.com/in/ryan-niebur-49947711a/" ] has been FPI's Director of

[ PAGE ]

Acquisitions/Farm Manager since September 2015 and according to this December 2015 investor slide deck is part of the FPI's management team.

863631
Page 1 of 7
Garland Wahl, Clerk & Recorder
Washington County, CO   RP $0.00
11-16-2015  01:43 PM  Recording Fee $41.00

**DEED OF TRUST AND SECURITY AGREEMENT**

THIS DEED OF TRUST is made effective this 30th day of October 2015.

The parties to this Deed of Trust are: **RYAN NIEBUR**, also known as Ryan B. Niebur, an individual, whose address is 411 West 4th, Wray, Colorado 80758, (the "GRANTOR"), and the Public Trustee of the County of Washington, State of Colorado, (the "PUBLIC TRUSTEE").

**AMOUNT AND TERMS**
The GRANTOR has made a promissory note payable to the order of **FARMLAND PARTNERS OPERATING PARTNERSHIP, LP,** a Delaware limited partnership, which has an address of 4600 S. Syracuse Street, Suite 1450, Denver, CO 80237, as beneficiary of this Deed of Trust (together with its successors and assigns) (the "BENEFICIARY"). The promissory note is dated October 30, 2015. The Deed of Trust secures the payment of $980,000.00 of the original principal sum and is payable with interest as shown in the promissory note and if not sooner paid, shall be due and payable in full on October 30, 2017, subject to extensions thereof. The promissory note states the interest rate on the principal sum, and also provides for future changes in the interest rate. The Deed of Trust secures the repayment of the principal sum with interest, and any additional indebtedness arising under the terms and conditions of this Deed of Trust.

It was also not disclosed that the loan was not used for farming operations but rather to pay off part of an existing loan (see Addendum A-1), which taken together with the following facts suggests Niebur was already in a financially precarious situation.

In the 1Q2017 10-Q, FPI disclosed the renegotiated Niebur's loan while simultaneously entering into a $2.194 Million collateralized by two additional properties.

| ($ in thousands) Loan | Payment Terms | Principal Outstanding as of March 31, 2017 | December 31, 2016 | Maturity Date |
|---|---|---|---|---|
| Mortgage Note [1] | Principal & interest due at maturity | $ 1,800 | $ 1,800 | 1/15/2017 |
| Mortgage Note [1] | Principal & interest due at maturity | 240 | 980 | 3/16/2022 |
| Mortgage Note [2] | Principal & interest due at maturity | 2,194 | - | 3/16/2022 |
| Total outstanding principal | | 4,234 | 2,780 | |
| Points paid, net of direct issuance costs | | (3) | (4) | |
| Interest receivable (net prepaid interest) | | 16 | 67 | |
| Total notes and interest receivable | | $ 4,247 | $ 2,843 | |

(1)  In January 2016, the maturity date of the note was extended to January 15, 2017 with year one interest received at the time of the extension and principal and remaining interest due at maturity.  The Company is currently in negotiations to extend the terms with the borrower.
(2)  The original note was renegotiated and a second note was entered into simultaneously, with the borrower during the quarter. The notes include mortgages on two additional properties in Colorado that include repurchase options for the properties at a fixed price that are exercisable between the second and fifth anniversary of the notes by the borrower.

Deed records show that this is not the entire story.  On March 16th, 2017, Niebur deeded one of the two properties covered in the original loan to FPI.  The deed specifically states that Niebur was in default on the loan and that the remaining property remained as collateral for the remaining $240 Thousand balance.

[ PAGE ]

RF004073

**DEED**
**(Washington County)**

KNOW ALL MEN BY THESE PRESENTS:

This Deed is made and entered into as of the 16th day of March, 2017 between Ryan B. Niebur ("Grantor") whose legal address is 411 W. 4th Street, Wray, CO 80758 and FPI Burlington Farms LLC, a Delaware limited liability company ("Grantee") whose legal address is 4600 S. Syracuse St., Suite 1450, Denver, CO 80237.

**RECITALS**

WHEREAS, Grantor has reviewed the Grantee's lien secured by the Property set forth below, and Grantor desires to deed the Property to Grantee.

**WITNESSETH**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor acknowledges that Grantee's loan secured by the Property is in default, that Grantor is aware of its rights regarding cure and redemption under Colorado and federal law, including any rights of redemption, leaseback, first refusal, continued possession, homestead under C.R.S. §§ 13-54-102 and 38-41-201 et seq. or 11 U.S.C. § 522 or any other homestead right, reversion, or abandonment under 11 U.S.C. § 554 or otherwise to all or any part of the Property, and Grantor does hereby bargain, sell, transfer, assign, convey to Grantee its successors and assigns forever all of Grantor's right, title and interest in and to the Property, together with all crops, mineral rights and improvements, if any, situate, lying and being in the County of Washington State of Colorado described as follows:

Grantor acknowledges that after this conveyance, Grantor shall continue to be obligated for a deficiency of $240,000 plus accruing interest on the Promissory Note secured by the Grantee's Deed of Trust.

Furthermore, the disclosure states that the new $2.194 Million loan is collateralized by two properties. But deed records show that FPI actually acquired the properties and recorded the cash outflow as a loan not an acquisition (we believe this may have something to do with the disclosure that Niebur has the right to repurchase the properties).

| CASH FLOWS FROM INVESTING ACTIVITIES | | |
|---|---:|---:|
| Real estate acquisitions, net of cash acquired | (79,220) | (93,187) |
| Real estate and other improvements | (3,947) | (698) |
| Principal receipts on notes receivable | 801 | 50 |
| Issuance of note receivable | (2,255) | — |
| Net cash used in investing activities | (84,621) | (93,835) |

Note that there is the inconsistency in the cash flows reported in the table above. The repayment on the existing loan ($801) and outflow for the new loan ($2,255) do not match the disclosures. As shown in the table below, we think FPI leant Niebur an additional $62 Thousand that was used immediately to report interest and fee revenue.

FPI reported (pg. 38) $57 Thousand in interest in loan fees (net of origination costs) during the quarter, which we believe were the net gains reported from the additional $62 Thousand loan. Assuming a 100% contribution margin, the fees on renegotiating a defaulted loan and issuing a bigger loan (which was actually a purchase) improved net income by $0.023.

There are also inconsistencies in FPI's disclosure. The table above shows the new maturity date of March 2022, but the Deed of Trust Modification shows it was only extended till March 2018 (see Addendum A-1).

[ PAGE ]

RF004074

*Pittman and Hough's Web Of Entities*

From the beginning, FPI has been entangled with the web of entities that made up Paul Pittman and Jesse Hough's personal farming operations. Thirty-six of the original thirty-eight farms were put up by Pittman-Hough Farms, which was formed when Pittman and Hough merged their respective farmland holdings. Pittman-Hough Farms also held interest in a number of other entities, including Astoria Farms and Hough Farms, which were FPI's first tenants.

Using SEC filings and corporate records, we put together the list of relevant entities, their affiliation with FPI and the ownership structure (where known) that existed after FPI went public.

[ PAGE ]

RF004075



*Source: Chart By Author, Using SEC and Corporate Filings*

This ownership structure remained intact until March 2016 when Pittman-Hough Farms was restructured (discussed later). But prior to that, Pittman had significant latitude to acquire properties in territories where FPI operates.

### Jesse Hough's Consulting Agreement

After the IPO, Jesse Hough became a consultant for FPI. While he held a significant enough position to be included in investor presentations and receive stock compensation, he was still permitted to operate the outside businesses.

The non-compete language in his consulting agreement carved out a list of entities that were not considered "competing businesses." The list (presented below) includes numerous entities that, at the time, we know were either controlled by or affiliated with Paul Pittman (marked by a red star).

> American Agriculture Corporation ★
> Pittman Hough Farms, LLC ★
> PH Land, LLC
> Cottonwood Valley Farms, LLC
> Hough Farms ★
> Astoria Farms ★
> Pine Ridge Holdings, Inc. ★
> Little Pine Ridge Feed Yard, Inc.
> South Fulton Livestock, LLC
> Hough Cattle Feeding, LLC
> Schuyler Livestock, Inc. ★
> PHS Farms, LLC ★
> BPH Farms, LLC ★

*Source: Jesse Hough Consulting Agreement*

Pittman was also provided latitude thru a Homestead Exemption Policy that allowed him or entities he controlled to acquire farms in three counties across Illinois and Nebraska. Hough's consulting agreement also allowed him to acquire properties on behalf of Pittman's Homestead Exemption.

RF004076

In our opinion, these agreements provided Pittman the ability to use Hough as a surrogate to do deals that may or may not have been in shareholders' best interest. And in fact, we found that Hough did numerous deals during this period.

### Pre-2016 Transactions

Below we look at two transactions that occurred in 2015 in Butler County Nebraska (Jesse Hough's hometown). Understanding these transactions serve two purposes:

1. The first shows a potential break of Pittman's Homestead Exemption Policy;
2. The second will later help us describe why we think the loans to Hough are obfuscating Pittman's involvement

The first transaction occurred in August 2015 when PHS Holdings acquired a farm in the Platte township in Butler County Nebraska.



*Source: Butler County, Nebraska Deed Records*

According to [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000104746914006407/a2220909z424b4. htm" ], Pittman-Hough Farms owned a 30% interest in PHS Holding during 2014. Assuming its interest had not changed, Paul Pittman would have been a part owner of this property. The problem would therefore be that the Platte township, while adjacent to townships in Pittman's Homestead Exemption Policy, is not actually included in it. We will also see that FPI later makes a $100 Thousand loan on this property before ultimately acquiring it.

The second transaction was a September 2015 bank loan to Cottonwood Valley Farms.

[ PAGE ]

RF004077

**DEED OF TRUST**

MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $7,696,500.00.

THIS DEED OF TRUST is dated September 21, 2015, among COTTONWOOD VALLEY FARMS, LLC, TITLE VESTED AS FOLLOWS: COTTONWOOD VALLEY FARMS, LLC, AS TO PARCEL 1 AND COTTONWOOD VALLEY FARMS, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, AS TO PARCEL 2, whose address is 1219 BALDRIDGE DRIVE, EATON, CO  806158630 ("Trustor"); FIRST MIDWEST BANK, whose address is GALESBURG, ONE PIERCE PLACE, SUITE 1500, ITASCA, IL  60143 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and BRIAN F. BECKNER, ATTORNEY AT LAW, whose address is P.O. BOX 1186, COLUMBUS, NE  68602 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in BUTLER County, State of Nebraska:

*Source: Butler County, NE Deed Records*

For those not familiar with deed records, this is a [ HYPERLINK "https://en.wikipedia.org/wiki/Deed_of_trust_(real_estate)" ], a document wherein legal title of a property is transferred to a trustee (generally an attorney), who holds it as security for a loan between the trustor (borrower) and the beneficiary (lender).

But this deed of trust is a little different.  Looking further thru the document, we find that:

1. There is second "Borrower" which is defined is defined as Pittman-Hough Farms;
2. Pittman-Hough Farms received a $2.5 Million loan as part of the deed of trust;
3. All obligations under the deed of trust are joint and several (i.e. each borrower has liability for the whole).



Beneficiary. The word "Beneficiary" means FIRST MIDWEST BANK, and its successors and assigns.

Borrower. The word "Borrower" means PITTMAN HOUGH FARMS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.



Note. The word "Note" means the promissory note dated September 21, 2015, **in the original principal amount of $2,565,500.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.



Joint and Several Liability. All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

*Source: Butler County, NE Deed Records*

**The structure of this document is very important.  It shows that Pittman-Hough Farms is a financial beneficiary of property owned by Cottonwood Valley Farms.  This was not news in 2015, as we already know that Cottonwood Valley Farms was wholly-owned by Pittman Hough Farms. But we will later use a similar deed of trust to show why we believe Pittman continues to have a financial interest in Hough's businesses after they reorganize in 2016.**

*The Reorganization*

The 2015 10-K contained one sentence that revealed a change in the ownership structure of Pittman and Hough's outside entities.  Buried in the middle of page 35 was the following disclosure:

[ PAGE ]

RF004078

> *"On March 11, 2016, Mr. Pittman and Jesse J. Hough entered into an agreement pursuant to which, effective December 31, 2015, Mr. Pittman ceased to hold any direct or indirect interests in, or have control of, Astoria Farms, Hough Farms and American Agriculture Corporation."*

At the time these were the only entities that had any business with FPI over the prior two years, so none of the other entities (e.g. Cottonwood Valley Farms or PHS Holdings) were discussed.  The only other disclosure was a slight change in language from "Pittman Hough Farms, which is 75% owned by Mr. Pittman" to "Pittman Hough Farms, which was 75% owned by Mr. Pittman."

However, another clue was buried in a [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1389549/000092542116000077/xslF345X03/edgar.xml" ] that disclosed that [ HYPERLINK "https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=20131030594&entityId2=20131030594&fileId=20131030594&srchTyp=ENTITY" ] gave Paul Pittman 233,400 shares of common stock (valued at $2.56 Million) in connection with the restructuring of Pittman-Hough Farms.  And that Paul Pittman increased his pecuniary interest in Pittman-Hough farms to 78%.

Based on this disclosure and this August 2016 investor presentation, we believe Paul Pittman is still an owner of Pittman-Hough Farms and that Jesse Hough is an owner and its CFO.

Around the same time, Jesse Hough relocated American Agriculture, Pittman-Hough Farms, Hough Farms, Hough Holdings and PHS Holdings to a new office (900 E. Louisiana, Suite 209, Denver, CO). Prior to this, all the entities shared FPI's corporate address.

We visited this rather non-descript office in the middle of the afternoon, but no one was there.



*Source: Site Visit To Hough Farms New Office*

The big questions we have are:

1. Why did Pittman and Hough reorganize their businesses?
2. Was Pittman getting pressure from the auditor and/or board for his involvement in his outside entities?

[ PAGE ]

3. Did the reorganization mean that FPI was now free to make loans to and buy properties from the Jesse Hough?

4. Does Pittman-Hough Farms still hold an interest in PHS Holdings and Cottonwood Valley Farms.

We attempt to answer these questions by looking at the transactions between FPI and Jesse Hough that occurred after the reorganization.

***Post Reorganization Transactions***

In July 2017, FPI made a $100 Thousand loan to PHS Holdings on the same property PHS acquired in 2015 (see Pre-2016 Transactions). The deed of trust is shown below.



*Source: Butler County, NE Deed Records*

The loan is disclosed in the [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837017008697/fpi-20170930x10q.htm" ], but there is no related-party disclosure. So the question is, does Pittman still have an interest in PHS Holdings?

We cannot definitively answer this question, but we believe the answer is yes. Leading us to this opinion are details in the deed records for a [ HYPERLINK "http://www.sullivanauctioneers.com/auction/schuyler-county-il-land-auction-3/" ].

Although Jesse Hough signed the deed, the document list the address for PHS Holdings as 4600 South Syracuse (FPI's corporate headquarters) even though PHS Holdings purportedly moved to 900 E. Louisiana nearly two year prior to this.



*Source: Schuyler County, IL Deed Records*

**If Paul Pittman still has an interest in PHS Holdings, it would imply that he received an undisclosed loan from FPI. Equally troubling would be the fact that the note was paid off around the same time FPI purchased the property in January 2018.**

[ PAGE ]

RF004080



*Source: Butler County, NE Deed Records*

The [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837018004644/fpi-20180331x10q.htm" ] states the loan was settled on "the maturity date of January 1, 2018." However, the maturity date listed right above this disclosure states January 31st, 2018.

As of March 31, 2018 and December 31, 2017, the Company had the following notes receivable:

| ($ in thousands) Loan | Payment Terms | Principal Outstanding as of March 31, 2018 | December 31, 2017 | Maturity Date |
|---|---|---|---|---|
| Mortgage Note (1) | Principal & interest due at maturity | $ 1,800 | $ 1,800 | 1/15/2017 |
| Mortgage Note (2) | Principal & interest due at maturity | 240 | 240 | 3/16/2022 |
| Mortgage Note (3) | Principal due at maturity & interest due monthly | 2,194 | 2,194 | 3/16/2022 |
| Mortgage Note (4) | Principal & interest due at maturity | 1,647 | 1,647 | 4/27/2018 |
| Mortgage Note (5) | Principal & interest due at maturity | - | 100 | 1/31/2018 |
| Mortgage Note (6) | Principal due at maturity & interest paid in advance | - | 669 | 2/15/2018 |
| Mortgage Note (7) | Principal due at maturity & interest paid in advance | - | 2,700 | 1/29/2018 |
| Mortgage Note | Principal & interest due at maturity | 5,250 | - | 8/19/2020 |
| Total outstanding principal | | 11,131 | 9,350 | |
| Points paid, net of direct issuance costs | | (1) | (6) | |
| Interest income (net prepaid interest) | | 609 | 461 | |
| Provision for interest receivable | | (91) | (45) | |
| Total notes and interest receivable | | $ 11,648 | $ 9,760 | |

(1) In January 2016, the maturity date of the note was extended to January 15, 2017 with year one interest received at the time of the extension and principal and remaining interest due at maturity. On July 28, 2017, the Company notified the borrower of default under the Promissory Note. The Company currently believes this collectability is reasonably assured as the fair value of the mortgaged farm is greater than the amount owed under the loan.
(2) The original note was renegotiated and a second note was entered into simultaneously with the borrower during the three months ended March 31, 2017. The notes include mortgages on two additional properties in Colorado that include repurchase options for the properties at a fixed price that are exercisable between the second and fifth anniversary of the notes by the borrower.
(3) The note was fully settled and outstanding amounts paid on the maturity date of January 1, 2018.
(4) The note was fully settled and outstanding amounts paid on the maturity date of February 2, 2018.
(5) The note was fully settled and outstanding amounts paid on the closing of an acquisition in North Carolina, which was completed on January 12, 2018.
(6) On April 17, 2018, the Company amended the loan to extend the term of the loan through March 1, 2020 and increased the interest rate to 7.5% per annum.

*Source: 1Q2018 FPI 10-Q*

Given the discrepancy in the disclosure and the fact that FPI did not file a reconveyance when the note was paid off, it is unclear exactly when the loan was settled. What we know is that the property was acquired two weeks before the stated maturity date, which we believe introduces the possibility that the purchase paid off the note, which would have effectively made it free money.

But this loan was small potatoes in comparison to the ones that would follow. In August 2017, FPI made a $669 Thousand loan to Hough Farms.

[ PAGE ]

**TRUST DEED**

**WITH POWER OF SALE**

This Trust Deed made August 25, 2017, by and among the following:

| | |
|---|---|
| DATE: | August 25, 2017 |
| TRUSTOR: | HOUGH FARMS,<br>a Nebraska General Partnership<br>810 Montgomery Street<br>Bellwood, Nebraska 68624 |
| TRUSTEE: | ANDREW J. HOFFMAN<br>ATTORNEY AT LAW<br>PO Box 910<br>47640 E. HWY 20, Ste #1<br>Atkinson, Nebraska 68713 |
| BENEFICIARY: | FARMLAND PARTNERS OPERATING<br>PARTNERSHIP, LP<br>a Delaware Limited Partnership<br>4600 S. Syracuse St., #1450<br>Denver, CO 80237 |
| CONSIDERATION: | $669,000.00 |

Trustor, in consideration of the sum of SIX HUNDRED SIXTY-NINE THOUSAND DOLLARS AND NO CENTS ($669,000.00), receipt of which is hereby acknowledged, conveys to Trustee, in trust, with power of sale, the following-described real estate (as defined in Neb. Rev. Stat. §76-201):

*Source: Butler County, NE Deed Records*

Recall the disclosure that Paul Pittman no longer has an interest or control position in Hough Farms. We are unsure how you reconcile that to the fact the just months before FPI made this loan, Paul Pittman was involved with Hough Farms in obtaining a $21.9 Million bank loan collateralized by the exact same property.

**DEED OF TRUST**

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $21,977,403.00.

THIS DEED OF TRUST is dated May 25, 2017, among HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP, whose address is 4291 H ROAD, BELLWOOD, NE 686242457 ("Trustor"); FIRST MIDWEST BANK, whose address is GALESBURG, ONE PIERCE PLACE, SUITE 1500, ITASCA, IL 60143 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and BRIAN F. BECKNER, whose address is P.O. BOX 1185, COLUMBUS, NE 68602 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in BUTLER County, State of Nebraska:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

Borrower. The word "Borrower" means HOUGH FARMS, A NEBRASKA GENERAL PARTNERSHIP; and PINE RIDGE HOLDINGS, INC..

Note. The word "Note" means the promissory notes or credit agreements dated February 14, 2017 in the original principal amounts of $5,360,000.00, $350,105.00 and $225,000.00 from Borrower to Lender and the promissory notes or credit agreements dated February 14, 2017 in the original principal amounts of $431,250.00, $219,448.00 and $750,000.00 from Astoria Farms, an Illinois General Partnership to Lender together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the promissory notes or credit agreements.

*Source: Butler County, NE Deed Records*

This deed of trust is just like the one we discussed previously, except instead of the Borrower being Pittman-Hough Farms it is Hough Farms and Pine Ridge Holdings.

[ PAGE ]

Wyoming corporate filings show after the 2016 reorganization, Paul Pittman [ HYPERLINK "https://wyobiz.wy.gov/business/FilingDetails.aspx?eFNum=23824701711514717710423517406514406911422301613 1" ] However, when in January 2018 Jesse Hough filed for a foreign LLC in Nebraska, Pittman's name reappears as both an officer and a director of Pine Ridge Holdings. Strangely, it lists his address in a Denver high rise that we believe is [ HYPERLINK "https://coloradovoters.info/by_number/0063/22040_jesse_james_hough.html" ].

| OFFICERS: | | | | DIRECTORS: | | | |
|---|---|---|---|---|---|---|---|
| Jesse J. Hough/President and Treasurer | | | | Jesse J. Hough | | | |
| Name/Title | | | | Name | | | |
| 1920 17th Street #1208 | | | | 1920 17th Street #1208 | | | |
| Street Address | | | | Street Address | | | |
| Denver | | CO | 80210 | Denver | | CO | 80210 |
| City | | State | Zip | City | | State | Zip |
| Paul Pittman/Vice Pres and Secretary | | | | Paul Pittman | | | |
| Name/Title | | | | Name | | | |
| 1920 17th Street #1208 | | | | 1920 17th Street #1208 | | | |
| Street Address | | | | Street Address | | | |
| Denver | | CO | 80210 | Denver | | CO | 80210 |
| City | | State | Zip | City | | State | Zip |

*Source: Nebraska Secretary of State*

**While the loan to Hough Holdings may not meet the SEC definition of a related party transaction, we think the fact that FPI made a loan to Hough Farms that is collateralized by a property that the Pittman (thru Pine Ridge Holdings) already has an existing loan on and that was co-signed by Hough Holdings would meet break company's executive code of ethics to "prevent the appearance or occurrence of conflicts of interest."**

Furthermore, there are very conceivable situations where Pittman could personally benefit from FPI's loan to Hough Holdings. For instance, if the bank required further collateral and the FPI loan was used as said collateral.

And more broadly, why would Pittman agree to put one of his entities in a position to be joint and severally liable with Hough Farms if he did not have some sort of pecuniary interest?

But even this loan is nothing compared to loan given in January 2018. The 1Q2018 10-Q shows that FPI made a $5.25 Million loan. Again we found this loan in Butler County Nebraska, made to a Siffring Farms.

[ PAGE ]

RF004083

*Source: Butler County, NE Deed Records*

We searched corporate filings and found that [ HYPERLINK "https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=0131334" ] whose president was Duane R. Siffring. However, the deed of trust was signed by Jesse Hough as President of Siffring Farms.



*Source: Butler County, NE Deed Records*

Furthermore, Butler County appraisal records show that Siffring Farms has owned the properties for years.

**We ask, why is Jesse Hough signing on a loan for an inactive entity, that corporate records show he was never the president of, and that is collateralized by land that deed records show he does not own?**

And just days later, Pine Ridge Holdings co-signed on another bank loan with [ HYPERLINK "https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=10255658" ] (an entity formed by Jesse Hough on January 9th, 2018) along with Hough Farms.

[ PAGE ]

*Source: Nebraska UCC Filings*

The UCC filing shows Pine Ridge Holdings address is 1197 34 Road, David City, NE.  This is the same address that the Butler County Appraiser shows as the mailing address for the properties owned by Siffring Farms.

| Parcel Information | |
| --- | --- |
| Parcel ID | 120033852 |
| Links | |
| Map Number | N/A |
| Cadastral # | 15-2E-27--1480 |
| Current Owner | SIFFRING FARMS INC |
| Mailing Address | 1197 34 RD DAVID CITY NE 68632-: |

*Source: Butler County Appraiser*

[ PAGE ]

RF004085

**Are FPI shareholders supposed to believe that all these entities, that share the same address and are co-signing loans are unrelated parties?**

### *What In The World Is Going On?*

We have two theories for why FPI is making the loans to Jesse Hough. First, we believe there is a risk that the money is being provided to farming operations controlled by Hough and that it is being circulated back to FPI as rental income to offset rental declines in the rest of the portfolio.

Because FPI does not break out rent per farm and acquisitions prevent analysts from calculating organic rental income, it is not possible to figure out if this is occurring. However, FPI still leases land to Astoria and Hough Farms, which according to [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000155837016004168/fpi-20151231x10k.htm" ] are controlled by Jesse Hough.

**Another clue that there may be games being played with these tenants is the fact that Astoria Farms Partnership has an active US Department of Transportation filing under Paul Pittman. It turns out that Astoria Farms is just a dba for Paul Pittman, which leads us to wonder how Pittman can no longer have an interest in Astoria Farms?**

The loans also provide a margin revenue source. Interest and fees on the loans are recorded (net of origination costs) as Other Revenue. Other revenue increased from $224 Thousand in 2016 to $906 Thousand over the trailing-twelve months. Why small on an absolute scale, the increase is nearly 100% of FPI's trailing-twelve month net income. And since the costs associated with maintaining the loans is likely di minimis, other income could have been the swing factor between a net profit and a net loss.

But we think there could be another possibility for the loans to Hough.

### *Hough Holdings FPI Share Pledge*

According to a Colorado UCC filed on February 13th, 2017, Hough Holdings put up its entire interest in Farmland Partners equity for a loan. Notably, at the bottom of the document is a line that states **"Optional filer reference is BOTW (Bank of the West)/Pittman Hough."**

Being that Pittman-Hough Farms disclosed in a [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1591670/000092542116000078/xslF345X03/edgar.xml" ] that it distributed its OP Units to its member, we think it is likely that the UCC filings is referring to Pittman and Hough personally.

RF004086

| 1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad) | | | |
|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | |
| HOUGH HOLDINGS LLC | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |
| 4600 S SYRACUSE STREET, SUITE 1450 | DENVER | CO  80237 | USA |

| 2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad) | | | |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| HOUGH HOLDINGS, LLC | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |
| 4600 S SYRACUSE STREET, SUITE 1450 | DENVER | CO  80237 | USA |

| 3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b) | | | |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | |
| BANK OF THE WEST | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |
| 13220 CALIFORNIA STREET | OMAHA | NE  68154 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

**ALL OF DEBTOR'S ESTATE, RIGHT, TITLE, AND INTEREST IN THE FOLLOWING:**

**(A) ALL SHARES OR OTHER EQUITY INTERESTS IN FARMLAND PARTNERS, INC. OWNED BY DEBTOR AND HELD IN THAT CERTAIN ACCOUNT WHICH IS SUBJECT TO THE SECURITIES ACCOUNT CONTROL AGREEMENT BY AND AMONG PERSHING LLC, DEBTOR, AND SECURED PARTY; AND**
**(B) ALL PROCEEDS THEREFROM.**

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative | | |
|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | |
| BOTW/PITTMAN HOUGH CO., STATE: Financing Statement - 20172014011 - Colorado Secretary of State - Page 3 of 3 | | |

The timing of this loan is interesting because just days later, on February 18th, 2017, FPI entered into a termination agreement with Prudential as part of its acquisition of American Farmland Co. We point out that timing because on the [ HYPERLINK "https://seekingalpha.com/article/4071346-farmland-partners-fpi-ceo-paul-pittman-q1-2017-results-earnings-call-transcript?part=single" ], Pittman stated:

> *"We frankly expected substantial stock price appreciation based on the AFCO acquisition and the termination of Prudential and all of that, and frankly none of which we got."*

Instead of going up, FPI's stock price declined 30% over the following months. The stock has continued to languish, which suggests the stock loan is underwater.

Further evidence suggesting Pittman's involvement is that on [ HYPERLINK "https://www.sec.gov/Archives/edgar/data/1389549/000092542117000298/xslF345X03/edgar.xml" ], he converted 531,827 OP units to common shares. July 9th (a Sunday) came after [ HYPERLINK "https://finance.yahoo.com/quote/FPI/history?period1=1396328400&period2=1501563600&interval=1d&filter=history&frequency=1d" ].

Seeing that Pittman has not sold any shares, we question why else he would be willing to convert OP Units, whose primary purpose is to delay  having to pay capital gains taxes on the original farms he transferred to FPI. In our opinion, the bank likely required the conversion of OP units because the OP Units are not liquid.

[ PAGE ]

RF004087

Whatever the reason is for the loans to Hough, our opinion that something is amiss is strengthened by the exodus of insiders that began shortly after the first loan.

### Executive & Board Level Departures

Since the first loan to Jesse Hough in July 2017, four board members and FPI's president have resigned. Three of the directors and the president came from FPI's two largest acquisitions (Forsythe Farms and American Farmland Company). Below we detail each of the departures.

| Date | Name | Position | Reason |
|------|------|----------|--------|
| 8/28/17 | John Conrad | Director; Forsythe Farms nominee | |
| 12/5/17 | Dixon Boardman | Director, former Chairman of AFCO | |
| 1/18/18 | Darell Sarff | Director, father of FPI VP | |
| 3/19/18 | Thomas Gimbel | Director, former CEO of AFCO | |
| 4/10/18 | Robert Cowan | President, former | |

In the case of Forsythe, the 2018 proxy states the Forsyth Sellers own 23.15% of the diluted shares and have to right to a nominate a board seat as long as they own 10%. In March, their representative resigned and Forsyth has yet to nominate another, which may indicate their intention to liquidate their stake below 10%. In the case of AFCO, its former Chairman and well-known hedge fund manager, Dixon Boardman, had already sold the majority of his position by the time he resigned in December 2017.

We think the biggest red flag is the number of departures that have occurred surrounding the related party transactions. The chart below shows the entire timeline of events, beginning with the stock pledge and ending with the recent auditor change.

*Source: Chart By Author, Using SEC Filings & Deed/UCC Records*

5315

### Disclaimer

IMPORTANT - Please read this Disclaimer in its entirety before continuing to read our research opinion. Investors are encouraged to conduct their own due diligence into these factors. This article represents the opinion of the author as of the date of this article. This article expresses the author's investment opinions, which are based upon interpretation of certain facts and observations, all of which are based upon publicly available information. The information set forth in this article does not constitute a recommendation to buy or sell any security. This article contains certain "forward-looking statements," which may be identified by the use of such words as "believe," "think," "expect," "anticipate," "should," "planned," "estimated," "potential," "outlook," "forecast," "plan" and other similar terms. All are subject to various factors, any or all of which could cause actual events to differ materially from projected events.

[ PAGE ]

This article is based upon information reasonably available to the author and obtained from sources the author believes to be reliable; however, such information and sources cannot be guaranteed as to their accuracy or completeness. The author makes no representation as to the accuracy or completeness of the information set forth in this article and undertakes no duty to update its contents. You should assume that as of the publication date the author (possibly along with or through our members, partners, affiliates, employees, and/or consultants) and clients have a short position in all stocks (and are long/short combinations of puts and call options of the stock) covered herein, including without limitation Farmland Partners, Inc. and therefore stand to realize significant gains in the event that the price of its stock declines. The author may also cover his/her short position at any point in time without providing notice. The author encourages all readers to do their own due diligence.

We found that FPI has given

The transactions, which began in mid-2017, are getting becoming more brazen.  The first loan was for $100 Thousand

**We have uncovered a series of undisclosed transactions between FPI and entities controlled by Jesse Hough that lead us to believe Pittman is using company funds to make loans and acquire properties that personally benefit himself, Hough and a host of entities under their control.**

More troubling than the transactions themselves is how the timeline of the transactions lines up with series of board and executive departures and the recent auditor change to EKS&H (known to shorts for their involvement in Muscle Pharma and Blank).  All of it leads us to believe that something is seriously amiss at FPI.

The situation is akin to the risk highlighted by Ricky Pearson in his report on American Renal Associates where the doctors were JV partners in the corporate owned dialysis clinics.  When legal troubles began unfolding for ARA, the doctors began accelerating their put options to sell their JV interests.

We think the lack of focus on potential related party conflicts is the result of language that appeared in the 2015 10-K which seemed to suggest that Paul Pittman had been divorced from his businesses with Jesse Hough.  Reality could not be further from the truth.

Besides the potential risks that come from insider dealing (regardless of whether it requires SEC disclosure), we think the details in this report introduce undiscounted, systemic risks to FPI shares.  Much like Chesapeake Energy carried the culture of leverage and risk engendered by Aubrey McClendon, we think FPI is an extension of Paul Pittman, who made a fortune in farmland into a twenty year boom but is now facing the fourth year of a depressed ag economy.

Our research leads us to believe that, like FPI, Pittman and Hough are personally leveraged.  Evidence includes a UCC filing that shows Pittman and Hough pledged FPI stock for a bank loan days before FPI signed a deal that Pittman later stated he thought would drive the stock price higher.

The risk is not only that Pittman and Hough will be forced to liquidate their shares (pushing the stock price down), but that a personal preference for leverage and risk taking

[ PAGE ]

, including having pledged FPI stock  We think the loans to Hough, which have grown significantly in value, are Pittman and Hough scrambling to keep afloat.

and

RF004090